UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| RICHARD E. KAPLAN, | ) | |
| *Plaintiff,* | ) ) ) | |
| v. | ) ) | Civil Action No. 04-10402-NMG |
| FIRST HARTFORD CORPORATION, | ) ) ) | |
| *Defendant.* | ) ) ) | |

**FIRST HARTFORD CORPORATION'S OPPOSITION TO PLAINTIFF
<u>RICHARD E. KAPLAN'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS</u>**

### I. <u>INTRODUCTION</u>

Plaintiff Richard E. Kaplan ("Kaplan")'s motion to compel can be boiled down to one simple fact: having stated repeatedly that he wants to review First Hartford Corporation ("FHC")'s shareholder list and recent proxy mailings solely to check the accuracy of the addresses contained therein, Kaplan now refuses to accept any conditions on his review that would require him to do only what he said he would do.  Kaplan offers no explanation for refusing to accept the limited restrictions proposed by FHC, which were designed only to ensure that Kaplan uses the shareholder list for the purpose for which he says he needs it.  That silence speaks volumes. Kaplan's demand for unfettered use of FHC's shareholder list demonstrates that his real purpose in seeking this information -- indeed the purpose of filing this suit -- is not to correct errors in the proxy statement but rather to mount a proxy fight against FHC as one small part of a larger, cross-generational interfamily feud.  The Court should not be misled about the true nature of this

action.  FHC's proposal to deliver the shareholder list to meet Kaplan's stated basis for needing it is entirely reasonable; the Court should deny Kaplan's motion on that basis.

## II.     FACTUAL BACKGROUND

Kaplan would have the Court believe that this case is a garden variety dispute over corporate governance issues.  It is not.  Instead, this case is one small piece of a much broader, intergenerational family dispute that has lasted more than thirty-five years and spawned multiple lawsuits.  Briefly described, this family dispute began in 1969 when Neil Ellis, now the President and Chairman of the Board of FHC, entered into a series of agreements with his father, Sidney Ellis, under which the elder Ellis sold his controlling interest in a company called Manchester Modes to a subsidiary of FHC.  For several years thereafter, pursuant to the terms of the agreement, both Ellises plus Sidney Ellis's son-in-law, Seymour Kaplan, served on the board of Manchester Modes.[1]  After a series of modifications to these agreements governing the timing and amount of payment to Sidney Ellis, the sides reached an impasse over the terms of the purchase.  Sidney Ellis was removed from his position as director and president of Manchester Modes and a series of court disputes resulted, culminating with the Connecticut Supreme Court's decision in <u>First Hartford Realty Corp. v. Ellis</u>, 181 Conn. 25, 434 A.2d 314 (1980).[2]  Since that time, the two sides of the Ellis family have been engaged in a family feud, which now encompasses a battle for control of FHC, with Neil Ellis being opposed (after the death of Sidney Ellis) first by Seymour Kaplan and now by his son, Richard.[3]

---

[1] Seymour Kaplan's son, Richard, is the Plaintiff in this action.

[2] A copy of that decision is attached as Exhibit "A."

[3] As is apparent from Kaplan's motion to compel, his brother David is closely involved in this effort as well.

In his complaint, Kaplan alleges that FHC made a series of misleading statements in its proxy solicitation materials; there is both more and less here than meets the eye, especially when viewed in light of the family feud described above.

In FHC's view, the allegations in the complaint are a pretext designed to provide Kaplan via discovery what he could not otherwise obtain, i.e., a copy of FHC's shareholder list that he could use to impose his will on the company and mount a proxy fight.  FHC's position in this litigation has been clear and consistent: Kaplan may inspect the shareholder list and shareholder proxies submitted in connection with the January 22, 2004 meeting consistent with the need he expresses in the complaint.  Simply stated, Kaplan has told the Court that he needs this information to determine whether the addresses to which FHC sent its proxy materials for the January 22, 2004 meeting were accurate.  (See Kaplan Motion at 4, 10.)  FHC has agreed to provide the list for that purpose.  Despite FHC's agreement to provide the list for his stated reason, Kaplan now objects to any restriction on the production of this information, though he does not say why.

