# EXHIBIT A

First Hartford Realty Corporation et al. v. Sidney Ellis; Manchester Modes, Inc., et al.
v. Sidney Ellis

[NO NUMBER IN ORIGINAL]

Supreme Court of Connecticut

181 Conn. 25; 434 A.2d 314; 1980 Conn. LEXIS 819

February 6, 1980, Argued
May 27, 1980, Decided

**PRIOR HISTORY:** [***1]
Action in the first case for a declaratory judgment determining the amount owed to the defendant on a promissory note, and on a purchase of capital stock, and for other relief; action in the second case for an injunction, accounting, damages, and for other relief, brought to the Superior Court in the judicial district of Hartford-New Britain at Hartford where the defendant filed a counterclaim for declaratory and other relief in the first case, and for compensation for services rendered in the second case; the issues were tried to the court, *P. Driscoll, J.;* judgment in the first case finding the issues for the plaintiff, and in the second case for the defendant on the complaint and for the plaintiff on the counterclaim, from which the defendant filed a combined appeal to this court.

**DISPOSITION:**
*No error in the first case; error in part in the second case and further proceedings.*

LexisNexis (TM) HEADNOTES- Core Concepts:

**COUNSEL:**
*Peter W. Benner*, with whom were *Robert Ewing* and, on the brief, *Thomas B. Mooney*, for the appellant (defendant in each case).

*Frank J. Silvestri, Jr.*, with whom were *Lawrence W. Kanaga* and, on the brief, *Milton Sorokin, Ethel Sorokin* and *Alfred F. Wechsler*, for the [***2] appellees (plaintiffs in each case).

**JUDGES:**
Loiselle, Bogdanski, Peters, Healey and A. Armentano, Js.

**OPINIONBY:**

LOISELLE

**OPINION:**

[*26] [**315] This appeal arose from a dispute over a stock purchase agreement and its subsequent modifications, a loan, and the defendant's claim for salary and an injunction to preserve his status as a director and officer in one of the plaintiff corporations. The actions initiated by the plaintiff corporations [**316] against the defendant were combined for trial to the court. The facts detailed in the briefs can be summarized as follows: The plaintiffs in both actions are corporations related under the umbrella of the parent First Hartford Corporation. Neil Ellis is now president and chief executive officer of First Hartford, and has been an officer and director of First Hartford and its predecessor corporations since 1962. The defendant Sidney Ellis, Neil's father, founded Manchester Modes, Inc., which for more than forty years has been engaged in the manufacture and sale of women's suits and coats. Sidney Ellis owned or controlled all of the outstanding stock in Manchester Modes until 1969. In [*27] 1969 he was president and chief executive [***3] officer of the corporation, responsible for all matters relating to finance, sales and production.

On January 21, 1969, the parties entered into a written agreement by which a predecessor of First Hartford Realty Corporation, one of First Hartford's subsidiaries, agreed to purchase, through a subsidiary created for that purpose, all of the outstanding stock in Manchester Modes from Sidney Ellis for $6,000,000. The acquisition agreement called for payment at the May 31, 1969 closing of $450,000 in cash n1 and $4,200,000 in a promissory note payable to Sidney Ellis in installments through January 31, 1974. n2 To assure Sidney Ellis a voice in the management of Manchester Modes until the debt was paid, the agreement also provided that as long as part of the "principal amount of the note re-

Case 1:04-cv-10402-NMG    Document 10-2    Filed 07/23/2004    Page 3 of 6

Page 2

181 Conn. 25, *27; 434 A.2d 314, **316;
1980 Conn. LEXIS 819, ***3

mains outstanding," First Hartford would take whatever steps necessary to assure that Neil Ellis, Seymour Kaplan and Sidney Ellis would comprise Manchester Modes' board of directors. Finally, in accordance with the agreement, the parties executed a custody agreement with the Connecticut Bank and Trust Company (CBT) pursuant to which all shares in Manchester Modes were placed in escrow with CBT [***4] to secure payment to Sidney Ellis of the $4,200,000 purchase price debt.

