UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| RICHARD E. KAPLAN, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 04-10402-NMG |
| FIRST HARTFORD CORPORATION, | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF RICHARD E. KAPLAN'S OPPOSITION TO FIRST HARTFORD CORPORATION'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

This is a proxy fraud case brought by a shareholder ("Mr. Kaplan") of a publicly held corporation ("FHC") against the corporation for violation of the federal securities laws, specifically Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. §78n (a), and SEC Rule 14a-9. Mr. Kaplan alleges that FHC disseminated false and misleading proxy solicitation materials in connection with the call of a meeting of the shareholders in January, 2004. For a more detailed discussion of the nature of the case and the relevant facts, *see* Plaintiff Richard E. Kaplan's Motion to Compel the Production of Documents by the Defendant First Hartford Corporation at pages 1-6, filed with this Court on July 9, 2004.

With the filing of this opposition to FHC's motion to compel, both Mr. Kaplan's Motion to Compel and FHC's motion are ripe for consideration by the Court. In addition, the Court has before it a joint motion of the parties for entry of a Stipulated Protective Order (filed on August

16, 2004). The plaintiff requests that the Court consider all of these outstanding motions expeditiously, since the fact discovery deadline for the case currently is October 29, 2004.[1]

## PRELIMINARY STATEMENT

FHC has filed its opposition to Mr. Kaplan's Motion to Compel, essentially arguing (but without making any showing of good cause therefor) that Mr. Kaplan may only have FHC's stockholder list and the proxies submitted to FHC for the January, 2004 stockholders' meeting if Mr. Kaplan agrees to (or this Court orders) significant restrictions on the use of those documents.[2] The obvious goal of FHC's opposition to Mr. Kaplan's Motion to Compel is to divert the Court's attention from the fact that the stockholder list and the proxies are relevant to the claims of Mr. Kaplan and the defenses of FHC in this case and are therefore discoverable. In its efforts to reach that goal, FHC goes to great lengths:

(1) FHC attempts to limit the reasons why Mr. Kaplan wants to review the stockholder list ("*solely* to check the accuracy of the addresses contained therein")(emphasis added).[3] In fact, checking the accuracy of the addresses is a good and sufficient reason for reviewing the list, but

---

[1] Since Mr. Kaplan's Motion to Compel was filed on July 9, 2004, FHC has produced some documents, and has said that it would produce additional documents, but has not done so apparently because FHC is waiting for the Court to act on the parties' Joint Motion for Entry of Stipulated Protective Order, filed on August 16, 2004.

[2] This is a complete about-face from a previous position taken by FHC. FHC has twice previously *in writing* agreed to provide the stockholder list *without restriction.  See* Mr. Kaplan's Motion to Compel at pp. 12-13, and Exhibit B (letter dated January 23, 2004, from Clerk of FHC, a Maine lawyer, advising that the list could be inspected and copied during regular business hours at FHC's Manchester, CT office or in Waterville, ME) and D (letter dated February 3, 2004, from President of FHC stating "A list of shareholders showing for each shareholder:  name, address and number of shares owned will be made available to you.").

[3] It is wholly immaterial what Mr. Kaplan's reason or reasons are for requesting production of the list. The question is whether the list is relevant under Fed. R. Civ. P. Rule 26's broad discovery provisions. Mr. Kaplan suggests that it clearly is relevant *and FHC does not suggest otherwise*. FHC also states that counsel for Mr. Kaplan orally represented to Judge Lindsay at the May 12, 2004 Rule 16 Conference that "[Mr. Kaplan] needed the list to check the accuracy of the addresses."  *See* FHC's opposition at page 7, and the implication of the statements at page 6. Frankly, that is not exactly what Mr. Kaplan's counsel recalls saying in so many words, and clearly the relevancy discussion before Judge Lindsay was not a full and final presentation of both sides' arguments on the issue. Even FHC does not contend that Judge Lindsay limited the purposes for which the shareholder list could be used in this case. Again this is a diversion on FHC's part since the reason or reasons for requesting production of the shareholder list are immaterial to the issue before the Court.

the list may well have other relevance to this action. FHC's attempt to limit Mr. Kaplan in his analysis of the evidence without any demonstration of good cause should be rejected by the Court.

