EXHIBIT 3

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| RICHARD E. KAPLAN, | ] | |
| Applicant/Plaintiff | ] | |
| | ] | Case No. |
| v. | ] | |
| | ] | |
| FIRST HARTFORD CORPORATION, | ] | |
| Defendant | ] | |

## COMPLAINT AND APPLICATION ON EXPEDITED BASIS UNDER 13-C M.R.S.A. § 1604 FOR ORDER TO PERMIT INSPECTION OF RECORD OF SHAREHOLDERS

### INJUNCTIVE RELIEF SOUGHT

This application in a diversity action is filed pursuant to 13-C M.R.S.A. § 1604 in order to obtain on an expedited basis an order to permit inspection and copying of a shareholder list. The bases of the Court's jurisdiction and the applicant's entitlement to the relief sought are set forth in this application and in the declarations of Robert Rothberg and Richard E. Kaplan filed herewith.

### Parties and Jurisdiction

1. Richard Kaplan ("Kaplan") is a citizen of the Commonwealth of Massachusetts. *See* Declaration of Richard E. Kaplan.

2. First Hartford Corporation ("FHC"), which is not a citizen of the Commonwealth of Massachusetts, is a Maine corporation with its registered office in Waterville, Maine, and its principal executive offices in Manchester, Connecticut.

3. Kaplan owns 145,719 shares of common stock of FHC. *See* Declaration of Richard E. Kaplan.

4. Shares of common stock of FHC have recently traded in the range of $3.00 per share. *See* Declaration of Richard E. Kaplan.

5. Kaplan is applying for an order that he be permitted to inspect and copy FHC's shareholder list for the proper and immediate purpose of communicating with other record shareholders prior to a scheduled annual meeting on December 9, 2004, to wage an effective proxy campaign on behalf of his proposal to amend the Bylaws of FHC to require an independent Board of Directors. *See* Declaration of Richard E. Kaplan.

6. The value that Kaplan seeks to protect is the value of his shares, which is in excess of $75,000. *See, e.g., Rockwell v. SCM Corp.*, 469 F. Supp. 1123, 1125 (S.D.N.Y. 1980) (in an

action to enforce inspection rights, the proper measure of the amount in controversy is the value of the plaintiff's shares).

### Basis for Court Order

7. Pursuant to 13-C M.R.S.A. § 1604(2), Kaplan is entitled on an expedited basis to an order to permit inspection and copying of the shareholder list if he complied with section 1602, subsections 3 and 4 and FHC did not within a reasonable time allow him to inspect and copy the list.

8. Kaplan complied with section 1602, subsection 3, by giving FHC written notice by letter dated January 29, 2004, of his demand to inspect the shareholder list at least 5 business days in advance of the date on which he wished to inspect and copy the list. *See* Declarations of Robert Rothberg and Richard E. Kaplan.

9. Kaplan complied with section 1602, subsection 4, because (A) his demand was made in good faith and for the proper purpose of communicating with shareholders, as needed, concerning possible self-dealing of FHC management and the need for a new and independent Board of Directors, (B) Kaplan described with reasonable particularity his purpose and the list he desired to inspect, (C) the list is directly connected with his purpose to communicate with shareholders of record concerning the need for an independent Board of Directors, and (D), there are no provisions contained in the FHC Bylaws or Articles of Incorporation that would restrict Kaplan's right to inspect and copy the list for his stated purpose. *See* Declarations of Robert Rothberg and Richard E. Kaplan.

10. FHC has not allowed Kaplan to inspect and copy the shareholder list within a reasonable time, despite the fact that its President, Neil H. Ellis, advised Kaplan by letter dated February 3, 2004, that he could inspect and copy the list. *See* Declarations of Robert Rothberg and Richard E. Kaplan.

11. FHC has articulated no reasonable basis for doubt about the right of Kaplan to inspect the shareholder list. *See* Declarations of Robert Rothberg and Richard E. Kaplan.

WHEREFORE, Kaplan requests and is entitled to immediate entry of an order of the Court pursuant to 13-C M.R.S.A. § 1604(2) & (3) that FHC permit him forthwith to inspect and copy the shareholder's list at FHC's principal office in Connecticut or at its registered office in Waterville, and that FHC pay his costs including reasonable counsel fees incurred to obtain the order.

