Exhibit 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                              )
RICHARD E. KAPLAN,            )
                              )
            Plaintiff,        )
                              )    Civil Action No. _____
       v.                     )
                              )
FIRST HARTFORD CORPORATION,   )
                              )
            Defendant.        )
_____)
```

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**Nature of the Action**

This is a shareholder action brought against defendant First Hartford Corporation ("First Hartford" or the "Company"). This action arises out of the Company's proxy solicitation in connection with its "Annual Meeting of Shareholders" held on January 22, 2004.

The proxy solicitation materials disseminated by the Company contained false or misleading statements of material fact and omitted to state other material facts necessary to make the materials not false or misleading. In disseminating the false or misleading proxy solicitation materials, the Company engaged in fraudulent, deceptive and/or manipulative acts or practices in violation of the federal securities laws.

**Parties**

1.  The Plaintiff, Richard E. Kaplan, is an individual residing in the Commonwealth of Massachusetts. He is and was at all relevant times a shareholder of First Hartford, owning beneficially more than 19% of the outstanding shares of the Company's common stock. As a

shareholder, Mr. Kaplan had the right to vote his shares at the Company's meetings based on complete, accurate, and truthful information.

2. Defendant First Hartford is a Maine corporation with a principal place of business in Manchester, Connecticut. First Hartford is in the business of purchasing, developing, owning, managing, and selling real estate. First Hartford has more than 3,000,000 shares of common stock issued and outstanding.

### Jurisdiction and Venue

3. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331(a) and 15 U.S.C. § 78aa.

4. Venue is proper in this Court pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b)(2) because the acts or transactions constituting the violations of law giving rise to these claims occurred in this District.

### Facts

5. First Hartford's common stock is registered pursuant to Section 12(g) of the Securities Exchange Act of 1934. The shares of First Hartford trade over the "pink sheets," but are very thinly traded. There is no analyst coverage of the Company.

6. First Hartford is controlled by Neil H. Ellis ("Ellis"), who owns beneficially 42.9% of its outstanding shares, and serves as President and a director.

7. On or about December 29, 2003, First Hartford sent to certain First Hartford shareholders written notice (the "Notice") of a so-called "Annual Meeting of Shareholders" to be held on January 22, 2004 (the "January 2004 Meeting"). Accompanying the Notice were certain proxy solicitation materials (the "Proxy Materials"). The January 2004 Meeting, and the Proxy Materials are the subject of this Complaint.

8. The Proxy Materials that First Hartford sent to shareholders along with the Notice of the January 2004 Meeting set forth two purposes for the meeting:

(a) to elect directors; and

(b) to approve a "2003 Stock Option Plan."

A true, complete, and accurate copy of the Proxy Materials as received by Plaintiff are attached hereto as *Exhibit A*.

9. On information and belief, notwithstanding the fact that the January 2004 Meeting was to be the first shareholder meeting in almost 18 years, Ellis caused the January 2004 Meeting to be called on short notice, and sent notices to many shareholders to out of date addresses, in order to discourage any meaningful shareholder participation. On information and belief, Ellis did so because in the absence of substantial opposing votes from other shareholders, Ellis's 42.9% vote would be sufficient to achieve his purpose, which was to obtain a shareholder vote in favor of the 2003 Stock Option Plan. With the 2003 Stock Option Plan, the Board of Directors controlled by Ellis would be able to issue shares to themselves and dilute substantially the interests of the other stockholders. In furtherance of this scheme, Ellis endeavored to give the Proxy Materials a false aura of regularity so as not to arouse the suspicions or opposition of the Company's stockholders.

10. The Proxy Materials provided to shareholders were materially false and misleading in several respects, as detailed below.

11. The Notice and Proxy Materials misleadingly refer to the January 2004 Meeting as an "annual meeting." However, the January 2004 Meeting was in fact a "special meeting" -- not an "annual meeting" -- for at least 3 reasons: *First*, under the bylaws of the Company, the annual meeting is to be held not in January but on the last Tuesday of September. *Second*, the

January 2004 Meeting was a "special meeting" since <u>it was the first meeting of stockholders since February, 1986</u>. *Third*, the January 2004 Meeting was a special meeting because the true purpose was not to hold an annual election of directors but to approve an extraordinary stock option plan which would give Ellis the ability to dilute substantially the other First Hartford shareholders.

12.   The Proxy Materials do not disclose that First Hartford had, in violation of its bylaws, failed to hold a stockholder meeting for almost 18 years, a fact which a reasonable stockholder would consider material in determining whether (a) to re-elect the directors who had dispensed with stockholder meetings for so long; and (b) to give those very directors authority to grant themselves options for large numbers of shares.

13.   The Proxy Materials fail to disclose the names of shareholders known by the Company to own more than 5% of the common stock. This information is required by the regulations governing the solicitation of proxies, Schedule 14A, Item 6(d), 17 C.F.R. §240.14a-101, and would have been material to a stockholder considering whether a vote against Ellis and the 2003 Stock Option Plan was simply a futile gesture.

14.   The Proxy Materials state: "All of our directors serve for a term of one year or until their successors are elected and qualified." While this may be literally true, it is materially misleading because it omits to state that First Hartford does not hold elections every year, and that the last time the shareholders elected directors those directors continued in office for almost 18 years without new elections. A reasonable investor would find such information material in deciding whether to re-elect to new terms the directors who had disenfranchised the shareholders for so long.

