UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD E. KAPLAN, Plaintiff, v. FIRST HARTFORD CORPORATION, Defendant. | Civil Action No. 04-10402-NMG |

**PLAINTIFF RICHARD E. KAPLAN'S POSITION REGARDING DEFENDANT FIRST HARTFORD CORPORATION'S MOTION TO CONSOLIDATE**

The defendant First Hartford Corporation ("FHC") has moved the Court to consolidate this case (hereinafter "Kaplan I") with *Richard E. Kaplan* v. *First Hartford Corporation*, Civil Action No. 05-10320-NMG (hereinafter "Kaplan II"), for all purposes, pursuant to Fed. R. Civ. P. Rule 42(a). Although FHC's motion to consolidate was filed nearly 4 months after the filing of Kaplan II, and just two 2 weeks before the scheduled final pre-trial conference in Kaplan I,[1] and if granted will delay a resolution of Kaplan I to the prejudice of the plaintiff,[2] Mr. Kaplan does not oppose the motion for consolidation. As a condition of any consolidation, however, in light of FHC's flagrant violation of the representations made to shareholders concerning a stock option plan put to a shareholder vote by FHC in January, 2004, the plaintiff Mr. Kaplan asks the Court

[1] FHC simultaneously filed a motion to postpone the final pretrial conference in Kaplan I, which, based on FHC's counsel's stated reason for needing a postponement, the plaintiff has not opposed.

[2] In arguing that consolidation would promote the economy of resources, in footnote 4 at page 4 of FHC's Memorandum in Support of its Motion to Consolidate, FHC erroneously states that Mr. Kaplan "has only subpoenaed a Rule 30(b)(6) witness ... ." Of course, a Rule 30(b)(6) witness need not be subpoenaed, but in fact Mr. Kaplan in Kaplan I has taken a full deposition day of FHC's 30(b)(6) witness, has completed the depositions of FHC's President (Neil Ellis) and its Treasurer (Stuart Greenwald), and has for months been attempting to schedule the deposition of FHC's Vice President (David Harding). Mr. Harding's deposition (and the completion of the 30(b)(6) deposition) were recently scheduled for June 15, 2005.

to order FHC to refrain from granting any more so-called "Put Options" to officers, directors or employees of FHC pending a resolution of the consolidated cases.

*Background*. FHC is a publicly held corporation with over 900 shareholders. It did not hold any shareholder meetings between February, 1986 and January, 2004. The corporation has no records of any directors' meetings being held between 1986 and 1996. It has records of only 3 directors' meetings in 1997, none in the period 1998-2001, one in 2002, and 2 in 2003.[3]

In FHC's proxy statement for its year 2003 Annual Meeting of Shareholders (held on January 22, 2004), FHC management asked the shareholders to elect 3 directors,[4] and to approve the "2003 Stock Option Plan." *See* the Exhibit attached hereto marked "A."

In its proxy statement, management told shareholders:

> The Plan does not permit the repricing of options or the grant of discounted options. Provisions have been included to meet the requirements for deductibility of executive compensation for the purposes of Section 162(m) of the Internal Revenue Code with respect to options and other awards by qualifying grants and payments under the 2003 Plan as performance-based compensation.
>
> ...
>
> Stock options granted under the Plan may be of two types: (i) incentive stock options and (ii) nonqualified stock options.

*See* Exhibit "A" at page 10.

---

3 In April, 2004, the plaintiff requested FHC to produce all minutes of meetings of the FHC Board of Directors since 1986. On July 13, 2004, FHC produced the minutes for 6 meetings of the Board held during the 18 year period. None of those 6 meetings evidenced any consideration of or approval of the 2003 Stock Option Plan. At the 30(b)(6) deposition of the corporation, on March 21, 2005, counsel for Mr. Kaplan asked the deponent if FHC had written minutes of a Board meeting at which the Directors approved the 2003 Stock Option Plan. After checking with FHC's in-house counsel on the day of the deposition, the deponent said that FHC had found written minutes for a December 19, 2003 Board meeting. The minutes of that meeting were produced to the plaintiff on or about April 4, 2005.

4 Two of the directors, Neil Ellis and Stuart Greenwald, claim to have been elected at the shareholders meeting that took place in February, 1986. FHC has not produced any minutes of that meeting to support that claim. In all events, both served as officers of the corporation and as directors during the 18 year period the corporation did not hold any shareholder meetings. At the January, 2004 shareholders meeting, management sought to elect as a third director Mr. David B. Harding. Management falsely represented to the shareholders that Mr. Harding had been a director of the corporation since 1992. In fact, Mr. Harding began serving in that capacity some time after August, 1997, apparently at the invitation of Messrs. Ellis and Greenwald, and the January 2004 meeting was the first time his name had been placed in nomination and was voted upon by the shareholders.

Despite these representations to shareholders, made to induce them to vote for management's proposal to adopt the 2003 Stock Option Plan, about 2 weeks after the January 2004 shareholders meeting, the FHC Board granted to 5 employees (including two of its own members)--purportedly pursuant to the 2003 Stock Option Plan-- stock options to purchase FHC stock at $1.10 per share (which was then considered the fair market value), each accompanied by a "Put Option" to permit the option holder to sell his option shares to FHC for $2.40 per share, guaranteeing a profit of $1.30 per share regardless of the value of the stock. *See* the Exhibit attached hereto marked "B." [5]

This action by FHC's management - - not disclosed to the other shareholders and not voted upon by the other shareholders - - violates both the letter and the spirit of the Stock Option Plan as approved by the other shareholders in January 2004. First, this type of award is not one of the two types authorized by the Stock Option Plan. Second, since there is a guaranteed profit, they do not meet the requirements of IRC Section 162(m). Third, the guaranteed profit is the precise thing that shareholders were assured would not be achieved through discounted or repriced options. Management's action is a clear abuse of the rights of the other shareholders and will significantly diminish their interests in the corporation if allowed to stand - - or worse yet, repeated.

Accordingly, in the Court's discretion and as a condition to any order consolidating the two Kaplan cases against FHC, the plaintiff Mr. Kaplan respectfully suggests that the Court order FHC to refrain from issuing any further "Put Options" to officers, directors or employees

---

[5] Exhibit B hereto consists of (i) the Minutes of a Special Meeting of the Directors of FHC held on February 11, 2004; (ii) "Exhibit A" attached thereto, the "Proposal to Adopt the 2003 Stock Option Plan," which was part of the Proxy Statement for the 2003 shareholders meeting; (iii) "Exhibit B" attached thereto, the "First Hartford Corporation 2003 Stock Option Plan," which was part of the Proxy Statement for the 2003 shareholders meeting; and (iv) "Exhibit C" attached thereto, the only document that references and describes the so-called "Put Option[s]" granted to the 2 directors and 3 employees. "Exhibit C" was not part of the Proxy Statement that was mailed to shareholders for the 2003 shareholders meeting.

of FHC pending a resolution of the consolidated cases.

RICHARD E. KAPLAN,
Plaintiff,

By his attorneys,

/s/Larry C. Kenna

Larry C. Kenna (BBO# 267760)
CHOATE, HALL & STEWART LLP
53 State Street
Exchange Place
Boston, MA 02109
(617)248-5000

Dated: June 8, 2005