# EXHIBIT "A"

**First Hartford Corporation**
P.O. Box 1270
149 Colonial Road
Manchester, Connecticut 06045-1270

NOTICE OF ANNUAL MEETING OF SHAREHOLDERS
TO BE HELD ON JANUARY 22, 2004

We will hold the annual meeting of shareholders of First Hartford Corporation, a Maine corporation, at the Sheraton South Portland Hotel, located at 363 Maine Mall Road, South Portland, Maine 04106, on January 22, 2004 at 9:00 a.m., local time, for the following purposes:

1. To elect directors of the corporation to serve until the next annual meeting of shareholders.

2. To act on the proposal to adopt the 2003 Stock Option Plan.

3. To act on such other matters as may be properly brought before the meeting or any adjournments, postponements or continuations of the meeting.

The Board of Directors recommends that you vote FOR the election of all of the nominees for director, and FOR the Proposal to Adopt the 2003 Stock Option Plan.

The Board of Directors has fixed the close of business on December 22, 2003, as the record date for the meeting. Only shareholders of record at the close of business at this time are entitled to notice of, and to vote at, the meeting or any adjournments, postponements or continuations of the meeting.

All shareholders are invited to attend the meeting. To ensure your representation at the meeting, however, you are urged to mark, sign and return the enclosed proxy in the accompanying envelope, whether or not you expect to attend the meeting. In the event that you attend the meeting, you may vote in person even if you have returned a proxy.

Your vote is important.

To vote your shares, please sign, date and complete the enclosed proxy and mail it promptly in the enclosed return envelope.

December 29, 2003

                                                                   By Order of the Board of Directors

                                                                   Stuart I. Greenwald
                                                                   Secretary to the Board of Directors

First Hartford Corporation
P.O. Box 1270
149 Colonial Road
Manchester, Connecticut 06045-1270

## PROXY STATEMENT

This proxy statement is furnished to you in connection with the solicitation of proxies by the Board of Directors to be used at the 2003 annual meeting of shareholders of First Hartford Corporation ("First Hartford"). Copies of this proxy statement are being mailed to shareholders of record on or about December 29, 2003.

First Hartford is a Maine corporation founded in 1909. First Hartford engages in the purchase, development, ownership, management and sale of real estate.

### Date, Time and Place of Meeting

We will hold the 2003 annual meeting of shareholders on January 22, 2004, at 9:00 a.m., local time, at Sheraton South Portland Hotel, located at 363 Maine Mall Road, South Portland, Maine 04106, for the purposes set forth in the accompanying Notice of Annual Meeting of Shareholders.

### Matters to be Considered at the Meeting

At the meeting, we will ask our shareholders to consider and vote upon the election of directors to serve until our next annual meeting and to consider and vote upon the proposal to adopt the 2003 Stock Option Plan.

The shareholders will also consider and vote upon such other matters as may properly be brought before the meeting or any adjournment, postponement or continuation thereof.

### Vote Required

A plurality of the votes cast by the shareholders present in person or by proxy and entitled to vote is required to elect directors. With regard to the election of directors, you may vote in favor of, or withhold your vote from, each nominee. Votes that are withheld will be excluded entirely from the vote and will have no effect. There is no cumulative voting with respect to the election of directors.

The affirmative vote of the holders of a majority of the shares of common stock present in person or by proxy and entitled to vote at the annual meeting is required to approve the 2003 Stock Option Plan and to ratify the election and taking of all prior actions by the corporation's directors.

Pursuant to applicable law, broker non-votes and abstentions will not be counted in favor of any proposal presented at the meeting or the election of any nominee for director. Abstentions and broker non-votes will also not count against the proposal to elect directors, but will have the effect of a vote against the 2003 Stock Option Plan.

### Voting of Proxies

Shares of our common stock represented by properly executed proxies received in time for the meeting, unless previously revoked, will be voted at the meeting as specified by the shareholders on the proxies. If a proxy is returned without any voting instructions, the shares represented thereby will be voted in favor of the election of directors and in favor of the 2003 Stock Option Plan, as recommended by the Board of Directors.

