# EXHIBIT "B"

MINUTES OF A SPECIAL MEETING
OF THE DIRECTORS OF
FIRST HARTFORD CORPORATION

A Special Meeting of Directors of FIRST HARTFORD CORPORATION was held on February 11, 2004 at 11:45 a.m. at 149 Colonial Road, Manchester, Connecticut.

Present at the Meeting were the following Directors of the Corporation, constituting a quorum:

> Neil H. Ellis
> Stuart I. Greenwald
> David B. Harding

A signed Waiver of Notice appears below.

Mr. Greenwald acted as Chairman of the Meeting. Jeffrey M. Carlson was also present and recorded the Minutes of the Meeting.

A discussion ensued in which it was noted that:

1. The Corporation held its annual meeting of Shareholders on January 22, 2004 to, inter alia, act on the proposal (annexed hereto as Exhibit "A") to adopt the 2004 Stock Option Plan, in the form annexed hereto as Exhibit B and also filed within the Minute Book of the Corporation (the "Plan");

2. The Plan was approved by a majority of the shareholders of the Corporation at the Annual Meeting;

3. The initial phase implementation of the Plan would occur in accordance with the terms described on Exhibit "C" annexed hereto.

No further business being presented, upon motion duly made and seconded, it was unanimously.

**RESOLVED:** That the Corporation, in accordance with the unanimous approval of the Board of Directors, has authorized, ratified and otherwise agreed and approved of the issuance of certain employee non-qualified stock options and related "put-options" noted and more particularly described on Exhibit "C" annexed hereto which Exhibit "C" will be issued to each applicable eligible employee together with a copy of the Plan and any other documents necessary or required to confirm the initial grant of stock options described in Exhibit "C".

RESOLVED: That the authority granted to the officers of the Corporation under the foregoing resolution shall be deemed to include such further acts and deeds as may be necessary, convenient or appropriate, in the judgment of such officers, to carry out the transactions contemplated thereby, and that all acts and deeds previously performed by the officers of or counsel for the Corporation prior to the date of these resolutions that are within the authority conferred hereby, are hereby ratified, confirmed and approved as the authorized acts of the Corporation.

And the undersigned further certifies that the Board of Directors of said corporation has, and at the time of adoption of said Resolution had full power and lawful authority to adopt said Resolution and to confer the powers thereby granted to the officers therein named, who have and had full power and lawful authority to exercise the same.

There being no further business to be undertaken at the Meeting, upon motion duly made and seconded, the Meeting was adjourned.

Dated at Manchester, CT this 11 day of February, 2004.

_____
Stuart I. Greenwald

## WAIVER OF NOTICE

Prior to the aforesaid meeting, the undersigned, being all of the members of the Board of Directors of FIRST HARTFORD CORPORATION, waived any and all notice, required by law, the Articles of Incorporation, or the Bylaws of the corporation as to the time, place, and/or purpose of a Special Meeting of the Board of Directors of the corporation; and do hereby consent to the holding of a Special Meeting of the Board of Directors on February 11, 2004 or any adjournment or adjournments hereof, as the time and place for such meeting; and does hereby further consent to the transaction of any business that may come before such Meeting.

Dated at Manchester, CT this 11 day of February, 2004.

_____
Neil H. Ellis, Director

_____
David B. Harding, Director

_____
Stuart I. Greenwald, Director

## PROPOSAL TO ADOPT THE 2003 STOCK OPTION PLAN

On December 19, 2003, the Board of Directors approved the 2003 First Hartford Corporation Stock Option Plan (the "2003 Plan" or the "Plan"), subject to shareholder approval at First Hartford's annual meeting. If approved by shareholders, the 2003 Plan will become effective as of December 19, 2003.

The Board believes that the 2003 Plan will enable us to motivate and reward superior performance on the part of employees and thereby attract and retain employees of superior ability. The Board believes that the approval of the Plan is in the best interests of First Hartford and its shareholders.

The Plan does not permit the repricing of options or the grant of discounted options. Provisions have been included to meet the requirements for deductibility of executive compensation for the purposes of Section 162(m) of the Internal Revenue Code with respect to options and other awards by qualifying grants and payments under the 2003 Plan as performance-based compensation.

The following is a brief description of the 2003 Plan. The full text of the Plan is attached as <u>Appendix A</u> hereto and the following description is qualified in its entirety by reference to this Appendix.

### Administration of the Plan

The selection of key employees who may participate in the Plan, and the terms and conditions of each award, will be determined by the Board of Directors. The Board will have full power, discretion and authority to interpret, construe and administer the Plan, and all decisions, determinations or actions of the Board pursuant to the Plan will be final and binding on all persons for all purposes.

### Eligibility

Employees, officers and directors of First Hartford and its subsidiaries are eligible to receive awards under the Plan. The three directors and executive officers, as well as two key employees, of First Hartford are currently eligible to receive awards under the Plan. The benefits to any individual are not determinable.

### Types of Awards that May Be Made under the Plan

Stock options granted under the Plan may be of two types: (i) incentive stock options and (ii) nonqualified stock options.

