# Exhibit E

PLAINTIFF'S EXHIBIT
Ellis 2
6/3/05

# LIMITED PARTNERSHIP AGREEMENT

Agreement dated December 18, 1998 between PARKADE CENTER, INC., a Texas corporation, having an office at 149 Colonial Road, Manchester, Connecticut 06040 (hereinafter referred to as the "General Partner"), and HARTFORD-LUBBOCK LIMITED PARTNERSHIP, a Texas Limited Partnership having an address at 149 Colonial Road, Manchester, Connecticut 06040 (hereinafter referred to as "H-LLP" or the "Limited Partner." The General Partner and the Limited Partner are hereinafter sometimes referred to collectively as "Partners."

## PREAMBLE

The Partners wish to associate themselves as a Texas limited partnership (hereinafter referred to as the "Partnership") for the purpose of acquiring and refinancing three parcels of land with a shopping center thereon located at the Southeast corner of Loop 289 and Quaker, Lubbock, Texas and thereafter marketing, leasing and/or selling said property (hereinafter referred to as the "Property"). In order to carry out is purposes, the Partnership is authorized to do any and all acts and things necessary, appropriate, proper, advisable, incidental to or convenient for the furtherance and accomplishment of its purposes, and for the protection and benefit of the Partnership directly or through a nominee, including but no limited to the following: (a) the acquisition of the Property; (b) the borrowing and issuance of evidences of indebtedness in furtherance of the business of the Partnership and the security of such indebtedness by mortgage, pledge or other lien, negotiation and concluding of agreements for the sale of all or substantially all of the property of the Partnership.

1. **FORMATION AND PURPOSE**

   (a) The Partnership shall be formed in accordance with the laws of the State of Texas. The General Partner may take such further action as it may deem necessary or proper to permit the Partnership to conduct the business as a limited partnership in the State of Texas.

   (b) The Partnership shall be called HARTFORD-LUBBOCK LIMITED PARTNERSHIP II and shall have its principal office and place of business at 149 Colonial Road Manchester, Connecticut, or such other address as may be designated from time to time by the General Partner.

   (c) The term of the Partnership shall commence as of the date hereof and shall end on December 31, 2028, unless sooner terminated in accordance with this Agreement.

   (d) The purpose of the Partnership are to own, construct, develop, maintain, operate, manage, finance and sell the Property. In order to carry out its purposes, the Partnership is authorized to do any and all acts and things necessary, appropriate, proper, advisable, incidental to or convenient for the furtherance and accomplishment of its purposes, and for the protection and benefit of the Partnership, including but not limited to the following:

   (i) borrowing money and issuing evidences of indebtedness in furtherance of the business of the Partnership and securing such indebtedness by mortgage, pledge or other lien; provided, however, that the General Partner may refuse to consummate any loan transaction unless any evidence of indebtedness and documents securing the same shall provide in substance and legal effect that neither the Partnership nor any of the Partners shall have any personal liability for the payment of such indebtedness and that the sole recourse of the lender shall be to

7.    MANAGEMENT AND OPERATION:

(a) The General Partner shall have full, exclusive and complete discretion in the management and control of the affairs of the Partnership for the purposes stated herein [including the power and authority to execute the Deed of Trust described in paragraph 2 of section 14 below and any other documents required by the lender to consummate the loan closing relative to said Deed of Trust and any amendments or modifications relative thereto] and shall make all decisions affecting Partnership affairs. However, the General Partner shall not have the power to unilaterally bind the Partnership in connection with any of the following:

(i) Except as otherwise permitted herein, the creation, assumption or other incurring of any indebtedness to any person or entity, the making of any investment in any other person or entity, the making of loans, guarantees or any other extension or pledge of credit to others, the purchase or other acquisitions of any property, or the making of any payments of money;

(ii) The sale or transfer of all or any part of the Property.

