UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD E. KAPLAN,<br><br>*Plaintiff,*<br><br>v.<br><br>FIRST HARTFORD CORPORATION,<br><br>*Defendant.* | Civil Action Nos.<br>04-10402-NMG<br>05-10320-NMG<br>06-01424-NMG<br>CONSOLIDATED |

**DEFENDANT FIRST HARTFORD CORPORATION'S OPPOSITION TO
PLAINTIFF RICHARD E. KAPLAN'S MOTION TO COMPEL**

I.   INTRODUCTION

Plaintiff Richard E. Kaplan ("Kaplan") has now filed a second groundless motion to compel production on the eve of trial in this consolidated matter. This time, Kaplan is attempting to circumvent the explicit restrictions placed upon him by this Court and by the United States District Court for the District of Maine. Kaplan is well aware that the protective order entered by the Court in Maine requires him to seek the permission of that court to use materials from the Maine case elsewhere. Disregarding that requirement, however, Kaplan has attempted an end run on that court's authority. Leaving aside the requirements of the order in Maine -- which Kaplan chose not to mention in his motion -- substantively, Kaplan is not entitled to the documents he seeks because they are not responsive to his document request and the requests exceed the narrow scope of discovery that this Court permitted on the eve of trial. The Court should therefore deny Kaplan's motion.

II.   BACKGROUND

On September 15, 2005, Kaplan filed in the U.S. District Court for the District of Maine yet another case against First Hartford Corporation ("FHC") (as well as its President, Neil Ellis) alleging various corporate improprieties. In that case, styled Richard Kaplan v. First Hartford Corporation and Neil Ellis, Civil Action No. 144-B-H, Kaplan seeks various draconian forms of relief, including the appointment of a receiver, the liquidation of the company, and/or the repurchase of his (and others') shares by FHC. Discovery in that case has been ongoing since shortly after Kaplan filed that case. As a review of the Complaint in the Maine action makes clear (see copy attached as Exhibit 1), while the facts are similar, that case is significantly broader both in the scope of the claims and desired relief than the Massachusetts actions, which solely address purported violations of the proxy rules. In contrast to the Maine case, where Kaplan seeks extraordinary equitable relief, the only relief that Kaplan is even arguably entitled to here would be some form of re-vote (and even that may be moot) and an award of attorneys' fees. Accordingly, the scope of discovery in the Maine case has been correspondingly much broader than in this case.

On February 3, 2006, the Maine Court (Kravchuk, U.S.M.J.) entered a confidentiality order governing discovery in that case (the "Maine Confidentiality Order") (see copy attached as Exhibit 2). Paragraph 3 of that order permits a party to designate documents as CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER after a party's attorney has made a good faith determination that particular documents require such protection under the standards set forth in that paragraph. FHC has designated certain of the documents it has produced to Kaplan in Maine as CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER.

Paragraph 6 of the Maine Confidentiality Order states as follows:

> **6.    Protection of Confidential Material.**
>
> **(a) General Protections**. Documents designated CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER under this Order shall not be used or disclosed by the parties, counsel for the parties or any other persons identified in ¶ 6(b) <u>for any purpose whatsoever</u> other than to prepare for and to conduct discovery and trial <u>in this action</u>, including any appeal thereof. [Emphasis added.]

Paragraph 6(b) goes on to limit disclosure of CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER documents to counsel for the parties, the parties themselves, court reporters, contractors, experts, or others by consent of the parties or by order of the Court. Paragraph 9 provides a mechanism for a party to challenge the other party's designation of a document as CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER. In summary, a party may object to the designation within 30 days of receipt of the document, then confer with the other party, and, if necessary, file a motion with the Court.

III.    ARGUMENT

    A.    Kaplan has willfully violated the Maine Confidentiality Order to supplement his discovery in this case.

To use the documents in question here -- which he obtained in discovery in the Maine case and which are conspicuously stamped CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER -- Kaplan must seek permission <u>from the Maine Court</u>. Although the Maine Confidentiality Order does not provide a specific mechanism by which a party may seek the Court's permission to use a document stamped CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER for a purpose other than trial of the Maine action, it requires an objecting party to seek an order of the Court upholding that objection.[1]  Kaplan has inexplicably

---

[1] If the Maine court agreed with Kaplan and upheld the objection, then presumably the documents would no longer be subject to protection.

failed to comply with that requirement and instead is seeking to have this Court provide the relief that Kaplan should have sought in Maine, i.e., permission to use documents obtained in discovery in the Maine case, which does not close until May 29, 2006, in the Massachusetts cases.[2]  Discovery in Massachusetts is also closed.

