# EXHIBIT 3

1              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS
2

3

4    RICHARD E. KAPLAN,                    )
                        Plaintiff,         )
5                                          )
                                           )  CA No. 04-10402
6    vs.                                   )         05-10320
                                           )
7                                          )
     FIRST HARTFORD CORPORATION,           )
8                        Defendant.        )

9

10   BEFORE:  THE HONORABLE NATHANIEL M. GORTON

11

12                   PRETRIAL CONFERENCE

13

14

15        John Joseph Moakley United States Courthouse
                     Courtroom No. 4
16                  One Courthouse Way
                   Boston, MA 02210
17              Thursday, April 6, 2006
                      3:17 P.M.
18

19

20
               Cheryl Dahlstrom, RPR, RMR
21               Official Court Reporter
     John Joseph Moakley United States Courthouse
22            One Courthouse Way, Room 3209
                   Boston, MA 02210
23        Mechanical Steno - Transcript by Computer

24

25

1   APPEARANCES:

2          CHOATE, HALL & STEWART
           By:  Larry C. Kenna, Esq.
3          Two International Place
           Boston, Massachusetts 02110
4          On behalf of the Plaintiff.

5          DAY, BERRY & HOWARD, LLP
           By:  Jonathan I. Handler, Esq.
6          One International Place
           Boston, Massachusetts 02110
7          - and -
           DAY, BERRY & HOWARD
8          By:  John B. Nolan, Esq.
           City Place I
9          Hartford, Connecticut 06103-3499
           On behalf of the Defendant.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>P R O C E E D I N G S</u>

1

2          THE CLERK:  This is Civil Action 04-10402 and

3    05-10320, Richard Kaplan vs. First Hartford.  Counsel please

4    identify themselves for the record.

5          MR. KENNA:  Your Honor, my name is Larry Kenna,

6    K-E-N-N-A.  I represent the plaintiff, Mr. Kaplan.

7          THE COURT:  Good afternoon, Mr. Kenna.

8          MR. HANDLER:  Good afternoon, your Honor.  Jonathan

9    Handler for the defendant, First Hartford Corporation.  With me

10   is my partner, John Nolan.

11         THE COURT:  Good afternoon to both of you, Mr. Handler

12   and Mr. Nolan.  Please be seated, counsel.

13         We are here on a final pretrial conference in this

14   matter.  And as counsel are aware, I entered a memorandum and

15   order yesterday, that you might not have gotten until today, in

16   which I dealt with the defendant's motion for leave to file a

17   reply brief, which was allowed, and its motion for summary

18   judgment, which was denied.

19         Have counsel had a chance to read that memorandum and

20   order?

21         MR. KENNA:  Yes, your Honor.

22         MR. HANDLER:  We have, your Honor.

23         THE COURT:  So we're all on the same page, then.

24         We are due to go to trial on May 1st, and the only

25   obstacle is this motion to consolidate the third case, which

1    we're describing as Kaplan III, with Kaplan's I and II, which,

2    of course, were consolidated last year.

3            Is there any reason, Mr. Kenna, why the consolidation

4    of the third case should warrant a postponement of this trial?

5            MR. KENNA:  I'm not sure I really know the full

6    answer -- the full answer to that.  I've been trying to figure

7    out -- we obviously have the third case.

8            THE COURT:  And the third case involves issues that

9    are predominant in the first two cases, does it not?

10           MR. KENNA:  There are some very similar, if not

11   identical, issues in all three cases, your Honor.  There's no

12   question about that.  The complication of the third case, of

13   course, is that the third meeting purported to ratify some of

14   the prior actions that we're challenging that were taken in the

15   -- principally in the first meeting that's involved here,

16   Kaplan I case, because in that case one of the items on the

17   agenda was the adoption of a stock option plan.  And we've

18   challenged that based on what we say were false and misleading

19   proxy statements with reference to that.

20           THE COURT:  That was Kaplan I?

21           MR. KENNA:  That was Kaplan I.  There are some other

22   issues in Kaplan II that I think the Court has recognized are

23   still alive and should still be alive but that don't bear on

24   the stock option plan.  They have no bearing on that.

