UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD E. KAPLAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FIRST HARTFORD CORPORATION, )<br>)<br>Defendant. )<br>) | C.A. No. 04-10402-NMG<br>C.A. No. 05-10320-NMG<br>C.A. No. 06-10424- NMG<br>CONSOLIDATED |

**FIRST AFFIDAVIT OF COUNSEL IN SUPPORT OF**
**MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES**

Larry C. Kenna, being duly sworn, on oath deposes and says:

1. I am counsel to the plaintiff, Richard E. Kaplan, in these consolidated cases. My colleague Robert Rothberg and I have been the principal attorneys at Choate, Hall & Stewart LLP responsible for developing and executing the plaintiff's litigation strategy in these consolidated cases and in two related actions filed in Maine state and federal court by the plaintiff against FHC and its President, Neil Ellis.

2. We filed the first proxy fraud case on February 27, 2004, the second on February 17, 2005, and the third on March 9, 2006. The cases were consolidated and a bench trial was held on May 15 and 16, 2006. The Court issued its decision in the cases on July 7, 2006, finding in favor of the plaintiff and granting the plaintiff prospective relief. As the prevailing party, the plaintiff now seeks an award of attorneys' fees and expenses incurred in the litigation of these consolidated cases.

3. A hallmark of these cases has been FHC's delay and obstruction of the discovery process, tactics that added considerably to the cost of these litigations. One example of FHC's delay and obstruction is shown by the efforts required by the plaintiff to obtain the list of FHC

shareholders for the January 22, 2004 annual meeting which was the subject of the first proxy fraud case. That list was first requested in writing by the plaintiff following the filing of the first proxy fraud case on April 13, 2004. FHC refused to produce the list, necessitating the plaintiff's first motion to compel production of documents, which FHC opposed on specious grounds. See Plaintiff Richard E. Kaplan's Motion To Compel The Production of Documents By The Defendant First Hartford Corporation, filed July 9, 2004, at pp. 9-13, Exhibit 1 hereto.

4.    The Court ordered FHC to produce the shareholder list to the plaintiff on November 29, 2004. See Exhibit 2 hereto. But FHC persisted in refusing to produce the list, instead filing a meritless "Motion For Reconsideration Or Clarification" of the Court's Order. FHC's Motion For Reconsideration can fairly be said to stretch the bounds of appropriate advocacy to the breaking point. The plaintiff was forced to oppose that motion and point out to the Court FHC's blatant disregard of the Court's clear direction to produce the shareholder list and FHC's gross mischaracterization of certain proceedings in Maine in which the plaintiff sought to obtain a different list of the shareholders at about the same time. See Plaintiff Richard E. Kaplan's Opposition To Defendant First Hartford Corporation's Motion For Reconsideration Or For Clarification, filed December 15, 2004, Exhibit 3 hereto. Faced with the plaintiff's suggestion that FHC's conduct in refusing to produce the shareholder list and in seeking reconsideration of the Court's Order was sanctionable, FHC unilaterally -- without consulting the plaintiff -- withdrew its Motion For Reconsideration to avoid a hearing, and eventually produced the shareholder list some *9 months after* the plaintiff requested its production and nearly *2 months after* the Court ordered FHC to produce it to the plaintiff.

5.    Another example of FHC's delay and obstruction is shown by the efforts required by the plaintiff to obtain documents referring to and describing the self-dealing transactions referred to in the proxy statements between FHC and its subsidiaries and Neil Ellis and

2

companies owned or controlled by Mr. Ellis. Those documents were requested by the plaintiff on April 13, 2004. In an e-mail sent on July 7, 2004, following a Rule 37.1 conference, FHC's counsel said it would "produce the documents underlying the transactions referenced in the most recent proxy statement." This representation was repeated in later letters and e-mail correspondence from counsel for FHC. After 8 months of leading the plaintiff to believe that the documents he sought existed and would be produced, on December 17, 2004, FHC told the plaintiff that it had produced all the responsive documents it could find. See Plaintiff Richard E. Kaplan's Motion For An Extension Of The Fact Discovery Deadline, Exhibit 4 hereto, at pp. 3-4. This turned out not to be the case, however, and additional responsive documents trickled in following the first and second Rule 30(b)(6) depositions of FHC taken by the plaintiff, and right up until late July, 2005, *more than one year after the plaintiff's request for the documents.* See Exhibit 5 hereto (correspondence between counsel for the plaintiff and counsel for FHC dated September 28, 2004; November 24, 2004; December 2, 2004; January 21, 2005; March 25, 2005; April 4, 2005; July 19, 2005; and July 27, 2005).

6.    Other discovery abuses of FHC are detailed in the plaintiff's Motion For Extension Of The Fact Discovery Deadline that was initially established for the first proxy fraud case. See Exhibit 4 hereto, and attached Tab E (Letter dated December 10, 2004 from counsel for the plaintiff to counsel for FHC).

