# Exhibit 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| RICHARD E. KAPLAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-10402-NMG |
| | ) | |
| FIRST HARTFORD CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF RICHARD E. KAPLAN'S MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS BY THE DEFENDANT FIRST HARTFORD CORPORATION

The plaintiff Richard E. Kaplan hereby moves the Court to compel the production of certain documents by the defendant First Hartford Corporation. As grounds therefore, the plaintiff states as follows:

### I.  NATURE OF CASE AND FACTS RELEVANT TO DISCOVERY MATTERS TO BE DECIDED

This is a proxy fraud case brought by a shareholder ("Mr. Kaplan") of a publicly held corporation ("FHC") against the corporation  for violation of the federal securities laws.  FHC disseminated false and misleading proxy solicitation materials in connection with the call of a meeting of the shareholders to vote on the election of directors of the corporation and on a stock option plan. A copy of the proxy solicitation materials is attached to the Complaint filed in this case.

The case is brought by an individual who has owned of record and beneficially, with sole voting power over, more than 1000 shares of the common stock of FHC for the past 10 years. By bringing this case, Mr. Kaplan seeks to insure fairness of the internal corporate voting process of FHC, and to prevent management of the corporation (in particular its President Neil H. Ellis)

from obtaining authorization for corporate action by the use of deceptive or inadequate disclosures in proxy solicitation. *See* J.I. Case Co. v. Borak, 377 U.S. 426, 431 (1964); TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438 (1976) (proxy rules bar use of proxy statements that are false or misleading with respect to the presentation or omission of material facts).

The case is governed by the Securities Exchange Act of 1934, 15 U.S.C. Section 78n (a) *et seq.*, enacted for the protection of the investing public in securities transactions. Congress has declared that: "It shall be unlawful for any person ... to solicit or to permit the use of his name to solicit any proxy ... in respect of any security ... registered on any national securities exchange in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." *Id.* Pursuant to this power, the SEC has promulgated its Regulation 14 containing rules governing proxy solicitations. The standard against which soliciting materials are to be measured is set down by the SEC in its Rule 14a-9, which prescribes: "No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting, or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading." *See* Union Pacific Railroad Co. v. Chicago And North Western Railway Co., 226 F. Supp. 400, 406-412 (N.D. Ill. 1964) (recognizing beneficial requirement of meticulous disclosure demanded by federal securities laws, to substitute full disclosure for *caveat emptor* and thus to achieve a high standard of business ethics in the securities industry); Securities and Exchange Commission v. Capital Gains Research Bureau, Inc., 375 U.S. 180, 186-187 (1963).

2

A corporation must divulge all known material facts in its proxy materials so shareholders can make informed choices. Desaigoudar v. Meyercord, 223 F.3d 1020, 1024 (9th Cir. 2000), cert. denied, 532 U.S. 1021 (2000). There must be a full and honest disclosure. Beatty v. Bright, 318 F. Supp. 169, 174 (S.D. Iowa 1970).[1]

Where a proxy fraud complaint alleges misrepresentations in or omissions from the proxy solicitation materials, the Court must evaluate the materiality of the alleged defects. It cannot ignore the allegations of the complaint and engage in "mind reading" to speculate about the plaintiff's "true" motivation in filing the complaint. Berg v. First American Bankshares, Inc., 796 F.2d 489, 498n.8 (D.C. Cir. 1986). In this type of action, any doubts with respect to materiality should be resolved in favor of those the statute is designed to protect: investors and shareholders. TSC Indus., Inc., supra, at 448.

