# Exhibit 4

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RICHARD E. KAPLAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-10402-NMG |
| | ) | |
| FIRST HARTFORD CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF RICHARD E. KAPLAN'S
## MOTION FOR AN EXTENSION OF THE FACT DISCOVERY DEADLINE

### INTRODUCTION

In this Court's Memorandum & Order dated November 29, 2004, the Court ordered the defendant First Hartford Corporation ("FHC") to produce to the plaintiff Richard E. Kaplan a shareholder list and all proxies submitted to FHC shareholders in connection with FHC's January, 2004 shareholders meeting. The Court also established the date of January 31, 2005 as the date for completion of all fact discovery. The Court's selection of the date January 31, 2005 for the completion of all fact discovery probably presumed prompt compliance by the parties with the Court's November 29, 2004 order to produce documents, and afforded the parties sufficient time to complete their remaining fact discovery.

However, while the plaintiff Mr. Kaplan promptly complied with the Court's order to produce documents relating to his stock ownership in FHC (the documents were produced on December 7, 2004), FHC has not complied with the Court's order to produce the shareholder list and the proxies. FHC, instead of producing the documents ordered by the Court, filed a Motion for Reconsideration or for Clarification of the Court's order on December 3, 2004. Mr. Kaplan

filed his opposition to FHC's Motion for Reconsideration or for Clarification on December 15, 2004. FHC then filed a Motion for Leave to File a Reply Memorandum in Further Support of its Motion for Reconsideration or for Clarification on December 23, 2004, attaching thereto its Reply Memorandum. The Court has yet to decide FHC's Motion for Reconsideration or for Clarification. In the meantime, FHC refuses to produce the documents the Court ordered produced on November 29, 2004.

FHC's refusal to produce the documents that the Court ordered it to produce more than 50 days ago, coupled with FHC's inexcusable delay in producing other documents relevant to the case that FHC agreed to produce more than 8 months ago (*See* footnote 5 *infra*), provides ample ground for the Court to extend Mr. Kaplan's time to complete his fact discovery to a date that is 60 days after the Court's ruling on FHC's pending Motion for Reconsideration or for Clarification.

ARGUMENT

On November 29, 2004, the Court ordered the defendant FHC to produce to the plaintiff Mr. Kaplan the following: (i) the list of shareholders names and addresses used in connection with FHC's mailing of proxy materials for its January, 2004 meeting of shareholders; and (ii) all proxies submitted to FHC shareholders in connection with that meeting. The Court also ordered the parties to complete all fact discovery in this case within 60 days, that is, by January 31, 2005.

On December 3, 2004, at approximately 4:50 p.m., counsel for FHC called counsel for Mr. Kaplan, and advised counsel for Mr. Kaplan that FHC was going to file a motion for reconsideration of the Court's November 29, 2004 order and that FHC would not produce the shareholders list until the motion for reconsideration was decided by the Court. About two hours later, at approximately 7 p.m. on December 3, 2004, counsel for Mr. Kaplan received notice that

2

FHC's Motion for Reconsideration or for Clarification had been filed electronically with the Court.[1] After Mr. Kaplan filed his opposition to FHC's Motion for Reconsideration or for Clarification, FHC filed, on December 23, 2004, a Motion for Leave to File a Reply Memorandum and attached its proposed reply memorandum to the motion as "Exhibit 1." FHC's motion for reconsideration and motion for leave to file a reply memorandum are *sub judice*.[2]

FHC's Motion for Reconsideration or for Clarification is nothing more than another in a long list of delaying tactics employed by FHC.[3] For example, consider FHC's handling of its

---

[1] FHC's motion for reconsideration was directed entirely to that part of the Court's order that dealt with production of the shareholders list, and made virtually no mention of the proxies the Court ordered to be produced. Nevertheless, FHC did not produce the proxies until December 13, 2004, two weeks after the Court's order, and then produced only redacted copies of the proxies. As counsel for FHC stated: "In light of the pendency of our motion for clarification or for reconsideration of the Court's November 29, 2004 Order, we have redacted names and addresses from the proxies. ..." *See* Mr. Kaplan's Opposition to FHC's Motion for Reconsideration or for Clarification, filed on December 15, 2004, at pp. 3-4, n. 6.

