# Exhibit 5

## CHOATE, HALL & STEWART

A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

EXCHANGE PLACE

53 STATE STREET

BOSTON, MASSACHUSETTS 02109-2804

TELEPHONE (617) 248-5000 • FAX (617) 248-4000

WWW.CHOATE.COM

LARRY C. KENNA, P.C.
DIRECT DIAL: (617) 248-2113
EMAIL: LKENNA@CHOATE.COM

September 28, 2004

Jonathan I. Handler, Esq.
Day, Berry & Howard LLP
260 Franklin Street
Boston, MA 02110

Re: Richard E. Kaplan v. First Hartford Corporation (C.A. No. 04-10402-NMG)

Dear Jonathan:

When we last spoke about your client's production of documents on September 21, it was my understanding that you had ready to produce at least the documents underlying the transactions described in the Proxy Materials at pages 7-8, and that you would produce at least those documents no later than Monday, September 27, even if by that time the Court had not endorsed the proposed stipulated protective order.

I sent you the letter you requested relating to our discussions by facsimile on September 22. You still have not produced the documents.

As I have repeatedly asked, please let me know when you will be producing the documents.

Very truly yours,

Larry C. Kenna, P.C.

LCK/kmdc

cc: Richard E. Kaplan, Esq. (by facsimile--617-965-4577)

3751964v1

**CHOATE, HALL & STEWART**

A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

EXCHANGE PLACE

53 STATE STREET

BOSTON, MASSACHUSETTS 02109-2804

TELEPHONE (617) 248-5000 · FAX (617) 248-4000

WWW.CHOATE.COM

LARRY C. KENNA, P.C.
DIRECT DIAL: (617) 248-2113
EMAIL: LKENNA@CHOATE.COM

November 24, 2004

Jonathan I. Handler, Esq.
Day, Berry & Howard, LLP
260 Franklin St.
Boston, MA 02110

    Re:    Richard E. Kaplan v. First Hartford Corporation (C.A. No. 04-10402-NMG)

Dear Jonathan:

    With respect to our document request No. 7 in the above case (to which you responded in writing on May 26, 2004), you proposed in an email dated July 7, 2004 to "produce the documents underlying the transactions referenced in the most recent proxy statement."

    On July 13, 2004, you produced some documents, but no documents underlying the transactions referenced in the proxy statement. As to those documents, you then said that it was "taking slightly longer than expected to gather" them, but you did "not foresee a significant delay."

    Not having received any further documents from you or, in the alternative, an explanation for why 2 months had passed without hearing from you regarding the production of additional documents (despite our having signed your proposed protective order), on September 15, 2004, I sent you an email asking if you had any documents ready to produce. You failed to respond to my email of September 15, so on September 21 I called you and asked about the production of additional documents. On September 21 you told me that you had documents "stamped" and ready to produce, but you insisted that I send you a letter reiterating what I had already said in my September 15 email: that we would abide by the protective order even if that order was not endorsed by the Court. The letter you asked for was faxed to you on September 22. Again, not having heard from you and not having received any additional documents, on September 28 I sent you a letter and asked once more when you would be producing the documents that we had been discussing since mid-July, 2004.

    On September 29, 2004, you produced 7 documents in response to our document request No. 7. On October 5, I sent you an email and asked whether those 7 documents were the entirety

3773020v1

November 24, 2004
Page 2

of the documents you intended to produce in response to our document request No. 7; as I pointed out to you then, the 7 documents did not appear to include anything related to many of the transactions referenced in the proxy materials at pages 7-8, such as "the stock pledges to Neil Ellis, the cash advances made to Ellis' companies, the loans referred to on page 8, etc.".

On October 13, 2004, when we met at your offices, one of the topics we discussed was the production of additional documents in response to our document request No. 7. You told me then that you (or your client) was looking for the documents, but had not found any as of the last time you checked. When I reminded you by email dated October 19 that we were patiently waiting to hear from you regarding the documents, you responded that it was your understanding "that we believe there are additional responsive documents, but we have not yet been able to locate them." You said that you expected "a further update later [during the week of October 18-22]" and that you would let me know what you learned.

I have heard nothing from you on this subject since your email of October 19. Another entire month has passed without any production of documents or any further explanation for the delay.

Would you mind explaining to me what is going on? When can we expect the production of the additional documents?

Very truly yours,

Larry C. Kenna, P.C.

cc: Robert Rothberg, Esq.
    Richard Kaplan, Esq.