Perhaps the best example of the pretextual nature of the complaint is Kaplan's allegation that it was "misleading" for FHC to have referred to the January 22, 2004 meeting as an annual meeting when no annual meeting had been held for eighteen years.  What Kaplan omits is that during that entire period he was an FHC stockholder who owned or controlled many thousands of shares.[4]  He must or should have been fully aware throughout that period that no formal annual meetings had been convened, yet remained silent.  Only now does he assert that he was "misled" because the proxy did not so state.

---

[4] Even though he controlled more that 5% of the shares of FHC, Kaplan apparently never once filed the required SEC Schedule 13D during this entire eighteen year period.

### III. ARGUMENT

    A. Kaplan's restatement of the relevant circumstances underlying this Motion are erroneous.

Kaplan's contorted explanation of the circumstances under which he made his request for production requires a response. The simple facts are these: counsel for the parties agreed to hold a Rule 26(f) conference on April 16, 2004. Just three days before, Kaplan's counsel wrote to FHC's counsel to request production <u>at the rule 26(f) conference</u> of nine (9) categories of documents. FHC's counsel responded by pointing to the explicit provision of Rule 26(d) that prevents parties from serving discovery prior to convening the Rule 26(f) conference. FHC's counsel offered, however, to treat Kaplan's letter as a Rule 34 request so as to save Kaplan the expense of having to formally comply with that rule. The following week, Kaplan's counsel agreed to that offer. (Copies of the relevant correspondence are attached as Exhibit "B.") Far from attempting to obstruct discovery, as Kaplan suggests, FHC acted entirely within the spirit and letter of the rules. Rule 34 provides a party with thirty days to respond to discovery requests; merely because Kaplan decides that for his own convenience he would like documents produced on <u>three</u> days notice does not render the protections of Rule 34 a nullity.[5]

---

[5] It is shameless to say the least for Kaplan to suggest that FHC has delayed the pace of discovery. The facts are these: FHC served its Rule 34 requests on April 16, 2004; Kaplan asked that FHC deem his earlier letter a Rule 34 request on April 21, 2004. FHC provided written responses to Kaplan's requests on May 26, 2004; Kaplan provided written responses to FHC's requests on May 19, 2004; FHC wrote to Kaplan on May 28, 2004 regarding questions it had about Kaplan's responses; Kaplan responded on June 7, 2004 and wrote its own letter about FHC's responses on that same day. The parties agreed to hold a Loc. R. 37.1 conference on June 15, 2004, then on June 25, 2004, and again on June 28, 2004. In each instance, Kaplan's counsel unilaterally cancelled the conference just before the appointed hour without offering any explanation. Finally, on the fourth try, the parties held the Loc. R. 37.1 conference by telephone on July 1, 2004. There can surely be no basis for Kaplan's suggestion that FHC delayed the discovery process.

Kaplan also claims that the need to place a limitation on his unfettered use of the shareholder list "was first raised on May 26, 2004, when FHC served it written response to Mr. Kaplan's document request." (Kaplan Motion at 13.) Kaplan is wrong about this too. As he well knows, FHC had proposed just such a condition to production in its May 12, 2004 written response to Kaplan's Loc. R. 16.1(c) settlement proposal.

        B.      Kaplan has not even attempted to demonstrate why FHC's proposed limitations are unreasonable.

Even Kaplan's characterization of his motion is misleading. He is not seeking to force FHC to produce documents that it has refused to produce; rather, he is seeking production of these documents on his desired terms, which happen to be inconsistent with his previously stated purpose for seeking them. Why he cannot live within the boundaries he set is left unsaid.

        1.      Applicable standards of relevance support imposing limitations on production of the shareholders list and proxies.

Kaplan makes the conclusory statement that "[t]he list is discoverable in this case by the applicable test of relevance." (Kaplan Motion at 13.) Kaplan is wrong. Although he does not identify it, the "applicable test of relevance" is that provided by Fed. R. Civ. P. 26(b)(1), which permits discovery of nonprivileged matters that are "relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). While as a general matter parties are entitled to broad discovery under Rule 26(b)(1), "'Rule 26 (c) . . . confers broad powers on the courts to regulate or prevent discovery even though the materials sought are within the scope of 26(b).'"[6] Santiago

---

[6] Rule 26(c) provides that the court

    may make any order which justice requires to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: . . .