> n1 At the May 31, 1969 closing Sidney Ellis received only $50,000 cash and a $400,000 short-term promissory note. The note was paid in full on September 5, 1969, and is not in issue on appeal.
>
> n2 The $1,350,000 remainder of the purchase price was to be paid to the Ellis Foundation, a charitable family foundation, which owned the remainder of the stock.

Through written modifications to the acquisition agreement which are not in dispute, the purchase price debt was reduced to $2,900,000 in October, [*28] 1970, to reflect the diminution in value of one of Manchester Modes' assets. By November 20, 1972, First Hartford's prepayments on the debt had reduced the outstanding principal balance to $1,300,000.

Thereafter the parties executed two written agreements purporting to modify the payment schedule to the purchase price debt, one on November 20, 1972, the other on June 6, 1973. The November 20, 1972 agreement rendered the [***5] entire balance due and payable on January 2, 1974, by postponing the payment dates of installments totalling $700,000 and accelerating the payment dates of installments totalling $600,000. n3 The June 6, 1973 agreement modified the payment schedule such that Sidney Ellis would and did in fact receive $300,000 in payments by July 31, 1973, the remaining $1,000,000 to be paid in twenty annual installments of $50,000 each commencing June 15, 1978. First Hartford retained the right to prepay the debt.

> n3 The trial court found that $1,400,000 was the balance due on the debt at the time the November 20, 1972 agreement to modify was executed and that the plaintiff had paid $100,000 on January 31, 1973, thereby reducing the balance due on January 2, 1974, to $1,300,000. This discrepancy between the record and the briefs is not material to the outcome.

The last agreement modifying repayment of the purchase price debt was oral. Although Sidney Ellis continues to deny the existence of such an agreement, the trial [***6] court found in accordance with the plaintiffs' allegations that during the summer of 1974 Sidney Ellis agreed to cancel the outstanding balance of $1,000,000 in exchange for an advance payment of $300,000. As a result, the court concluded that Sidney Ellis [**317] had been legally removed as a director of Manchester Modes because no part [*29] of the principal balance remained outstanding. The original acquisition agreement secured his position on the board of directors only until the principal was paid in full.

The dispute over repayment of the debt incurred in the purchase of Manchester Modes is further complicated by what the parties refer to as the "Valley Bank loan transaction." In September, 1975, Sidney Ellis executed a $1,000,000 note payable to the Valley Bank of Springfield, Massachusetts. The funds he obtained were then loaned to First Hartford which executed, by Neil Ellis, a demand note payable to Sidney Ellis for $1,000,000 on September 22, 1975, hereinafter referred to as "the September 22 note" or "the note." Shortly thereafter, the previously mentioned dispute arose as to whether Sidney Ellis had agreed to cancel the $1,000,000 balance of the debt [***7] on the Manchester Modes purchase. When Sidney Ellis demanded payment on the note in December, 1975, Neil Ellis told him that he was fired. When Sidney Ellis told him that First Hartford still owed him approximately $2,000,000 on the purchase price debt and the note, Neil Ellis responded that Sidney Ellis had forgiven $700,000 of the $1,000,000 balance due on the debt in exchange for the advance payment of $300,000. On December 30, 1975, Neil Ellis purportedly acted to remove his father as a director and as president of Manchester Modes, terminating his employment effective January 27, 1976. When Sidney Ellis attempted to exercise his authority as chief executive officer of the company after January 1, 1976, he was prohibited from entering the plant.

On January 15, 1976, First Hartford tendered payment of the full amount due on the September 22 [*30] note in the form of a $400,000 check, prior advance payments on the Manchester Modes purchase and application of funds belonging to its subsidiaries but believed to be in the possession of Sidney Ellis. Ellis accepted the check but insisted that the advance payments could only be applied against the purchase price debt and [***8] not against the September 22 note, and claimed that the funds belonging to the subsidiaries had been returned. He subsequently admitted receipt of an additional $150,000 after January 15, 1976, on account of the note. According to the plaintiffs' calculations, the Manchester Modes purchase price debt had been paid in

Case 1:04-cv-10402-NMG   Document 10-2   Filed 07/23/2004   Page 4 of 6

Page 3

181 Conn. 25, *30; 434 A.2d 314, **317;
1980 Conn. LEXIS 819, ***8

full and the balance due Sidney Ellis on the Valley Bank loan transaction was $350,000. According to the defendant's calculations, $600,000 remained due on the purchase price debt and $450,000 on the September 22 note.