(2) FHC gratuitously offers its own view of Mr. Kaplan's "real purpose" in seeking production of the stockholder list: "not to correct errors in the proxy statement but rather to mount a proxy fight against FHC as one small part of a larger, cross-generational interfamily feud." In support of this completely unfounded and irrelevant assertion, FHC dredges up a 1980 opinion of the Connecticut Supreme Court which details the extensive, but now ancient, history of *litigation between the President of FHC, Neil Ellis, and his own father*, to which Mr. Kaplan was not a party. While FHC is certainly free to seek to sway the Court with fanciful attacks upon Mr. Kaplan's motive for bringing this lawsuit in 2004, this diversion too falls flat. The stock of FHC is publicly traded. Shareholders as Mr. Kaplan have rights under federal law that may be pursued in federal courts, and, in cases such as this one, courts are not in the business of ascertaining a proxy fraud plaintiff's "real purpose" for bringing the case. Berg v. First American Bankshares, Inc., 796 F.2d 489, 498n.8 (D.C. Cir. 1986)(where proxy fraud complaint alleges misrepresentations in or omissions from proxy solicitation materials Court must evaluate materiality of alleged defects and cannot engage in "mind reading" to speculate about plaintiff's "true" motivation in filing complaint).

(3) FHC cites as "[p]erhaps the best example of the pretextual nature of the complaint" Mr. Kaplan's allegation that it was "misleading" to call the January, 2004 meeting an annual meeting. How can Mr. Kaplan assert that he was misled, asks FHC, when during the entire 18 year period between FHC's last annual meeting and the January, 2004 meeting, "he was an FHC stockholder who owned or controlled many thousands of shares," and "must or should have been

fully aware throughout that period that no formal annual meetings had been convened ... ." This attempt at diversion evaporates as well since it is clear that Mr. Kaplan does not need to allege that he personally was misled by the actions, statements and omissions of FHC in the Proxy Materials.  Indeed, Mr. Kaplan's complaint is not that he was misled, but that other shareholders would have been, thereby depriving Mr. Kaplan of the honest election envisioned by the proxy rules.  To prevail in this action and obtain a new election, Mr. Kaplan need only show that a hypothetical reasonable investor would likely have been misled. TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 445-446 (1976) (question of materiality an objective one: the significance of an omitted or misrepresented fact to a reasonable investor); Berg v. First American Bankshares, Inc., *supra* (materiality means what a hypothetical reasonable shareholder would deem significant).

(4)  FHC suggests that armed with the stockholder list (to which he is entitled under Maine law in any event) Mr. Kaplan might not wait for this Court to rule on the propriety of last year's election, and instead convince the other stockholders to throw the incumbent management out in the next one, thereby obtaining the ultimate relief that he is seeking here.  FHC's concern that its management might not fare well in an honest election is well founded.  That, after all, is the reason FHC chose not to comply with the proxy rules in the only election it has held in almost 20 years.  However, given FHC's approach to these matters, it is entirely likely that no honest election will be held without the order of this Court, and FHC should be ordered to produce the list forthwith so that Mr. Kaplan can proceed to make his case before this Court.

(5)  FHC says that Mr. Kaplan has proffered a "contorted explanation" of  why FHC had not produced any documents whatsoever despite Mr. Kaplan's repeated requests over a period of 5 or more months, and brands Mr. Kaplan as "shameless" for suggesting that FHC had delayed

the pace of discovery. This attempt at diversion widely misses the mark. Mr. Kaplan's Motion to Compel is not founded on FHC's rather obvious delay of the discovery process,[4] but rather on the relevance of the documents sought, the fact that the Maine Business Corporation Act supports the production of the documents sought, the fact that FHC has twice previously committed in writing to produce the documents sought, and the fact that FHC has not made the requisite showing of good cause for placing any restriction whatsoever on the production of the documents sought.

(6)  FHC portrays Mr. Kaplan's Motion to Compel as standing for the proposition that "it is impermissible and unprecedented for FHC (or the Court) to impose any restrictions on its right to use the shareholder list ... ," and cites two cases in which courts have "recognized the need to impose restrictions on [a stockholder's right to look at various corporate documents including the stockholder list]." Passing without comment the inaccuracy of FHC's portrayal of Mr. Kaplan's Motion to Compel, it must be noted that both decisions cited by FHC relied on state statutes with very specific requirements for shareholder access to the corporate records sought.  The cases cited by FHC were not decided under Fed. R. Civ. P. Rule 26, and neither decision lends much support to FHC in the circumstances of this case.[5]

---

[4] As just one example, Mr. Kaplan would point to FHC's response to Mr. Kaplan's Document Request No. 5, which asked for the records of meetings of First Hartford's Board of Directors and all committees thereof, "and actions taken without a meeting," since the February 1986 Shareholders Meeting.  FHC began by objecting to that request on the ground that "actions taken without a meeting" is vague and ambiguous, and further objected on overbreadth and burdensomeness grounds because the request sought documents for a period of 18 years. See Exhibit A attached hereto. Only after Mr. Kaplan, through counsel, pointed out to FHC that the words "and actions taken without a meeting" came directly from a provision of the law of the state of FHC's incorporation, and that Mr. Kaplan was entitled to a production of the corporation's minute books from 1986 to the present, did FHC relent and agree to produce the corporate minute books. When the production of the records of all meetings held between 1986 and 2004 was finally made on July 13, 2004, the sum total of the pages of documents produced was 23, representing two (2) meetings of the stockholders (February 13, 1986 and January 22, 2004) and six (6) meetings of the Board of Directors during the 18 year period.