Date: October 28, 2004

/s/ David C. King
David C. King, Esq.
Rudman & Winchell, LLC
Attorneys for Plaintiff
P.O. Box 1401
Bangor, ME 04402-1401
(207) 947-4501
dcking@rudman-winchell.com

GW47114.Trans.

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2004, I electronically filed Complaint and

Application on Expedited Basis Under 13-M.R.S.A. § for Order to Permit Inspection of Record

of Shareholders with the Clerk of Court using the CM/ECF system.

/s/ David C. King

David C. King, Esq.
Rudman & Winchell
Attorneys for Plaintiff
84 Harlow Street – P.O. Box 1401
Bangor, ME 04402-1401
E-Mail: dking@rudman-winchell.com

GW Lit. 47114

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

RICHARD E. KAPLAN,
    Applicant/Plaintiff )

v. )    Case No.

FIRST HARTFORD CORPORATION, )
    Defendant )

## DECLARATION OF RICHARD E. KAPLAN

Pursuant to 28 U.S.C. § 1746, I, Richard E. Kaplan, on oath depose and declare as follows:

1.    I am a citizen of the Commonwealth of Massachusetts.

2.    I own and have sole voting power over 145,719 shares of common stock of the defendant First Hartford Corporation. I also have shared voting power and dispositive power over an additional 445,535 shares of common stock of the defendant. I have attached to this affidavit a copy of the Schedule 13D that was filed with the Securities and Exchange Commission on my behalf on January 26, 2004.

3.    Shares of the common stock of the defendant have recently traded in the range of $3.00 per share.

4.    On October 13, 2004, in anticipation of the next scheduled shareholder meeting of the defendant, I sent a shareholder proposal and supporting statement to the defendant for inclusion in the defendant's proxy statement for the meeting. My shareholder proposal seeks to amend the bylaws of the defendant to provide for an 80% independent Board of Directors after September, 2005. I have attached to this affidavit a copy of my letter of transmittal and my shareholder proposal. I have been told that the defendant has agreed to include my shareholder proposal in its proxy statement for the December 9, 2004 shareholder meeting.

5.    The defendant has refused both oral and written requests made on my behalf to allow me to inspect and copy the defendant's shareholder list. The most recent refusal occurred on or about October 19, 2004.

I declare under penalty of perjury that the foregoing is true and correct.

Date: October 27, 2004.

Richard E. Kaplan

3761590v1

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2004, I electronically filed Declaration of Richard E.

Kaplan with the Clerk of Court using the CM/ECF system.

/s/ David C. King

David C. King, Esq.
Rudman & Winchell
Attorneys for Plaintiff
84 Harlow Street – P.O. Box 1401
Bangor, ME 04402-1401
E-Mail: dking@rudman-winchell.com

SC 13D 1 a04-1564_1sc13d.htm SC 13D

# UNITED STATES
# SECURITIES AND EXCHANGE
# COMMISSION
Washington, D.C. 20549
## SCHEDULE 13D

Under the Securities Exchange Act of 1934
(Amendment No.   )*

## First Hartford Corporation

(Name of Issuer)

Common Stock, $1.00 par value

(Title of Class of Securities)

320488109

(CUSIP Number)

Robert Rothberg, Esq.
Choate, Hall & Stewart
Exchange Place
53 State Street
Boston, MA 02109-2891
Telephone: (617) 248-5000

(Name, Address and Telephone Number of Person
Authorized to Receive Notices and Communications)

January 20, 2004

(Date of Event which Requires Filing of this Statement)

If the filing person has previously filed a statement on Schedule 13G to report the acquisition that is the subject of this Schedule 13D, and is filing this schedule because of Rule 13d-1(b)(3) or (4), check the following box. ☐

Note: Schedules filed in paper format shall include a signed original and five copies of the schedule, including all exhibits. See §240.13d-7 for other parties to whom copies are to be sent.

* The remainder of this cover page shall be filled out for a reporting person's initial filing on this form with respect to the subject class of securities, and for any subsequent amendment containing information which would alter disclosures provided in a prior cover page.

The information required on the remainder of this cover page shall not be deemed to be "filed" for the purpose of Section 18 of the Securities Exchange Act of 1934 ("Act") or otherwise subject to the liabilities of that section of the Act but shall be subject to all other provisions of the Act (however, see the Notes).