15. The Proxy Materials, under the heading "Audit Committee Report," state: "First Hartford does not have an audit committee and accordingly its entire Board of Directors fulfills the functions of an audit committee." This is false and misleading. The First Hartford Board of Directors does not fulfill the functions of an audit committee. The primary function of an audit committee is to assure that the independent auditors are properly auditing the financial records prepared by management. In the case of First Hartford, the Board is made up entirely of the management (CEO, treasurer and vice president) who are responsible for the financial statements that the auditors are supposed to be auditing. As such, they are in no position to oversee the auditors. In fact, in the case of First Hartford, the functions of an audit committee are not fulfilled at all. A reasonable stockholder would find such information material in considering whether to elect a board with no outside directors.

16. The Proxy Materials, under the heading "Compensation Committee Report," state: "First Hartford does not have a compensation committee and accordingly its entire Board of Directors fulfills the role of compensation committee." This is false and misleading. The First Hartford Board of Directors does not even pretend to fulfill the role of a compensation committee. Instead, Ellis sets his own compensation and that of the other executive officers.

17. The "Five-Year Performance Graph: 1998-2003," included in the Proxy Materials, purports to show that over the past five years First Hartford has been a good investment for stockholders and misleadingly suggests the prices at which a shareholder could have sold his or her First Hartford shares at various times during the period. This graph is false and misleading, and a reasonable investor would find this information material in deciding whether to elect the directors and to approve the 2003 Stock Option Plan. In fact, there is almost

no market for First Hartford stock, and it is very unlikely that a shareholder desiring to sell more than a token number of shares would be able to do so at the prices on the graph.

18.     The Proxy Materials are incomplete and misleading because they fail to disclose sufficient information about self-dealing transactions between Ellis and First Hartford. Although the Proxy Materials do mention that such transactions occurred, the information in the Proxy Materials is limited to the past three years. Under normal circumstances -- *i.e.*, when directors are elected annually and a proxy statement is furnished to shareholders annually -- information for the preceding three years might be adequate. However, under these circumstances -- where there have been no elections in almost 18 years -- it is misleading to provide information on self-dealing transactions during the preceding 3 years but to omit information on other self-dealing transactions that have occurred since the last proxy statement was furnished to stockholders. Moreover, the Proxy Materials do not include sufficient information for a shareholder to judge whether the terms of the transactions were entirely fair to First Hartford and its shareholders. Such information would be considered material by a reasonable stockholder in determining whether to re-elect Ellis (and directors dominated by Ellis) and to approve a stock option plan which would enable Ellis to issue more shares to himself and his management.

19.     The Proxy Materials, under the heading "Proposal to Adopt the 2003 Stock Option Plan, Eligibility," state: "The benefits to any individual are not determinable." This is false and misleading. Less than three weeks after the January 2004 Meeting, Ellis and his two other officer/directors, Stuart I. Greenwald and David B. Harding, voted to issue 100,000 options -- covering 3% of the Common Stock -- to Greenwald and Harding. The timing and recipients of these grants indicate that they were planned at the time the Proxy Materials were prepared. A reasonable stockholder would consider that information material in deciding whether to approve

the 2003 Stock Option Plan. The omission of that material information from the Proxy Materials renders them misleading.

20. The Proxy Materials, under the heading "Section 16 Beneficial Ownership Reporting Compliance," state: "[A]ll required reports [on Forms 3, 4 and 5] have been filed on a timely basis on behalf of all persons subject to these requirements." This is false, in that neither Greenwald nor Harding had ever filed his Form 3. Accordingly, both of them were more than 5 years delinquent. In determining whether to vote for Greenwald and Harding, or for a stock option plan intended to be used to enrich them, a reasonable shareholder would have considered relevant both the fact that Greenwald and Harding were delinquent in their SEC filings, and their misrepresentation of that fact.

21. The deceptive and misleading Proxy Materials were mailed to and received by the Plaintiff in the Commonwealth of Massachusetts.

## COUNT I

(Violation of Section 14(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(e) --
Deceptive And Inadequate Disclosure In Proxy Solicitation)

22. The Plaintiff realleges and incorporates by reference each and every allegation contained above, as though fully set forth herein.

23. The Defendant First Hartford solicited proxies through materials containing false or misleading statements or omissions that a reasonable stockholder would consider material in deciding how to vote.

24. First Hartford's false, misleading, and deceptive Proxy Materials caused injury to the Plaintiff and wrongfully interfered with his rights as a shareholder to receive complete, truthful, and accurate information in connection with his vote and with his rights as a shareholder

to have other shareholders provided with complete, truthful and accurate information in connection with their votes.

25. As a result of First Hartford's wrongful conduct, Plaintiff has been irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff demands judgment as follows:

(a) Voiding the shareholder votes taken at the January 2004 Meeting and any actions taken pursuant thereto;

(b) Ordering that a new shareholder meeting be called, with appropriate notice and pursuant to proxy materials which remedy the defects identified herein and which are complete, accurate, truthful and not misleading;

(c) Awarding to the Plaintiff the costs and expenses of this action, including attorneys' fees; and

(d) All such other and further relief as the Court deems just and proper.

## JURY DEMAND

The Plaintiff demands a trial by jury.

RICHARD E. KAPLAN,
Plaintiff,

By his attorneys,

*/s/ Larry Kenna*
*/s/ Robert Rothberg*
*/s/ John R. Baraniak*

Larry C. Kenna (BBO No. 267760)
Robert Rothberg (BBO No. 430980)
John R. Baraniak, Jr. (BBO No. 552259)
CHOATE, HALL & STEWART
Exchange Place
53 State Street
Boston, Massachusetts 02109
(617) 248-5000

Dated: February 27, 2004