1

Revocability of Proxies

If you give a proxy, you have the power to revoke it at any time before it is voted. You can do so in one of three ways. First, you can send a written notice to our Secretary at the address given below stating that you would like to revoke your proxy. Second, you can complete a new proxy card and send it to our Secretary at the address given below. Third, you can attend the meeting and vote in person. You should send any written notice or new proxy card to:

> Stuart I. Greenwald
> Secretary
> First Hartford Corporation
> P.O. Box 1270
> 149 Colonial Road
> Manchester, Connecticut 06045-1270

You may request a new proxy card by calling Gini Pitruzzello at (860) 646-6555.

Record Date; Shareholders Entitled to Vote; Quorum

Only shareholders of record at the close of business on December 22, 2003 will be entitled to receive notice of and vote at the meeting. As of the record date, 3,089,985 shares of common stock were issued and outstanding. Each share of common stock is entitled to one vote on each matter which holders of common stock are entitled to vote. A majority of the outstanding shares of common stock entitled to vote must be represented in person or by proxy at the meeting in order for a quorum to be present.

Solicitation of Proxies

The Board of Directors may solicit proxies, the form of which is enclosed, for the meeting. The cost of any solicitation will be borne by us. Our officers, directors or regular employees may communicate with shareholders personally or by mail, telephone, telegram or otherwise for the purpose of soliciting proxies. We and our authorized agents will request brokers or other custodians, nominees and fiduciaries to forward proxy soliciting material to the beneficial owners of shares held of record by these persons and will reimburse their reasonable out-of-pocket expenses in forwarding the material.

Proposals of Shareholders

Shareholders who intend to present a proposal for action at our 2005 Annual Meeting of Shareholders must notify our management of such intention by notice, received at our principal executive offices not later than December 22, 2004 for such proposal to be included in our proxy statement relating to such meeting. Notice of a shareholder proposal will be considered untimely if submitted after December 22, 2004.

Financial Statements

Copies of our Annual Report on Form 10-K for the fiscal year ended April 30, 2003 are being delivered to shareholders together with this proxy statement. Representatives of Kostin, Ruffkess & Company, LLC, our independent auditors, are not expected to be present at our 2003 Annual Meeting of Shareholders and thus, will not have an opportunity to make a statement at the meeting. However, Kostin, Ruffkess & Company, LLC are expected to be available to respond to appropriate questions submitted in writing to Stuart I. Greenwald, our Treasurer and Secretary, prior to or at the meeting.

Other Matters

The Board of Directors knows of no matters that are expected to be presented for consideration at the meeting that are not described herein. However, if other matters properly come before the meeting, it is intended that the persons named in the accompanying proxy will vote thereon in accordance with their best judgment.

ELECTION OF DIRECTORS

It is the intention of the persons named in the enclosed form of proxy, unless such proxy specifies otherwise, to nominate and to vote the shares represented by such proxy for the election of all of the nominees listed below to hold office until the next annual meeting of shareholders or until their respective successors have been duly elected and qualified. First Hartford has no reason to believe that any of the nominees will become unavailable to serve as directors for any reason before this year's annual meeting. However, in the event that any of them shall become unavailable, the persons designated as proxies reserve the right to substitute another person of their choice when voting at the annual meeting. Certain information regarding each nominee is set forth in the table and text below. The number of shares, if any, beneficially owned by each nominee is listed below under "Security Ownership of Certain Beneficial Owners and Management."

Nominees for the Board of Directors

All our directors serve for a term of one year or until their successors are elected and qualified. All of the nominees are currently serving as directors. The name, age and term of office as director of each nominee for election as director and his present position with First Hartford are:

| Name | Age | Position | Period of Service |
|---|---|---|---|
| Neil H. Ellis | 75 | Director and President | 1966 – Present |
| Stuart I. Greenwald | 61 | Director, Treasurer and Secretary | 1980 – Present |
| David B. Harding | 58 | Director and Vice President | 1992 – Present |

Neil H. Ellis has been President of First Hartford for more than five years. He is also President and director of Green Manor Corporation, a holding company, owned by him and his wife and President of Journal Publishing Company, Inc., a corporation that publishes a newspaper in New England. He has been a member of the Board of Directors since 1966.