### Shares Covered by the 2003 Plan; Limit on Awards

The Plan permits the granting of awards covering 1,000,000 shares of common stock. As of December 22, 2003, there were 3,089,985 shares of common stock outstanding. The closing price per common share on October 30, 2003 was $0.70 and there has been no reported trade since such date. The common stock may be either authorized but unissued shares of common stock or shares of common stock purchased on the open market.

Any shares that are reserved for options that lapse, expire or are forfeited, and any shares that are exchanged (actually or constructively) by optionees as full or partial payment to First Hartford for shares acquired on the exercise of an option may be available for subsequent awards to persons other than directors or executive officers of First Hartford.

No more than 1,000,000 shares of the total number of the shares of common stock on a cumulative basis are available for awards of incentive stock options. In the case of an incentive stock option, the aggregate fair market value of such option on the date of grant by the Board with respect to which the option becomes exercisable for the first time by an optionee during any calendar year shall not exceed $100,000.

## SECURITY OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND MANAGEMENT

The following table sets forth the "beneficial ownership" (as that term is defined in the rules of the Securities and Exchange Commission) of the common stock as of April 30, 2003 by each executive officer and member of the Board of Directors.

| Name & Address | Number of Shares of Common Stock | Percent of Outstanding Shares of Common Stock |
|---|---|---|
| Neil H. Ellis<br>43 Butternut Road<br>Manchester, CT 06040 | 1,324,387 (1) | 42.9% |
| Stuart I. Greenwald<br>149 Colonial Road<br>P.O. Box 1270<br>Manchester, CT 06045-1270 | 0 | 0% |
| David B. Harding<br>149 Colonial Road<br>P.O. Box 1270<br>Manchester, CT 06045-1270 | 0 | 0% |
| All Directors and Officers as a Group<br>(3 in number) | 1,324,387 (1) | 42.9% |

(1) Includes 416,483 shares owned by a corporation which is wholly owned by Mr. & Mrs. Ellis; 17,693 shares owned beneficially and of record by Mr. Ellis' wife; and 53,412 shares held as Trustee for his daughters in which he disclaims beneficial ownership. Excludes 14,250 shares held as Trustee for the Jonathan G. Ellis Leukemia Foundation (a charitable foundation).

## SECTION 16 BENEFICIAL OWNERSHIP REPORTING COMPLIANCE

The federal securities laws require First Hartford directors and executive officers, and persons who own more than ten percent of the outstanding shares of common stock, to file with the Securities and Exchange Commission initial reports of ownership and reports of changes in ownership of any equity securities of First Hartford on Forms 3, 4, and 5. To our knowledge, based solely on review of copies of such reports furnished to First Hartford and representations by these individuals that no other reports were required, all required reports have been filed on a timely basis on behalf of all persons subject to these requirements.

FHC0025

Stock Options

Options granted under the 2003 Plan may be either non-qualified stock options or incentive stock options qualifying for special tax treatment under Section 422 of the Internal Revenue Code. The exercise price of any stock option may not be less than the fair market value of the common shares on the date of grant. The exercise price is payable in cash or certain cash equivalents, shares of common stock previously owned by the optionee or a combination of cash and shares of common stock previously owned by the optionee. Non-qualified stock options will generally expire ten years and two days following the date of grant, and incentive stock will generally expire on the tenth anniversary of the date of grant.

Tax Consequences of Options

<u>Non-Qualified Stock Options</u>. No tax consequences result from the grant of a non-qualified stock option. On the exercise of a non-qualified stock option, the optionee will recognize ordinary income for federal income tax purposes on the amount by which the fair market value of the stock on the date of exercise exceeds the exercise price of the option. The optionee will be taxed on this amount in the year of exercise, and First Hartford will generally be allowed a deduction in this amount for federal income tax purposes in the same year. When the optionee disposes of shares acquired on the exercise of a non-qualified stock option, any amount received in excess of the fair market value of the shares on the date of exercise will be treated as long- or short-term capital gain to the optionee, depending on the holding period for the shares. If the amount received is less than the market value of the shares on the date of exercise, the loss will be treated as long- or short-term capital loss, depending upon the holding period of the shares.

<u>Incentive Stock Options</u>. No tax consequences result from the grant of an incentive stock option. On the exercise of an incentive stock option, no ordinary income will be recognized by the optionee. If the optionee holds the shares for over one year after the date of exercise, then on the sale of the shares (i) the excess of the sale proceeds over the aggregate exercise price of the option will be long-term capital gain to the optionee, and (ii) First Hartford will not be entitled to a tax deduction under such circumstances. Generally if the optionee sells or otherwise disposes of the shares within one year after the date of exercise, the excess of the fair market value of such shares at the time of exercise over the aggregate exercise price (but generally not more than the amount of gain realized on the disposition) will be ordinary income to the optionee at the time of such disposition. This is sometimes referred to as a "disqualifying disposition." First Hartford generally will be entitled to a federal tax deduction equal to the amount of ordinary income recognized by the optionee upon a disqualifying disposition.