(iii) To borrow money and as security thereof to mortgage or otherwise place liens upon all or any part of the Partnership or any other property of the Partnership or the Partnership's interest therein;

(iv) To obtain replacements of any mortgage or other lien related in any way to the Property or any other property of the Partnership;

(v) To prepay, in whole or in part, refinance, recast, modify, consolidate or extend any mortgage or other lien affecting the Property or any other property of the Partnership; and

(b) In conducting the business and affairs of the Partnership, the General Partner shall have all of the powers, rights, and authority necessary to conduct such business and affairs including but not limited to the following:

(i) To plan, supervise and contract for all advertising, press releases and public communications in connection with the Property;

(ii) To enter into contracts in the name of the Partnership;

(iii) To establish accounts in banks an depositories, to make and designate others to make deposits of the Partnership receipts and other Partnership monies to such accounts and to make and designate others to make withdrawals by signature, facsimile or otherwise, for Partnership expenses from such accounts;

(iv) To receive and receipt for all monies collected by or paid to or for the account of the Partnership;

(v) To make payments from Partnership funds for, or on account of, contract sums due, and otherwise to perform and comply with the present and future contracts and obligations of the Partnership;

(vi) To make Distributions in accordance with Sections 4 and 5 of this Agreement;

-3-

Confidential Subject to Protective Order

FHC1969

(vii) To prepare, sign and timely file the Partnership's income tax returns;

(viii) To maintain for the conduct of the Partnership affairs one or more offices and in connection therewith rent or acquire office space, engage personnel whether part time or full time, and do such other acts as the General Partner may deem necessary or advisable in connection with the maintenance or administration of such office or offices;

(ix) To place record title to, or the right to use, Partnership assets in the name or names of a nominee or nominees including the General Partner for any purpose convenient or beneficial to the Partnership;

(x) To purchase from others, at the expense of the Partnership, contracts of liability, casualty and other insurance which the General Partner deems advisable, appropriate or convenient for the protection of the assets or affairs of the Partnership or for any purpose convenient or beneficial to the Partnership;

(xi) To engage independent attorneys, accountants, or such other persons, firms or corporations as the General Partner may deem necessary or advisable and for such compensation as the General Partner may determine;

(xii) To set up and, from time to time, increase, such reserves for Partnership losses and liabilities as the General Partner in its sole discretion deems reasonable and necessary;

(xiii) To build any improvements on the Property;

(xiv) To employ and dismiss from employment any and all employees, agents, independent contractors, real estate managers, brokers, attorneys and accountants;

(xv) To settle on behalf of the Partnership on such terms as the General Partner in its discretion deems appropriate, any action or proceeding brought in connection with an audit of the Partners' return of income;

(xvi) To do any and all of the foregoing upon such terms and conditions as it may deem proper, and to execute, acknowledge and deliver any and all instruments in connection with any or all of the foregoing and to take such further action as the General Partner may deem necessary or advisable in connection with the management and business of the Partnership.

Confidential Subject to Protective Order

-4-

FHC1970

(d) The General Partner shall not be personally liable for the return of any capital contribution or Capital Contribution or the repayment of any loan or advance made to the Partnership by the Limited Partner. The General Partner shall have no liability whatsoever to the Partnership or any Partner for any loss suffered by the Partnership which arises out of any action or inaction of the General Partner, if the General Partner, in good faith, determined that such course of conduct was in the best interests of or not opposed to the interests of, the Partnership.

(e) The Limited Partner shall not take part in the management of the business of the Partnership or transact any business for the Partnership.

8. INDEMNIFICATION/EXPENSES

(a) The Partnership shall indemnify and hold harmless, to the extent there is cash available after paying or providing for the payment of all other Partnership expenses, the General Partner from any loss, damage, fine, penalty, expenses (including attorneys' fees), judgment or amounts paid in settlement incurred or paid by any General Partner by reason of its performance or nonperformance of any act concerning the activities of the Partnership or in furtherance of its interests or purposes; provided, however, that there shall be no indemnification in relation to matters as to which the General Partner is adjudged to have been guilty of fraud, bad faith or gross negligence.