Kaplan claims that he is in the "anomalous" position of being aware from the Maine case of documents that FHC should purportedly have produced in this case (see Kaplan motion at 3 n. 3).[3]  This so-called "anomaly," however, is purely a product Kaplan's own doing, i.e., Kaplan agreed to the terms of the Maine Protective Order.  Kaplan only knew to ask in recent depositions and document requests about purported payments to Neil Ellis's daughters because they learned about them in the Maine case via FHC's production of documents designated CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER.[4]  Kaplan has now attempted to circumvent the restrictions in Maine by using the knowledge acquired there to request the same documents in the Massachusetts action.  But again, this attempt runs headlong into the explicit provisions of the Maine Confidentiality Order, which places restrictions not only on the disclosure and use of <u>documents</u> but also on "<u>information derived directly therefrom</u> . . . ." (Maine Confidentiality Order at ¶ 1.)  It would defeat an essential purpose of a protective order if

---

[2] Both of Kaplan's Massachusetts counsel sought and were granted admission pro hac vice in the Maine action.  Presumably having now been so admitted, they qualify as "counsel" to Kaplan in the Maine action and are now privy to documents produced there, even those designated CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER.

[3] Kaplan has not requested that the Maine Confidentiality Order be modified.

[4] Footnote 3 in Kaplan's motion is also noteworthy for what it does not say, i.e., nowhere does Kaplan mention the obvious remedy available to him: to ask the Maine court for relief.  It is a mystery how Kaplan can claim that he "could not use documents that were relevant to these [Massachusetts cases], and that it had in its possession," when he never made any attempt to seek relief in Maine.

a party could review restricted documents in one case and use that confidential knowledge to ask for the very same documents in another case.[5]

  B. <u>Kaplan continues to ignore the discovery limits this Court placed upon him.</u>

In addition to violating the provisions of the Maine Confidentiality Order, Kaplan also seeks to evade this Court's admonition with respect to discovery in Civil Action No. 06-01424-NMG ("<u>Kaplan III</u>"). In particular, during the April 6, 2006 final pretrial conference, the Court made clear that Kaplan would be entitled to "minimal" additional discovery on the newly-filed <u>Kaplan III</u> case. (Tr. at 15:25 (<u>see</u> copy attached as Exhibit 3).) Specifically, the Court stated that it would "allow [Kaplan] a brief amount of additional discovery . . . in order to supplement the discovery [Kaplan has] already had." (<u>Id</u>. at 14:22-24.) The Court limited Kaplan to "taking a couple-hour depositions of people or getting some additional documents, which you would be entitled to <u>if there are such additional documents that relate solely to the third meeting that is in dispute</u>" (<u>i.e.</u>, the meeting at issue in <u>Kaplan III</u>). (<u>Id</u>. at 16:2-5 (emphasis added).) Curiously, Kaplan has repeatedly denied that the Court imposed any such restrictions. Most recently, during Neil Ellis's May 2, 2006 deposition, when FHC's counsel suggested that the questioning of Mr. Ellis would need to "fit[] in with the limits that were put on [Kaplan] by the judge," Kaplan's counsel responded, "What limits? There haven't been any limits established. I don't think there are." (Ellis Dep. (5/2/06) 34:24-35:4 (excerpts attached as Exhibit 4).)[6]

---

[5] Indeed, the very description of the documents relating to payments in pages 1 and 2 of Kaplan's motion to compel constitutes a violation of the Maine Confidentiality Order. Kaplan has not yet received permission from any court to reveal this confidential information, yet he has done so here without hesitation.