25           But Kaplan III purported to ratify the adoption of the

1    stock option plan and, in specific, to ratify two elements, if

2    you will, of the stock option plan, two of the types of stocks

3    that were issued.

4              THE COURT:  If you prove the claims that you've

5    brought forth in Kaplan I, would it not a fortiori have an

6    impact on Kaplan III?  And shouldn't they be consolidated?  And

7    shouldn't we go forward on May 1st on all of them?

8              MR. KENNA:  If we're going to go forward on all of

9    them, then I don't think we ought to go forward on May 1st.

10   The problem with Kaplan -- I haven't quite figured this all out

11   myself, your Honor.  The way I see Kaplan I, if we were to

12   prevail and the Court -- the termination was and the judgment

13   was entered that there were deceptive, false, incomplete

14   materials that allowed the adoption of the plan, I think the

15   other side is going to argue, as they did in their summary

16   judgment motion, that they ratified that plan.  So you,

17   therefore, have to attack the ratification of the plan and the

18   materials that were disseminated two years later.

19             THE COURT:  Why can't you do that with the same

20   information that you have now, the same witnesses that you have

21   now, and everything that you have now?

22             MR. KENNA:  Well, there would have -- there's

23   additional elements to the 2006 case.  It's not just that.

24   There are additional elements to the new case that was filed.

25             THE COURT:  Such as?

1          MR. KENNA:  We know more now, your Honor.  I mean,

2     when we started Kaplan I, there hadn't been a meeting of the

3     board -- annual meeting of the shareholders of this corporation

4     for 18 years.  We had virtually no information as to what had

5     gone on with this company for a long period of time.

6          Because of some of the discovery that we've been able

7     to conduct in Kaplan I and in Kaplan II, we have found out some

8     other things, especially related to what we call self-dealing

9     transactions, transactions between members of the board of

10     directors, officers of the corporation, and the corporation

11     itself.

12          So we've incorporated some of that information into

13     our allegations in Kaplan III because the proxy materials that

14     are -- the proxy statements that are still being sent to

15     shareholders still don't go into that information.  What they

16     say about it is still incomplete.  It's still misleading.  And

17     there are additional elements of the case that we now know

18     about.

19          THE COURT:  It seems to me whoever you were going to

20     offer to the Court as a witness to testify to that can testify

21     to the failings of the most recent proxy statement as easily as

22     he or she can testify to the failings of I and II.

23          MR. KENNA:  That may be.  That may be.  But there may

24     be additional -- there may be additional persons who need to

25     testify.  I'm not saying that there are going to be.  What I

1    think we would need, if we're going to put the three of them

2    together -- and I think we should put the three of them

3    together -- is to take a couple of months for completion of

4    discovery and get this trial on for something like September

5    perhaps, certainly get it on before the next meeting takes

6    place, which I don't think is going to take place until

7    November or December of this year, and give us a chance to get

8    Kaplan III worked up and ready to go.  I don't think it would

9    take much longer than that, a couple of months maybe for

10    discovery.

11              THE COURT:  Let me hear from Mr. Handler.

12              MR. HANDLER:  Your Honor, a couple things.  First, we

13    don't think there's any reason to delay the May 1st date.

14    Second of all, if your Honor is inclined to put all three cases

15    together, we don't see any reason why the three cases can't be

16    put together and we can try them all on May 1st.

17              As I think the discovery has demonstrated to date in

18    Kaplan I and Kaplan II, we're talking about essentially the

19    very same, very small universe of witnesses.  We're talking

20    about the very same documents, the very same issues over and

21    over again.

22              THE COURT:  Is the proxy statement for the November

23    2005 meeting virtually identical to the proxy statements in the

24    earlier ones?

25              MR. HANDLER:  It is, your Honor.  The overlap, as I

1    think Kaplan's papers both on the motion to consolidate and

2    otherwise, have indicated the overlap is quite significant.  As

3    your Honor pointed out, the very same witnesses, either that

4    they would call in their case in chief or that we would call,

5    are all going to testify about these very same issues.  The

6    likelihood that there's somehow a new witness that Mr. Kenna

7    and his colleagues haven't yet been able to identify who might

8    testify about the November 2005 proxy statement or that meeting

9    really seems quite unlikely.  Everything that's happened --

10           THE COURT:  Refresh my memory as to the deadlines that

11   I gave in the scheduling order that we entered before, after

12   the consolidation order, or in connection with the

13   consolidation last year.  What were the deadlines?