7.    The plaintiff also had to oppose two FHC motions to compel, the first seeking documents pertaining to the plaintiff's stock holdings which the Court for the most part termed "irrelevant to this action, unnecessarily intrusive and burdensome and there is no apparent reason why defendant needs that information for any relevant purpose." See Exhibit 2 hereto, p.3.

8.    Several months after the plaintiff filed the second case, FHC, in an obvious effort to cause the plaintiff to incur additional attorneys' fees, fabricated a discovery dispute. When the

3

plaintiff balked at giving supplemental answers to the set of interrogatories propounded by FHC in the second proxy fraud case, because, among other reasons, the plaintiff's answers were the same answers previously accepted as satisfactory by FHC to the same interrogatories in the first case, FHC filed a motion to compel necessitating an appearance before Magistrate Bowler and the very minimal supplementation of only four interrogatories -- which FHC never used at all in the trial of these cases or otherwise. See Exhibit 6 hereto.

9.  The defendant's abuse of the discovery process continued right up to the very eve of trial. At the April 6, 2006 Final Pretrial Conference, the Court consolidated all three cases and ordered discovery in the third case (which had just been filed on March 9, 2006) completed on an expedited basis. The Court allowed the plaintiff to serve a request for production of documents and to take 3 depositions in the third case in preparation for trial in May, 2006. Instead of cooperating with counsel for the plaintiff to complete the expedited discovery before the impending trial (as FHC represented to the Court on April 6 that it would), FHC took indefensible positions on the timing and extent of the discovery allowed by the Court, causing the plaintiff to engage in additional motion practice on the eve of trial to schedule the 3 depositions and to force FHC to produce the requested documents. See Plaintiff Richard E. Kaplan's Motion To Compel Depositions, filed April 19, 2006, Exhibit 7 hereto; Plaintiff Richard E. Kaplan's Motion To Compel The Production Of Documents By Defendant First Hartford Corporation, filed May 9, 2006, Exhibit 8 hereto.

10. In fact, oral argument had to be held on May 12 -- the Friday before the first day of the trial -- to force FHC to produce documents that were clearly discoverable and that were clearly in the possession, custody and control of FHC. As the Court said at the May 12, 2006 hearing: "I just don't understand how the defendant can rely on a protective order [entered in the Maine case] to prevent the plaintiff, who is the identical party to the nondisclosure agreement in

4

Maine, from getting and/or at least discovering information in this case that is relevant to his claims." See Exhibit 9 hereto, p. 5. In addition, with respect to the corporate control issue raised by FHC, the Court said: "...[T]hat issue doesn't seem to me to warrant reason for the defendant to decline to produce something on the grounds that they don't control the corporate entity or the partnership entity that is at stake." See Id., p. 10.

11.     FHC deposed the plaintiff Richard Kaplan on two occasions (March 15, 2005 and February 9, 2006), and also deposed his brother David Kaplan (also a stockholder in FHC) on one occasion (March 15, 2005). Despite the Court's order of November 29, 2004 denying the plaintiff access to documents relating to the plaintiff's stock holdings on the grounds that they were "irrelevant to this action, unnecessarily intrusive and burdensome and there is no apparent reason why defendant needs that information for any relevant purpose," FHC insisted on questioning both the plaintiff and David Kaplan about their stock holdings. See Exhibit 10 hereto.

12.     The plaintiff took the Rule 30(b)(6) deposition of FHC on four occasions (March 21, 2005; June 15, 2005; February 9, 2006 and May 2, 2006). The June 15, 2005 and February 9, 2006 depositions were made necessary because at each prior 30(b)(6) deposition the plaintiff learned of additional documents in the possession, custody and control of FHC that FHC had not produced despite the plaintiff's requests for production. In addition, counsel for FHC unnecessarily and without justification obstructed the orderly taking of the 30(b)(6) depositions on numerous occasions. See Exhibit 11 hereto.

13.     In addition to the four Rule 30(b)(6) depositions of the defendant FHC, the plaintiff deposed Stuart Greenwald individually once (March 21, 2005), David Harding twice (June 15, 2005 and May 1, 2006), and Neil Ellis twice (June 3, 2005 and May 2, 2006) for a total of 9 depositions.

5

14. Counsel for FHC unnecessarily and without justification obstructed the orderly taking of the Neil Ellis deposition on numerous occasions. See Exhibit 12 hereto.

15. FHC also filed a Motion For Summary Judgment which the plaintiff successfully opposed.

16. Attached to this Affidavit and marked Exhibit 13 are the choate.com website biographies of myself and Mr. Rothberg.

Signed under the pains and penalties of perjury this 24th day of July, 2006.

/s/ Larry C. Kenna

4103306v1