FHC is controlled by Neil H. Ellis ("Ellis"), who has long served as President and a Director, and who owns 42.9% of the some 3 million shares of common stock issued and outstanding. Before January, 2004, the last meeting of shareholders called by the corporation was in February, 1986, *so for nearly 18 years the investors and shareholders of FHC had not voted on the election of Directors or any other matters involving the corporation.* During that 18 year period the corporation did not hold annual meetings, the Directors and officers of FHC elected themselves to office, performed the functions of an audit committee (even though none of the Directors or officers were "independent"), Ellis set his own compensation and that of the other executive officers, and Ellis engaged in numerous self-dealing transactions with FHC without

---

[1] False or misleading statements of material fact are actionable. Rule 14a-9. A statement may be false or misleading for purposes of Section 14(a) even though it would not support an action for common law fraud or deceit. Union Pacific Railroad Co., supra, at 408. The question of materiality is an objective one: the significance of an omitted or misrepresented fact to a reasonable investor. TSC Indus., Inc., supra, at 445-449. Materiality means what a hypothetical reasonable shareholder would deem significant. Berg v. First American Bankshares, Inc., 796 F.2d 489 (D.C. Cir. 1986). If there is a substantial likelihood that a reasonable shareholder would consider the fact important in deciding how to vote, it is a material fact. TSC Indus., Inc., supra, at 438. A plaintiff in this type of action need not show that *but for* the material deception or omission the vote of the shareholders would have been different (*i.e.*, the plaintiff need not show reliance, just materiality). Mills v. Electric Auto-Lite Co., 396 U.S. 375 (1970).

3720315v1

informing investors or shareholders of the details of such transactions to allow them to judge whether such transactions were entirely fair to FHC and its shareholders. *See* the Complaint at paragraphs 9-20.

On or about December 29, 2003, FHC sent to certain shareholders written notice of a so-called "Annual Meeting of Shareholders" to be held on January 22, 2004 (the "January 2004 Meeting"). Accompanying the notice were certain proxy solicitation materials (the "Proxy Materials") which are the subject of this case. *See* the Complaint at paragraph 7. The Proxy Materials set forth two purposes for the January 2004 Meeting: (i) to elect directors; and (ii) to approve a "2003 Stock Option Plan." *Id.* at paragraph 8.

Among the defects in the Proxy Materials that the plaintiff Mr. Kaplan complains of in this case are the following:

--FHC and Mr. Ellis' apparent attempt to discourage meaningful shareholder participation in the January 2004 Meeting by (i) causing the meeting to be called on short notice; (ii) sending notices to many shareholders at out of date addresses; and (iii) endeavoring to give the Proxy Materials a false aura of regularity by calling the January 2004 Meeting an "annual meeting" when in fact it was a "special meeting" and should have been identified as such. *See* the Complaint at paragraphs 9-12.

--The Proxy Materials fail to disclose the names of shareholders known by the corporation to own more than 5% of the common stock, in violation of the regulations governing the solicitation of proxies, Schedule 14A, Item 6(d), 17 C.F.R. Section 240.14a-101. *See* the Complaint at paragraph 13.

--The Proxy Materials state that all of the Directors serve for a term of one year or until their successors are elected. While perhaps literally true, the statement is misleading because it

omits to say that FHC does not hold elections every year and in fact had not held elections for nearly 18 years. *See* the Complaint at paragraph 14.

--The Proxy Materials contained a "Five Year Performance Graph: 1998-2003," which purported to show that over the past 5 years FHC has been a good investment for shareholders, and which suggests the prices at which a shareholder could have sold FHC shares at various times during the period. In fact, there is almost no market for FHC stock and it is very unlikely that a shareholder desiring to sell more than a token number of shares would be able to do so at the prices on the graph. *See* the Complaint at paragraph 17.

--The Proxy Materials disclose a limited amount of information about self-dealing transactions between FHC and Ellis. Although the materials mention that such transactions occurred, they limit the disclosure--such as it is--to the preceding 3 years and fail to disclose sufficient information about any self-dealing transactions to allow a shareholder to judge whether the terms of the transactions were entirely fair to FHC and its shareholders. *See* the Complaint at paragraph 18.

--With respect to management's proposal to adopt the 2003 Stock Option Plan, the proxy materials state that the benefits to any individual are not determinable. However, less than 3 weeks after the January 2004 Meeting, Ellis and his two other officer/Directors (Stuart I. Greenwald and David B. Harding) voted to issue 100,000 options (approximately 3% of the common stock) to Messrs. Greenwald and Harding, suggesting that the stock grants were planned at the time the Proxy Materials were prepared. *See* the Complaint at paragraph 19.