[2] FHC's motion for reconsideration and its reply memorandum advance the absurd proposition that this Court in this case should clarify its order and instruct Mr. Kaplan to satisfy the "proper purpose" limitation of the Maine state statute, and, moreover, erroneously assert that Mr. Kaplan is simultaneously seeking production of the same shareholders list in this Court and in the state court in Maine, where a judge has dismissed Mr. Kaplan's action to obtain the list. The case that was dismissed in the Maine state court sought to inspect and copy a *different* list from the list the Court in this case has ordered FHC to produce, as is abundantly clear from the Maine state court judge's (Atwood, J.) decision, from which Mr. Kaplan quoted extensively in the opposition he filed on December 15, 2005, to FHC's motion for reconsideration. Mr. Kaplan's action in Maine became necessary because, while this Court was considering Mr. Kaplan's motion to compel production of the shareholders list used for the mailing of the proxy materials for FHC's *2003 shareholders meeting*, FHC declared that its *2004 shareholders meeting* would be held on December 9, 2004. Mr. Kaplan then timely served FHC with a shareholder proposal to amend the FHC bylaws to provide for an 80% independent Board of Directors. FHC told Mr. Kaplan that it would include his proposal in the proxy materials it then intended to mail out in November, 2004, but refused to allow Mr. Kaplan to inspect and copy the then existing shareholders list, effectively frustrating Mr. Kaplan's right as a shareholder to communicate with the other shareholders of FHC to promote his proposal to amend the bylaws of the corporation to provide for an independent Board of Directors. Accordingly, Mr. Kaplan filed his first action in the Maine state court on or about October 28, 2004, seeking an order for the production of the *then existing shareholders list*--not the list used to mail the proxy materials for the 2003 shareholders meeting--pursuant to Maine state law. FHC promptly postponed the 2004 shareholders meeting to an unspecified date after January 17, 2005. Justice Atwood of the Maine state court decided Mr. Kaplan's first Maine state court action, and dismissed the action *without prejudice*. Mr. Kaplan then again demanded in writing to inspect and copy the current shareholders list by letter dated November 23, 2004, FHC again refused to allow him to inspect and copy the list, and Mr. Kaplan filed a second action in the Maine state court on December 8, 2004, seeking an order to produce the list pursuant to Maine state law. Just recently, on January 12, 2005, a second judge of the Maine state court (Marden, J.) issued an Order commanding FHC to provide the current shareholder list to Mr. Kaplan. *See* the attachment hereto marked Exhibit A.

[3] FHC's defense to Mr. Kaplan's second Maine state court action was the disingenuous argument that there was no impending corporate event which would allow Mr. Kaplan to state a "proper purpose" for inspection and copying of the shareholders list, and therefore his second action should be dismissed. *See* Justice Marden's Order on Defendant's Motion to Dismiss, Exhibit A at page 3. As to this argument, Justice Marden astutely observed that it

response to Mr. Kaplan's Document Request No. 7, which seeks documents relating to transactions between FHC and its President, Neil Ellis and entities controlled by Mr. Ellis. After 8 months of leading Mr. Kaplan to believe that the documents he sought existed and would be produced,[4] on December 17, 2004, FHC said that it had produced all the responsive documents it could find. *See* Exhibit C attached hereto.[5]

## CONCLUSION

Accordingly, Mr. Kaplan seeks an extension of the fact discovery deadline to a date that is 60 days after the Court rules on FHC's Motion for Reconsideration or for Clarification.[6] The extension is necessary to insure that Mr. Kaplan has the documents he is entitled to

---

"has the color to justify an attempt by the majority to prevent the rights of the minority through scheduling of meetings [,]" given the history of the case where the board of directors and managing shareholders control the date and time for shareholder meetings "and a question has been raised as to whether there have been routine annual meetings of shareholders ... [.]" *Id.*, n.1. The Justice also pointed out that FHC had adjourned the 2004 shareholders meeting from December 9, 2004 to "a date no earlier than January 17, 2005," and "[t]herefore, contrary to defendant's assertion, there is a meeting that has been called and postponed and gives rise to the shareholder's rights under [Maine state law]." *Id.* at page 4.