3773020v1

# CHOATE, HALL & STEWART
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

EXCHANGE PLACE

53 STATE STREET

BOSTON, MASSACHUSETTS 02109-2804

TELEPHONE (617) 248-5000 • FAX (617) 248-4000

WWW.CHOATE.COM

LARRY C. KENNA, P.C.
DIRECT DIAL: (617) 248-2113
EMAIL: LKENNA@CHOATE.COM

December 2, 2004

BY FACSIMILE

Jonathan I. Handler, Esq.
Day, Berry & Howard LLP
260 Franklin Street
Boston, MA 02110-3179

Re: Richard E. Kaplan v. First Hartford Corporation (C.A. No. 04-10402-NMG)

Dear Jonathan:

Thank you for your facsimile of December 1, 2004, regarding your efforts to locate documents responsive to our Request No. 7. I look forward to the production which you said would occur before the close of business today, and earnestly hope that your efforts in pursing "other sources for potentially responsive documents" prove fruitful, resulting in a further production early next week.

As you know, Judge Gorton has ordered you to produce the list of shareholder names and addresses used in connection with the mailing of proxy materials for the Annual Meeting of Shareholders of First Hartford Corporation held in January, 2004, and all proxies submitted in connection with the January, 2004 meeting (as described in our Document Request No. 2). I expect that you will produce the list and the proxies immediately, but in all events no later than Monday, December 6, 2004.

Thank you for your anticipated cooperation.

Very truly yours,

*Larry Kenna*

Larry C. Kenna, P.C.

cc: Richard E. Kaplan, Esq. (by facsimile)
    David E. Kaplan (by facsimile)
    Robert Rothberg, Esq. (by interoffice mail)

3775008v1

# CHOATE, HALL & STEWART
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

EXCHANGE PLACE

53 STATE STREET

BOSTON, MASSACHUSETTS 02109-2804

TELEPHONE (617) 248-5000 · FAX (617) 248-4000

WWW.CHOATE.COM

LARRY C. KENNA
DIRECT DIAL: (617) 248-2113
EMAIL: LKENNA@CHOATE.COM

January 21, 2005

Jonathan I. Handler, Esq. (617) 345-4745
Day, Berry & Howard LLP
260 Franklin Street
Boston, MA 02110

    Re:    Richard E. Kaplan v. First Hartford Corporation (C.A. No. 04-10402-NMG)

Dear Jonathan:

    The Proxy Statement furnished to shareholders of First Hartford Corporation ("FHC") in connection with the solicitation of proxies by the Board of Directors to be used at the 2003 annual meeting of shareholders, on page 7, stated: "First Hartford and its subsidiaries have received from or made cash advances to other companies which are owned or controlled by Neil Ellis. First Hartford has also purchased property from or sold property to, these companies as well as performed services for these companies." Our document request number 7 asked for "[a]ll documents relating to transactions between FHC (or any corporation or partnership in which FHC has an ownership interest) and Neil Ellis or any entity controlled by him that were entered into or consummated since the 1986 Shareholders Meeting."

    Following our Rule 37.1 conference on July 1, 2004, during which we discussed your objections to producing any documents responsive to our document request number 7 and your referral of us to the "Proxy Materials for the Annual Meeting of Shareholders dated January 24, 2004 at pages 7 and 8," you sent me an email as follows: "With respect to your document request #7, we propose the following: we will produce the documents underlying the transactions referenced in the most recent proxy statement. As to earlier periods, we will produce the relevant 10Ks (to the extent they are not otherwise readily available to you) describing similar transactions. It does not appear that the company has retained underlying documentation relating to those earlier transactions. We suggest, however, that you review the 10Ks and if there are specific transactions that interest you, you should identify them and we will investigate further."

January 21, 2005
Page 2

You have made 3 separate document productions in this case:

The first production, on July 13, 2004, consisted of meeting minutes and Form 10Ks for 1986-2003. The Form 10Ks were produced in keeping with your proposal for dealing with part of our document request number 7, but no documentation of any of the transactions referred to therein--or in the Proxy Materials--were produced.