        (2)     that the disclosure or discovery may be had only on specified terms or conditions, . . . [or]

v. Fenton, 891 F.2d 373, 379 (1st Cir. 1989) (quoting Fed. R. Civ. P. 26, Notes of Advisory Committee on Rules, Subdivision (b) (1970 Amendment.))  Moreover, this Court "has substantial leeway in managing pretrial matters, particularly decisions pertaining to the scope of discovery."  Sacramona v. Bridgestone/Firestone, Inc., 152 F.R.D. 428, 430 (D. Mass. 1993) (citing cases).

In light of these applicable standards, the question is how the requested discovery relates to Kaplan's claims.  The only claim in Kaplan's complaint to which the list of shareholders and their addresses could be relevant is the allegation in paragraph 9 -- made upon information and belief -- that "Ellis caused the January 2004 Meeting to be called on short notice, and sent notices to many shareholders to out of date addresses, in order to discourage any meaningful shareholder participation."  The only basis on which the list and the addresses could be relevant to this claim, which, again, is stated on information and belief, would be to ascertain whether, in fact, the addresses really were out of date.  Again, despite the caption of Kaplan's motion, FHC is not claiming that it will not produce the shareholder list.  Rather, FHC has agreed to produce the list subject only to restrictions that are entirely consistent with Kaplan's stated need in paragraph 9 and his counsel's oral representations to the Court at the Rule 16 conference.[7]

The point is nowhere better made than by Kaplan in his own motion, where he notes that he

---

(7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way.

[7] FHC would be amenable to any reasonable restriction that ensured that Kaplan would only use the list for purposes of verifying the accuracy of FHC shareholders' addresses.  Kaplan, on the other hand, has repeatedly stated that no restriction of any kind is permissible.

> has alleged various improprieties with respect to the mailing of proxies to shareholders and the information disseminated to the shareholders by the proxy materials and <u>should be allowed to discover to whom the materials were mailed, where the materials were mailed, who received the materials, when the materials were received</u>, who acted upon the receipt of the materials and how they acted upon the materials. [Kaplan Motion at 10 (emphasis added).]

FHC would gladly agree to produce the shareholder list to determine the answers to these questions. If that is really why Kaplan wants the information, then he should have no reason to object to limited restrictions on its use. That Kaplan refuses to accept any restrictions but declines to explain why suggests that he has some other, unstated purpose in mind.

Beyond a general statement about relevance, Kaplan's motion is almost entirely lacking in any actual argument for why the list and proxies should be produced on his terms. The only legal basis Kaplan cites in support is the corporation law of the state of Maine, which he acknowledges on two separate occasions as "not controlling with respect to this discovery dispute . . . ." (Kaplan Motion at 11, 13.) Kaplan also relies on a recitation of various "facts" (unadorned by any sworn declaration) to suggest that FHC has changed its position on making the shareholder list available. Other than trying to score points by making FHC look inconsistent, the legal significance of this recitation is not readily apparent. Other than that, Kaplan offers no explanation at all. He also mischaracterizes the brief discussion of this issue before Judge Lindsay during the May 12, 2004 Rule 16 conference. Without the benefit of any briefing on the subject, Judge Lindsay suggested -- <u>in the context of Kaplan's representation that he needed the list to check the accuracy of addresses</u> -- that FHC should produce the shareholder list. FHC has acted in accordance with that direction.

> 2. Courts recognize that restrictions on production of corporate information are justified.

Kaplan's suggestion that it is impermissible and unprecedented for FHC (or the Court) to impose any restrictions on its right to use the shareholder list is also wrong. See CM & M

-7-

Group, Inc. v. Carroll, 453 A.2d 788 (Del. 1982). In CM & M, while the Delaware Supreme Court affirmed a stockholder's right to look at various corporate documents including the stockholder list, the court also recognized the need to impose restrictions on that right. As the court concluded,

> [c]ounterposed to the duty to protect the rights of the stockholder, the Court has the duty to safeguard the rights and legitimate interests of the corporation. State ex rel. Cochran v. Penn-Beaver Oil Co., Del.Supr., 143 A. at 260. It follows that the Court of Chancery is empowered to protect the corporation's legitimate interests and to prevent possible abuse of the shareholder's right of inspection by placing such reasonable restrictions and limitations as it deems proper on the exercise of the right. 8 Del.C § 220(c); Henshaw v. American Cement Corp., Del. Ch., 252 A.2d, 125, 129 (1969). [Id. at 793-94. (emphasis added).]