The remaining money dispute between Sidney Ellis and the plaintiff corporations concerned Ellis' salary for services rendered to Manchester Modes as of January 1, 1975. Ellis contends that prior to this time he had been receiving approximately $40,000 per year in salary, but has been denied his annual salary for each year since 1975 when the dispute between the parties arose in December, 1975.

Two actions were initiated in 1976. In the first action, the plaintiff corporations sought a declaratory judgment as to what, if anything, was owed by them on the purchase price debt and the September 22 note. Sidney Ellis filed a counterclaim requesting [***9] declaratory relief for the money owed him and injunctive relief to assure his position as a director and president of Manchester Modes. In the second [*31] action, Manchester Modes, Ellis Textile Sales Associates, Inc., and F.H.C.-D. Corporation, the corporation which had been created to purchase the stock of Manchester Modes, sought an accounting by Sidney Ellis of all funds taken, paid, distributed, transferred or disbursed to him by Manchester Modes or Textile Associates, and all profits derived by him therefrom. The defendant's counterclaim sought recovery of his salary from Manchester Modes from January 1, 1975, to the present.

The actions were consolidated and tried to the court which rendered judgments substantially in agreement with the plaintiffs' claims. The declaratory judgment entered in the first action held that no amount [**318] remained outstanding on the Manchester Modes purchase price debt because the debt had been cancelled, and that $350,000 remained due and payable to Sidney Ellis by First Hartford on the September 22 note, with six percent interest from the date of demand, December 29, 1975. Judgment on the second action denied both the plaintiffs' [***10] claim for an accounting and the defendant's counterclaim for salary. The parties stipulated pursuant to Practice Book, 1978, § 3002, to combine the two cases on appeal.

The defendant raises three issues on appeal. He claims that the trial court erred: (1) in finding an enforceable cancellation of the purchase price debt; (2) in failing to find that the September 22 debt was secured by the Manchester Modes stock held in escrow by CBT pursuant to the custody agreement executed with the original acquisition agreement; and (3) in holding that Sidney Ellis was not entitled to compensation from Manchester Modes for services [*32] rendered in 1975. n4 The first issue is of greatest importance to the parties.

> n4 The remaining claims of error included in the preliminary statement of issues have not been briefed and are considered abandoned. *O'Connor v. Dory Corporation,* 174 Conn. 65, 70, 381 A.2d 559 (1977).

The defendant argues that the trial court's conclusion that the debt had been cancelled is erroneous [***11] because the facts found are logically inconsistent with the evidence and do not support the conclusion, and the burden of proving an oral modification to the contract was erroneously placed on the defendant when it was the plaintiffs who claimed that such a modification had been made. Upon examination of the record and statements of fact in the briefs, it is readily apparent that the evidence adduced at trial was conflicting. "Where there is conflicting evidence . . . we do not retry the facts or pass upon the credibility of the witnesses. The trial court determines the credibility of witnesses . . . . Where the evidence, as here, is in conflict, its probative force is for the trier. . . ." (Citations omitted.) *Robert Lawrence Associates, Inc. v. Del Vecchio,* 178 Conn. 1, 14, 420 A.2d 1142 (1979). Furthermore, upon examination of the evidence cited by the defendant as inconsistent with the facts found by the court, it cannot be said, in light of the evidence presented by the plaintiffs, that the factual basis of the court's decision is not supported by the evidence.