[5] In CM&M Group, Inc. v. Carroll, 453 A.2d 788 (Del. 1982), the issue was whether the stockholder's stated purpose for inspecting and copying the corporation's quarterly financial statements was "a proper purpose" under the applicable Delaware state statute. Id. at 792. The court in CM&M Group explicitly stated that "once a proper

In sum, FHC's opposition to Mr. Kaplan's Motion to Compel should be seen for what it is--an attempt to divert the Court's attention from the issue of whether the stockholder list and proxies are relevant and should be produced to the plaintiff without engrafting onerous and unnecessary restrictions on their production and absent the necessary showing of good cause therefor. Mr. Kaplan's Motion to Compel should be allowed.

## OPPOSITION TO FHC'S MOTION TO COMPEL

On April 16, 2004, FHC served its First Request for Production of Documents on the plaintiff. Most of the categories of documents sought by FHC from Mr. Kaplan related to Mr. Kaplan's status as a shareholder of FHC. FHC asked for documents that showed the number of shares of FHC common stock that Mr. Kaplan held (or ever held at any time), in whose name his shares were held, from whom he acquired his shares, with whom he shared voting power over any of his shares, and for documents concerning all transactions in which he acquired or conveyed any title or interest in any of his shares. In response, in essence, <u>Mr. Kaplan said that he would produce documents sufficient to show that he has owned of record and beneficially, with sole voting power over, more than 1000 shares of First Hartford at all times during the past 10 years</u>.

---

purpose has been established, any secondary purpose or ulterior motive of the stockholder becomes irrelevant." *Id*. The stockholder was entitled to the information he sought because one of his reasons for wanting the information--to value his shares--was "a proper purpose" under the statute. *Id*. Having held that the stockholder was entitled to the documents and information he sought, the court then focused on the confidentiality concerns of the corporation and concluded that restrictions should be placed on the stockholder's *disclosure of the corporate documents to third parties. Id*. at 793. FHC has not limited its proposed restrictions on Mr. Kaplan's access to the stockholder list to preventing *disclosure* of the list to others who might not be entitled to the information. What FHC wants to do is force Mr. Kaplan to agree that he will "use the list only to verify the accuracy of addresses of shareholders." It is this aspect of FHC's demands that Mr. Kaplan suggests is improper and with which he will not agree. The applicability of the holding in the other case cited by FHC is so tenuous that it deserves only a brief discussion here. In <u>Mason-Dixon Bancshares , Inc.</u> v. <u>Anthony Investors, Inc.</u>, C.A. No. CCB-96-3836, 1997 U.S. Dist. LEXIS 23645 (D. Md., March 7, 1997), the sole reason the court declined to order the production of the shareholder list was that the defendants were not entitled to the list under Maryland law because they did not own or control more than 5% of the corporation's shares for more than 6 months prior to their request for the list. Since the defendants were not entitled to the list as a matter of state law, the court denied them access to the list, and the court's statements concerning the "confidentiality" of the list were mere *dicta*.

Mr. Kaplan's response to FHC's document request was based on his belief that there was no disputed issue of fact with respect to his status as a shareholder of FHC at all relevant times: (i) in December, 2003, when the proxy materials were mailed to shareholders; (ii) in January, 2004, when the defective stockholders' meeting was held; or (iii) in February, 2004, when Mr. Kaplan commenced this action against FHC.

Mr. Kaplan's response was also based on the law applicable to standing to bring a proxy fraud action, which clearly holds that any shareholder who alleges that they or other shareholders were denied the right to vote their share or shares knowledgeably have standing to bring an action under Section 14(a) and Rule 14a-9 against the issuers of the allegedly false or misleading proxy materials.  See Royal Business Group, Inc. v. Realist, Inc., 933 F.2d 1056, 1059-1061 (1st Cir. 1991); United Paperworkers Intern. v. International Paper Co., 985 F.2d 1190, 1197-1198 (2d Cir. 1993), *citing* J.I. Case Co. v. Borak, 377 U.S. 426, 431 (1964) and *quoting* H.R. Rep. No. 1383, 73rd Cong., 2d Sess. 13 (1934) for the proposition that the 1934 Act was enacted in "the Congressional belief that 'fair corporate suffrage is an important right that should attach to *every equity security* bought on a public exchange.'" (emphasis added)  Accord, Wilson v. Great American Indus., Inc., 979 F.2d 924, 931 (2d Cir. 1992) (Securities Exchange Act of 1934 promotes fair corporate suffrage with respect to every equity security of shareholders).