CUSIP No. 320488109

1. Names of Reporting Persons. I.R.S. Identification Nos. of above persons (entities only)
   Richard E. Kaplan

2. Check the Appropriate Box if a Member of a Group (See Instructions)
   (a) ☐
   (b) ☐

3. SEC Use Only

4. Source of Funds (See Instructions)
   PF

5. Check if Disclosure of Legal Proceedings Is Required Pursuant to Items 2(d) or 2(e) ☐

6. Citizenship or Place of Organization
   US

| | | |
|---|---|---|
| | 7. Sole Voting Power | 145,719 |
| Number of Shares Beneficially Owned by Each Reporting Person With | 8. Shared Voting Power | 445,535 |
| | 9. Sole Dispositive Power | 145,719 |
| | 10. Shared Dispositive Power | 445,535 |

11. Aggregate Amount Beneficially Owned by Each Reporting Person
    591,254

12. Check if the Aggregate Amount in Row (11) Excludes Certain Shares (See Instructions) ☐

13. Percent of Class Represented by Amount in Row (11)
    19.1 %

14. Type of Reporting Person (See Instructions)
    IN

2

1.    Names of Reporting Persons. I.R.S. Identification Nos. of above persons (entities only)
      David E. Kaplan

2.    Check the Appropriate Box if a Member of a Group (See Instructions)

      (a)      ☐

      (b)      ☐

3.    SEC Use Only

4.    Source of Funds (See Instructions)
      PF

5.    Check if Disclosure of Legal Proceedings Is Required Pursuant to Items 2(d) or 2(e)    ☐

6.    Citizenship or Place of Organization
      US

|  |  |  |
|---|---|---|
|  | 7. | Sole Voting Power<br>56,151 |
| Number of Shares Beneficially Owned by Each Reporting Person With | 8. | Shared Voting Power<br>445,535 |
|  | 9. | Sole Dispositive Power<br>56,151 |
|  | 10. | Shared Dispositive Power<br>445,535 |

11.   Aggregate Amount Beneficially Owned by Each Reporting Person
      501,686

12.   Check if the Aggregate Amount in Row (11) Excludes Certain Shares (See Instructions)    ☐

13.   Percent of Class Represented by Amount in Row (11)
      16.2%

OCT. 28. 2004  4:41PM    CHOATE HALL & STEWART  6172484000    NO. 547    P. 6

14.  Type of Reporting Person (See Instructions)
     IN

3

Item 1.   Security and Issuer

This statement relates to the Common Stock, par value $1 per share, of First Hartford Corporation ("FHC"), a Maine corporation, whose principal executive offices are located at 149 Colonial Road, Manchester, CT.

Item 2.   Identity and Background

Richard E. Kaplan's principal occupation is attorney and private trustee. He is self-employed with an office at 2345 Washington Street, Newton, MA  02462. He is a US citizen.

David E. Kaplan's principal occupation is real estate development and management. He is self-employed with an office at 257 East Center Street, Manchester, CT  06040. He is a US citizen.

During the last five years, neither Richard E. Kaplan nor David E. Kaplan (1) has been convicted in a criminal proceeding (excluding traffic violations or similar misdemeanors) or (2) was or is subject to a judgment, decree or final order enjoining future violations of, or prohibiting or mandating activities subject to, federal or state securities laws or finding any violation with respect to such laws.

Item 3.   Source and Amount of Funds or Other Consideration

All of the shares beneficially owned by Richard and David Kaplan were acquired through various gifts, bequests and other transfers without consideration.

No borrowed funds were used to purchase or hold any of the shares owned beneficially by Richard and David Kaplan.

Item 4.   Purpose of Transaction

Richard and David Kaplan have held the shares for many years, except for 111,818 shares that were transferred to Richard Kaplan by his spouse on January 23, 2004. None of the shares owned beneficially by Richard and David Kaplan have been transferred for more than 20 years except among family members and family owned trusts and entities.

Recently Richard and David Kaplan have become concerned about the value of their FHC shares, and the lack of any reasonable market for FHC shares.  They have also become concerned that:

1)   FHC has been managed by its president, Neil Ellis, without any independent or outside oversight.

4

2) Neil Ellis has caused FHC and its subsidiaries to enter into numerous transactions with him, or with entities controlled by him.

3) The last FHC shareholder meeting prior to the meeting called for January 22, 2004 was almost 18 years ago, in February 1986.

4) Shareholders were not given proper or adequate notice of the January 22, 2004 meeting.