Stuart I. Greenwald has been Treasurer of First Hartford for more than five years and also holds the position of Secretary. He has been a member of the Board of Directors since 1980.

David B. Harding was the President of Richmond Realty, LLC, a real estate management company, from January 1996 to January 2003. In the past Richmond Realty managed certain properties of First Hartford, but currently it only manages property of others. Mr. Harding has been a Vice President of First Hartford since 1992. He has been a member of the Board of Directors since 1992.

Executive Officers

The name, age, title and period of service of each of our executive officers are set forth below. All executive officers are elected by the Board of Directors and serve until their successors are duly elected by the Board of Directors.

| Name | Age | Position | Period of Service |
|---|---|---|---|
| Neil H. Ellis | 75 | President | 1966 – Present |
| Stuart I. Greenwald | 61 | Treasurer and Secretary | 1978 – Present |
| David B. Harding | 58 | Vice President | 1992 – Present |

Meetings of the Board of Directors

Our Board of Directors convened two times in the fiscal year ended April 30, 2003. No director attended fewer than 100 percent of the meetings of the Board. The Board does not currently have a standing audit, nominating or compensation committee, or committees performing similar functions.

3

Director Compensation

There are no separate fees for membership on the Board of Directors. Each director is also an officer of First Hartford.

Audit Committee Report

First Hartford does not have an audit committee and accordingly its entire Board of Directors fulfills the functions of an audit committee. Mr. Ellis, Mr. Greenwald and Mr. Harding are members of our management and Mr. Ellis has various business relationships with First Hartford described under "Certain Relationships and Related Transactions," beginning on page 8. Thus, none of the members of the Board of Directors meet the criteria for independence established by the New York Stock Exchange or other self-regulatory organizations.

The Board of Directors has:

(a) reviewed and discussed our audited financial statements;

(b) discussed with our independent auditors the matters required to be discussed by SAS 61 (Codification of Statements on Auditing Standards, AU §380); and

(c) received the written disclosures and the letter from our auditors required by Independence Standards Board Standard No. 1 (Independence Discussions with Audit Committees) and discussed the independence of our auditors with our independent auditors.

Based on the review and discussions described above, the Board of Directors approved the inclusion of our audited financial statements in our Annual Report on Form 10-K for the fiscal year ended April 30, 2003.

Neil H. Ellis
Stuart I. Greenwald
David B. Harding

Principal Accounting Firm Fees

Set forth below is a summary of the fees paid for the fiscal year ended April 30, 2003 to First Hartford's principal accounting firm, Kostin, Ruffkess & Company, LLC.

| | |
|---|---|
| Audit Fees | $22,500.00 |
| Audit-Related Fees | $3,000.00 |

Compensation Committee Report

First Hartford does not have a compensation committee and accordingly its entire Board of Directors fulfills the role of the compensation committee. Executive compensation is determined solely by Mr. Ellis, Director and President of First Hartford. Neil Ellis in his sole discretion may approve or disapprove an increase in compensation of an employee if such increase is recommended to Mr. Ellis by the head of such employee's department.

Compensation Committee Interlocks and Insider Participation

Mr. Ellis has various business relationships with First Hartford described under "Certain Relationships and Related Transactions," beginning on page 8.

FIVE-YEAR PERFORMANCE GRAPH: 1998 – 2003

Comparison of Five-Year Cumulative Total Return Among First Hartford, NASDAQ Index and SIC Code Index

The annual changes for the five-year period shown in the graph on this page are based on the assumption that $100 had been invested in First Hartford stock, the NASDAQ Index and the SIC Code Index on May 1, 1998, as required by SEC rules, and that all quarterly dividends were reinvested at the average of the closing stock prices at the beginning and end of the quarter. The total cumulative dollar returns shown on the graph represent the value that such investments would have had on April 30, 2003.



| | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 |
|---|---|---|---|---|---|---|
| FIRST HARTFORD CP. | 100.00 | 100.00 | 100.00 | 348.00 | 204.00 | 300.00 |
| SIC CODE INDEX | 100.00 | 88.10 | 91.22 | 109.95 | 118.00 | 121.59 |
| NASDAQ MARKET INDEX | 100.00 | 132.05 | 205.19 | 114.57 | 92.05 | 80.24 |

5

## EXECUTIVE COMPENSATION

The following summary compensation table sets forth the total compensation for the fiscal years ended April 30, 2003, April 30, 2002 and April 30, 2001 for our Chief Executive Officer and our other executive officers.