Amendment and Termination of the 2003 Plan

The Board may at any time, and from time to time, alter, amend, suspend or discontinue the Plan or any provision of the Plan; provided, however, that (a) no alteration, amendment, suspension or discontinuance that would impair the rights of an optionee under any then-existing option agreement shall be made without such optionee's consent, and (b) no alteration or amendment may be made without the approval of First Hartford's shareholders if such alteration or amendment would (i) increase the over-all number of shares of common stock reserved and available for issuance under the Plan, or (ii) decrease the minimum exercise price of stock options.

Our Right of First Refusal

Transfers of common stock acquired pursuant to an option under the Plan are restricted. Before selling, assigning, transferring or otherwise disposing, whether voluntarily or by operation of law, all or any portion of the shares of common stock acquired pursuant to the exercise of an option under the Plan, an optionee must first give the Board written notice by certified or registered mail of his or her receipt of an offer from a prospective purchaser. The notice must be in writing, giving the name and address of the prospective purchaser, the number of shares involved, and the terms of such purchase. Within ten days after receipt of the written notice, First Hartford may elect to purchase all, but not less than all, of such shares offered for disposition, or may elect to designate a person, including an officer, director or employee of First Hartford, to purchase all, but not less than all, of such shares. The purchase price of any shares purchased shall be on the same terms and conditions as that offered by the prospective purchaser.

FHC0026

If all of the shares are not purchased by First Hartford or its designee in accordance with the Plan, then the optionee shall be free to sell the unsold shares to the prospective purchaser at the price and terms set forth in the original offer, within twenty days thereafter; provided, however, that at the end of such twenty day period, First Hartford's right of first refusal shall again be applicable.

Buyout and Settlement Provisions

The Plan provides that the Board may, in its sole discretion, offer to repurchase an option previously granted, in circumstances such as a change in control or in a termination of employment where the Board believes the circumstances merit special treatment, and not in the ordinary course of business, based upon such terms and conditions as the Board shall establish and communicate to the optionee at the time that such offer is made.

The Board of Directors unanimously recommends that you vote FOR the proposal to approve the 2003 First Hartford Corporation Stock Option Plan.

FHC0027

Appendix A

# FIRST HARTFORD CORPORATION
## 2003 STOCK OPTION PLAN

### ARTICLE I
### PURPOSE

*Purpose.* The purpose of this First Hartford Corporation Stock Option Plan (the "Plan") is to enable the Company to offer to its employees, officers and directors whose past, present or potential contributions to the Company and its Subsidiaries have been, are or are expected to be important to the success of the Company, an opportunity to acquire a proprietary interest in the Company.

### ARTICLE II
### ADMINISTRATION

2.1 *Administration.* The Plan shall be administered by the full Board of Directors of the Company, or a committee established by the Board of Directors, the members of which shall be "Non-Employee Directors" as defined in Rule 16b-3 promulgated under the Exchange Act. References to the "Committee" shall mean the full Board or any such Committee.

2.2 *Powers of the Committee.* The Committee shall have full authority to grant Stock Options pursuant to the terms of the Plan. For purposes of illustration and not of limitation, the Committee shall have the authority (subject to the express provisions of this Plan):

(a) to select the employees, officers and directors of the Company, or any Subsidiary, to whom Stock Options may from time to time be awarded hereunder;

(b) to determine the terms and conditions, not inconsistent with the terms of the Plan, of any award granted hereunder (including, but not limited to, the number of shares, exercise price or types of consideration to be paid upon exercise of a Stock Option, any restrictions or limitations on an award, and any vesting, exchange, surrender, cancellation, acceleration, termination, exercise or forfeiture provisions, as the Committee shall determine); and

(c) to alter or amend the terms and conditions, not inconsistent with the terms of the Plan, of any award granted hereunder (including, but not limited to, any such alteration or amendment that would alter the terms and conditions of an Incentive Stock Option so as to convert it into a Nonqualified Stock Option); provided, however, that no such alteration or amendment that would impair the rights of an Optionee under any Agreement theretofore entered into hereunder may be made by the Committee without the Optionee's consent.

2.3 *Interpretation of Plan.*

(a) *Committee Authority.* Subject to Article VI below, the Committee shall have the authority to adopt, alter and repeal such administrative rules, guidelines and practices governing the Plan as it shall, from time to time, deem advisable, to interpret the terms and provisions of the Plan and any award issued under the Plan (and to determine the form and substance of all Agreements relating thereto), and to otherwise supervise the administration of the Plan.

(b) *Incentive Stock Options.* No term or provision of the Plan relating to Incentive Stock Options shall be interpreted, amended or altered, nor shall any discretion or authority granted under the Plan be so exercised, so as to disqualify the Plan under Section 422 of the Code.