(b) Expenses incurred in defending a civil or criminal action, suit or proceeding may be paid by the Partnership in advance of the final disposition of such action, suit or proceeding as authorized by the General Partner.

(c) The indemnification provided by this Section shall not be deemed exclusive of any other rights to which those seeking indemnification may be entitled under any agreement or otherwise, and shall inure to the benefit of the heirs, executors and administrators or successors of such a person.

(d) The Partnership shall pay all of its own operating, overhead and administrative expenses of every kind, including costs involved in the acquisition of the Property. The General Partner shall be entitled to reimbursement from the Partnership for its direct and indirect expenses, including the fees and expenses of attorneys, accountants, engineers, consultants and other such persons, and the cost of any insurance, equipment, supplies and other materials furnished by the General Partner to the Partnership as well as for its general overhead and administrative expenses, which charges shall be treated as a general and administrative expense of the Partnership. In addition, the General Partner or companies affiliated with, or subsidiaries of stock holders of the General Partner shall have the right to enter into contracts with the Partnership for the construction work contemplated under this Agreement provided such contracts are at competitive prices with similar contracts in the Lubbock, Texas area.

Confidential Subject to Protective Order

FHC1971

9. BOOKS OF ACCOUNT; FINANCIAL STATEMENTS; ACCOUNTANTS

(a) The General Partner shall cause to be maintained true and proper books of account, throughout the term of the Partnership, wherein shall be entered particulars of all monies, goods or effects belonging to or owing to or by the Partnership, or paid, received, or sold or purchased in the course of the Partnership business, and all of such other transactions, matters and things relating to the business of the Partnership as are usually entered in books of account kept by persons engaged in a business of a like kind and character. The said books of account shall be kept in the principal place of business of the Partnership and each Partner or designee thereof shall at all times have free access to all such books and records including a right to audit same by an accountant(s) of its choice.

(b) The Partnership shall cause to be prepared by the Partnership's accountants, and delivered to each Partner within 90 days after the end of each fiscal year, the following:

(i) A balance sheet and related statements of income and retained earnings and changes in financial position;

(ii) An analysis of all Distributions and payments under Sections 4 and 5 hereof;

(iii) Such other information as in the opinion of the General Partner shall be reasonably necessary in order for the Partners to be currently aware of the operating and business results of the Partnership; and

(iv) Any additional information necessary for the preparation by any Partner of his federal and state and local income or other tax returns.

(c) The fiscal year of the Partnership shall end on the last day of December in each year or on such other date as may be designated by the General Partner.

10. OTHER BUSINESS

Each of the Partners may engage in, or possess an interest in, other business ventures of every nature and description, independently or with others, whether or not such other enterprises shall be in competition with the Partnership and the Property and neither the Partnership nor the other Partners shall have any right by virtue of this Agreement in and to such independent partners or to the income or profits derived therefrom.

11. TRANSFERABILITY

(a) Except for a Transfer to an Affiliate or a Transfer to another Partner ("Transfer"), no Partner shall cause or permit a Transfer without the prior written consent of the General Partner and the Limited Partner. Any attempted or purported Transfer made without such consent shall be automatically void ab initio. No Transfer made by a Partner shall in any event release such Partner from its obligations under this Agreement.

-6-

Confidential Subject to Protective Order

FHC1972

(b) Except as otherwise herein provided, this Agreement shall be binding upon and inure to the benefit of the Partners and their respective successors, personal representatives, heirs and assigns.

(c) In the case of a Partner Transfer, all legal matters incidental thereto shall be reasonably satisfactory to counsel for the Partnership, and the transferring Partner shall furnish to said counsel such instruments and documents, including releases and instruments of transfer and assumption, as said counsel may reasonably request, and all such papers shall be in such form as said counsel may reasonably request.

(d) The Partnership and the General Partner may deem and treat the person or entity in whose name this Agreement is executed as the sole and absolute owner of the Partnership interest for the purpose of receiving all payments and Distributions of any nature hereunder from the Partnership and for all other purposes, and the Limited Partner and General Partner shall not be bound by any notice to the contrary unless there is a valid Transfer in compliance with all of the provisions of this Section 11.