[6] During Stuart Greenwald's May 2, 2006 deposition, FHC's counsel asked Kaplan's counsel: "Aren't you limited by the judge's order to certain topics and certain events that happened?" Kaplan's counsel responded: "Absolutely not." (Greenwald Dep. (5/2/06) 51:2-5 (excerpts attached as Exhibit 5).)

Kaplan's most recent document request (a copy of which is attached as Exhibit A to Kaplan's motion to compel) illustrates just how far beyond the limits set by the Court Kaplan has sought to travel. Of particular relevance to the pending motion are request nos. 4 and 6, which seek production of documents relating to Richmond Realty, LLC ("Richmond Realty") and payments to Neil Ellis's daughters, respectively. There can be little doubt that these requests seek documents well beyond those that relate "solely to the third meeting."[7] Rather, these documents, which Kaplan could have requested at any time over the last three years, relate to the same claims he has asserted in each of his Massachusetts actions. For example, the reference to Richmond Realty appears in multiple 10-Ks and, more importantly, in the proxy statements that are at issue in Civil Action Nos. 04-10402-NMG ("Kaplan I") and 05-10320-NMG ("Kaplan II"). Likewise, Kaplan's counsel questioned FHC witnesses on this subject at length in the depositions taken in Kaplan I almost one year ago. It is, therefore, hard to imagine how this topic could fall within the limits the Court placed on discovery for Kaplan III. Accordingly, FHC was justified in declining to produce responsive documents on that basis.[8]

C.  The documents Kaplan seeks in his motion are not responsive to Kaplan's document request.

As to request no. 6, leaving aside that Kaplan's request is a breach of both the Maine Protective Order and this Court's April 6 discovery order, the documents Kaplan now seeks to compel are, in any event, not responsive to his request. The request reads as follows:

---

[7] In the very first paragraph of his motion to compel, Kaplan states that he served his request for production of documents on FHC "in accordance with the Court's order" at the April 6 final pretrial hearing. It is apparent, however, that Kaplan's request for production failed to comply with the fundamental premise for that order.

[8] In fact, FHC produced ledgers for the most recent fiscal year for Richmond Realty.

> All documents referring or relating to payments by FHC or any subsidiary of FHC (consolidated or unconsolidated), or any entity controlled by FHC, to Neil Ellis's daughters from May 1, 2000 to the present.

The request does not define "control," leaving FHC to apply a common-sense definition, which is precisely what it did. FHC's response -- that it is aware of no such documents -- was accurate given that neither FHC, nor any FHC subsidiary, nor any entity that a reasonable person would believe is "controlled" by FHC has made any such payments. As FHC has explained to Kaplan repeatedly, an entity indirectly owned by Neil Ellis and his wife is the 99% owner of the partnership in question, i.e., Hartford Lubbock L.P. Kaplan admits in his complaint that the Journal Publishing Corporation owns 99% of Hartford-Lubbock L.P II. (See Complaint at ¶ 19.) Kaplan sarcastically mocks Neil Ellis's testimony on this point as a "convenient mental construct" (Kaplan motion at 4) but fails to recognize that the conduct Ellis describes: (1) is entirely consistent with the position FHC had taken throughout this dispute; and (2) accords with a common-sense view of the relevant facts, namely that any such payments to Ellis's daughters came from an entity that is not controlled by FHC.

IV.     CONCLUSION

For the foregoing reasons, the Court should deny the motion.

Respectfully submitted,

FIRST HARTFORD CORPORATION

By its attorneys,

/s/ Jonathan I. Handler
Jonathan I. Handler, BBO #561475
Jillian B. Hirsch, BBO #659531
DAY, BERRY & HOWARD LLP
One International Place
Boston, MA 02110
(617) 345-4600

-and-

John B. Nolan (admitted *pro hac vice*)
DAY, BERRY & HOWARD LLP
CityPlace I
Hartford, CT 06103
(860) 275-0100

Dated: May 10, 2006

### CERTIFICATE OF SERVICE

I, Jonathan I. Handler, do hereby certify that on this 10th day of May, 2006, I served a true and correct copy of the foregoing **Defendant First Hartford Corporation's Opposition to Plaintiff Richard Kaplan's Motion to Compel** via e-mail and first class mail on Larry C. Kenna, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110.

/s/ Jonathan I. Handler
Jonathan I. Handler