14           MR. KENNA:  They were much more generous than --

15           THE COURT:  I'm asking this counsel.

16           MR. KENNA:  I'm sorry, your Honor.

17           MR. HANDLER:  In terms --

18           THE COURT:  You may be seated.

19           MR. HANDLER:  In terms of the intermediate deadlines

20   for discovery and that sort of thing?

21           THE COURT:  Yes.

22           MR. HANDLER:  We consolidated, if I'm not mistaken, in

23   July.

24           THE COURT:  Yes.

25           MR. HANDLER:  If memory serves me -- although at that

1    point we really already completed discovery in Kaplan I.  Once

2    they were consolidated, I think your order, your Honor, was

3    discovery was essentially open again for all purposes.  And I

4    think we had a relatively short deadline there for document

5    discovery.  I think document discovery was due, if I'm not

6    mistaken, either the end of August or the end of September.

7    Fact discovery was to take place, I think, within a couple of

8    months thereafter.  The parties moved, I believe, for a short

9    extension thereafter, but the summary judgment deadline

10   remained unchanged.  I think that was in February of this year.

11   And I think this is the first scheduled final pretrial

12   conference that we've had.

13            THE COURT:  All right.  Mr. Kenna, what is your

14   recollection?

15            MR. KENNA:  Well, my recollection is that we were only

16   a couple of weeks away from the final pretrial conference in

17   Kaplan I when First Hartford Corporation, the defendants in

18   this case, moved to consolidate the two cases.  It had been on

19   file and had been pending for something like five months.  Then

20   they moved to consolidate.  The Court allowed it.  I think it

21   was the right thing to do.  The Court allowed all this time,

22   between when we consolidated those cases in July of 2005, to

23   work the second case up and to bring it to trial in April --

24   strike that -- May of 2006.

25            I don't think we need to do that.  I'm not suggesting

1    that at all.  I think we do need to have a month or a couple of

2    months to make sure that we've gotten the documentation that we

3    are entitled to get from the defendants, which has been most of

4    what this case has been about, trying to get --

5         THE COURT:  Have you requested supplemental answers to

6    your written discovery relating to the third meeting, that is,

7    the one in November of 2005?

8         MR. KENNA:  We just filed the case, your Honor.  We

9    filed the case and just got the answer within the last week or

10    within the last two weeks anyway.

11        THE COURT:  Surely, you anticipated that there was

12    going to be another meeting between the time we met last July

13    and the trial date that had been set in May, did you not?  Why

14    did you anticipate that that was not going to perpetuate the

15    problem?

16        MR. KENNA:  Your Honor, we have no information other

17    than what we've been able to get in discovery, in litigation.

18    If the Court will remember, one of the very first issues in

19    this case, going back to Kaplan I, was whether we could even,

20    as a shareholder, 20 percent almost, 19 percent shareholder, in

21    this corporation, could we take a look at the shareholder list

22    that was used by the company when it sent out its proxy

23    statement for the first meeting?  We spent months, could not

24    get it from the other side.  Took an order of yours, Judge, to

25    get ahold of the shareholder list to take a look at it.  That's

1    why things have taken time here, and that's why we're where we

2    are.

3           Now, we didn't know, if they had a meeting, what are

4    they going to do at that --

5           THE COURT:  Have you filed any motions recently to

6    compel discovery of documents?  I don't recall seeing any if

7    you did.

8           MR. KENNA:  Of course, we filed motions to compel.  We

9    had to file motions to compel.

10          THE COURT:  In the last six months?

11          MR. KENNA:  Not in the last six months.  I just filed

12   Kaplan III on the 9th of March of this year.

13          THE COURT:  This matter is going to get resolved.  It

14   doesn't seem to me -- if I postpone this to the point where

15   you've got another meeting that's going to come forward, then

16   we'll have Kaplan IV and then Kaplan V.