--The Proxy Materials state that all forms required by federal law to be filed with the SEC concerning beneficial ownership of FHC stock "have been filed on a timely basis on behalf of all persons subject to these requirements." However, neither Greenwald nor Harding had ever filed

his Form 3. These forms were filed after the January 2004 Meeting and were more than 5 years delinquent. *See* the Complaint at paragraph 20.

The relief sought by the plaintiff Mr. Kaplan is (i) to void the shareholder votes taken at the January 2004 Meeting and any actions taken pursuant thereto; (ii) to order that a new shareholder meeting be called, with appropriate notice and pursuant to complete, accurate, and truthful proxy materials; (iii) to award Mr. Kaplan the costs and expenses of this action, including attorneys' fees; and (iv) to award all such other and further relief deemed just and proper by the Court. Section 14(a) has a broad remedial purpose, and gives the federal courts power to grant all necessary remedial relief, including the award of attorneys' fees to the plaintiff. J.I. Case Co., *supra* at 434-435. Mills v. Electric Auto-Lite Co., *supra*, 396 U.S. 375 (1970).

## II. THE PLAINTIFF'S DOCUMENT REQUEST AND COMPLIANCE WITH RULE 37.1

Pursuant to L.R. 37.1 (A), on July 1, 2004, at 4 p.m., for approximately 45 minutes, by telephone, a discovery conference was held in Boston, MA. Present for the plaintiff Richard E. Kaplan at the conference were Larry C. Kenna and Robert Rothberg; present for the defendant First Hartford Corporation were Jonathan I . Handler and Jillian Grossman.

At the conference, the parties reached agreement on the following matters:

1.      With respect to the plaintiff Mr. Kaplan's answers to the defendant FHC's First Set of Interrogatories, FHC had asserted that the answers  to Interrogatories 2, 4, 5 and 6 were inadequate because the plaintiff referred FHC to the allegations of the Complaint. The parties agreed that no supplementation was required at this time since the basis for the plaintiff's allegations were set forth in the Complaint.

2.      With respect to the plaintiff Mr. Kaplan's response to FHC's  First Request for Production of Documents, No. 7, which asked for documents concerning communications

3720315v1

between the plaintiff Mr. Kaplan and any others concerning various matters, Mr. Kaplan had objected on the grounds that the request was overbroad, not reasonably calculated to lead to the discovery of admissible evidence, and that the request sought documents protected from disclosure by the attorney client privilege and the work product doctrine. The plaintiff and the defendant agreed that the plaintiff would produce a privilege log.

3.    With respect to the defendant FHC's responses to Mr. Kaplan's First Request for Production of Documents, the defendant agreed to produce forthwith documents in response to Request Nos. 1, 4, 5, 6 and 9.

4.    With respect to the defendant FHC's responses to Mr. Kaplan's Request Nos. 6 and 9, in addition to the above agreement, FHC agreed to produce all documents filed with the Securities and Exchange Commission by FHC since 1986 (to the extent that it has copies of such documents in its possession or under its control), with the exception of those filings currently available on-line through the SEC EDGAR system.

5.    With respect to FHC's response to Mr. Kaplan's Request No. 7, which asked for documents relating to transactions between FHC (or any corporation of partnership in which FHC has an ownership interest) and Neil Ellis or any entity controlled by Mr. Ellis that were entered into or consummated since the 1986 Shareholders Meeting, FHC agreed to produce such documents for the 3 fiscal years preceding the January 2004 Shareholders' Meeting, and has further agreed to produce the relevant 10Ks describing similar transactions. Upon production of the 10Ks, Mr. Kaplan may request additional documents relating to the described transactions.

6.    With respect to FHC's response to Mr. Kaplan's Request No. 5, which asked for the corporation's records of meetings of the Board of Directors and all committees thereof since February, 1986, FHC has agreed to provide the documents it has for the time period requested.

The following issues raised by the plaintiff Mr. Kaplan remain to be decided by this Court:

1.    The plaintiff's Document Request No. 2 asked for "All proxies submitted to [FHC] by shareholders in connection with the January 22, 2004 Shareholders Meeting." FHC has not objected to this request on relevance grounds, but refuses to produce the proxies unless the plaintiff agrees to sign a protective order which would restrict the plaintiff's use of the proxies to verifying the accuracy of the addresses, would not allow the plaintiff to photocopy or share "the information" in the proxies, and would require the return of the proxies to FHC "after a reasonable period of time ... ."