[4] As FHC's counsel said in an email to Mr. Kaplan's counsel on July 7, 2004, FHC would "produce the documents underlying the transactions referenced in the most recent proxy statement." This representation was repeated in later letters and email correspondence from counsel for FHC. *See* Exhibit B attached hereto, Mr. Kaplan's counsel's November 24, 2004, letter detailing the history of Mr. Kaplan's attempts to obtain the documents that FHC said it would produce.

[5] This assertion defies belief. On page 7 of the Proxy Statement furnished to shareholders in December, 2003, in connection with the solicitation of proxies by FHC for the January, 2004 shareholders meeting, FHC stated: "First Hartford and its subsidiaries have received from or made cash advances to other companies which are owned or controlled by Neil Ellis. First Hartford has also purchased from or sold property to, these companies as well as performed services for these companies." (emphasis supplied) These transactions are not trivial, and amount to millions of dollars. Documents relating to these transactions are clearly called for by Request No. 7, and must exist. Property cannot be transferred back and forth without documentation. There must have been documentation setting out the terms on which FHC performed services for Mr. Ellis' other companies. There must be some documentation of the money advanced by FHC to Mr. Ellis' other companies. FHC agreed to produce these documents, but has not produced a single document relating to the referenced transactions. The failure of FHC to produce these documents will likely result in another motion to compel by Mr. Kaplan.

[6] The Court has set June 16, 2005 as the date for the final pretrial conference in this case. It is not anticipated that that date will need to be changed if the fact discovery deadline is extended for Mr. Kaplan as he requests in this motion.

4

- - and needs - - to conduct efficient and effective depositions of the defendant corporation and its officers and directors, and others if necessary, and to prepare for the trial of this case.[7]

RICHARD E. KAPLAN,

Plaintiff,

By his attorneys,

/s/ Larry C. Kenna
Larry C. Kenna, P.C. (BBO #267760)
CHOATE, HALL & STEWART
53 State Street
Exchange Place
Boston, MA 02109
(617) 248-5000

---

[7] If the extension requested is granted, however, Mr. Kaplan respectfully suggests that the extension should apply only to Mr. Kaplan and not to FHC. FHC can advance no good reason for an extension of the fact discovery deadline set by the Court in its November 29, 2004 order. Before the Court's order was entered, FHC sought only to take two depositions, one of the plaintiff Richard Kaplan and one of his brother David Kaplan. FHC noticed David Kaplan's deposition for October 18, 2004, and subpoenaed 8 categories of documents from him, most of which related to his stock ownership in FHC. On October 14, 2004, FHC advised David Kaplan that his deposition would not go forward on the 18th, and thereafter David Kaplan served his written objection to inspection and copying of most of the subpoenaed documents. *See* Exhibit D attached hereto. FHC has not sought to reschedule David Kaplan's deposition. With respect to the plaintiff Richard Kaplan, FHC has noticed his deposition 3 times. Most recently, FHC noticed Richard Kaplan's deposition for December 8, 2004. On December 7, 2004, while Mr. Kaplan was in the process of preparing for his next-day deposition and sending to FHC by facsimile the documents regarding his stock ownership that the Court ordered him to produce, FHC cancelled the deposition. Mr. Kaplan has let FHC know that he would be available for a deposition after January 5, 2005 (*See* Exhibit E attached hereto), but FHC has not re-scheduled the deposition.

# Exhibit A

RECEIVED

STATE OF MAINE

KENNEBEC, ss.

JAN 1 4 2005

RUDMAN & WINCHELL
LAW OFFICES

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-04-275

RICHARD KAPLAN,

     Plaintiff

v.

FIRST HARTFORD CORPORATION,

     Defendant

ORDER ON DEFENDANT'S
MOTION TO DISMISS

Before the court is defendant's motion to dismiss plaintiff's complaint. Plaintiff has brought a complaint and application on an expedited basis under 13-C M.R.S.A. § 1604 for an order to permit inspection of record of shareholders. Section 1602(3)(C) provides:

> A shareholder of a corporation is entitled to inspect and copy during regular business hours at a reasonable location specified by the corporation any of the following records of the corporation if the shareholder meets the requirements of subsection (4) and gives the corporation written notice of the shareholder's demand at least five business days before the date on which the shareholder wishes to inspect and copy.
> (A)   ...
> (B)   ...
> (C)   The record of shareholders.