The second production, on September 29, 2004, consisted of 7 documents, essentially the guaranty transactions referenced on page 7 of the Proxy Materials. On October 5, 2004, I sent you an email and asked as follows: "Are the documents you produced on September ... 29 the entirety of the documents you intend to produce in response to our Request No. 7? You have said in the past that you would 'produce the documents underlying the transactions referenced in the most recent proxy statement,' but the 127 or so pages you recently produced do not appear to include anything related to many of the transactions referenced in the proxy materials at pages 7-8. For example, I saw nothing relating to the stock pledges to Neil Ellis, the cash advances made to Ellis's companies, the loans referred to on page 8, etc.".

The third production, on December 2, 2004, consisted of documents relating to some of the loan transactions identified in the Proxy Materials on pages 7 and 8, but again did not include anything related to the property transfers, the cash advances or the intercompany services referenced in the Proxy Materials.

Finally, on December 17, 2004, you informed me that your "comprehensive search for documents responsive to Kaplan's document request number 7" (conducted after your third production of documents some 2 weeks earlier) has failed to turn up any "responsive documents beyond those we have previously produced."

In summary, it appears that you have provided documentation for some, but not all, of the loan and pledge transactions referenced in the Proxy Materials. You have not provided any documents relating to the property transfers, cash advances or intercompany services referred to in the Proxy Materials, and you have not provided any documents relating to the Hartford Lubbock transactions between FHC or one of its subsidiaries, and Journal Publishing, which is controlled by Mr. Ellis.

Are you telling me that for some of the loans referenced in the Proxy Materials you have no documentation, and that no documentation exists of the property transfers, the intercompany services and/or the cash advances referred to in the Proxy Materials on page 7, or of the dealings involving Hartford Lubbock referred to in the Proxy Material on page 8? If so, I find that curious in light of FHC's certifications to the SEC that it has adequate accounting controls. If the answer is no, such documents do exist, then why have you not produced them?

January 21, 2005
Page 3

    It also appears that your production of proxies was incomplete. Aside from the improper redactions, a tabulation of the number of shares represented by the proxies you produced with the number of shares voted at the meeting indicates that proxies for a large number of shares were not produced. Would you please advise whether you produced copies of all of the proxies.

    I will await your response to my inquiry, and would prefer that you send it to me in writing.

Very truly yours,<br><br>Larry C. Kenna

cc:    Richard E. Kaplan, Esq.
        Robert Rothberg, Esq.

3791930v1

# CHOATE, HALL & STEWART LLP

LARRY C. KENNA
DIRECT DIAL: (617) 248-2113
EMAIL: LKENNA@CHOATE.COM

EXCHANGE PLACE
53 STATE STREET
BOSTON, MASSACHUSETTS 02109-2804

T (617) 248-5000     F (617) 248-4000
www.choate.com

March 25, 2005

VIA FACSIMILE (860) 275-0343

John B. Nolan, Esq.
Day, Berry & Howard LLP
City Place 1
Hartford, CT 06103

Re:  Richard E. Kaplan v. First Hartford Corporation (C.A. No. 04-10402-NMG)

Dear John:

As you know, the plaintiff's document request number 7 in this case requested "[a]ll documents relating to transactions between FHC (or any corporation or partnership in which FHC has an ownership interest) and Neil Ellis or any entity controlled by him that were entered into or consummated since the 1986 Shareholders Meeting." The recent deposition of Stuart I. Greenwald, Treasurer, Secretary, and a Director of FHC for more than 20 years, made it clear that documents in addition to those previously produced by FHC exist and are in the possession, custody or control of FHC and should have been produced long before now in this litigation. Accordingly, this is our demand for the immediate production of those documents by FHC in the above-referenced case.

The documents referenced herein must be produced as soon as possible, but in all events no later than Friday, April 1, 2005, in light of the fact that we will be resuming depositions of the officers and directors of FHC on Tuesday, April 5, 2005 in Boston.

The plaintiff's complaint in this case, at paragraph 18, alleged that the proxy materials mailed to shareholders in connection with the January, 2004 meeting of shareholders failed to disclose sufficient information about self-dealing transactions between Neil Ellis and FHC. The plaintiff is entitled to sufficient information about the transactions in question to judge whether the terms of the transactions were fully disclosed to the shareholders and were fair to FHC and its shareholders.