Accordingly, the court remanded the case to the Court of Chancery with instructions that it modify its judgment to reflect the imposition of a series of significant restrictions on inspection of the corporate records. Id. at 794.[8] See also Mason-Dixon Bancshares, Inc. v. Anthony Investors, Inc., C.A. No. CCB-96-3836, 1997 U.S. Dist. LEXIS 23645 (D. Md. Mar. 7, 1997) (shareholder list is confidential and not to be shared with defendant shareholders).

While the CM&M dispute arose in the context of a dispute under Delaware corporate law and not Rule 26, the fact remains that courts do recognize the need to safeguard the rights and legitimate interests of the corporation. One way of doing so here is to employ some reasonable prudential limits on Kaplan's ability to make unfettered use of FHC's shareholder list.

---

[8] These restrictions include: (1) the shareholder's inspection shall be contingent on his agreement not to disclose any corporate information to anyone other than a bona fide prospective purchaser of the Company's stock who shall make a written representation to the corporation to that effect and who shall execute a confidentiality agreement; (2) the prospective purchaser's name and address must be disclosed to the corporation at least five days before the disclosure is made; (3) violation of these terms shall subject the stockholder and the perspective purchaser to sanctions; and (4) the court is to retain jurisdiction for two years to enforce these potential sanctions. Id. at 794.

The decision in <u>Mason-Dixon Bancshares</u> is also instructive. There the defendants, shareholders in the plaintiff bank holding company, claimed to want to see the company's shareholder list so they could use the addresses to mail a corrective statement to the company's shareholders. The court determined, however, that allowing these shareholders access to the list would be "inappropriate." <u>Id.</u> at *11. Having first concluded that the defendants were not entitled to the list under applicable Delaware law, the court noted that "it appears that the defendants <u>may want or use the list for purposes outside that of the mailing of the corrective statement</u> . . . . Under these circumstances, the court finds that the plaintiff does not have to produce the list for the defendants." <u>Id.</u> at *11-12 (emphasis added). Instead, the court ordered instead that, in light of these factors and "because of the confidentiality of the shareholder list," the company should handle the processing and mailing of the corrective statement to its shareholders. <u>Id.</u> at *12.

Likewise, the confidentiality of FHC's shareholder list, combined with the likelihood that Kaplan wishes to use the list for purposes other than those described in his complaint, militate in favor of imposing reasonable restrictions on the production of the list here. To do otherwise would be the functional equivalent of providing Kaplan with the ultimate relief he seeks. Such misuse of discovery should not be countenanced.

Finally, Kaplan also states that no restriction on discovery is permissible because "[t]he [shareholder] list is not proprietary, a trade secret, confidential, or privileged." (Kaplan Motion at 13.) This is not an accurate statement either. FHC's shareholder list and the addresses of those on it are not available to the public. In that sense both are confidential, and limited

measures designed to safeguard that confidentiality are not unreasonable or unjustified.[9]  See also Mason-Dixon Bancshares, 1997 U.S. Dist. LEXIS 23645

## CONCLUSION

For the above-stated reasons, the Court should deny Kaplan's motion to compel and order that the shareholder list be produced subject to reasonable limitations that would allow Kaplan to ascertain the accuracy of shareholders' addresses.

Respectfully submitted,

FIRST HARTFORD CORPORATION

By its attorneys,

    /s/ Jonathan I. Handler
Jonathan I. Handler, BBO #561475
DAY, BERRY & HOWARD LLP
260 Franklin Street
Boston, MA 02110-3179
(617) 345-4600

-and-

John B. Nolan (admitted *pro hac vice*)
DAY, BERRY & HOWARD LLP
CityPlace I
Hartford, CT 06103
(860) 275-0100

Dated: July 23, 2004

## CERTIFICATE OF SERVICE

---

[9] As the Delaware Supreme Court concluded, "a stockholder's right to inspect and copy a stockholder list is not absolute.  Rather, it is a qualified right depending on the facts presented." Compaq Computer Corp. v. Horton, 631 A.2d 1,4 (Del. 1993).

I, Jonathan I. Handler, hereby certify that on this 23rd day of July, I served a true and correct copy of the foregoing *First Hartford Corporation's Opposition to Plaintiff Richard E. Kaplan's Motion to Compel Production of Documents* via first class mail on Larry C. Kenna, Choate, Hall & Stewart, Exchange Place, 53 State Street, Boston, Massachusetts, 02109.

       /s/ Jonathan I. Handler
       Jonathan I. Handler