The defendant contends that the facts found by the trial court do not support the conclusion that there [***12] was a legally enforceable agreement to cancel the debt, because the trial court did not find mutual assent to modify the contract, offer and acceptance, consideration, and the terms essential to a modification of the contract. The defendant concedes that [*33] he received $300,000 from the plaintiffs in payments between July, 1974, and February, 1975, but denies the money was consideration for a cancellation. He asserts it was merely prepayment of the purchase price debt, permissible under the terms of the written agreement. The memorandum of decision refers to Neil Ellis' testimony that during the summer of 1974, he and Sidney Ellis, while en route from New York City to Manchester, Connecticut, discussed cancelling the purchase price debt in exchange for an advance payment of $300,000. Sidney Ellis, in his testimony, denied having discussed any cancellation with his son.

In order to prove that a contract has been modified, the party asserting the modification must show mutual

Case 1:04-cv-10402-NMG   Document 10-2   Filed 07/23/2004   Page 5 of 6

Page 4

181 Conn. 25, *33; 434 A.2d 314, **318;
1980 Conn. LEXIS 819, ***12

assent to its meaning and conditions. *Lar-Rob* [**319] *Bus Corporation v. Fairfield, 170 Conn. 397, 402, 365 A.2d 1086 (1976); Hess v. Dumouchel Paper Co., 154 Conn. 343, 347,* [***13] *225 A.2d 797 (1966).* There were no witnesses to the conversation between Neil and Sidney Ellis in the summer of 1974 and the memorandum says only that the parties "discussed" cancellation. This alone, however, does not preclude a finding of mutual assent. The court found an oral agreement to modify the contract. The meaning to be given this agreement depends upon the intention of the parties, which is a question of fact not reviewable unless the court's finding is one which the trier could not reasonably make. *Lar-Rob Bus Corporation v. Fairfield, supra, 402-403.* The court's finding of mutual promises, n5 promises to forgive $700,000 of the debt and to pay $300,000 in [*34] advance, is reasonable and amply supports a finding of mutual assent and the court's conclusion that the parties agreed to cancel the debt. *Osborne v. Locke Steel Chain Co., 153 Conn. 527, 531, 218 A.2d 526 (1966); Taft Realty Corporation v. Yorkhaven Enterprises, Inc., 146 Conn. 338, 342, 150 A.2d 597 (1959);* 1 Corbin, Contracts § 9. The court specifically found in its memorandum of decision that the $300,000 payment constituted advance payment and not prepayment under the [***14] written agreement. Although part payment of a debt does not operate to discharge the whole if the creditor does not assent to receive it as such; *Charter Oak Estates, Inc. v. Kearney, 160 Conn. 522, 530, 280 A.2d 885 (1971);* 1A Corbin, Contracts § 175, p. 118; part payment prior to maturity is consideration for a promise to discharge the entire debt and it constitutes satisfaction of the debt if, as the court found here, the creditor accepts it as such. *Williams v. Apothecaries Hall Co., 80 Conn. 503, 508, 69 A. 12 (1908); Rose v. Hall, 26 Conn. 392, 395 (1857);* 6 Corbin, Contracts § 1282; *17 Am. Jur. 2d, Contracts § 121;* annot., 24 A.L.R. 1474.

> n5 In its memorandum of decision, the trial court said: "The defendant's promise to forgive $700,000 of the purchase price debt constituted a benefit, and thus consideration to the plaintiffs, while the plaintiffs' promise to pay $300,000 in advance constituted a benefit and thus consideration to the defendant."

The defendant claims that [***15] the trial court erroneously placed the burden of proof of cancellation on the defendant. The defendant argues that the burden of proving that a written contract has been varied by subsequent oral modification rests with the party asserting the modification. Although this is a correct statement of Connecticut law; *Lar-Rob Bus Corporation v. Fairfield,* supra, 402; *Hess v. Dumouchel Paper Co.,* supra, 349; the defendant's claim is simply not supported by the record. The trial court heard the plaintiffs' evidence supporting the existence of a modification and the defendant's evidence to the contrary. The fact that the court [*35] decided to review the defendant's evidence refuting the modification in its memorandum of decision despite its conclusion in favor of the plaintiffs does not show that it erroneously placed the burden of proof on the defendant.