The issue in this action is whether the proxy materials prepared by FHC were false and misleading.  The only issue relating to Mr. Kaplan is one of standing -- was he a shareholder at all relevant times.  For these reasons, Mr. Kaplan felt that FHC's document requests sought irrelevant information and were subject to his objections on that basis.

On May 28, 2004, counsel for FHC sent a letter to counsel for Mr. Kaplan, purporting to identify "numerous deficiencies" in Mr. Kaplan's responses to FHC's interrogatories and request

for production of documents. *See* Exhibit B attached hereto. In that letter, counsel for FHC complained of several of Mr. Kaplan's answers to FHC's interrogatories, but only complained of Mr. Kaplan's responses to Document Request Nos. 4 and 7. (FHC does not now seek to compel further answers to any of its interrogatories or any documents relating to Request No. 7.) Specifically, counsel for FHC only sought a supplemental response to FHC's request for documents "sufficient to show with whom you share voting power over any of your Shares." Exhibit B, at page 2.

On June 7, 2004, counsel for Mr. Kaplan sent a letter to counsel for FHC and, in response to the alleged deficiency of the response to Request No. 4, stated that no supplementation was required because Mr. Kaplan had merely confirmed what FHC's own records show: that Mr. Kaplan has at all times during the last 10 years had sole voting power over more than 1000 shares of the common stock. Since there could be no genuine dispute over those facts, and since FHC had not offered any explanation as to how any documents that Mr. Kaplan might have which show with whom he shares voting power over any other of his shares is relevant to any issue in the case, Mr. Kaplan declined to produce any such documents and rested on his objections to their production. *See* Exhibit C attached hereto.

The subject of Mr. Kaplan's responses to FHC's discovery requests was indeed discussed by the parties on July 1, 2004. Most of that discussion, however, focused on Mr. Kaplan's answers to interrogatories, and counsel for Mr. Kaplan made quite clear that no further information regarding Mr. Kaplan's status as a stockholder of FHC would be forthcoming, whether in the form of supplementation of his interrogatory answers or in the form of the production of documents other than those which showed that he owned and had sole voting power over 1000 shares for the past 10 years.

Now, nearly two months after the discovery conference, FHC moves to compel documents concerning Mr. Kaplan's stock holdings ostensibly "[t]o elicit in greater detail relevant information about Kaplan's shares." FHC argues that Mr. Kaplan has put his ownership of FHC stock at issue in this case by the allegations of the Complaint and that FHC should be entitled to the production of documents (i) showing the number of shares Mr. Kaplan presently holds or ever held; (ii) in whose name his shares are currently held; (iii) identifying any person from whom he acquired his shares; (iv) showing with whom he shares voting power over his shares; and (v) concerning any transaction in which he acquired or conveyed any title or interest in any of the shares. With all due respect, the allegations of the Complaint do not put Mr. Kaplan's ownership at issue. The rules concerning standing to bring this action determine the relevance of Mr. Kaplan's stock ownership. These rules are quite clear -- Mr. Kaplan must be able to demonstrate that he has been a stockholder at all relevant times. FHC's additional inquiries are not reasonably calculated to lead to admissible evidence, and would more likely than not lead to unnecessary and burdensome interrogation in Mr. Kaplan's deposition.[6]

Mr. Kaplan stands on his statements made in the June 7, 2004 letter (Exhibit C) and on the position taken during the L.R. 37.1 (B) conference of July 1, 2004. There is no relevance in this case to the exact number of shares that Mr. Kaplan owns or has voting power over, nor is there any relevance to whom he acquired his shares from, when he acquired his shares, or his relationship with his wife and brother David vis-à-vis his shares. FHC has never articulated a cogent reason for the relevance of the documents and information it seeks regarding Mr.

---

[6] FHC acknowledges in its motion to compel that it has in its possession the Schedule 13D that Mr. Kaplan filed with the SEC. See Exhibit A to FHC's motion to compel filed on August 27, 2004. That document, certified by Mr. Kaplan to be "true, complete and correct," shows that Mr. Kaplan owns and has sole voting power over thousands of shares of FHC. In addition, the Schedule 13D addresses the source of Mr. Kaplan's shares, the length of time Mr. Kaplan has held the shares, and with whom he shares voting power over those shares that he does not have sole power to dispose of.

Kaplan's status as a shareholder of FHC. It cannot suffice for FHC to say that the documents are relevant simply because Mr. Kaplan sued FHC, which is precisely the rationale upon which FHC bases its motion to compel. FHC's motion to compel should be denied.

          Respectfully submitted,
          Richard E. Kaplan,
          By his attorneys,

          /s/ Larry C. Kenna
          Larry C. Kenna (BBO No. 267760)
          CHOATE, HALL & STEWART
          Exchange Place
          53 State Street
          Boston, Massachusetts 02109
          (617) 248-5000

Dated: September 10, 2004