5) The 2003 Stock Option Plan proposed to be adopted at the January 22, 2004 could be used by Neil Ellis to obtain majority ownership of FHC, which might render worthless the shares held by others.

Richard and David Kaplan intend to obtain more information concerning FHC, its assets, and how it has been managed, including the terms of transactions between FHC and Neil Ellis over the years. Based on the information obtained, Richard and David Kaplan anticipate that they may present (to management or, more likely, to other shareholders) proposals to improve the value of the FHC shares. Such proposals would likely include:

(a) An extraordinary corporate transaction, such as a merger, reorganization or liquidation, involving the FHC or any of its subsidiaries;

(b) A sale or transfer of a material amount (or all) of assets of FHC or any of its subsidiaries; and/or

(c) Changing (probably completely) the present board of directors and executive officers of FHC.

It is also possible that such proposals could include a material change in the present capitalization of FHC, changing the dividend policy to pay a dividend, and/or the acquisition by another person of additional securities of FHC, or the disposition of securities of FHC, changes in FHC's business or corporate structure, causing the FHC shares to cease to be publicly traded (even to the limited extent they are now traded).

Richard and David Kaplan may also seek to challenge the validity of actions taken by Neil Ellis, including without limitation actions taken at the January 22, 2004 shareholders meeting.

Item 5.   Interest in Securities of the Issuer

Richard E. Kaplan owns beneficially 591,254 shares of Common Stock, representing approximately 19.1% of the outstanding shares. He has the sole power to vote and dispose of 145,719 of such shares. He shares with David E. Kaplan the power to vote and dispose of 445,535 of such shares.

5

David E. Kaplan owns beneficially 501,686 shares of Common Stock, representing approximately 16.2% of the outstanding shares.  He has the sole power to vote and dispose of 56,151 of such shares.  He shares with Richard E. Kaplan the power to vote and dispose of 445,535 of such shares.

The shares as to which Richard E. Kaplan and David E. Kaplan have shared voting and disposition power are owned in various family trusts and family entities, which have the right to receive the dividends, if any, paid on those shares, and if such shares are sold, to receive the proceeds of such sale.

Richard and David Kaplan have not engaged in any transactions in FHC Stock during the past 60 days, except for the transfer to Richard Kaplan by his spouse of 111,818 shares without consideration on January 23, 2004.

Item 6.   Contracts, Arrangements, Understandings or Relationships with Respect to Securities of the Issuer

Richard and David Kaplan are brothers, and co-trustees of various family trusts.  They share the view that changes of some sort will be required if they are to have an opportunity to realize value for their FHC shares at any time in the foreseeable future.  They have decided to work together in this regard.

Item 7.   Material to Be Filed as Exhibits

None

## Signature

After reasonable inquiry and to the best of my knowledge and belief, I certify that the information set forth in this statement is true, complete and correct.

January 26, 2004

/s/ Richard E. Kaplan
Richard E. Kaplan


/s/ David E. Kaplan
David E. Kaplan

6

# OFFICES OF RICHARD E. KAPLAN

2345 WASHINGTON STREET. SUITE 101
NEWTON, MASSACHUSETTS 02462-1488

(617) 965-4570

FAX (617) 965-4577

**VIA CERTIFIED MAIL, RRR**

October 13, 2004

Stuart I. Greenwald, Secretary
First Hartford Corporation
P.O. Box 1270
149 Colonial Road
Manchester, Connecticut 06045-1270

Dear Mr. Greenwald:

I have continuously held as registered owner at least $2,000 in market value of First
Hartford Corporation Common Stock for more than the past 10 years, and intend to
continue to hold those shares through the date of the next annual shareholder meeting,
which I understand has been rescheduled to December 9, 2004 (the "Annual Meeting").

Enclosed pursuant to SEC Rule 14a-8 is a shareholder proposal, including supporting
statement, which I am submitting for inclusion in the Company's proxy statement for the
Annual Meeting.

Very truly yours,

Richard E. Kaplan

REK:ms
Enc.