### Summary Compensation Table

| Name and Principal Position | Year | Annual Compensation Salary | All Other Compensation ($)(1) |
|---|---|---|---|
| Neil H. Ellis, Director and President (CEO) | 2003 | $135,408 | 967 |
|  | 2002 | $135,062 | 967 |
|  | 2001 | $125,008 | 967 |
| Stuart I. Greenwald, Director, Treasurer and Secretary | 2003 | $100,918 | 4421 |
|  | 2002 | $96,491 | 3949 |
|  | 2001 | $82,694 | 2485 |
| David B. Harding, Director and Vice President (2) | 2003 | $45,000 | 1966 |
| All Directors and Officers as a Group (3 in number) | 2003 | $263,326 | 7354 |
|  | 2002 | $231,553 | 4916 |
|  | 2001 | $207,702 | 3452 |

(1) To assist management of First Hartford in carrying out its responsibility and to improve job performance, First Hartford provides certain of its officers with automobiles. First Hartford cannot specifically or precisely ascertain the amount of personal benefit, if any, derived by those officers from such automobiles. However, after reasonable inquiry, First Hartford has concluded that the amount of any such personal benefit is immaterial and does not in any event exceed $10,000 as to all officers. No provision has therefore been made for any such benefit.

(2) For the period ended January 18, 2003 to April 30, 2003.

Life Insurance

Each employee of First Hartford is eligible to receive life insurance that, in the event of such employee's death, will provide proceeds of two times the annual salary of each employee until such employee reaches the age of 65. At the age of 65, the amount of life insurance proceeds each employee is entitled to receive upon his or her death is equal to one times such employee's annual salary.

Pension and Retirement Plans

Each employee of First Hartford may participate in the First Hartford IRA pursuant to which First Hartford will match up to 3% of each employee's annual salary.

First Hartford previously had a single employer defined benefit non-contributory pension plan. The First Hartford pension plan was frozen as of January 1986. The Pension Benefit Guaranty Corporation (PBGC) started to make benefit payments to plan participants on January 1, 1994. In June 1997, PBGC became the interim Trustee of the pension plan and in July 1997 notified plan participants that it would seek to terminate the pension plan. Mr. Ellis waived any and all benefits under the First Hartford pension plan in a settlement with the PBGC.

Mr. Greenwald will receive approximately $6,000 annually when he reaches the age of 65.

Employment, Severance and Change in Control Agreements

None.

## CERTAIN RELATIONSHIPS
## AND RELATED TRANSACTIONS

Transactions with Management and Others

Since the filing of First Hartford's Petition for Reorganization in February of 1981, and due to the uncertainty surrounding the financial stability of First Hartford, lenders that we use to finance the purchase and development of real estate have required the personal guaranty of Neil H. Ellis, our President and a member of the Board of Directors, on any loans that they make. As consideration for this personal guaranty, First Hartford has proceeded in its real estate development during the previous three fiscal years by the following method. Money is lent directly to a subsidiary of First Hartford which develops the property. Neil Ellis guarantees the loan and in return receives a pledge of the stock of the subsidiary until such time as the guaranteed loans are satisfied. On December 27, 1999, 100 percent of the outstanding stock of Brewery Parkade, Inc. was pledged to Mr. Ellis in return for his guaranty of a construction loan in Cranston, Rhode Island. There is currently a $10.5 million outstanding balance on the construction loan which will increase to $11.7 million upon completion of the project.

First Hartford and its subsidiaries have received from or made cash advances to other companies which are owned or controlled by Neil Ellis. First Hartford has also purchased property from or sold property to, these companies as well as performed services for these companies.

During the past three fiscal years, Mr. Ellis has guaranteed five letters of credit issued to lenders of First Hartford totaling $1,580,000, of which letters of credit totaling $365,000 are still outstanding. Mr. Ellis has also guaranteed eight bonds totaling $2,150,000, of which bonds totaling $220,000 are still outstanding as well as bonds totaling $995,000 from prior periods. During the last three fiscal years, bonds totaling $649,000 which were guaranteed at an earlier date were returned.