2.4 *Delegation by Committee.* Except to the extent prohibited by applicable law or the applicable rules of any stock exchange on which the Common Stock is listed, the Committee may allocate all or any portion of its responsibilities and powers to any one or more of its members and may delegate all or any part of its

responsibilities and powers to any person or persons selected by it. Any allocation or delegation of responsibilities or powers may be revoked by the Committee at any time.

## ARTICLE III
## STOCK SUBJECT TO PLAN

3.1 *Number of Shares.* The total number of shares of Common Stock reserved and available for issuance under the Plan shall be 1,000,000 shares of Common Stock, subject to adjustment as provided in Section 3.2 below. Shares of Common Stock under the Plan may consist, in whole or in part, of authorized and unissued shares or treasury shares. If any shares of Common Stock that have been granted pursuant to a Stock Option cease to be subject to a Stock Option, or if any award otherwise terminates without a payment being made to the Optionee in the form of Common Stock, such shares shall again be available for distribution in connection with future grants and awards under the Plan. If an Optionee pays the exercise price of a Stock Option by surrendering any previously owned shares or arranges to have the appropriate number of shares otherwise issuable upon exercise withheld to cover the withholding tax liability associated with the Stock Option exercise, then the number of shares available under the Plan shall be increased by the number of such surrendered shares and shares used to pay such taxes.

3.2 *Adjustment Upon Changes in Capitalization, Etc.* In the event of any dividend payable in shares of Common Stock, or any stock split or reverse stock split of the Common Stock, any then outstanding awards granted under the Plan shall be appropriately adjusted in such a manner as to preserve the economic benefits or potential economic benefits of such awards and the aggregate number of shares of Common Stock then reserved for issuance under the Plan, or permitted to be issued under various types of awards as provided in Section 3.1 hereof, shall be similarly adjusted. In the event of any merger, reorganization, consolidation, dividend (other than a cash dividend or a stock dividend covered by the preceding sentence) payable on shares of Common Stock, any combination or exchange of shares, or any other extraordinary or unusual event that results in a change in the shares of Common Stock of the Company as a whole, the Committee shall determine, in its sole discretion, whether such change equitably requires an adjustment in the terms of any award or the aggregate number of shares of Common Stock then reserved for issuance under the Plan. Any such adjustments shall be made by the Committee, whose determination shall be final, binding and conclusive.

## ARTICLE IV
## ELIGIBILITY

4.1 *General.* Awards may be made or granted to employees, officers or directors whose past, present or potential contributions to the Company and its Subsidiaries have been, are or are expected to be important to the success of the Company.

4.2 *Incentive Stock Options.* No Incentive Stock Option shall be granted to any person who is not an employee of the Company or a Subsidiary at the time of grant.

## ARTICLE V
## STOCK OPTIONS

5.1 *Grant and Exercise.* Stock Options granted under the Plan may be of two types: (i) Incentive Stock Options and (ii) Nonqualified Stock Options. Any Stock Option granted under the Plan shall contain such terms, not inconsistent with this Plan, or with respect to Incentive Stock Options, not inconsistent with the Plan and the Code, as the Committee may from time to time approve. The Committee shall have the authority to grant Incentive Stock Options or Nonqualified Stock Options, or both types of Stock Options, which may be granted alone or in addition to other awards granted under the Plan. To the extent that any Stock Option intended to qualify as an Incentive Stock Option does not so qualify, it shall constitute a separate Nonqualified Stock Option.

5.2 *Terms and Conditions.* Stock Options granted under the Plan shall be subject to the following terms and conditions:

2

FHC0029

(a) *Option Term.* The term of each Stock Option shall be fixed by the Committee; provided, however, that a Stock Option may be granted only within the ten-year period commencing from the Effective Date and may only be exercised within ten years of the date of grant (or five years in the case of an Incentive Stock Option granted to an Optionee who, at the time of grant, owns Common Stock possessing more than 10 percent of the total combined voting power of all classes of stock of the Company (a "10% Stockholder")).

(b) *Exercise Price.* The exercise price per share of Common Stock purchasable under a Stock Option shall be determined by the Committee at the time of grant and may not be less than 100% of the Fair Market Value on the day of grant; provided, however, that the exercise price of an Incentive Stock Option granted to a 10% Stockholder shall not be less than 110% of the Fair Market Value on the date of grant.

(c) *Method of Exercise.* Options shall be exercised by the delivery of written notice to the Committee (or such officer of the Company as may be designated by the Committee) setting forth the number of shares with respect to which the Option is to be exercised, and specifying the address to which the certificates for such shares are to be mailed. The Option price shall be paid in full at the time of exercise in cash by United States currency, certified check, bank check, personal check or money order or by tendering to the Company (i) shares of Common Stock having a Fair Market Value on the date of exercise equal to the Option price (including shares that would otherwise be issued pursuant to such exercise), or (ii) a combination of cash and shares of Common Stock valued at such Fair Market Value.

As promptly as practicable after receipt of such written notification of the exercise of an Option and payment, the Company shall deliver to the Optionee certificates for the number of shares with respect to which such Option has been so exercised issued in the Optionee's name.