12. DISSOLUTION

(a) The Partnership shall be dissolved upon the earliest to occur of:

(i) The expiration of its term as provided in this Agreement;

(ii) The sale or other disposition of all or substantially all of the Property.

(iii) The death, insanity, incompetency, retirement of Neil H. Ellis or the termination or dissolution of the General Partner;

(iv) The unanimous determination of the General Partner and the Limited Partner;

(v) The assignment for the benefit of creditors or adjudication of bankruptcy of the General Partner or appointment of a receiver for or seizure by a judgment creditor or judgment creditors of the General Partners interest in the Partnership.

(b) Upon dissolution, all certificates or notices thereof required by law shall be filed and the Partnership business shall be concluded as hereinafter provided.

(c) The Partnership's accountant shall prepare and furnish to each Partner a statement setting forth the assets and liabilities of the Partnership as of the date of complete liquidation. Upon complete liquidation of the Partnership property, the Partners shall execute, acknowledge and cause to be filed all documents necessary to terminate the Partnership.

(d) In the event of liquidation of the Partnership assets, the assets of the Partnership shall be liquidated as promptly as possible, but in an orderly businesslike manner as the General Partner shall determine in its sole discretion and so as not to involve undue sacrifice, and the proceeds thereof shall be applied and distributed in the following order of priority:

-7-

Confidential Subject to Protective Order

FHC1973

(i) For the payment of the debts and liabilities of the Partnership, and the expenses of litigation;

(ii) For the setting up of any reserves which the General Partner deems reasonably necessary for any contingent or unforeseen liabilities or obligations of the Partnership arising out of or in connection with the Partnership. Said reserves shall be paid over by the General Partner to an attorney-at-law, as escrowee, to be held by him for the purpose of disbursing such reserves in payment of any of the aforementioned contingencies, and, at the expiration of such period, as the General Partner deems advisable, to distribute the balance thereafter remaining in the manner hereafter provided; and

(iii) All remaining assets shall be distributed among the Partners in accordance with the provisions of Section 5 hereof.

(e) In the event of the death or adjudication of legal incompetency of the General Partner, the legally authorized personal representative of such individual shall have all of the rights of such General Partner with respect to distributions and allocations hereunder for the purposes of settling or managing such individual's estate.

13. GENERAL PROVISIONS

(a) Title to the Property shall be held in the name of the Partnership or its nominee or designee. No Partner shall have the right to partition the Property nor shall any Partner make any application to or petition any court or authority having jurisdiction over the matter nor commence or prosecute any action for partition and the sale thereof, and upon any breach of the provisions of this Section 13(a) by a Partner, the other Partner shall, in addition to all other rights and remedies which might be available at law or in equity, be entitled to a decree or order restraining and enjoining such application, petition, action or proceeding, and the offending Partner shall not plead in defense thereto that there would be an adequate remedy at law, it being recognized and agreed that the injury and damage resulting from such a breach would be impossible to measure monetarily.

(b) In the event that a Partner shall at any time make a Transfer in violation of the provisions hereof, the other Partners shall, in addition to all other rights and remedies which they may have at law or in equity, be entitled to a decree or order restraining and enjoining such Transfer, and the offending Partner shall not plead in defense thereto that there would be an adequate remedy at law, it being recognized and agreed that the injury and damage resulting from such a breach would be impossible to measure monetarily.

(c) All notices required or permitted pursuant to this Agreement shall be in writing and shall be deemed to be sufficiently given or served for all purposes three (3) days after mailing when sent by Certified Mail (Return Receipt Requested) (i) to the Partnership at its principal office at: 149 Colonial Road, Manchester, Connecticut, and (ii) to the Partners at their addresses set forth above, or to such other address or addresses as a Partner may hereafter specify by notice given in accordance with the requirements of this sentence to the Partnership and the other Partners together with a copy to each of the below mentioned Partners' attorneys as follows:

Confidential Subject to
Protective Order

FHC1974

(i) If to Parkade Center, Inc.