17          MR. KENNA:  We may.

18          THE COURT:  We're going to try this case.

19          MR. KENNA:  I don't have a problem with that, Judge.

20   That's why I proposed what I proposed.  I'm sorry.

21          THE COURT:  Let me ask a different question of both

22   counsel.  I guess I'll ask you first, Mr. Kenna.  Why should

23   this be a jury trial?

24          MR. KENNA:  That's a good question that I --

25          THE COURT:  Thank you.

1          MR. KENNA:  -- that I thought might come up today.  I
2     don't think it necessarily needs to be a jury trial.
3          THE COURT:  Are you, therefore, waiving your --
4          MR. KENNA:  No, I'm not waiving.
5          THE COURT:  -- claim for a jury?
6          MR. KENNA:  I'm not waiving it because I haven't had a
7     chance to make sure that that would be okay and understood
8     fully by my client as to what the ramifications of that would
9     be.  I think --
10          THE COURT:  Under what grounds could you argue, even
11     if you decide you want to argue, that it should be a jury
12     trial?
13          MR. KENNA:  I think you're entitled to a jury trial
14     under the federal securities laws.  I don't think you're
15     prevented from having a jury trial in these types of cases or
16     that there's only equitable relief that you're seeking or
17     anything along those lines.
18          THE COURT:  What are you seeking that is not
19     equitable?
20          MR. KENNA:  Well, we're going to be seeking attorney's
21     fees.  We're going to be seeking damages in the sense of
22     attorney's fees because if we prevail in any one of these
23     litigations we would be entitled at least to apply for
24     attorney's fees and to seek damages based on that and our costs
25     and expenses in these actions.

1      THE COURT:  Do you have some case law that tells me,

2  when you seek attorney's fees, that converts a case in equity

3  to a case at law?

4      MR. KENNA:  It's a claim that would be a damage claim,

5  I guess, is what I'm viewing it as.

6      THE COURT:  Well, it isn't a damage claim.  It's a

7  claim for attorney's fees, right?

8      MR. KENNA:  They're damages.

9      THE COURT:  What's the defendant's position on this?

10      MR. HANDLER:  With respect to waiving a jury trial,

11  your Honor?

12      THE COURT:  Not waiving but whether or not the

13  plaintiff is entitled to one and/or you.  You have a

14  counterclaim in this case, right?

15      MR. HANDLER:  No, we do not, your Honor.  And we are,

16  so far as I'm aware, certainly prepared to proceed without a

17  jury if that's the Court's inclination.

18      THE COURT:  Is it your position that the plaintiff is

19  not entitled to a jury trial or just that you would prefer not

20  to have a jury trial?

21      MR. HANDLER:  Your Honor, I think certainly the

22  latter; and if I were to express an opinion on the former, I

23  think it would not be fully informed, so I don't think I want

24  to do that.

25      THE COURT:  I'm not sure.  I don't know whether the

1    plaintiff is entitled to a jury trial, and I guess I'll have

2    you all help me decide that by submitting, sooner rather than

3    later, memoranda in that regard unless you can both agree that

4    it will either be -- you both agree either that it ought to be

5    a jury trial or that it ought not to be.  I think I would be

6    influenced if both sides believe it ought to be a jury trial or

7    if both sides agree that it ought not to be.  But if there's a

8    conflict there, then I want some law to help me.

9          What is to prevent you, Mr. Kenna, from taking one or

10   two brief depositions between now and May 1st and being ready

11   to go four-plus weeks hence from now?

12         MR. KENNA:  Probably a lot of things.  If this were

13   the only case I had --

14         THE COURT:  Well, you've had this case on your docket

15   for ten months, have you not?  Because that's when we set the

16   trial date.  We set it in July.

17         MR. KENNA:  I understand that.

18         THE COURT:  You're ready to go on I and II on May 1st?

19         MR. KENNA:  I'm ready to go on I and II on May 1st.

20         THE COURT:  Then I think it behooves you to get

21   yourself ready for Kaplan III between now and May 1st.  And I'm

22   willing to allow you a brief amount of additional discovery

23   between now and then in order to supplement the discovery

24   you've already had.  You tell me how much you need, and I'll

25   tell you whether you can have it.