2.    The plaintiff's Document Request No. 3 asked for "The list of shareholders and addresses used in connection with the mailing of the Proxy Materials for the January 22, 2004 Shareholders Meeting." Again, FHC refuses to produce the shareholder list unless the plaintiff agrees to sign a protective order which would restrict the plaintiff's use of the list only to verify the accuracy of addresses, would not allow the plaintiff to photocopy or share "the information" in the list, and would require the return of the list to FHC "after a reasonable period of time ... ."

3.    In the event that the plaintiff is not satisfied with FHC's supplemental responses to Document Request Nos. 5 and 7, which seek records of meetings of the Board of Directors and all committees thereof since February, 1986 (No. 5) and documents relating to transactions between FHC (or any corporation or partnership in which FHC has an ownership interest) and Neil Ellis or any entity controlled by Ellis that were entered into or consummated since 1986, (No. 7), the plaintiff will include these requests in the instant Motion to Compel.

3720315v1

### III. THE CONTESTED DOCUMENT REQUESTS

The plaintiff Mr. Kaplan served 9 document requests on FHC on or about April 13, 2004.[2]  Nearly 5 months after Mr. Kaplan's first written request for documents and more than 1 month after the Rule 26(f) conference and its automatic disclosures, on May 26, 2004, FHC served a written response to Mr. Kaplan's request which contains 14 "General Objections and Conditions of Production," and purports to reserve "its right to amend, modify, or supplement these objections or responses as stated here." As of July 9, 2004, not one piece of paper has been produced by FHC in response to Mr. Kaplan's document requests.

### DOCUMENT REQUEST NO. 2

All proxies submitted to [FHC] by shareholders in connection with the January 22, 2004 Shareholders Meeting.

### DOCUMENT RESPONSE NO. 2

For the reasons stated in the General Objections, First Hartford objects to this request. Subject to and without waiving these objections, First Hartford will produce non-privileged documents in its possession, custody or control that are responsive to Request No. 2 subject to the parties' execution of a protective order under which Kaplan agrees that: (a) he will use the proxies for the sole purpose of verifying the accuracy of addresses of shareholders; (b) he will not make any photocopies of the proxies; (c) he will not share the information in the proxies with

---

[2]  After several written requests for the corporation's documents had been made on behalf of Mr. Kaplan, dating back to January 29, 2004,  and had been refused by FHC, counsel for Mr. Kaplan hand-delivered a letter to counsel for FHC on April 13, 2004, requesting that counsel for FHC bring the 9 categories of documents with him to the scheduled Rule 26(f) conference on April 16, 2004. As counsel for Mr. Kaplan pointed out, "[t]hese documents are relevant to both our claims and your defenses in this case and are discoverable in this case. In the spirit of the Federal Rules and the Local Rules of the District of Massachusetts, which require both automatic and early disclosure of such documents, the requested documents should be provided to us forthwith." Despite the rules' encouragement of cost effective discovery by means of a voluntary exchange of information through the use of "informal, cooperative discovery practices  in which counsel provide information to opposing counsel without resort to formal discovery procedures ...", FHC did not produce any documents at the Rule 26(f) conference but instead served Mr. Kaplan with its automatic disclosures, revealing that it had documents at its corporate offices that consisted of (i) Annual meeting materials; and (ii) Proxy statements and underlying documents. Counsel for FHC at first refused to produce any documents without a formal Rule 34 document request, but later relented a bit and suggested that the April 13, 2004 letter be treated as a request for the production of documents.

anyone other than his counsel; and (iv) he will return the proxies to First Hartford after a reasonable period of time to be agreed upon in advance by the parties.