Subparagraph (4) provides:

> A shareholder may inspect and copy the records described in subsection (3) only if:
> (A)   The shareholder's demand is made in good faith and for a proper purpose;
> (B)   The shareholder describes with a reasonable particularity the shareholders purpose and the records the shareholder desires to inspect;
> (C)   The records are directly connected with the shareholder's purpose; and the shareholder complies with such reasonable restrictions regarding the disclosure of such records as may be set forth in the corporation's articles of incorporation and bylaws.

2

To justify his request, plaintiff asserted that the demand was made in good faith and for a proper purpose asserting that he wished to communicate with other record shareholders prior to the next shareholders meeting to evaluate his investment, discover self dealing and to communicate with other shareholders. On November 29, 2004, this court issued its Decision and Order regarding defendant's motion to stay or dismiss. The court found that the assertions by the plaintiff in his complaint did not describe "with reasonable particularity the shareholders purpose" for inspecting and copying the shareholders list and, therefore, concluded that he had not alleged a "proper purpose." It granted the motion to dismiss but went on further to say:

> The dismissal will be without prejudice, however, the January 29, 2004 letter demanded records then in existence for a reason which may differ from the current purpose, namely to assemble a sufficient number of shareholders to change FHC's management in an upcoming annual shareholders meeting. Thus, nothing in this order may be read as a bar to Kaplan, or others, recommencing their efforts to obtain a copy of FHC's shareholder list and taking the steps they may choose here, or in another court, to compel inspecting and copying such a list.

On December 8, 2004, the plaintiff filed a complaint and application on expedited basis under 13-C M.R.S.A. § 1604 for an order to permit the inspection of record of shareholders. In it, the plaintiff seeks to obtain information as to record shareholders "so that he has an opportunity to wage an effective proxy campaign on behalf of his proposal to amend the bylaws of FHC to require an independent board of directors."

On December 23, 2004, defendant brought a motion to dismiss. Defendant asserts that the demand letter of plaintiff dated November 23, 2004, is not consistent with the statute and continues to be contrary to this court's previous order. The letter contains the language, ". . . so that he has an opportunity to wage an effective proxy campaign on behalf of his proposal to amend the bylaws of FHC to require an independent board of directors."

Case 1:04-cv-10402-NMG    Document 58-5    Filed 07/24/2006    Page 10 of 25
Case 1:04-cv-10402-NMG    Document 21-2    Filed 01/21/2005    Page 4 of 8

3

The defendant argues that although no court has opined on whether Kaplan's stated purpose constitutes a "proper purpose" in the context of the Maine statute, other courts have done so in the context of analogous state statutes. It cites a Delaware statute defining a proper purpose as "purpose reasonably related to such persons interest as a stockholder." It cites *Shamrock Associates v. The Dorsey Corp.*, No. 76 and 78 (1984 Del. Ch. LEXIS 545). This involved a demand by the shareholder for the information to solicit other stockholders of the corporation as is necessary and appropriate to effect the change in the composition of the board of directors. The court held that the absence of any impending event to which the person's access to a stocklist is reasonably needed rendered the demand deficient. Defendant argues that there is no impending event. Therefore, there is no particular purpose, let alone a proper purpose, for his request.[1]

Title 13-C M.R.S.A. § 721 requires a corporation to prepare an alphabetical list of the names of all of its shareholders who are entitled to a notice of the shareholders meeting. The list must contain the address of and number of shares held by each shareholders. Subsection 2 that:

> The shareholders list must be available for inspection by any shareholder beginning two business days after notice of the meeting for which the list was prepared is given or the next business day in the case of a closed corporation is provided fewer than 10 days notice of such meeting, and continuing through the meeting, at the corporation's principal office or at a place identified in the meeting notice in the city where the meeting will be held.