Following our Rule 37.1 conference on July 1, 2004, Jonathan Handler of your firm sent me an email as follows: "With respect to your document request #7, we propose the following: we will produce the documents underlying the transactions referenced in the most recent proxy

PLAINTIFF'S EXHIBIT
17
6/15/05  JD

March 25, 2005
Page 2

statement. ..." However, as I have pointed out in several emails to Mr. Handler, and in my letters dated November 24, 2004 and January 21, 2005 (copies of which are attached hereto for your reference), although some responsive documents have been produced by FHC, no documents were produced relating to the loan and pledge transactions referenced in the proxy materials, the property transfers, cash advances and intercompany services referred to in the proxy materials, the Hartford Lubbock transactions between FHC or one of its subsidiaries and Journal Publishing, a company controlled by Mr. Ellis, and other transactions alluded to in the proxy materials but not fully described. FHC's response to my letters was its February 1, 2005 letter from Mr. Handler inviting the plaintiff to "inquire further about the transactions in question and the documents that relate to those transactions ... by way of deposition[,]" which is just what we did at the deposition of Stuart Greenwald on March 21, 2005.

Accordingly, the plaintiff demands the immediate production of the following[1]:

1. Minutes of the meeting of directors dated 12/19/03 (page 101), and minutes of any other meetings that pre-date FHC's July, 2004 production that have not previously been produced.

2. All stock pledge agreements (pp. 116-118).

3. All documentation of the cash advances referred to on pp. 119-120.

4. All management services agreements (see, e.g., pp. 126-127 for Hartford Lubbock), and documentation of special fees or the like (over and above 4% management fees).

5. The Hartford Lubbock Partnership Agreement (pp. 128-130).

6. All documentation of the loans referred to at p. 131 (loans with no interest payments), and all loans or promissory notes to or from Green Manor and/or Journal Publishing and FHC or any of its subsidiaries.

7. All documentation of the Scitico Gardens loan transaction (pp. 135 and 154).

8. All documents of the Lead Tech transaction referred to beginning at p. 142.

9. All documents relating to the fees paid by Hartford Lubbock LP (p. 156).

---

[1] The page references that appear following some of these items are taken from the Rough Draft Copy of the email version of the transcript of the Deposition of Stuart I. Greenwald, taken on March 21, 2005.

March 25, 2005
Page 3

    10.    All documents relating to the construction management fee of $500,000.00 paid to Brewery Parkade (p. 157).

    11.    If stock has been pledged to Mr. Ellis in connection with the purchase of the West Springfield, MA shopping center, or if Mr. Ellis has an interest in that shopping center or the entity that owns it (in addition to his interest as a shareholder of FHC), all documents relating to the financing of the West Springfield, MA shopping center and the construction loan (pp. 158-160).

Since time is of the essence with respect to the production of these documents, please let me know at your earliest convenience if there is anything that I can do to expedite the production process.

Very truly yours,

*[signature]*

Larry C. Kenna

cc:    Jonathan I. Handler (by facsimile)
       Richard E. Kaplan, Esq. (by facsimile)
       Robert Rothberg, Esq. (by interoffice mail)

# Day, Berry & Howard LLP
COUNSELLORS AT LAW

Jonathan I Handler
Direct Dial: (617) 345-4734
E-mail: jihandler@dbh.com



April 4, 2005

**BY HAND DELIVERY**

Larry C. Kenna, Esq.
Choate, Hall & Stewart
Exchange Place
53 State Street
Boston, MA 02109

    Re:    <u>Richard E. Kaplan v. First Hartford Corporation</u>
             C.A. No. 05-10530-NMG

Dear Larry:

    I am writing in response to your March 25, 2005 letter. I will respond to each of your numbered categories in order.

    1.    <u>Minutes of directors' meetings</u>. We are enclosing a copy of the minutes from the December 19, 2003 meeting (bates numbered FHC 1950-1951), which had been misfiled. FHC is not aware of any other responsive minutes that have not previously been provided.

    2.    <u>Stock pledge agreements</u>. <u>See</u> enclosed documents bates numbered FHC 1998-2040. These include all the cancelled and existing pledge agreements of which FHC is aware.

    3.    <u>Documentation of the cash advances</u>. <u>See</u> enclosed documents bates numbered FHC 1952-1954.

    4.    <u>Management services agreements and documentation of special fees</u>. FHC does not believe any "management services agreements" exist. Any special fees would have been documented in FHC's 10-Ks.

    5.    <u>The Hartford Lubbock Partnership Agreement</u>. <u>See</u> enclosed documents bates numbered FHC 1968-1979. We are in the process of retrieving one related document that we expect to be able to produce tomorrow.

    6.    <u>Documentation of the loans referred to at p. 131</u>. <u>See</u> response to item 3 above.