The defendant's second claimed error concerns the trial court's failure to find that the September 22, 1975 debt was secured by the stock of Manchester Modes held in escrow by CBT since the execution of the original stock purchase agreement in January, 1969. This fact was admitted by the plaintiffs in the pleadings [***16] and in their brief and need not have been stated as part of the factual basis for the court's decision. Maltbie, Conn. App. Proc. § 130, p. 161. Security for the note was not in issue. There was therefore no reason to find that the shares constituted security for the note. *O'Leary v. Skilton, 102 Conn. 475, 478, 129 A. 45 (1925).* Furthermore, as the defendant's brief concedes, the trial court's finding that the custody agreement was of no further force and effect once the parties had agreed to cancel the purchase price debt has no effect upon the question of security for the note executed September 22, 1975. The court's finding that $350,000 remained due to Sidney Ellis on the note does not require the court to establish for the record every undisputed term of the loan agreement.

The defendant's remaining claim of error concerns the trial court's denial of his counterclaim for salary earned during 1975. The memorandum of decision acknowledges the parties' agreement that Sidney Ellis rendered services to Manchester Modes in 1975. The trial court held, however, that he had waived his right to compensation for those services because he did not demand payment for them [***17] in 1976. The parties agree that no formal demand for [*36] payment was made until August, 1976, when the defendant filed his counterclaim for salary in [**320] the accounting action. Sidney Ellis asserts the delay was caused by his son's refusal to permit him access to the books of Manchester Modes after he was fired on December 30, 1975, and by his decision to postpone receipt of his 1975 salary until 1976 for tax purposes. The plaintiffs contend that the pleading in which Ellis claimed a salary for 1975 was superseded, not offered in evidence and therefore not a proper subject for consideration by this court under *MacFarlane v. MacFarlane, 178 Conn. 406, 415-16, 423 A.2d 95 (1979);* Practice Book, 1978, § 3063.

Case 1:04-cv-10402-NMG   Document 10-2   Filed 07/23/2004   Page 6 of 6

Page 5

181 Conn. 25, *36; 434 A.2d 314, **320;
1980 Conn. LEXIS 819, ***17

Although the superseded pleading was not brought to the attention of the court, Sidney Ellis' claim for compensation for services in a subsequent pleading certainly was, and is therefore properly before this court on appeal. The record shows that Sidney Ellis and Manchester Modes had a contract, for the rendition of his services to the corporation in exchange for $40,000 annual salary. It is undisputed that this contract had existed and had been performed [***18] by the parties for several years prior to 1975. It is also undisputed as indicated in the memorandum of decision that Sidney Ellis rendered services to the corporation during 1975, services for which he has yet to be paid. Where one furnishes services under a contract at the request of another and with the expectation that he will be paid for his services he is entitled to payment in accordance with the terms of the contract. *Charter Oak Estates, Inc. v. Kearney*, supra, 531-32; *Butler v. Solomon*, 127 Conn. 613, 615, 18 A.2d 685 (1941). Failure to demand payment in accordance with the terms of the contract does not constitute a waiver of the contractual right to be paid for services rendered and [*37] the court was in error in so concluding. Furthermore, the defendant demanded payment in his August 11, 1976 pleading and there is nothing in the record to show prejudice to the plaintiffs by the defendant's failure to demand payment before that time. It cannot be said that the defendant did not fully perform his obligation under the contract or tender performance. He is therefore entitled to a remedy. *Ravitch v. Stollman Poultry Farms, Inc.*, 165 Conn. [***19] 135, 149, 328 A.2d 711 (1973). To put the defendant in the same position he would have been in had the contract for his services not been breached by Manchester Modes, *Lar-Rob Bus Corporation v. Fairfield*, supra, 405, at least until he was fired in December, 1975, he is entitled to the reasonable value of his services rendered in 1975 not to exceed $40,000.

There is no error in the case of *First Hartford Realty Corporation et al. v. Sidney Ellis;* there is error on the counterclaim for services rendered in 1975 in the case of *Manchester Modes, Inc., et al. v. Sidney Ellis*, the judgment is set aside and a new trial is ordered to determine reasonable compensation for those services in accordance with this opinion.

In this opinion the other judges concurred.