## PROPOSAL:

Resolved, to amend the By-Laws by adding the following to Article IV:

Section 7. <u>Director Independence</u>. After September 27, 2005 (the date for the 2005 Shareholders Meeting), at least 80% of the Board of Directors must be independent. A director is not considered independent if he (a) has had a substantial financial relationship with the Company, its affiliates, or any entity controlled by any member Company management, within the preceding three years, or (b) has a substantial social relationship with any officer of the Company. For these purposes, a "financial relationship" is any direct or indirect relationship involving payments for services, goods, loans or otherwise, and must considered substantial unless the person demonstrates that all such financial relationships combined (excluding director compensation from the Company) amount to less than one percent of taxable income on his federal tax return. Any independent director who is no longer independent shall automatically cease to be a director. After September 27, 2005, whenever fewer than 80% of the directors are independent, the Board shall immediately correct the deficiency and, except for emergencies, shall take no other actions. This Section shall not be amended by the Board of Directors.

* * * * *

The Company suffers from poor corporate governance. Neil Ellis, President of the Company, has treated the Company as his own private piggybank – lending money back and forth between the Company and Ellis's other entities. There are other transactions between the Company and Ellis's other entities as well. None of our directors is in a position to stand up to Ellis to protect shareholder interests. Ellis sets their salaries – as well as his own.

Have Ellis's self-dealing transactions been fair to the shareholders? There has been no review by independent directors. Nor has Ellis disclosed the terms of these self-dealing transactions so that shareholders can decide for themselves.

The corporate scandals that have come to light in other companies with poor corporate governance should be a wakeup call. Given the number of self-dealing transactions with Neil Ellis, we need a board with a solid majority of independent directors to protect shareholder interests.

Our management directors do not even pretend to represent the interests of the shareholders. For example, while they are supposed to submit to shareholder election annually, they held no elections during the 18 year period leading up to the 2004 election. During that 18 year period, this board met only 5 times – not even once a year.

Under this Board's supervision, for at least the past 7 years the Company has been consistently late in filing its SEC Annual Reports. This year's report was not only late but incomplete. Is it any wonder that there is no real market for the Company's stock?

Almost all of America's leading corporations, companies like GE, General Motors and 3M, all have solid majorities of outside directors. Adoption of this proposal will simply move the Company into the corporate mainstream.

Please vote FOR the proposal.

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

RICHARD E. KAPLAN,                    ]
    Applicant/Plaintiff          ]
                                 ]
                                 ]   Case No.
v.                                    ]
                                 ]
FIRST HARTFORD CORPORATION,           ]
    Defendant                    ]

## DECLARATION OF ROBERT ROTHBERG

Pursuant to 28 U.S.C. § 1746, I, Robert Rothberg, on oath depose and declare as follows:

1.    I am an attorney licensed to practice in the Commonwealth of Massachusetts. I represent Richard E. Kaplan, the plaintiff in this case.

2.    By letter dated January 29, 2004, I made a written demand pursuant to Sections 1602 and 1603 of the Maine Business Corporation Act, on the President of the defendant First Hartford Corporation ("FHC") to inspect and copy on February 10, 2004, various documents, including "[a] list of shareholders showing for each shareholder: name, address and number of shares owned." As I stated in the demand letter, the purpose of the demand was to enable Richard E. Kaplan "to evaluate (a) [his] investments in First Hartford, (b) the extent of the self-dealing in which First Hartford management has engaged between the last two shareholder meetings and the effects on First Hartford of such self-dealing, and (c) if [he] determine[s] it is appropriate to do so, to communicate with other shareholders concerning First Hartford." See **Exhibit A** attached hereto.

3.    By letter dated February 3, 2004, Mr. Neil H. Ellis, President of FHC, replied to the written demand stating that he would make certain of the documents, including the shareholder list, available for inspection and copying at the Connecticut offices of FHC. Mr. Ellis suggested that I bring a photocopying machine with me as FHC did not have "surplus photocopying equipment available" for my use, although if that were not possible FHC would "attempt to have photocopied ... those items that you request." See **Exhibit B** attached hereto.

4.    On February 5, 2004, I spoke with Martin L. Budd, Esq., counsel for FHC. I asked Mr. Budd if, rather than requiring me to travel to Connecticut with a copy machine, FHC would send me a copy of the documents Mr. Ellis had said I could inspect. Mr. Budd said that he would see what could be done.

5.    On February 6, 2004, Mr. Budd told me that copies of the documents would be sent to me early the next week.

6.    On February 10, 2004, I received from Mr. Budd copies of the documents I had been promised, except for the list of shareholders. When I called Mr. Budd on that day to inquire

about the list of shareholders, Mr. Budd told me that I would not get the list of shareholders without a court order. I asked Mr. Budd to reconsider his position with respect to the shareholder list. Mr. Budd said that he would get back to me.