Additionally, Mr. Ellis has entered into the following guaranties for the benefit of lenders of First Hartford during the past three years:

- personal guaranty of construction/permanent loan in the amount of $18,700,000 for construction of office buildings in Cranston, Rhode Island;

- personal guaranty for environmental and fraud liabilities related to construction/permanent loan in the amount of $23,350,000 for construction in Cranston, Rhode Island. This loan replaced an earlier loan in the amount of $22,250,000 which has been released;

- personal guaranty for environmental and fraud liabilities related to construction/permanent loan in the amount of $15,800,000 for construction in Dover Township, New Jersey. This loan replaced an earlier loan in the amount of $13,150,000 which has been released;

- $2,000,000 completion guaranty for extension of construction in Mount Olive, New Jersey;

- guaranty of top 25% of $4,025,000 permanent loan for construction in Putnam, Connecticut; and

- guaranty of $950,000 Plainfield Parkade Construction Second Mortgage plus guaranty of environmental and fraud liabilities related to permanent loan in the amount of $3,850,000.

M&T Bank entered into a revolving loan arrangement with Mr. Ellis, the proceeds of which were advanced to First Hartford. The balance of such loans on April 30, 2000 was $1,710,000. An additional amount of $170,000 was loaned to Mr. Ellis and advanced to First Hartford in June 2001. The entire $1,880,000 balance of such loans was repaid by First Hartford in July 2002. An additional borrowing of $850,000 was made to First Hartford in that same month. First Hartford has repaid $140,000 of that amount so that, as of September 2003, $710,000 remained outstanding. A minimum of $10,000 is required to be repaid monthly plus interest at an interest rate of the prime rate plus 1.5%.

7

Additionally, Mr. and Mrs. Ellis obtained a mortgage loan for the benefit of First Hartford on May 18, 2000 in the initial aggregate amount of $1,575,000. As of September 30, 2003, $1,308,000 was outstanding. A minimum of $20,000 is required to be repaid monthly plus interest at an interest rate of the prime rate plus 1%.

Several loans which were obtained by Mr. and Mrs. Ellis for the benefit of First Hartford are to be repaid by First Hartford. These loans do not require interest payments. On April 30, 2000, the balance of such loans was $2,250,000. The current balance is $1,963,511. This amount is offset by amounts owed to First Hartford by other entities owned by Mr. Ellis. As of April 30, 2003, the net amount due to Mr. Ellis was $690,131.

During the past three fiscal years, First Hartford has repaid other bank loans entered into by Mr. Ellis in the amount of $400,000.

Certain Business Relationships

Hartford Lubbock LP, a limited partnership of which Journal Publishing Company, Inc. owns 99% of the partnership interests, paid management fees to First Hartford in the fiscal year ended April 30, 2003 in the amount of $283,943, an amount in excess of 5% of Hartford Lubbock LP's gross revenues for its last fiscal year. Mr. Ellis is the President of Journal Publishing Company, Inc.

Mr. Harding was the President of Richmond Realty, LLC, a real estate management company, from January 1996 to January 2003. In the past, Richmond Realty managed certain properties of First Hartford but currently it only manages property of others. Prior to January 2003, the salary of Mr. Harding was paid by Richmond Realty. Richmond Realty has not received any fees from First Hartford during First Hartford's last fiscal year. Richmond Realty did receive an $18,000 fee from Cranston Parkade/BVT L.P., an entity in which First Hartford has a 25% partnership interest.