(d) *Transferability.* Except as may be set forth in any Agreement relating to a Nonqualified Stock Option, no Stock Option shall be transferable by the Optionee other than by will or by the laws of descent and distribution, and all Stock Options shall be exercisable, during the Optionee's lifetime, only by the Optionee (or, to the extent of legal incapacity or incompetency, the Optionee's guardian or legal representative).

(e) *Termination by Reason of Death.* Unless otherwise determined by the Committee and set forth in the Agreement, if an Optionee is an employee of the Company or a Subsidiary at the time of grant and if an Optionee's employment by the Company or a Subsidiary terminates by reason of death, any Stock Option held by such Optionee shall thereupon automatically terminate, except that the portion of such Stock Option that has vested on or prior to the date of death may thereafter be exercised by the legal representative of the estate or by the legatee of the Optionee under the will of the Optionee, for a period of one year (or such other greater or lesser period as the Committee may specify at grant) from the date of such death or until the expiration of the stated term of such Stock Option, whichever period is the shorter.

(f) *Termination by Reason of Disability.* Unless otherwise determined by the Committee and set forth in the Agreement, if an Optionee is an employee of the Company or a Subsidiary at the time of grant and if an Optionee's employment by the Company or any Subsidiary terminates by reason of Disability, any Stock Option held by such Optionee shall thereupon automatically terminate, except that the portion of such Stock Option that has vested on or prior to the date of termination may thereafter be exercised by the Optionee for a period of one year (or such other greater or lesser period as the Committee may specify at the time of grant) from the date of such termination of employment or until the expiration of the stated term of such Stock Option, whichever period is the shorter.

(g) *Other Termination.* Unless otherwise determined by the Committee and set forth in the Agreement, if an Optionee is an employee of the Company or a Subsidiary at the time of grant and if such Optionee's employment by the Company or any Subsidiary terminates for any reason other than death or Disability, the Stock Option shall thereupon automatically terminate, except that if the Optionee's employment is terminated by the Company or a Subsidiary without cause or due to Normal Retirement, then the portion of such Stock Option that has vested on or prior to the date of termination of employment may be exercised for the lesser of three months (or, in the case of a Nonqualified Stock Option, one year) after termination of employment or until the expiration of the stated term of such Stock Option, whichever period is shorter.

FHC0030

(h) *Additional Incentive Stock Option Limitation* In the case of an Incentive Stock Option, the aggregate Fair Market Value (on the date of grant of the Option) of the shares of Common Stock with respect to which Incentive Stock Options become exercisable for the first time by an Optionee during any calendar year (under all plans of the Company and its Parent and Subsidiaries) shall not exceed $100,000.

(i) *Buyout and Settlement Provisions* The Committee may, in its sole discretion, offer to repurchase a Stock Option previously granted, in circumstances such as a change in control or in a termination of employment where the Committee believes the circumstances merit special treatment, and not in the ordinary course of business, based upon such terms and conditions as the Committee shall establish and communicate to the Optionee at the time that such offer is made.

5.3 *Right of First Refusal.* An Optionee who acquires shares of Common Stock pursuant to the terms of this Plan shall not sell, assign, transfer, or give, or in any manner, dispose of all or any part of such shares, or any right or interest therein, whether voluntarily or by operation of law, without first giving to the Committee written notice by certified or registered mail of his or her receipt of an offer from a prospective purchaser. The notice must be in writing, giving the name and address of the prospective purchaser, the number of shares involved, and the terms of such purchase. Within ten days after receipt of the written notice, the Committee may elect to purchase all, but not less than all, of such shares offered for disposition, or may elect to designate a person, including an officer, director or employee of the Company, to purchase all, but not less than all, of such shares. The purchase price of any shares purchased shall be on the same terms and conditions as that offered by the prospective purchaser.

If all of the shares are not purchased by the Committee or its designee in accordance with the provisions of this Section 5.3, then the Optionee shall be free to sell the unsold shares to the prospective purchaser at the price and terms set forth in the original offer, at any time within twenty days thereafter; provided, however, that at the end of the twenty day period, the Committee's right of first refusal shall again be applicable.

## ARTICLE VI
## AMENDMENT AND TERMINATION

The Board may at any time, and from time to time, alter, amend, suspend or discontinue the Plan or any provision of the Plan; provided, however, that (a) no alteration, amendment, suspension or discontinuance that would impair the rights of an Optionee under any Agreement theretofore entered into hereunder shall be made without the Optionee's consent, and (b) no alteration or amendment may be made without the approval of the Company's stockholders if such alteration or amendment would (i) increase the over-all number of shares reserved and available for issuance under the Plan set forth in Section 3.1, or (ii) decrease the minimum exercise price of Stock Options set forth in Section 5.2(b).

## ARTICLE VII
## TERM OF PLAN

7.1 *Effective Date.* The Plan shall be effective as of December 19, 2003 (the "Effective Date"), subject to the approval of the Plan by the Company's stockholders within one year after the Effective Date. Any Stock Options granted under the Plan prior to such approval shall be effective when made (unless otherwise specified by the Committee at the time of grant), but shall be conditioned upon, and subject to, such approval of the Plan by the Company's stockholders, and no awards shall vest or otherwise become free of restrictions prior to such approval.