149 Colonial Road
Manchester, Connecticut 06040

(ii) If to Hartford-Lubbock Limited Partnership

149 Colonial Road
Manchester, Connecticut 06040

(d) This Agreement shall be governed and construed in accordance with the laws of the State of Texas.

(e) The Partners will execute and deliver such further instruments and do such further acts and things as may be reasonably required to carry out the purpose and intent of this Agreement.

(f) This Agreement constitutes the entire agreement among the Partners pertaining to the subject matter hereof and supersedes all prior and contemporaneous agreements and understandings of the Partners in connection therewith. No covenant, representation or condition not expressed in this Agreement shall affect or be effective to interpret, change or restrict the express provisions of this Agreement. The provisions of this Agreement may not be waived except by written agreement executed by the parties to be bound thereby.

(g) None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditors of the Partnership.

(h) This Agreement may be executed in any number of counterparts and each of such counterparts shall for all purposes constitute one agreement, binding on the Partners notwithstanding that all Partners are not signatories to the same counterpart.

(i) Each Partner has received and read a copy of this Agreement. The Partners agree to be bound by this Agreement. All references to this Agreement are deemed to refer to all such counterparts.

(j) The General Partner is severally granted and authorized on behalf of the Limited Partner to execute any and all instruments and to do or have done all things deemed by the General Partner to be necessary or convenient to the Partnership's business, and shall, to the extent necessary therefor, irrevocably be and hereby is made, constituted and appointed for the Limited Partner, agent and attorney-in-fact for all purposes relative to the creation and continuation of the Partnership and for the conduct of its business. This Power of Attorney granted by the Limited Partner to the General Partner is a special power of attorney coupled with an interest, is irrevocable. The Power of Attorney may be exercised by the General Partner by a single signature of the General Partner.

(k) The parties herein agree that in the event the shopping center becomes operational and income is derived from the respective tenants then, to the extent that there is net positive cash flow at the end of each month, said cash flow can be distributed to the Partners on the basis of 1% to the General Partner and 99% to the Limited Partner.

Confidential Subject to Protective Order

FHC1975

14. **MISCELLANEOUS SPE PROVISIONS**

The following provisions are added to this Limited Partnership Agreement. In the event of any conflicts between this Item 14. and the other 13. Items above, this Item 14. shall control.

1. Purpose. The Partnership's business and purpose shall consist solely of the acquisition, ownership, operation and management of the real estate project known as Lubbock Parkade located in Lubbock, Texas (the "Property") and such activities as are necessary, incidental or appropriate in connection therewith.

2. Powers and Duties. (a) Notwithstanding any other provision of this Agreement and so long as any obligation secured by that certain [Loan Agreement/Deed of Trust in the amount $7,380,000 executed or to be executed, in favor of GECC, as lender] (the "Deed of Trust") remains outstanding and not discharged in full, without the prior written consent of the holder of the Mortgage, the General Partner and the Partnership shall have no authority to:

(i) borrow money or incur indebtedness on behalf of the Partnership other than normal trade accounts payable and lease obligations in the normal course of business, or grant consensual liens on the Partnership's property; except, however, that the General Partner is hereby authorized to secure financing for the Partnership pursuant to the terms of the Mortgage and other indebtedness expressly permitted therein or in the documents related to the Mortgage, and to grant a mortgage, lien or liens on the Partnership's Property to secure such Mortgage;

(ii) dissolve or liquidate the Partnership;

(iii) sell or lease, or otherwise dispose of all or substantially all of the assets of the Partnership;

(iv) amend, modify or alter all Sections of this Item 14.;

(v) merge or consolidate with any other entity.