1          MR. KENNA:  Well, with all respect, your Honor, I

2     don't think that's going to be enough time.  I mean, it's three

3     weeks or whatever the period of time is.  But given other

4     things that I have --

5          THE COURT:  Then we'll go forward on I and II, and you

6     can decide to try III another year.

7          MR. KENNA:  Your Honor, one of the things that you

8     raised, as I said, that I thought was a good point was whether

9     or not we need to have a jury trial in this case.  Now, I don't

10    know if that's driving the May 1 date or it isn't driving the

11    May 1 date.

12         THE COURT:  What's driving the May 1 date is that I

13    put stock into dates that I give people ten months in advance.

14    I told you both to be ready for trial on May 1st.  I'm ready

15    for trial on May 1st.  I have a full docket.  If we postpone,

16    of course, then it knocks a hole where I didn't think I had a

17    hole, and it puts pressure on areas where I thought I had

18    flexibility.

19         So I am anxious to keep schedules that I make.  And

20    unless there is a very good reason for a postponement -- and I

21    don't see it in this case because, frankly, I don't see that

22    the issues that are involved in Kaplan III are materially

23    different than those -- than those that are present in Kaplan's

24    I and II.

25         To the extent that you need some minimal amount of

1    additional discovery, I think you can do it in four weeks,

2    taking a couple-hour depositions of people or getting some

3    additional documents, which you would be entitled to if there

4    are such additional documents that relate solely to the third

5    meeting that is in dispute.

6         But I think that whether it's a jury trial or a

7    jury-waived trial, we're going to go forward on May 1st.  And

8    if it's a jury-waived trial, we have more flexibility because

9    we don't have to empanel a jury on Mondays, and we can go not

10   in consecutive days and so on.  If counsel want to agree right

11   away that it's a jury-waived trial, that will give us more

12   flexibility to schedule you.

13        MR. KENNA:  I'd like to consult my --

14        THE COURT:  If not, I'll give you a short period of

15   time to tell me why it ought to be a jury trial and I'll decide

16   on that.  But, in the meantime, we'll proceed as though it's

17   going to be a jury trial on May 1st.

18        MR. KENNA:  I do want to discuss that with my client.

19        THE COURT:  Yes.  You're entitled to do that.

20        MR. KENNA:  I want to make sure they understand what

21   that means.

22        THE COURT:  Sure.  How long do you need to get back to

23   me in that regard?

24        MR. KENNA:  I ought to be able to get back to you

25   tomorrow or certainly early next week.

1          THE COURT:  That's fine.

2          MR. KENNA:  And we can discuss it as well.

3          THE COURT:  On or before, Monday, the 10th, counsel

4    will inform the Court as to its agreement, if it can reach one,

5    as to whether this will be a jury or jury-waived trial.  If

6    there is no agreement, then on that day I want briefs, not to

7    exceed five pages, from each side as to why I should or should

8    not determine that this is a jury or jury-waived trial.  I'll

9    decide that next week.

10          And in the meantime, we'll plan as though it's going

11   to be a jury trial that will commence on May 1st.  That is a

12   Monday.  We'll empanel on that day and go from day to day

13   thereafter.  But in the meantime, I will allow -- again, unless

14   I am convinced to the contrary -- the plaintiff to have limited

15   discovery that will be completed not later than two weeks from

16   today.  That would be the 20th -- let's make it the 21st, that

17   Friday of that week, the 21st of April.  And if the plaintiff

18   needs to take up to three depositions, totaling six hours of

19   deposition time, as far as the plaintiff is concerned on direct

20   examination, he may do that.  If there are documents that he

21   needs to have produced to him, he can file such a request

22   within a week, and the documents will be produced on or before

23   the 21st of April.

24          Then depending upon whether or not this is a jury

25   trial, if there are to be any in limine motions, they will be

1    filed on or before the 21st -- that's the Friday that we've

2    previously mentioned -- and any responses thereto will be due

3    on the Wednesday following that, which I think would be the

4    26th of April.

5         On the 23rd of April, that is, that Monday, I will

6    want proposed voir dire questions for the jury panel -- 24th.