<u>STATEMENT OF MOVING PARTY'S POSITION</u>
<u>ON DOCUMENT REQUEST NO. 2</u>

The proxies submitted by shareholders in connection with the January 22, 2004 meeting are indisputably relevant to the plaintiff's claims in this case, and FHC itself, in its automatic disclosures, has said that the annual meeting materials and the proxy statements and underlying documents (presumably including the proxies submitted by shareholders) may be used to support FHC's defenses in the case.[3]   The plaintiff has alleged various improprieties with respect to the mailing of proxies to shareholders and the information disseminated to the shareholders by the proxy materials and should be allowed to discover to whom the materials were mailed, where the materials were mailed, who received the materials, when the materials were received, who acted upon the receipt of the materials and how they acted upon the materials. Such proxies are not proprietary, trade secret, confidential or privileged information deserving of a protective order, much less the onerous and unprecedented protective order sought by FHC in this case. The proxies should be produced without requiring the plaintiff to enter into a protective order as proposed by FHC.

<u>DOCUMENT REQUEST NO. 3</u>

The list of shareholders and addresses used in conjunction with the mailing of the Proxy Materials for the January 22, 2004 Shareholders Meeting.

---

[3]   As the Proxy Materials state, a majority of all outstanding shares entitled to vote must be represented in person or by proxy at the meeting in order for a quorum to be present; an affirmative vote of a majority of all outstanding shares present in person or by proxy was required to approve the 2003 Stock Option Plan; and a plurality of votes cast, present or by proxy, was required to elect the Directors put forth for election by management.

3720315v1

DOCUMENT RESPONSE NO. 3

For the reasons stated in the General Objections, First Hartford objects to this request. Subject to and without waiving these objections, First Hartford will produce non-privileged documents in its possession, custody or control that are responsive to Request No. 3 subject to the parties' execution of a protective order under which Kaplan agrees that: (a) he will use the list only to verify the accuracy of addresses of shareholders; (b) he will not make any photocopies of the list; (c) he will not share the information in the list with anyone other than his counsel; and (d) he will return the list to First Hartford after a reasonable period of time to be agreed upon in advance by the parties.

### STATEMENT OF MOVING PARTY'S POSITION ON DOCUMENT REQUEST NO. 3

Although not controlling with respect to this discovery dispute, the law of the state of Maine (the state of FHC's incorporation) provides that a corporation shall, after fixing a record date for a meeting (in this case, after December 22, 2003), prepare a list of the names of all its shareholders who are entitled to notice of a shareholders' meeting and make the list available for inspection by any shareholder at the corporation's principal office or in the city where the meeting will be held. Tit. 13-C: Maine Business Corporation Act, c. 640, Section 721.1 (2001). "A shareholder or the shareholder's agent or attorney is entitled on written demand to inspect and, subject to the requirements of section 1602, subsection 4, to copy the list, during regular business hours and at the shareholder's expense, during the period [after the meeting is noticed and continuing through the meeting] it is available for inspection." *Id.* Section 721.2. [4]

---

[4]  Section 1602, subsection 4 provides that a shareholder may inspect and copy the shareholder list if his or her demand is made in good faith and for a proper purpose, describes with reasonable particularity the shareholder's purpose and the records the shareholder desires to inspect, the records are directly connected with the shareholder's purpose, and the shareholder complies with such reasonable restrictions regarding the disclosure of such records as may be set forth in the corporation's articles of incorporation or bylaws. Tit. 13-C, Maine Bus. Corp. Act, c. 640,

Pursuant to the Maine statute, David Kaplan, the plaintiff's brother and a stockholder in FHC, on January 21, 2004, at about 9:30 a.m., went to the principal office of the corporation in Manchester, Connecticut, and presented to one of FHC's officers (Mr. Greenwald) a written demand "to inspect and copy the shareholders list of [FHC] showing the names and addresses of all shareholders entitled to notice of the meeting, and the number of shares held by each." *See* Exhibit A attached hereto. Although at first David Kaplan was shown the shareholder list and allowed to inspect it for a brief period of time, upon the appearance of Mr. Ellis further inspection of the list was denied, and David Kaplan was not permitted to copy the list.