Subsection 3 provides that:

---

[1] Since it appears from the history of this case that the board of directors and the managing shareholders control the date and time for shareholder meetings and a question has been raised as to whether there have been routine annual meetings of shareholders, this argument has the color to justify an attempt by the majority to prevent the rights of the minority through scheduling of meetings.

4

> The corporation shall make the shareholders available at the meeting, and
> a shareholder or shareholder's agent or attorney is entitled to inspect the
> list at any time during the meeting or at any adjournment.

The statute goes on to provide that if the corporation refuses to allow the shareholder or
his or her agent or attorney to inspect the shareholder's list before or at the meeting
shall copy the list " . . . the Superior Court of the county where the corporation's
principal office is located, . . . on application of a shareholder may summarily order the
inspection or copying at the corporation's expense and may postpone the meeting for
which the list until inspection or copying is complete."

In defendant's memorandum of law, by footnote, it is stated that, "FHC had
scheduled a shareholder's meeting for December 9, 2004. At the initial scheduling
conference in the Maine federal action, however, FHC agreed to adjourn the meeting
until a date no earlier than January 17, 2005, to provide the parties a sufficient time to
brief the issues and allow the court adequate time to enter a decision." Therefore,
contrary to defendant's assertion, there is a meeting that has been called and postponed
and gives rise to the shareholder's rights under section 721.

Both parties have cited to 13-C M.R.S.A. § 1604 as authority for the court to order
compliance with the right of a shareholder to inspect and copy shareholder records.
Section 1604(1) provides:

> If a corporation does not allow a shareholder who complies with section
> 1602(2) to inspect and copy any records required by that subsection to be
> available for inspection, the Superior Court of the county where the
> corporation's principal office or registered office is located may
> summarily order inspection and copying of the records at the
> corporation's expense upon application of the shareholder.

Section 1602(2) authorizes a shareholder of a corporation to inspect and copy records
during regular business hours at the corporation's principal office. The records of the
corporation are described in section 1601(5). Section 1601(5) refers to the following:

Case 1:04-cv-10402-NMG     Document 58-5     Filed 07/24/2006     Page 12 of 25
Case 1:04-cv-10402-NMG     Document 21-2     Filed 01/21/2005     Page 6 of 8

5

- Articles of incorporation with amendments.

- Bylaws with amendments.

- Resolutions of board of directors.

- Minutes of shareholders meetings.

- Written communications to shareholders.

- Lists of the names and business address of the current directors and officers.

- Its most recent annual report delivered to the Secretary of State.

It is subsection 3 of section 1601 that requires a corporation to maintain a record of its shareholders in a form that permits preparation of the list of the names and addresses of all shareholders in alphabetical order by class of shares showing the number and class of shares held by each.

Corporations are entirely a creature of statute. The statute is designed to protect the shareholders and in particular, minority shareholders with regard to protection of their investment. The statutes exist in various jurisdictions under different terms. A general examination of the corporation law with regard to shareholder rights as found in various volumes of *American Jurisprudence* (2nd. Ed 1985), § 774 notes that in almost every jurisdiction majority dominant or controlling shareholders are held to owe a fiduciary duty to the minority shareholders as well as to the other majority shareholders and to the corporation similar to the obligation owed by the officers and directors of the corporation. Section 314 advises us that the power to enact bylaws for the regulation of its affairs is inherent in every corporation as an incident of its existence and such powers are continuous when subject to the limitations that the bylaws must not contravene or be inconsistent with the charter of the corporation or the articles of incorporation and will not infringe upon the Constitution or general statutory laws or contravene public policy. Section 315 advises that the power to make and alter bylaws

Case 1:04-cv-10402-NMG    Document 58-5    Filed 07/24/2006    Page 13 of 25
Case 1:04-cv-10402-NMG    Document 21-2    Filed 01/21/2005    Page 7 of 8

6

resides in the corporation. From a practical standpoint, however, that power is exercised through the incorporators, directors, or stockholders, depending on the applicable state law and/or articles of incorporation. Finally, section 328 discusses that under the Model Business Corporation Act the power to alter, amend or repeal the bylaws is vested in the board of directors unless reserved to the shareholders by the articles of incorporation.