## Day, Berry & Howard LLP

Larry C. Kenna, Esq.
April 4, 2005
Page 2

      7.    <u>Documentation of the Scitico Gardens loan transaction.</u> <u>See</u> enclosed documents bates numbered FHC 1955-1967.

      8.    <u>Documents of the Lead Tech transaction.</u> <u>See</u> enclosed documents bates numbered FHC 1980-1997.

      9.    <u>Documents relating to the fees paid by Hartford Lubbock LP.</u> <u>See</u> response to item 4 above.

      10.    <u>Documents relating to the construction management fee of $500,000.00 paid to Brewery Parkade.</u> <u>See</u> enclosed documents (bates numbered FHC 2041-2049).

      11.    <u>Stock pledged to Mr. Ellis in connection with the purchase of the West Springfield, MA shopping center.</u> No such stock has been pledged to Mr. Ellis, nor does Mr. Ellis have an interest in that shopping center or in the entity that owns it.

Please call us if you wish to discuss these issues further. Please also let us know when you would like to re-schedule the depositions of Messrs. Harding and Ellis.

                                            Sincerely,

                                            Jonathan I. Handler

cc:    First Hartford Corporation
       John B. Nolan, Esq.



# CHOATE, HALL & STEWART LLP

LARRY C. KENNA
DIRECT DIAL: (617) 248-2113
EMAIL: LKENNA@CHOATE.COM

EXCHANGE PLACE
53 STATE STREET
BOSTON, MASSACHUSETTS 02109-2804

T (617) 248-5000   F (617) 248-4000
www.choate.com

July 19, 2005

Jonathan I. Handler, Esq.
Day, Berry & Howard LLP
260 Franklin Street
Boston, MA 02110

Re: Richard E. Kaplan v. First Hartford Corporation (C.A. No. 04-10402-NMG)

Dear Jonathan:

Enclosed is a complete set of the exhibits marked for identification during the depositions of First Hartford Corporation and Messrs. Greenwald, Harding and Ellis in the above-captioned case.

There are still some additional documents (or pages of documents) that we want produced by FHC as soon as possible. Those documents are as follows:

--Exhibits A, B, C and D to the FHC Board meeting minutes dated December 19, 2003 (see the June 15, 2005 FHC 30(b)(6) deposition transcript at pp. 201-202);

--the missing pages of the 4th Amendment to the Hartford Lubbock Limited Partnership agreement dated July 5, 1994 (see pp. 237-240);

--the missing pages of the December 18, 1998 limited partnership agreement (see pp. 241-244); and

--the Lead Tech board of directors' approval of the assignment and the assignment of the receivable referred to at pp. 265-268.

July 19, 2005
Page 2

    We look forward to receiving the above documents or parts thereof.

                              Very truly yours,

                              Larry C. Kenna

cc:   Richard E. Kaplan, Esq. (without enclosures)
       David Kaplan (without enclosures)

3960520v1

# Day, Berry & Howard LLP

COUNSELLORS AT LAW

Jonathan I. Handler
Direct Dial: (617) 345-4734
E-mail: jihandler@dbh.com

July 27, 2005

**BY HAND DELIVERY**

Larry C. Kenna, Esq.
Choate, Hall & Stewart
Exchange Place
53 State Street
Boston, MA 02109-2804

   Re: <u>Richard E. Kaplan v. First Hartford Corporation</u>
      C.A. No. 04-10402-NMG

Dear Larry:

  At your request, I am enclosing copies of the following documents:

  1. Exhibits A - D to the FHC Board meeting minutes dated December 19, 2003 (bates nos. FHC 2076-2107).

  2. The Fourth Amendment to the Lubbock Parkade, Inc./Parkade Center, Inc. limited partnership agreement dated July 5, 1994 (bates nos. FHC 2108-2117).

  3. The limited partnership agreement between Parkade Center, Inc. and Hartford – Lubbock Limited Partnership dated December 18, 1998 (bates nos. FHC 2118-2130).

  4. The Lead Tech Board of Directors' approval of the assignment referenced by Mr. Greenwald in his deposition (bates no. FHC 2131).

  We are producing these documents pursuant to the terms of the Stipulated Protective Order.

  Please call us with any questions.

            Sincerely,

            Jonathan I. Handler

JIH/kat/slw
Enclosures
cc: First Hartford Corporation
   John B. Nolan, Esq.