7. By letter dated February 13, 2004, not having heard from Mr. Budd since February 10, I again asked Mr. Budd to reconsider FHC's position with respect to the list of shareholders. See **Exhibit C** attached hereto.

8. By letter dated February 13, 2004, John B. Nolan, Esq., counsel for FHC, responded to my letter of the same date to Mr. Budd. FHC rejected the demand to inspect and copy the list of shareholders. See **Exhibit D** attached hereto.

9. Since February 13, 2004, despite other requests (both oral and in writing) that I and others at my firm have made to FHC asking for the list of shareholders, FHC has continued to refuse to allow inspection and copying of the list. Most recently, at a meeting I and a partner of my firm had with Mr. Nolan and one of his partners on October 13, 2004, I renewed my demand for the list of shareholders so that Richard Kaplan might communicate with other FHC shareholders regarding his shareholder proposal for an amendment to the FHC bylaws to provide for an independent Board of Directors. At that time, Mr. Nolan said that he would take the issue up with FHC's management and get back to me.

10. On October 19, 2004, Mr. Nolan told me that FHC would not allow the inspection and copying of the list of shareholders.

11. Neither FHC's articles of incorporation nor its bylaws (which FHC has provided in response to my request) contain any restrictions regarding the disclosure of its list of shareholders.

I declare under penalty of perjury that the foregoing is true and correct.

Date: _October 27_, 2004.

_Robert H. Rothberg_
Robert Rothberg

GW47139.Trans.

2

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2004, I electronically filed Declaration of Robert

Rothberg with the Clerk of Court using the CM/ECF system.

/s/ David C. King

David C. King, Esq.
Rudman & Winchell
Attorneys for Plaintiff
84 Harlow Street – P.O. Box 1401
Bangor, ME 04402-1401
E-Mail: dking@rudman-winchell.com

3

# CHOATE, HALL & STEWART

### A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

## EXCHANGE PLACE

### 53 STATE STREET

### BOSTON, MASSACHUSETTS 02109-2804

TELEPHONE (617) 248-5000 · FAX (617) 248-4000

WWW.CHOATE.COM

ROBERT ROTHBERG
DIRECT DIAL: (617) 248-4021
EMAIL: RROTHBERG@CHOATE.COM



January 29, 2004

Mr. Neil H. Ellis, President
Mr. Stuart I. Greenwald, Treasurer and Secretary
First Hartford Corporation
149 Colonial Road
Manchester, CT  06045

Gentlemen:

We are attorneys for Richard E. Kaplan and David E. Kaplan, shareholders of First Hartford Corporation ("First Hartford").  Pursuant to Sections 1602 and 1603 of the Maine Business Corporation Act, we hereby demand to inspect and to copy on February 10, 2004, the following records of First Hartford:

1)  Its articles or restated articles of incorporation, and all amendments to them currently in effect;

2)  Its bylaws or restated bylaws, and all amendments to them currently in effect;

3)  A list of shareholders showing for each shareholder: name, address and number of shares owned.

4)  All proxies received by the First Hartford management with respect to the January 22, 2004 Shareholders Meeting, and all records of that meeting.

5) Minutes of all meetings of, and records of all actions taken without meetings by, the Board of Directors and all committees thereof since the 1986 Shareholders Meeting.

First Hartford Corporation
January 29, 2004
Page 2

6)  All written communications with shareholders since the 1986 Shareholders Meeting.

7)  All documentation of transactions entered into since the 1986 Shareholders Meeting between First Hartford or a First Hartford subsidiary (whether wholly or partially owned) on the one hand, and Neil Ellis or any entity controlled by him on the other hand.

8)  All appraisals of properties currently owned by First Hartford or its subsidiaries.

The purpose of this demand is to enable the Kaplans to evaluate (a) their investments in First Hartford, (b) the extent of the self-dealing in which First Hartford management has engaged between the last two shareholder meetings and the effects on First Hartford of such self-dealing, and (c) if they determine it is appropriate to do so, to communicate with other shareholders concerning First Hartford.