8

## SECURITY OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND MANAGEMENT

The following table sets forth the "beneficial ownership" (as that term is defined in the rules of the Securities and Exchange Commission) of the common stock as of April 30, 2003 by each executive officer and member of the Board of Directors.

| Name & Address | Number of Shares of Common Stock | Percent of Outstanding Shares of Common Stock |
| --- | --- | --- |
| Neil H. Ellis<br>43 Butternut Road<br>Manchester, CT 06040 | 1,324,387 (1) | 42.9% |
| Stuart I. Greenwald<br>149 Colonial Road<br>P.O. Box 1270<br>Manchester, CT 06045-1270 | 0 | 0% |
| David B. Harding<br>149 Colonial Road<br>P.O. Box 1270<br>Manchester, CT 06045-1270 | 0 | 0% |
| All Directors and Officers as a Group (3 in number) | 1,324,387 (1) | 42.9% |

(1) Includes 416,483 shares owned by a corporation which is wholly owned by Mr. & Mrs. Ellis; 17,693 shares owned beneficially and of record by Mr. Ellis' wife; and 53,412 shares held as Trustee for his daughters in which he disclaims beneficial ownership. Excludes 14,250 shares held as Trustee for the Jonathan G. Ellis Leukemia Foundation (a charitable foundation).

## SECTION 16 BENEFICIAL OWNERSHIP REPORTING COMPLIANCE

The federal securities laws require First Hartford directors and executive officers, and persons who own more than ten percent of the outstanding shares of common stock, to file with the Securities and Exchange Commission initial reports of ownership and reports of changes in ownership of any equity securities of First Hartford on Forms 3, 4, and 5. To our knowledge, based solely on review of copies of such reports furnished to First Hartford and representations by these individuals that no other reports were required, all required reports have been filed on a timely basis on behalf of all persons subject to these requirements.

9

## PROPOSAL TO ADOPT THE 2003 STOCK OPTION PLAN

On December 19, 2003, the Board of Directors approved the 2003 First Hartford Corporation Stock Option Plan (the "2003 Plan" or the "Plan"), subject to shareholder approval at First Hartford's annual meeting. If approved by shareholders, the 2003 Plan will become effective as of December 19, 2003.

The Board believes that the 2003 Plan will enable us to motivate and reward superior performance on the part of employees and thereby attract and retain employees of superior ability. The Board believes that the approval of the Plan is in the best interests of First Hartford and its shareholders.

The Plan does not permit the repricing of options or the grant of discounted options. Provisions have been included to meet the requirements for deductibility of executive compensation for the purposes of Section 162(m) of the Internal Revenue Code with respect to options and other awards by qualifying grants and payments under the 2003 Plan as performance-based compensation.

The following is a brief description of the 2003 Plan. The full text of the Plan is attached as Appendix A hereto and the following description is qualified in its entirety by reference to this Appendix.

### Administration of the Plan

The selection of key employees who may participate in the Plan, and the terms and conditions of each award, will be determined by the Board of Directors. The Board will have full power, discretion and authority to interpret, construe and administer the Plan, and all decisions, determinations or actions of the Board pursuant to the Plan will be final and binding on all persons for all purposes.

### Eligibility

Employees, officers and directors of First Hartford and its subsidiaries are eligible to receive awards under the Plan. The three directors and executive officers, as well as two key employees, of First Hartford are currently eligible to receive awards under the Plan. The benefits to any individual are not determinable.

### Types of Awards that May Be Made under the Plan

Stock options granted under the Plan may be of two types: (i) incentive stock options and (ii) nonqualified stock options.

### Shares Covered by the 2003 Plan; Limit on Awards

The Plan permits the granting of awards covering 1,000,000 shares of common stock. As of December 22, 2003, there were 3,089,985 shares of common stock outstanding. The closing price per common share on October 30, 2003 was $0.70 and there has been no reported trade since such date. The common stock may be either authorized but unissued shares of common stock or shares of common stock purchased on the open market.

Any shares that are reserved for options that lapse, expire or are forfeited, and any shares that are exchanged (actually or constructively) by optionees as full or partial payment to First Hartford for shares acquired on the exercise of an option may be available for subsequent awards to persons other than directors or executive officers of First Hartford.

No more than 1,000,000 shares of the total number of the shares of common stock on a cumulative basis are available for awards of incentive stock options. In the case of an incentive stock option, the aggregate fair market value of such option on the date of grant by the Board with respect to which the option becomes exercisable for the first time by an optionee during any calendar year shall not exceed $100,000.