7.2 *Termination Date.* Unless earlier terminated by the Board, this Plan shall continue to remain in effect for a period of ten (10) years from the Effective Date; provided that the Plan shall continue to govern all outstanding awards until the awards themselves terminate in accordance with their terms.

FHC0031

## ARTICLE VIII
## GENERAL PROVISIONS

8.1     *Written Agreements.* Each Stock Option granted under the Plan shall be confirmed by, and shall be subject to the terms, of the Agreement executed by the Company and the Optionee. The Committee may terminate any award made under the Plan if the Agreement relating thereto is not executed and returned to the Company within 10 days after the Agreement has been delivered to the Optionee for his or her execution.

8.2     *Unfunded Status of Plan.* The Plan is intended to constitute an "unfunded" plan for incentive and deferred compensation. With respect to any payments not yet made to an Optionee by the Company, nothing contained herein shall give any such Optionee any rights that are greater than those of a general creditor of the Company.

8.3     *No Right of Employment.* Nothing contained in the Plan or in any award hereunder shall be deemed to confer upon any Optionee who is an employee of the Company or any Subsidiary any right to continued employment with the Company or any Subsidiary, nor shall it interfere in any way with the right of the Company or any Subsidiary to terminate the employment of any Optionee who is an employee at any time.

8.4     *Investment Representations; Company Policy.* The Committee may require each person acquiring shares of Common Stock pursuant to a Stock Option to represent to and agree with the Company in writing that the Optionee is acquiring the shares for investment without a view to distribution thereof. Each person acquiring shares of Common Stock pursuant to a Stock Option shall be required to abide by all policies of the Company in effect at the time of such acquisition and thereafter with respect to the ownership and trading of the Company's securities.

8.5     *Additional Incentive Arrangements.* Nothing contained in the Plan shall prevent the Board from adopting such other or additional incentive arrangements as it may deem desirable, including, but not limited to, the granting of Stock Options and the awarding of Common Stock and cash otherwise than under the Plan; and such arrangements may be either generally applicable or applicable only in specific cases.

8.6     *Withholding Taxes.* Not later than the date as of which an amount must first be included in the gross income of the Optionee for Federal income tax purposes with respect to any Stock Option, the Optionee shall pay to the Company, or make arrangements satisfactory to the Committee regarding the payment of, any Federal, state and local taxes of any kind required by law to be withheld or paid with respect to such amount. If permitted by the Committee, tax withholding or payment obligations may be settled with Common Stock, including Common Stock that is part of the award that gives rise to the withholding requirement. The obligations of the Company under the Plan shall be conditioned upon such payment or arrangements and the Company or the Optionee's employer (if not the Company) shall, to the extent permitted by law, have the right to deduct any such taxes from any payment of any kind otherwise due to the Optionee from the Company or any Subsidiary.

8.7     *Governing Law.* The Plan and all awards made and actions taken thereunder shall be governed by and construed in accordance with the laws of the State of Connecticut (without regard to choice of law provisions); provided, however, that all matters relating to or involving corporate law shall be governed by the laws of the State of Maine.

8.8     *Other Benefit Plans.* Any award granted under the Plan shall not be deemed compensation for purposes of computing benefits under any retirement plan of the Company or any Subsidiary and shall not affect any benefits under any other benefit plan now or subsequently in effect under which the availability or amount of benefits is related to the level of compensation (unless required by specific reference in any such other plan to awards under this Plan).

8.9     *Non-Transferability.* Except as otherwise expressly provided in the Plan or the Agreement, no right or benefit under the Plan may be alienated, sold, assigned, hypothecated, pledged, exchanged, transferred, encumbered or charged, and any attempt to alienate, sell, assign, hypothecate, pledge, exchange, transfer, encumber or charge the same shall be void.

    8.10    *Applicable Laws.* The obligations of the Company with respect to all Stock Options and awards under the Plan shall be subject to (i) all applicable laws, rules and regulations and such approvals by any governmental agencies as may be required, including, without limitation, the Securities Act of 1933, as amended, and (ii) the rules and regulations of any securities exchange on which the Common Stock may be listed

    8.11    *Conflicts.* If any of the terms or provisions of the Plan or an Agreement relating to an Incentive Stock Option conflict with the requirements of Section 422 of the Code, then such terms or provisions shall be deemed inoperative to the extent they so conflict with such requirements. Additionally, if this Plan or any Agreement relating to an Incentive Stock Option does not contain any provision required to be included herein under Section 422 of the Code, such provision shall be deemed to be incorporated herein and therein with the same force and effect as if such provision had been set out at length herein and therein. If any of the terms or provisions of any Agreement conflict with any terms or provisions of the Plan, then such terms or provisions shall be deemed inoperative to the extent they so conflict with the requirements of the Plan. Additionally, if any Agreement does not contain any provision required to be included therein under the Plan, such provision shall be deemed to be incorporated therein with the same force and effect as if such provision had been set out at length therein.