(b)    So long as any obligations secured by the Mortgage remain outstanding and not discharged in full, the General Partner and the Partnership shall have no authority, <u>unless</u> such action has been approved by the unanimous vote of the General Partner's Board of Directors and the unanimous vote of all other Partners, to file a voluntary petition or otherwise initiate proceedings to have the Partnership adjudicated bankrupt or insolvent, or consent to the institution of bankruptcy or insolvency proceedings against the Partnership, or file a petition seeking or consenting to reorganization or relief of the Partnership as debtor under any applicable federal or state law relating to bankruptcy, insolvency, or other relief for debtors with respect to the Partnership; or seek or consent to the appointment of any trustee, receiver, conservator, assignee, sequestrator, custodian, liquidator (or other similar official) of the Partnership or of all or any substantial part of the properties and assets of the Partnership, or make any general assignment for the benefit of creditors of the Partnership, or admit in writing the inability of the Partnership to pay its debts generally as they become due or declare or effect a moratorium on the Partnership debt or take any action in furtherance of any action.

3.    **Title to Partnership Property**. All property owned by the Partnership shall be owned by the Partnership as an entity and, insofar as permitted by applicable law, no Partner shall have any ownership interest in any Partnership property in its individual name or right, and each Partner's Partnership interest shall be personal property for all purposes.

4.    **Separateness/Operations Matters**. The Partnership shall:

(a)    maintain books and records and bank accounts separate from those of any other person;

(b)    maintain its assets in such a manner that it is not costly or difficult to segregate, identify or ascertain such assets;

(c)    hold regular Partnership meetings, as appropriate, to conduct the business of the Partnership, and observe all other Partnership formalities;

(d)    hold itself out to creditors and the public as a legal entity separate and distinct from any other entity;

(e)    prepare separate tax returns and financial statements, or if part of a consolidated group, then it will be shown as a separate member of such group;

(f)    allocate and charge fairly and reasonably any common employee or overhead shared with affiliates;

DAL02:4151.2

Confidential Subject to
Protective Order

FHC1977

(g) transact all business with affiliates on an arm's-length basis and pursuant to enforceable agreements;

(h) conduct business in its own name, and use separate stationery, invoices and checks;

(i) not commingle its assets or funds with those of any other person;

(j) not assume, guarantee or pay the debts or obligations of any other person;

(k) correct any known misunderstanding as to its separate identity;

(l) not permit any affiliate to guarantee or pay its obligations (other than limited guarantees set forth in the Mortgage or related documents; and

(m) not make loans or advances to any other person.

5. Effect of Bankruptcy, Death or Incompetency of a Limited Partner. The bankruptcy, death, dissolution, liquidation, termination or adjudication of incompetency of a Limited Partner shall not cause the termination or dissolution of the Partnership and the business of the Partnership shall continue. Upon any such occurrence, the trustee, receiver, executor, administrator, committee, guardian or conservator of such Limited Partner shall have all the rights of such Limited Partner for the purpose of settling or managing its estate or property, subject to satisfying conditions precedent to the admission of such assignee as a substitute Limited Partner. The transfer by such trustee, receiver, executor, administrator, committee, guardian or conservator of any Partnership Interest shall be subject to all of the restrictions, hereunder to which such transfer would have been subject if such transfer had been made by such bankrupt, deceased, dissolved, liquidated, terminated or incompetent Limited Partner.

15. ADDRESS OF THE LIMITED PARTNERSHIP

The principal address of the limited partnership is 149 Colonial Road, Manchester, CT 06040. This is the office where the books and records of the limited partnership are kept or made available.

16. AGENT FOR SERVICE

The agent for service is Mark E. Golman, Esq. With an address of Strasburger & Price, LLP, 901 Main Street, Suite 4300, Dallas, Texas 75202-3794.

Confidential Subject to
Protective Order

IN WITNESS WHEREOF, this Agreement has been executed by the Partners hereto as of the date first above written.

PARKADE CENTER, INC.

BY: _____
David Harding
Vice President

HARTFORD-LUBBOCK LIMITED PARTNERSHIP
Acting through its general partner,
PARKADE CENTER, INC.

BY: _____
Neil H. Ellis
President