7    I misspoke.  It should be the 24th of April.  I'll have

8    proposed voir dire questions, a list of witnesses and exhibits

9    of each side, objections to which will be filed on or before

10   Wednesday, the 26th.  Requests for instructions to the jury

11   will be due on the first day of trial.  I will allow counsel to

12   supplement those requests during the course of trial.

13        How long a trial do you think -- I think last time we

14   thought it was going to be a three-day trial.  Is that right,

15   Mr. Kenna?

16        MR. KENNA:  What do you do with juries, your Honor?

17   Do you start at 9 and go --

18        THE COURT:  We start at 9 and go through till lunch

19   and then go in the afternoon till about 3 or 3:30.

20        MR. KENNA:  It will take at least three days.

21        THE COURT:  All right.  Defendants agree with that?

22        MR. HANDLER:  We said, I think, in our pretrial

23   memorandum, your Honor, three to five.

24        THE COURT:  Okay.  We'll count on the trial being

25   completed during that week of the 1st because, as far as I

1    know, the only conflict I have would be on the second day, that

2    is, Tuesday, the 2nd of May, I'll have commitments in the

3    afternoon.  So we wouldn't have an afternoon session, but we

4    would have full sessions regularly as we go.

5           Again, I'm contemplating now that it's a jury trial.

6    If it turns out to be a jury-waived trial, then we have more

7    flexibility in terms of timing and whether we can put it into

8    the following week even.  Okay.

9           Anything else that needs to come to my attention in

10   this matter?  I suppose the one thing that needs to come to my

11   attention is whether anybody has thought about resolving it

12   short of this trial.  Is there a way to do that?

13          MR. KENNA:  We have a mediation scheduled right now, a

14   full day of mediation scheduled, for the 26th of April.

15          THE COURT:  Before whom?

16          MR. NOLAN:  James McGuire.

17          MR. KENNA:  JAMS.

18          THE COURT:  Okay.  Well, I hope that you can resolve

19   it, then.  If the matter is a jury-waived matter, there will be

20   some flexibility.  That being just five days before trial, we

21   could build some flexibility into what happens if you can't

22   resolve it on the 26th.  Hopefully, you can resolve it on the

23   26th.  If you can't, right now we have a trial set for May 1st.

24   I'll look forward to hearing from counsel on the jury or

25   jury-waived question on Monday.  And then we'll proceed from

1     there.

2            Is there anything else that needs to come to my

3     attention?

4            MR. KENNA:  Your Honor, I'm going to need your -- I

5     may need your assistance.  In the past we've had a lot of

6     difficulty scheduling depositions.  I've got a very short leash

7     of time here to do it.  I just advise the Court of that.  I

8     don't think we're going to have a problem, but I've had in some

9     cases months where I wasn't able to get somebody for a

10    deposition.  And if I need them, I'm going to have to have them

11    when I want them and do these depositions.

12           MR. NOLAN:  We heard what you said, your Honor.

13           THE COURT:  I'm sure you did, and I expect defendants

14    will cooperate as fully as any reputable, as you are, law firm

15    and that the matter will be resolved in a professional way.  I

16    don't want to have to deal with this matter of any discovery

17    problems between now and the end of the month, so I sincerely

18    hope that that won't be necessary.

19           MR. NOLAN:  I'm sure that it won't, your Honor.

20           THE COURT:  Anything else?  If not, we're adjourned.

21    (Whereupon, at 3:42 p.m. the hearing concluded.)

22

23

24

25

1              C E R T I F I C A T E

2

3

4          I, Cheryl Dahlstrom, RPR, RMR, and Official Reporter

5    of the United States District Court, do hereby certify that the

6    foregoing transcript, from Page 1 to Page 20, constitutes, to

7    the best of my skill and ability, a true and accurate

8    transcription of my stenotype notes taken in the matter of

9    Civil Action Nos. 04-10402 and 05-10320, Richard E. Kaplan vs.

10   First Hartford Corporation.

11

12

13

14

15

16          *Cheryl Dahlstrom*

17          Cheryl Dahlstrom, RPR, RMR

18          Official Court Reporter

19

20

21

22

23

24

25