On January 23, 2004, a day after the shareholders' meeting, Timothy O'Donnell, Esq., Clerk of FHC, delivered a letter to David Kaplan advising him that he could inspect and copy the list of FHC shareholders during regular business hours at the corporation's Manchester, Connecticut office (or in Waterville, ME) between January 26 and January 30, 2004. *See* Exhibit B attached hereto. On January 29, 2004, counsel for the plaintiff Richard Kaplan and David Kaplan sent a letter to Neil Ellis acknowledging the O'Donnell letter and demanding the inspection and copying of, inter alia, the list of shareholders at a date and place to be agreed upon within 5 business days. *See* Exhibit C attached hereto.

Mr. Ellis, as President of FHC, responded to counsel's January 29 demand in writing dated February 3, 2004. With respect to the list of shareholders, Mr. Ellis stated: "A list of shareholders showing for each shareholder: name, address and number of shares owned *will be made available to you.*" (emphasis added) *See* Exhibit D attached hereto. Despite written commitments from the Clerk of the corporation and President of FHC, and despite repeated demands for the shareholder list on subsequent occasions both before and after the filing of the

---

Section 1602.4 A through D (2001). Neither FHC's articles of incorporation nor its bylaws contain any restrictions regarding the disclosure of its shareholder list.

12

instant complaint, counsel for FHC have refused to produce the shareholder list without a Court order.

The subject of FHC's refusal to produce the shareholder list was raised by counsel for Mr. Kaplan at the Scheduling Conference held in open court before Judge Lindsay on May 12, 2004. The relevance of the list to the plaintiffs claims in the case was argued quite extensively before Judge Lindsay. It was abundantly clear from Judge Lindsay's comments from the bench that he was not convinced by any of FHC's counsel's arguments against the production of the list, and in fact, at the conclusion of the argument clearly encouraged the production of the list by FHC. At that time, nothing whatsoever was raised regarding the need for or the propriety of a protective order with respect to the shareholders list. That "condition of production" was first raised on May 26, 2004, when FHC served its written response to Mr. Kaplan's document request.

Though not controlling in this action, the Maine Business Corporation Act supports the production of the shareholder list to the plaintiff Mr. Kaplan. FHC twice has previously committed in writing to produce the list to Mr. Kaplan. The list is discoverable in this case by the applicable test of relevance. The list is not proprietary, a trade secret, confidential, or privileged. FHC has not and cannot make a compelling case for placing any restriction whatsoever on the production of the list to the plaintiff Mr. Kaplan. The list should be ordered produced forthwith.

IV. RESERVATION OF RIGHT TO SEEK TO COMPEL DOCUMENTS
IN RESPONSE TO REQUEST NOS. 5 AND 7

As noted above, FHC has agreed to produce the records it has in response to the plaintiffs Request No. 5 for "[a]ll records of meetings of the FHC Board of Directors and all committees thereof, and actions taken without a meeting, since the February, 1986 Shareholders Meeting." Nevertheless, since at the time this motion is filed there has been no production of any

13

such records, the plaintiff reserves the right to seek to compel the full production of the documents sought by Request No. 5.

FHC has also agreed to produce the documents sought by Request No. 7 for the 3 fiscal years covered by the Proxy Materials, and to produce the relevant 10Ks describing similar transactions for the years between February, 1986 and 2000. Nevertheless, since at the time this motion is filed there has been no production of any such documents, the plaintiff reserves the right to seek to compel the full production of the documents sought by Request No. 7.

## V. CONCLUSION

For all of the reasons stated, and upon the authorities cited, the plaintiff Richard Kaplan moves the Court for the entry of an order compelling the defendant FHC to produce forthwith the documents sought by the plaintiff's Request Nos. 2 and 3, and, if necessary, Request Nos. 5 and 7.

Respectfully submitted,
RICHARD E. KAPLAN,
Plaintiff,

By his attorneys,

/s/ Larry C. Kenna
Larry C. Kenna, P.C. (BBO #267760)
Robert Rothberg (BBO# 430980)
CHOATE, HALL & STEWART
Exchange Place
53 State Street
Boston, MA 02109
(617) 248-5000

Dated: 7-9-04

I hereby certify that the provisions of L.R. 37.1 have been complied with.

/s/ Larry C. Kenna

3720315v1

14