Article XI of the bylaws of the defendant corporation as presented as an exhibit by the plaintiff provides: "Except as otherwise provided by law, these bylaws may be amended, altered or repealed at any annual or special meeting of the stockholders, by a majority vote of the shares present or represented at such meeting or at any regular or special meeting of the directors, by a majority vote of the directors present at such meeting."

As owners of a corporation, shareholders have certain specific rights including the right to obtain a list of other owners for the purpose of waging a proxy fight in advance of an annual meeting. *See, e.g., E.L. Bruce Co. v. State ex rel. Gilbert,* 144 A.2d 533, 534 (Del. 1958) (writing nearly fifty years ago that "[i]nspection of the stock ledger to solicit proxies at the stockholders' meeting is *obviously* proper") (emphasis supplied); *Shamrock Assoc. v. Texas American Energy Corp.,* 517 A.2d 658 (Del. Ch. 1986) (proxy contestant permitted to inspect list of beneficial owners); *Donaldson v. Boston Herald-Traveler Corp.,* 197 N.E.2d 671, 676 (Mass. 1964) ("The solicitation of proxies in order to try to change management is a proper purpose."); *Hanrahan v. Puget Sound Power & Light Co.,* 126 N.E.2d 499, 503-04 (Mass. 1955) (communicating with other stockholders concerning a change in management is a proper purpose); *Fears v. Cattlemen's Inv. Co.,* 483 P.2d 724, 728 (Okla. 1971) (citing Illinois and Minnesota precedent and holding that "wanting to solicit proxies from other stockholders of a corporation is a 'proper

7

purpose'"); *see also Rockwell v. SCM Corp.*, 496 F.Supp. 1123, 1126 (S.D.N.Y. 1980) (stating there is "no question" that a shareholder has the right to compel production of the corporation's shareholder list to solicit proxies well in advance of the next annual meeting).

The entry will be:

Defendant's motion to dismiss is DENIED; it is hereby ORDERED: the defendant shall provide for plaintiff's inspection or copying at the corporation expense of its shareholders list in accordance with 13-C M.R.S.A. § 721(4) and shall make such postponement of the shareholders meeting as is necessary to carry out this procedure.

Dated: January _12_, 2005

Donald H. Marden
Justice, Superior Court

# Exhibit B

# CHOATE, HALL & STEWART

### A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

LARRY C. KENNA, P.C.
DIRECT DIAL: (617) 248-2113
EMAIL: LKENNA@CHOATE.COM

### EXCHANGE PLACE
### 53 STATE STREET

#### BOSTON, MASSACHUSETTS 02109-2804
TELEPHONE (617) 248-5000 · FAX (617) 248-4000

WWW.CHOATE.COM

November 24, 2004

Jonathan I. Handler, Esq.
Day, Berry & Howard, LLP
260 Franklin St.
Boston, MA 02110

     Re:   Richard E. Kaplan v. First Hartford Corporation (C.A. No. 04-10402-NMG)

Dear Jonathan:

With respect to our document request No. 7 in the above case (to which you responded in writing on May 26, 2004), you proposed in an email dated July 7, 2004 to "produce the documents underlying the transactions referenced in the most recent proxy statement."

On July 13, 2004, you produced some documents, but no documents underlying the transactions referenced in the proxy statement. As to those documents, you then said that it was "taking slightly longer than expected to gather" them, but you did "not foresee a significant delay."

Not having received any further documents from you or, in the alternative, an explanation for why 2 months had passed without hearing from you regarding the production of additional documents (despite our having signed your proposed protective order), on September 15, 2004, I sent you an email asking if you had any documents ready to produce. You failed to respond to my email of September 15, so on September 21 I called you and asked about the production of additional documents. On September 21 you told me that you had documents "stamped" and ready to produce, but you insisted that I send you a letter reiterating what I had already said in my September 15 email: that we would abide by the protective order even if that order was not endorsed by the Court. The letter you asked for was faxed to you on September 22. Again, not having heard from you and not having received any additional documents, on September 28 I sent you a letter and asked once more when you would be producing the documents that we had been discussing since mid-July, 2004.