On behalf of David Kaplan, we acknowledge receipt of the offer from Timothy R. O'Donnell, Clerk of First Hartford, received by Mr. Kaplan on January 26, to permit him this week to inspect at your offices the shareholder list for the January 22 shareholder meeting. That offer is apparently your follow up to your refusal of Mr. Kaplan's demand, made at your office on January 21, to inspect the list at that time. Given that the meeting date has now passed, and the fact that the shareholder list is included within the scope of this demand, we see no purpose to be served by Mr. Kaplan making a separate trip to inspect the list this week.

Please advise us by telephone or fax, within 5 business days after your receipt of this letter, of the place (whether at your office or another location in the Hartford area) where we may conduct such inspection and copying. We assume that you will designate a location with appropriate photocopying equipment available to us. If this is not the case, please advise us of the arrangements you propose for us to obtain the requested copies. Of course, we agree to pay the reasonable charges for such copying.

Thank you in advance for your cooperation in this matter.

Very truly yours,

Robert Rothberg

Robert Rothberg

cc: Timothy R. O'Donnell



**FIRST HARTFORD CORPORATION**
149 COLONIAL ROAD • P.O. BOX 1270
MANCHESTER • CONNECTICUT 06045-1270
(860) 646-6555 • FAX (860) 646-3573

> **EXHIBIT**
> **B**

February 3, 2004

Mr. Robert Rothberg
Choate, Hall & Stewart
Exchange Place
53 State Street
Boston, MA 02109-2804

Dear Mr. Rothberg:

This letter will act as a reply to yours of January 29, 2004. To review your requests:

Your #1: Articles or restated articles of incorporation, and all amendments to them currently in effect will be made available to you.

Your #2: Bylaws or restated bylaws, and all amendments to them currently in effect will be made available to you.

Your #3: A list of shareholders showing for each shareholder: name, address and number of shares owned will be made available to you.

Your #4: The proxies will not be made available to you.

Your #5: We will make available to you minutes of the January 22, 2004 Shareholders meeting.

Your #6: All written communications with shareholders since the 1986 Shareholders Meeting will be made available to you only upon your showing a manifestation of good faith and proper purpose under Maine law.

Mr. Robert Rothberg                    -2-                    February 3, 2004

Your #7:    All documentation of transactions entered into since the 1986 Shareholders
            Meeting between First Hartford or a First Hartford subsidiary (whether wholly or
            partially owned) on the one hand, and Neil Ellis or any entity controlled by him on
            the other hand, will not be made available to you.

Your #8:    All appraisals of properties currently owned by First Hartford or its subsidiaries
            will not be made available to you.

Please be advised that those documents that will not be made available to you are documents that
Maine counsel advises us need not be made available under Maine law.

The documents that will be made available will be made available to you at our office in
Manchester, Connecticut. Unfortunately we do not have surplus photocopying equipment
available. However, I am confident you will be able to rent same and bring it with you.

If you are unable to rent a photocopying machine, please be advised that we will attempt to have
photocopied for you those items that you request. The cost of this will be 25¢ per page. The cost
will include personnel available to do the actual photocopying.

Very truly yours,

Neil H. Ellis
President

NHE/gp

# CHOATE, HALL & STEWART

A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

EXCHANGE PLACE

53 STATE STREET

BOSTON, MASSACHUSETTS 02109-2804

TELEPHONE (617) 248-5000 · FAX (617) 248-4000

WWW.CHOATE.COM

ROBERT ROTHBERG
DIRECT DIAL: (617) 248-4021
E-MAIL: RROTHBERG@CHOATE.COM



EXHIBIT

C

February 13, 2004

By Fax to 203-862-7801

Martin L. Budd, Esq.
Day, Berry & Howard
One East Putnam Avenue
Greenwich, CT 06830

Dear Marty:

As you know, we represent David and Richard Kaplan, who are longtime shareholders of First Hartford Corporation ("FHC"). On January 21, 2004, the day before the first FHC "annual meeting" in many years, David Kaplan went to the FHC headquarters in Manchester, CT to inspect and copy the Shareholder List as was his right under Section 721 of the Maine Business Corporation Act.

Although the list was in the office, Mr. Ellis denied Mr. Kaplan the opportunity to inspect it. Instead, Mr. Ellis referred Mr. Kaplan's demand to his Maine counsel, Mr. O'Donnell. Mr. O'Donnell did not respond to Mr. Kaplan's demand until after the shareholder meeting for which Mr. Kaplan had demanded the inspection. Nevertheless, Mr. O'Donnell did acknowledge Mr. Kaplan's right to inspect and copy the Shareholder List, and offered to permit him to do so. Obviously, access to the list after the meeting is no substitute for access prior to the meeting.