Stock Options

Options granted under the 2003 Plan may be either non-qualified stock options or incentive stock options qualifying for special tax treatment under Section 422 of the Internal Revenue Code. The exercise price of any stock option may not be less than the fair market value of the common shares on the date of grant. The exercise price is payable in cash or certain cash equivalents, shares of common stock previously owned by the optionee or a combination of cash and shares of common stock previously owned by the optionee. Non-qualified stock options will generally expire ten years and two days following the date of grant, and incentive stock will generally expire on the tenth anniversary of the date of grant.

Tax Consequences of Options

Non-Qualified Stock Options. No tax consequences result from the grant of a non-qualified stock option. On the exercise of a non-qualified stock option, the optionee will recognize ordinary income for federal income tax purposes on the amount by which the fair market value of the stock on the date of exercise exceeds the exercise price of the option. The optionee will be taxed on this amount in the year of exercise, and First Hartford will generally be allowed a deduction in this amount for federal income tax purposes in the same year. When the optionee disposes of shares acquired on the exercise of a non-qualified stock option, any amount received in excess of the fair market value of the shares on the date of exercise will be treated as long- or short-term capital gain to the optionee, depending on the holding period for the shares. If the amount received is less than the market value of the shares on the date of exercise, the loss will be treated as long- or short-term capital loss, depending upon the holding period of the shares.

Incentive Stock Options. No tax consequences result from the grant of an incentive stock option. On the exercise of an incentive stock option, no ordinary income will be recognized by the optionee. If the optionee holds the shares for over one year after the date of exercise, then on the sale of the shares (i) the excess of the sale proceeds over the aggregate exercise price of the option will be long-term capital gain to the optionee, and (ii) First Hartford will not be entitled to a tax deduction under such circumstances. Generally if the optionee sells or otherwise disposes of the shares within one year after the date of exercise, the excess of the fair market value of such shares at the time of exercise over the aggregate exercise price (but generally not more than the amount of gain realized on the disposition) will be ordinary income to the optionee at the time of such disposition. This is sometimes referred to as a "disqualifying disposition." First Hartford generally will be entitled to a federal tax deduction equal to the amount of ordinary income recognized by the optionee upon a disqualifying disposition.

Amendment and Termination of the 2003 Plan

The Board may at any time, and from time to time, alter, amend, suspend or discontinue the Plan or any provision of the Plan; provided, however, that (a) no alteration, amendment, suspension or discontinuance that would impair the rights of an optionee under any then-existing option agreement shall be made without such optionee's consent, and (b) no alteration or amendment may be made without the approval of First Hartford's shareholders if such alteration or amendment would (i) increase the over-all number of shares of common stock reserved and available for issuance under the Plan, or (ii) decrease the minimum exercise price of stock options.

Our Right of First Refusal

Transfers of common stock acquired pursuant to an option under the Plan are restricted. Before selling, assigning, transferring or otherwise disposing, whether voluntarily or by operation of law, all or any portion of the shares of common stock acquired pursuant to the exercise of an option under the Plan, an optionee must first give the Board written notice by certified or registered mail of his or her receipt of an offer from a prospective purchaser. The notice must be in writing, giving the name and address of the prospective purchaser, the number of shares involved, and the terms of such purchase. Within ten days after receipt of the written notice, First Hartford may elect to purchase all, but not less than all, of such shares offered for disposition, or may elect to designate a person, including an officer, director or employee of First Hartford, to purchase all, but not less than all, of such shares. The purchase price of any shares purchased shall be on the same terms and conditions as that offered by the prospective purchaser.

If all of the shares are not purchased by First Hartford or its designee in accordance with the Plan, then the optionee shall be free to sell the unsold shares to the prospective purchaser at the price and terms set forth in the original offer, within twenty days thereafter; provided, however, that at the end of such twenty day period, First Hartford's right of first refusal shall again be applicable.

Buyout and Settlement Provisions

The Plan provides that the Board may, in its sole discretion, offer to repurchase an option previously granted, in circumstances such as a change in control or in a termination of employment where the Board believes the circumstances merit special treatment, and not in the ordinary course of business, based upon such terms and conditions as the Board shall establish and communicate to the optionee at the time that such offer is made.

The Board of Directors unanimously recommends that you vote FOR the proposal to approve the 2003 First Hartford Corporation Stock Option Plan.