    8.12    *Non-Registered Stock.* The shares of Common Stock to be distributed under this Plan have not been, as of the Effective Date, registered under the Securities Act of 1933, as amended, or any applicable state or foreign securities laws and the Company has no obligation to any Optionee to register the Common Stock or to assist the Optionee in obtaining an exemption from the various registration requirements, or to list the Common Stock on a national securities exchange or any other trading or quotation system.

    8.13    *Right of Set-Off* To the extent permitted by law, the Company or the Optionee's employer (if not the Company) shall have the right to deduct from any payment of any kind otherwise due to the Optionee from the Company or any Subsidiary under the Plan or any Agreement entered into hereunder any amounts due and owing to the Company or the Optionee's employer, as the case may be, from the Optionee.

ARTICLE IX
DEFINITIONS

*Definitions.* For purposes of the Plan, the following terms shall be defined as set forth below:

    (a)    "Agreement" shall mean the agreement between the Company and an Optionee setting forth the terms and conditions of an award under the Plan.

    (c)    "Board" shall mean the Board of Directors of the Company.

    (d)    "Code" shall mean the Internal Revenue Code of 1986, as amended from time to time

    (e)    "Committee" shall mean the Board or such committee of the Board that the Board may designate to administer the Plan or any portion thereof. If no Committee is so designated, then all references in this Plan to "Committee" shall mean the Board.

    (f)    "Common Stock" means the Common Stock of the Company, par value $1.00 per share.

    (g)    "Company" shall mean First Hartford Corporation, a corporation incorporated under the laws of the State of Maine.

    (h)    "Disability" shall mean physical or mental impairment as determined under procedures established by the Committee for purposes of the Plan.

    (i)    "Effective Date" shall have the meaning set forth in Section 7.1 hereof.

    (j)    "Exchange Act" shall mean the Securities Exchange Act of 1934, as amended from time to time

FHC0033

(k) "Fair Market Value," when used in reference to a share of Common Stock as of a particular date (such as the date of grant or the date of exercise of an award under the Plan), means the fair value per share of Common Stock as of such date, determined in accordance with the following procedures:

(i) the fair value per share of the Common Stock shall be the closing bid price per share for the Common Stock on such date, as reported by the OTC Bulletin Board or the National Quotation Bureau, Incorporated or similar publisher of such quotations; and

(ii) if the fair value per share of the Common Stock cannot be determined pursuant to clause (i) above, then the fair value per share of the Common Stock shall be determined by the Committee in good faith.

(l) "Incentive Stock Option" shall mean any Stock Option intended to be, designated as, and meeting the requirements of, an "incentive stock option" within the meaning of Section 422 of the Code.

(m) "Nonqualified Stock Option" shall mean any Stock Option that is not an Incentive Stock Option, including, from and after the date an Incentive Stock Option ceases to qualify as such, any Incentive Stock Option that ceases to qualify as an Incentive Stock Option.

(n) "Normal Retirement" shall mean retirement from active employment with the Company or any Subsidiary on or after age 65.

(o) "Optionee" shall mean a person who has received an award under the Plan.

(p) "Outside Director" shall mean a Director who, as of the close of business on the date of grant of any award hereunder, is not an employee of the Company or any Subsidiary.

(q) "Parent" shall mean any present or future "parent corporation" of the Company, as such term is defined in Section 424(e) of the Code.

(r) "Plan" shall mean the First Hartford Corporation Stock Option Plan, as amended from time to time.

(s) "Stock Option" or "Option" shall mean an option to purchase shares of Common Stock which is granted pursuant to the Plan.

(t) "Subsidiary" shall mean any present or future "subsidiary corporation" of the Company, as such term is defined in Section 424(f) of the Code.

FHC0034

EXHIBIT "C"
TO FEBRUARY 11, 2004 MINUTES
OF FIRST HARTFORD CORPORATION SPECIAL BOARD OF DIRECTOR(S) MEETING
REGARDING EMPLOYEE STOCK OPTION PLAN

First Hartford Corporation (the "Company" or the "Corporation") has, as of this 11th day of February, 2004 approved and ratified the issuance of the following employee stock options regarding the stock of the Company. These options are granted pursuant and subject to the terms of the First Hartford Corporation 2003 stock plan, which are incorporated herein by reference.

Eligibility:

Those eligible for the currently issued stock option grants are the officers and directors of the parent Company and full time key salaried employees (as identified by the Board of Directors) who have worked for the Corporation for at least ten (10) consecutive years as of the Grant Date and voluntarily remain full time employees of the Company during the Vesting Period described below. The foregoing continuing employment during the Vesting Period requirement shall not apply to any employee who is at least 65 years of age on the Grant Date and voluntarily chooses to retire during the Vesting Period. This issuance shall not limit the eligibility of other employees which may be designated by the Board of Directors for future issuance of Stock Options.