On September 29, 2004, you produced 7 documents in response to our document request No. 7. On October 5, I sent you an email and asked whether those 7 documents were the entirety

3773020v1

November 24, 2004
Page 2

of the documents you intended to produce in response to our document request No. 7; as I pointed out to you then, the 7 documents did not appear to include anything related to many of the transactions referenced in the proxy materials at pages 7-8, such as "the stock pledges to Neil Ellis, the cash advances made to Ellis' companies, the loans referred to on page 8, etc.".

On October 13, 2004, when we met at your offices, one of the topics we discussed was the production of additional documents in response to our document request No. 7. You told me then that you (or your client) was looking for the documents, but had not found any as of the last time you checked. When I reminded you by email dated October 19 that we were patiently waiting to hear from you regarding the documents, you responded that it was your understanding "that we believe there are additional responsive documents, but we have not yet been able to locate them." You said that you expected "a further update later [during the week of October 18-22]" and that you would let me know what you learned.

I have heard nothing from you on this subject since your email of October 19. Another entire month has passed without any production of documents or any further explanation for the delay.

Would you mind explaining to me what is going on? When can we expect the production of the additional documents?

Very truly yours,

Larry C. Kenna, P.C.

cc:    Robert Rothberg, Esq.
       Richard Kaplan, Esq.

3773020v1

# Exhibit C

# Day, Berry & Howard LLP

COUNSELLORS AT LAW

Jonathan I. Handler
Direct Dial: (617) 345-4734
E-mail: jihandler@dbh.com

December 17, 2004

**VIA FACSIMILE AND FIRST CLASS MAIL**

Larry C. Kenna, Esq.
Choate, Hall & Stewart
Exchange Place
53 State Street
Boston, MA 02109

      Re:   **Richard E. Kaplan v. First Hartford Corporation**
             **C.A. No. 04-10402-NRG**

Dear Larry:

    I am writing to follow up on my December 1, 2004 letter. Since that time, we have undertaken another comprehensive search for documents responsive to Kaplan's document request number 7. We have not found any responsive documents beyond those we have previously produced.

    Please call me if you wish to discuss this further.

                Sincerely,

                Jonathan I. Handler

JIH/jmw
Enclosures
cc:    First Hartford Corporation

# Exhibit D

# CHOATE, HALL & STEWART

### A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

LARRY C KENNA, P C
DIRECT DIAL: (617) 248-2113
EMAIL: LKENNA@CHOATE.COM

EXCHANGE PLACE

53 STATE STREET

BOSTON, MASSACHUSETTS 02109-2804

TELEPHONE (617) 248-5000 • FAX (617) 248-4000

WWW.CHOATE.COM

October 19, 2004

BY FACSIMILIE AND FIRST CLASS MAIL

Jonathan I. Handler, Esq.
Day, Berry & Howard LLP
260 Franklin Street
Boston, MA 02110-3179

Re:    Kaplan v. First Hartford Corporation (C.A. No. 04-10402-NMG)

Dear Jonathan:

This letter will serve as David E. Kaplan's written objection, pursuant to Fed. R. Civ. P. Rule 45(c)(2)(B), to inspection or copying of certain documents demanded by you in the subpoena served on Mr. Kaplan in the above-referenced action.

You have demanded that David Kaplan, a non-party to this case, produce documents that show the number of shares of common stock he holds in the defendant First Hartford Corporation ("FHC"), in whose name the shares are held, from whom he acquired the shares, with whom he shares voting power over the shares, and other documents relating to his acquisition or transfer of shares in FHC and to the Schedule 13D he filed with the SEC in January, 2004. See Appendix A to the subpoena served on David Kaplan, Requests 1-5 and 7. Mr. Kaplan objects to producing any documents responsive to those requests.

It is not disputed that David Kaplan was a stockholder of FHC for many years before January, 2004, and still is, as FHC's own records show. David Kaplan's Schedule 13D, filed with the SEC in January, 2004, states that he has sole voting and dispositive power over 56,151 shares, that he has shared voting and dispositive power (with Richard E. Kaplan) over 445,535 shares, and that he has held the shares for many years with no transfers for more than 20 years except among family members and family owned trusts and entities. Moreover, David Kaplan's status as a shareholder of FHC is neither relevant nor material to any issue in the proxy fraud action brought against FHC by his brother, Richard E. Kaplan.