Mr. Ellis's behavior has raised questions concerning FHC and the value of the Kaplans' holdings in FHC. Accordingly, by letter dated January 29, 2004, as attorney for the Kaplans, I sent to FHC a demand to inspect and copy various documents, including the Shareholder List. I copied Mr. O'Donnell on the letter as he was, apparently, representing FHC in this matter.

By letter dated February 3, 2004, Mr. Ellis responded to my January 29, 2004 demand, stating, in essence, that FHC would make available to us its Articles of Organization, By-Laws, Shareholder List, and minutes of the January 22, 2004 shareholder meeting, but none of the other

Martin L. Budd, Esq.
February 13, 2004
Page 2

documents covered by our demand.  His letter clearly indicates that it had been prepared with the advice of Maine counsel.

On February 5, 2004, the day Mr. Ellis's letter arrived at my office, you called me to introduce yourself and to advise me that you were representing FHC.  When we spoke, I pointed out that it would not improve the relations between the parties to require Mr. Kaplan and me to bring a copy machine to the FHC office in order to obtain copies of the few documents that Mr. Ellis proposed to provide us.  I asked whether it might be possible for FHC to provide us copies. You agreed that this was reasonable, and that you would see what could be done.

The next day, Friday, February 6, 2004, you told me that copies of the documents would be sent along to us early the next week.

On Monday, February 9, you sent me by overnight delivery copies of the Articles of Organization, By-Laws, and January 22, 2004 minutes, but not the Shareholder List.

When I received the package on February 10, I called you to ask about the Shareholder List.  You expressed surprise that I had thought you had agreed to furnish that list, and told me that we would not get the list without a court order.  You purported to be unaware of the fact that the Shareholder List was one of the documents that Mr. Ellis had said we could inspect and copy. You explained to me that we did not have a right under Maine law to inspect the list, apparently unaware that FHC's Maine counsel had already advised otherwise.

In any event, it is quite clear that the Kaplans do have a right to the Shareholder List, and your client has acknowledged as much.  Accordingly, I asked you to reconsider your position, which you said you would do.  I had hoped to hear back from you by now with a favorable response.

FHC has the Shareholder List.  Copies can be made at a local copy shop with minimal effort and at little cost, which we will be pleased to reimburse.  Unless we have received a copy of the Shareholder List by the end of next week, we will have no choice but to conclude that FHC intends to adhere to the position you stated, that FHC will not provide the Shareholder List except if ordered to do so by a court.

I would also ask that you review again my January 29, 2004 letter, and consider whether it might be in the interests of FHC to provide the documents requested without requiring resort to legal proceedings.

Sincerely yours,

Robert Rothberg

Martin L. Budd, Esq.
February 13, 2004
Page 3


cc: Richard B. Kaplan, Esq.
    David B. Kaplan

# Day, Berry & Howard LLP

COUNSELLORS AT LAW

John B. Nolan
Direct Dial: (860) 275-0289
E-mail: jbnolan@dbh.com



February 13, 2004

Robert Rothberg, Esq.
Choate, Hall & Stewart
Exchange Place, 53 State Street
Boston, MA 02109-2804

Re:   *First Hartford Corporation*

Dear Mr. Rothberg:

We have your letter dated February 13, 2004 directed to Martin Budd.

First Hartford Corporation respectfully rejects the demands made by the Kaplan brothers to inspect and copy a list of the shareholders of First Hartford Corporation. Your letter dated January 29, 2004 fails to articulate any proper purpose for such inspection under Maine law. Your second letter does not address the subject.

We note that the Kaplan brothers purport to be evaluating their investments in First Hartford Corporation. As Martin Budd informed you, First Hartford Corporation has recently received unsolicited contacts from individuals who represented that they were interested in purchasing shares. If the identities of these individuals is of interest to either or both of your clients, please advise.

Very truly yours,

John B. Nolan

bbl
cc:   Mr. Neil H. Ellis
      Timothy R. O'Donnell, Esq.
      Martin L. Budd, Esq.

4147XJM_L.DOC 089984-00131
February 13, 2004 3:19 PM

CityPlace I | Hartford, CT 06103 | t 860 275 0100 f 860 275 0343

Boston  Greenwich  Hartford  New York  Stamford   www.dbh.com