What is a Stock Option:

A stock option is a right granted by the Company to purchase a stated number of shares of First Hartford Corporation Stock at a fixed price during a specific time period.

Type of Stock Option:

The granted stock options are not "incentive" stock option(s) as that term is defined in section 42.2 of the Internal Revenue Code.

Total Available Stock Options Which Could be Issued Under The Plan By The Company:

Up to 1,000,000 shares.

Grant Price As Determined By The Corporation:

$1.10 per share (the "Grant Price") for the initial distribution only. This reflects the fair market value of the stock based upon the "best bid" price of the stock on the Grant Date

Grant Date of Options:

February 11, 2004.

Vesting Date of All Options Granted:

Two (2) years after the Grant Date (the "Vesting Date"). This two (2) year period shall be called the "Vesting Period".

Duration of Options:

Ten (10) years after the Grant Date (the "Duration Period") the right to exercise the options will expire.

Employees Currently Designated And Approved To Receive Stock Options:

1. Stuart I Greenwald (Employee #1)
2. David B. Harding (Employee #2)
3. Herbert Byk (Employee #3)
4. Jeffrey M. Carlson (Employee #4)
5. Michael Sweeney (Employee #5)

Amount of Stock Options Granted By The Corporation As of the Grant Date:

| Employee | Shares | |
|---|---|---|
| Employee #1 | 50,000 | shares |
| Employee #2 | 50,000 | shares |
| Employee #3 | 50,000 | shares |
| Employee #4 | 50,000 | shares |
| Employee #5 | 50,000 | shares |

Right To Exercise Stock Options:

Provided the Stock Options have not expired, at any time after the Vesting Date, the applicable employee (noted above) shall have right to exercise some or all of his stock options (in lots of at least 1,000 shares) by delivery of a written notice (the "Exercise Note") to Neil H. Ellis at 149 Colonial Road, Manchester, CT 06040 (or his designate or nominee). The amount of shares exercised in the Exercise Notice shall be called the "Exercised Shares".

Note: You do not have to exercise your options after the Vesting Date. You can, in the alternative, choose to retain them as a longer term investment.

Effect of Exercise of Options:

If and when you choose to issue an Exercise Notice to the Company you have several options to consider:

1.) Subject to compliance with the "Payment Requirement" (described below), you can instruct the Company to cause the Exercised Shares to be issued to your designated brokerage account. The Company will accomplish this transfer no later than three (3) business days after its receipt of the Exercise Notice.

Note: You will recognize ordinary income for taxpayer upon exercise of the option in an amount equal to the excess of the fair market value of the stock at the time of exercise over the exercise price. If you exercise the "Put Option" (described below) you will recognize additional ordinary income equal to the excess of the amount received over the fair market value of the stock.

2.)   The "Put Option":

Provided the Stock Options have not expired, at any time within five (5) years after the Vesting Date, the employee may; (i) in lieu of acquiring ownership of the Exercised Shares, or (ii) after having acquired the Exercised Shares [but prior to selling them on the applicable stock market exchange], elect to have the Company buy the Exercised Shares from the employee for a price of $1.30 per share in excess of the Grant Price (the "Put Price"). This election may be made simultaneously with the Exercise Notice or by the issuance of a separate "Put Option Notice" by the employee to Mr. Neil Ellis (or his designate or employee) made within five (5) years after the Vesting Date but prior to the employee having otherwise sold the stock on the applicable stock market exchange. This Put Option shall apply only to the particular shares subject to this initial distribution.

Note: The employee shall be responsible for any commissions or taxes due as a result of the exercise of the Put Option and the Company may, at its option, withhold sufficient sums from the Put Price to cover the tax/commission expenses incurred by the employee from this transaction.

Payment Requirement For Exercised Share(s):

Should the employee choose to retain ownership of the Exercised Shares (and not elect the "Put Option" noted above at the time of the employee's issuance of Exercise Notice ), the employee shall cause payment to be made for the number of the Exercised Shares times the Grant Price (i.e. 50,000 Exercised Shares x $1.10 = $55,000.00 due to the Company from the Employee) (the "Payment Requirement") to the Company prior to or simultaneously with the Company's issuance of the Exercised Shares to the employee.

Caveat:

The Corporation reminds the employee that in exercising the Put Option, the Put Payment to the employee would (under current tax laws) be treated as ordinary income. The foregoing caveat is for informational purposes only and should not be relied upon as a tax opinion or warranty from the Company.

Survivorship Rights:

The employee shall have the right to designate a survivorship beneficiary to receive the rights to Exercised Shares which shall be issued with rights of survivorship to the employee and his designated beneficiary should such circumstances arise.

Rights To Modify Option Grant Procedures:

So long as the rights of the employee are not adversely affected, the Corporation reserves the right to modify the manner or procedure by which the foregoing stock options are granted or otherwise administered if the Company reasonably deems it necessary to comply with applicable laws and if such modification(s) would be permitted under applicable laws.

Inquiries:
Should be directed to Stuart I. Greenwald at 149 Colonial Road, Manchester, CT 06040.