October 19, 2004
Page 2

You have also demanded that David Kaplan produce "[a]ll documents underlying or supporting the allegations in the Complaint." See Appendix A, Request 8. Mr. Kaplan objects to producing any such documents. Without waiving his objection, however, David Kaplan responds that he is not aware of any such documents with the exception of the Proxy Materials relating to the January 2004 shareholders meeting, copies of which the defendant already has in its possession.

Finally, you have demanded that David Kaplan produce "[a]ll documents concerning communications between you and any other persons, including Richard E. Kaplan, plaintiff in this action, or other shareholders of First Hartford, concerning (i) First Hartford, and/or (ii) the Shares." See Appendix A, Request 6. David Kaplan responds in part to this request by objecting to its overbreadth and to the fact that it is unlimited in time. Without waiving those objections, Mr. Kaplan responds that he has had no recent communications, to the best of his knowledge, with any shareholders of FHC other than Richard E. Kaplan, Neil Ellis and Stuart Greenwald. With this letter Mr. Kaplan produces the only two non-privileged documents he has that relate to such communications. See (i) Written Demand Pursuant to Section 721 of the Maine Business Corporation Act, dated January 21, 2004; and (ii) Letter dated January 23, 2004 from Timothy R. O'Donnell, Clerk of FHC, to David E. Kaplan.

In further response to Appendix A, Request 6, David Kaplan asserts, pursuant to Fed. R. Civ. P. Rule 45(d)(2), the attorney-client and work product privileges with respect to all of his other communications. In support of these claims of privilege, Mr. Kaplan attaches to this letter a list of the privileged communications.

As you know, David Kaplan's deposition was originally scheduled for October 18, 2004, but you informed me on October 14 that you did not intend to go forward with his deposition on the 18th. Please advise me as to how you wish to proceed with this matter.

Very truly yours,

Larry C. Kenna, P.C.

cc:    David E. Kaplan (by facsimile)
       Richard E. Kaplan, Esq. (by facsimile)
       Robert Rothberg, Esq.

3758879v1

# Exhibit E

# CHOATE, HALL & STEWART

A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

EXCHANGE PLACE

53 STATE STREET

BOSTON, MASSACHUSETTS 02109-2804

TELEPHONE (617) 248-5000 · FAX (617) 248-4000

WWW.CHOATE.COM

December 10, 2004

Jonathan I. Handler, Esq.
Day, Berry & Howard LLP
260 Franklin Street
Boston, MA 02110

Re:    Richard E. Kaplan v. First Hartford Corporation (C.A. No. 04-10402-NMG)

Dear Jonathan:

As you know from our telephone conversation late in the afternoon on December 7, my client and I were quite upset at your late cancellation of Richard Kaplan's deposition that you had scheduled for December 8, especially since the ostensible reason for the cancellation--your not having the documents regarding Mr. Kaplan's stock ownership-- was such a patently invalid one.

When you and I talked late in the day on December 3, I told you that you would have the documents at the latest on the day of, and before, the deposition on December 8. At that time you did not say that you needed the documents the day before the deposition or the deposition would have to be postponed. In fact Mr. Kaplan sent you the documents by facsimile on December 7, more than 18 hours before the deposition was scheduled to start. The approximately 50 pages of documents, 47 pages of which are stock certificates, could be thoroughly reviewed in about 15 minutes.

Your letter canceling the December 8 deposition of Mr. Kaplan attempted to reschedule the deposition for December 15. I told you at least twice on December 7 that Mr. Kaplan was not available for a deposition on December 15. Now, by facsimile dated December 9, you have proposed December 14, 15 or 17 for the deposition.

Nothing has changed since we spoke on December 7 regarding Mr. Kaplan's availability on the 15th. Nor is he available on the 14th or the 17th. Given his schedule and mine for the rest of December, the earliest we will be available is after January 5, 2005. Please propose some

3778454v1

December 10, 2004
Page 2


dates after that date that you could take Mr. Kaplan's deposition, and we will make every effort
to accommodate you.

Very truly yours,

Larry C. Kenna

cc:   Richard E. Kaplan, Esq.
      Robert Rothberg, Esq.

3778454v1