# Exhibit 8

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RICHARD E. KAPLAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-10402-NMG |
| | ) | C.A. No. 05-10320-NMG |
| FIRST HARTFORD CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF RICHARD E. KAPLAN'S MOTION TO COMPEL THE PRODUCTION
OF DOCUMENTS BY DEFENDANT FIRST HARTFORD CORPORATION**

The trial of these consolidated proxy fraud cases is scheduled to begin on May 15, 2006.

Following the Final Pretrial Conference held on April 6, 2006, in accordance with the Court's

order of that date, the plaintiff, Richard E. Kaplan, served a Request for Production of

Documents on the defendant, First Hartford Corporation ("FHC"), on April 13, 2006. A copy of

the plaintiff's document request is attached hereto and marked Exhibit A. The defendant was to

produce documents responsive to the request by no later than April 21, 2006.

On April 20, 2006, the defendant FHC served the plaintiff with its written response to the

document request and produced documents. A copy of the defendant's response is attached

hereto and marked Exhibit B. For present purposes, there are two categories of documents

requested by the plaintiff that the defendant has not produced and refuses to produce,

necessitating this Motion to Compel.

First, the plaintiff asked for documents showing payments and transactions between the

defendant FHC and an entity called Richmond Realty LLC. See Exhibit A, Request No. 4.[1] The

---

[1] Richmond Realty LLC is owned by FHC director and officer David B. Harding. As such, transactions for the
period from April 1, 2004 through October, 2005 were required to be, and were not, reported in the Proxy Statement
regardless of their characterization. In addition, to the extent they constitute compensation to Mr. Harding, they are
required to be reported for the two preceding years as well, that is for the period from May 1, 2002 forward.

defendant FHC produced some ledger sheets showing such payments and transactions only for the period beginning May 1, 2005 and copies of checks dated after March, 2005. Defendant has been requested, and has refused, to produce similar documents for the entire period covered by the Kaplan III Proxy Statement.

At the 30(b)(6) deposition of FHC, taken on May 2, 2006, the corporation's designee confirmed that such ledger sheets exist. Later on the same day, during the deposition of the President of FHC, Mr. Ellis, counsel for the plaintiff requested the production of the earlier ledger sheets again. The defendant has refused to produce the requested documents. See the attachment hereto marked Exhibit C. There is little burden involved in producing the ledger sheets, as there is a separate account number for the transactions, and there are fewer than 10 pages in total for all of the years combined.

Second, the plaintiff asked for documents showing any payments to Mr. Ellis's daughters by FHC or any entity controlled by FHC. See Exhibit A, Request No. 6. The defendant FHC responded with a hail of objections, but in the end stated that it was not aware of the existence of any such documents. The plaintiff found this response to its document request curious because ledger sheets showing such payments by Hartford Lubbock Limited Partnership, an entity described in the Proxy Statement as "a limited partnership of which Journal Publishing Company, Inc. owns a 99% limited partnership interest and First Hartford owns a 1% general

2

partnership interest. . .,"[2] had been produced to the plaintiff in response to his document request in the litigation pending between the parties in the federal court in Maine.[3]

The plaintiff then identified the documents for the defendant and requested that they be produced. See the attachment hereto marked Exhibit D. The defendant refused. The plaintiff inquired of the basis for the refusal to produce the documents, and the defendant responded that the documents were not responsive to the plaintiff's request because the Hartford Lubbock Limited Partnership was not controlled by FHC.

The plaintiff then proceeded to attempt to show the defendant that the evidence in these cases demonstrated that a subsidiary of the defendant, Parkade Center, Inc., was the sole general partner of the Hartford Lubbock Limited Partnership, and therefore, the documents were not only responsive to the plaintiff's document request, but were clearly in the possession, custody or control of the defendant and should be produced in these cases. The defendant persisted in refusing to produce the documents, claiming that they were "considering" or "thinking further about" the plaintiff's request. See the attachment hereto marked Exhibit D.

At the deposition of the defendant's President, Neil H. Ellis, on May 2, 2006, the basis for the defendant's position that the Hartford Lubbock Limited Partnership is not controlled by the defendant became clearer. Simply stated, Ellis, who through his company Journal Publishing Company, Inc. owns a 99% limited partner interest in the Hartford Lubbock Limited Partnership, claimed (a) that he did not know which FHC subsidiary was the general partner of FHC, but that

---

[2] The Proxy Statement also states: "Mr. Ellis's wife is the President of Journal Publishing Company, a subsidiary of Green Manor Corporation, which is wholly owned by Mr. Ellis and his wife."

[3] In the Maine federal court litigation, a standard Confidentiality Order was entered which prohibits the parties from using documents marked confidential by the parties for any purpose but the litigation in Maine. FHC had marked the subject documents confidential in the Maine litigation, and had never produced them in these consolidated cases. This led to the anomalous result that, absent agreement of the parties or a modification of the Maine case confidentiality order – neither of which the defendant FHC would agree to despite the plaintiff's requests -- the plaintiff could not use documents that were relevant to these cases, and that it had in its possession, in these cases. Thus, the plaintiff requested the documents in these cases, but was met with the response that the defendant FHC was not aware of the existence of any such documents.

it was only "nominally" the general partner, and (b) that the general partner did not control Hartford Lubbock Limited Partnership, and (c) he, Neil Ellis, controlled the partnership in his capacity as the indirect owner of the limited partner. Ellis did not deny the existence of the documents or the payments to his daughters -- indeed he admitted paying his daughters and son-in-law monies over several years from the partnership -- but the defendant has persisted in refusing to produce the documents that show those payments and the amounts of such payments on the grounds that Hartford Lubbock Limited Partnership is controlled by Ellis rather than by the FHC subsidiary.

This argument is truly unusual. Under the Hartford Lubbock Limited Partnership partnership agreement, FHC's wholly-owned subsidiary Parkade Center, Inc. has the sole power to manage Hartford Lubbock Limited Partnership, and Ellis's limited partner entity is excluded from the management of Hartford Lubbock Limited Partnership. See the attachment hereto marked Exhibit E. Ellis is appropriately involved in the management of Hartford Lubbock Limited Partnership, since he is the President of Parkade Center, Inc., the general partner. See the attachment hereto marked Exhibit F. Therefore, Mr. Ellis's involvement in the management of Hartford Lubbock Limited Partnership is fully consistent with (a) the partnership agreement and filings, and (b) FHC's control of Hartford Lubbock Limited Partnership.

What is truly remarkable is Mr. Ellis's testimony, given for the purpose of justifying withholding documents, that his management of Hartford Lubbock Limited Partnership is as an officer of the limited partner (which has no management authority) and not as officer of the general partner (which has full management authority). Basically, he is asking the Court (a) to ignore the Hartford Lubbock Limited Partnership partnership agreement under which FHC controls Hartford Lubbock Limited Partnership and Ellis's limited partner does not, and (b) to accept at face value Ellis's convenient mental construct by which he has testified with certainty

4

that his management activities at Hartford Lubbock Limited Partnership (which are completely appropriate in his capacity as President of the general partner) are solely in his capacity as an officer of the limited partner.

WHEREFORE, the plaintiff respectfully requests that the Court order the defendant FHC to produce the requested documents.

Respectfully submitted,

RICHARD E. KAPLAN,
Plaintiff,

By his attorneys,

/s/ Larry C. Kenna
Larry C. Kenna (BBO No. 267760)
Robert Rothberg (BBO No. 430980)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
(617) 248-5000

Dated:  May 9, 2006

4079412v1

# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                              )
RICHARD E. KAPLAN,            )
                              )
              Plaintiff,      )
                              )
         v.                   )          C.A. No. 04-10402-NMG
                              )          C.A. No. 05-10320-NMG
FIRST HARTFORD CORPORATION,   )
                              )
              Defendant.      )
                              )
```

## PLAINTIFF RICHARD KAPLAN'S REQUEST FOR THE PRODUCTION OF DOCUMENTS BY DEFENDANT FIRST HARTFORD CORPORATION

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Rule 34.1 of the Local Rules of the United States District Court for the District of Massachusetts, the plaintiff Richard E. Kaplan hereby requests that the defendant First Hartford Corporation produce the following documents and materials set forth below for inspection and copying in accordance with the Court's Order of April 6, 2006, at the offices of Choate, Hall & Stewart LLP, Two International Place, Boston, Massachusetts.

## DOCUMENTS REQUESTED

1.   Minutes, recordings, or other reports or descriptions of each regular or special meeting of the Board of Directors of FHC between 1984 and the present, not previously produced.

2.   Minutes, records, or other reports or descriptions of every meeting between May 1, 2000 and the present of the compensation committee, if any, created by the Board of Directors of FHC.

3.    All documents reviewed by the Board of Directors of FHC from May 1, 2000 through October 26, 2005, that relate to the Board's performance of the functions of a compensation committee.

4.    Documents describing or memorializing each transaction between Richmond Realty, LLC or any entity controlled by David Harding, on the one hand, and FHC or any subsidiary of FHC (consolidated or unconsolidated), on the other, since May 1, 2000, including without limitation the written management contracts described by David Harding on page 64 of his deposition.

5.    All documents that refer or relate to the statement on page 14 of the Proxy Statement as follows: "Provisions have been included to meet the requirements for deductibility of executive compensation for the purposes of Section 162(m) of the Internal Revenue Code with respect to options and other awards by qualifying grants and payments under the 2003 Plan as performance-based compensation."

6.    All documents referring or relating to payments by FHC or any subsidiary of FHC (consolidated or unconsolidated), or any entity controlled by FHC, to Neil Ellis's daughters from May 1, 2000 to the present.

7.    All documents referring or relating to the October 2004 refinancing of Putnam Parkade and repayment of the Putnam Parkade loan to Journal Publishing.

8.    All documents referring or relating to the grants of the nonqualified options and put options that are referenced in the Proxy Statement mailed to shareholders with the Notice of the Annual Meeting for November 30, 2005.

9.      All documents referring or relating to money owed to FHC or any subsidiary of FHC (consolidated or unconsolidated) by Richmond Realty LLC or any other entity controlled by Harding, Ellis or Greenwald (and not controlled by FHC).

10.     All documents referring or relating to the indebtedness of FHC or any subsidiary of FHC (consolidated or unconsolidated) to Ellis and/or entities owned or controlled by Mr. Ellis and his wife as of (i) April 30, 2002; (ii) April 30, 2003; (iii) April 30, 2004; and (iv) April 30, 2005.

11.     All documents referring or relating to the indebtedness of Ellis and/or entities owned or controlled by Ellis and his wife to FHC or any subsidiary of FHC (consolidated or unconsolidated) as of (i) April 30, 2002; (ii) April 30, 2003; (iii) April 30, 2004; and (iv) April 30, 2005.

12.     All documents referring or relating to the write-off, write-down or similar reduction (i.e., other than by reason of cash payment) by FHC or any subsidiary of FHC (consolidated or unconsolidated) at any time since May 1, 1997, of any indebtedness of Ellis, Harding or Greenwald, or any of their spouses, or any entities owned or controlled by them or by any of their spouses (other than FHC or its subsidiaries).

RICHARD E. KAPLAN,
Plaintiff,

By his attorneys,

Larry C. Kenna (BBO No. 267760)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
(617) 248-5000

Dated:  April 13, 2006

4070630_1.DOC                                    3

I HEREBY CERTIFY THAT A TRUE COPY OF
THE ABOVE DOCUMENT WAS SERVED
UPON THE ATTORNEY OF RECORD FOR
EACH OTHER PARTY BY MAIL/HAND ON: 4/13/06

# Exhibit B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD E. KAPLAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| FIRST HARTFORD CORPORATION, | ) |
| | ) |
| Defendant. | ) |
| | ) |

C.A. No. 04-10402-NMG
No. 05-10320-NMG
No. 06-10424-NMG

## DEFENDANT FIRST HARTFORD CORPORATION'S RESPONSE TO PLAINTIFF RICHARD E. KAPLAN'S REQUEST FOR THE PRODUCTION OF DOCUMENTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure and the Court's April 6, 2006

Order, defendant First Hartford Corporation ("First Hartford") hereby responds and objects to

plaintiff Richard E. Kaplan ("Kaplan")'s First Request for Production of Documents ("Kaplan's

Document Request").

## GENERAL OBJECTIONS AND CONDITIONS OF PRODUCTION

First Hartford incorporates each of the following General Objections and Conditions (the

"General Objections") into each of its responses below:

1.     First Hartford objects, and will not produce documents in response, to Kaplan's

Document Request to the extent it seeks documents that fall outside the scope of discovery

permitted by the Court at the April 6, 2006 final pretrial conference (the "Final Pretrial

Conference"), i.e., documents that "relate solely" to the November 2005 Meeting (the

"November 2005 Meeting").

2.     First Hartford objects to Kaplan's Document Request on the grounds that it does

not include definitions or instructions.

51339033.1

3.     First Hartford objects, and will not produce documents in response, to Kaplan's Document Request to the extent it seeks to impose any obligation upon First Hartford beyond the scope of the Federal Rules of Civil Procedure.

4.     First Hartford objects, and will not produce documents in response, to Kaplan's Document Request to the extent that it seeks documents that are protected by the attorney-client privilege, the work product doctrine, or Federal Rule of Civil Procedure 26(b)(3). Any inadvertent production of a document that is subject to any such privilege or immunity from discovery shall not be deemed to constitute a waiver of any such privilege or protection. First Hartford also reserves the right to demand that Kaplan return any inadvertently produced document and all copies thereof.

5.     First Hartford objects, and will not produce documents in response, to Kaplan's Document Request to the extent it seeks documents prepared by experts retained in anticipation of litigation or preparation for trial who have not been designated to be called as witnesses at trial.

6.     First Hartford objects to Kaplan's Document Request to the extent it purports to require First Hartford to identify, obtain, or produce documents not within First Hartford's possession, custody or control.

7.     First Hartford objects to each and every individual request set forth in Kaplan's Document Request to the extent it, whether standing alone or taken in conjunction with any other request, is vague or overbroad, or is calculated, or would operate, to annoy, embarrass, oppress, unduly burden, or unduly cause expense to First Hartford, or would be unduly vexatious or unduly burdensome to respond to, on the ground that said request or requests exceed the permissible scope of discovery available under the Federal Rules of Civil Procedure.

8.    First Hartford objects to Kaplan's Document Request to the extent it seeks documents irrelevant to the dispute between First Hartford and Kaplan and that are not reasonably calculated to lead to the discovery of admissible evidence.

9.    First Hartford objects to Kaplan's Document Request to the extent that any of the requests set forth therein are repetitive and duplicative and therefore exceed the permissible scope of discovery available under the Federal Rules of Civil Procedure.

10.    First Hartford objects to Kaplan's Document Request to the extent it seeks production of "all" documents in First Hartford's possession, custody or control.  First Hartford's responses are and will be based upon reasonable and diligent searches and inquiries to locate and identify responsive, non-privileged documents.

11.    First Hartford objects to those individual requests set forth in Kaplan's Document Request that utilize the terms "reflect," "relate to," "regarding," "concerning," "sufficient to," or words of similar import, as those requests are so overbroad, vague, and indefinite that they fail to identify with reasonable particularity what documents Kaplan seeks.  First Hartford further objects that a request employing these words is so overbroad as to require First Hartford to examine every document in its possession and is therefore vexatious and unduly burdensome, seeks irrelevant material, and thereby imposes an unnecessary and unreasonable burden and expense upon First Hartford.

12.    First Hartford responds to Kaplan's Document Request without waiving the right to object on any grounds to the admission into evidence of any document produced in response to Kaplan's Document Request in this or any other proceeding.

13.    By agreeing to produce documents, First Hartford does not represent that there are documents responsive to each request.

14.    First Hartford responds to Kaplan's Document Request without waiving the right to object at any time to any demand for further discovery involving the subject matter of individual requests.

15.    First Hartford objects to Kaplan's Document Request to the extent it seeks documents that are equally or more accessible to Kaplan.

## RESPONSES AND OBJECTIONS TO SPECIFIC DOCUMENT REQUESTS

### DOCUMENT REQUEST NO. 1.

Minutes, recordings, or other reports or descriptions of each regular or special meeting of the Board of Directors of FHC between 1984 and the present, not previously produced.

### RESPONSE NO. 1.

For the reasons stated in the General Objections, First Hartford objects to this request. In particular, First Hartford objects, and will not produce documents in response, to this request on the ground that it seeks documents that fall outside the scope of discovery permitted by the Court at the Final Pretrial Conference, i.e., documents that "relate solely" to the November 2005 Meeting. Subject to and without waiving these objections, First Hartford will produce non-privileged documents in its possession, custody or control that are responsive to Request No. 1 to the extent they (i) relate to the November 2005 Meeting, and (ii) were not previously produced.

### DOCUMENT REQUEST NO. 2.

Minutes, records, or other reports or descriptions of every meeting between May 1, 2000 and the present of the compensation committee, if any, created by the Board of Directors of FHC.

### RESPONSE NO. 2.

For the reasons stated in the General Objections, First Hartford objects to this request. In particular, First Hartford objects, and will not produce documents in response, to this request on the ground that it seeks documents that fall outside the scope of discovery permitted by the Court

51339033.1                                  -4-

at the Final Pretrial Conference, i.e., documents that "relate solely" to the November 2005

Meeting. Subject to and without waiving these objections, First Hartford states that it is not

aware of any documents in its possession, custody, or control responsive to this request.

**DOCUMENT REQUEST NO. 3.**

All documents reviewed by the Board of Directors of FHC from May 1, 2000 through October 26, 2005, that relate to the Board's performance of the functions of a compensation committee.

**RESPONSE NO. 3.**

For the reasons stated in the General Objections, First Hartford objects to this request. In

particular, First Hartford objects, and will not produce documents in response, to this request on

the ground that it seeks documents that fall outside the scope of discovery permitted by the Court

at the Final Pretrial Conference, i.e., documents that "relate solely" to the November 2005

Meeting. Subject to and without waiving these objections, First Hartford will produce non-

privileged documents in its possession, custody or control that are responsive to Request No. 3 to

the extent they (i) relate to the November 2005 Meeting, and (ii) were not previously produced.

**DOCUMENT REQUEST NO. 4.**

Documents describing or memorializing each transaction between Richmond Realty, LLC or any entity controlled by David Harding, on the one hand, and FHC or any subsidiary of FHC (consolidated or unconsolidated), on the other, since May 1, 2000, including without limitation the written management contracts described by David Harding on page 64 of his depositions.

**RESPONSE NO. 4.**

For the reasons stated in the General Objections, First Hartford objects to this request. In

particular, First Hartford objects, and will not produce documents in response, to this request on

the ground that it seeks documents that fall outside the scope of discovery permitted by the Court

at the Final Pretrial Conference, i.e., documents that "relate solely" to the November 2005

Meeting. Further, First Hartford objects to the phrase "consolidated or unconsolidated" on the

grounds that it is vague and ambiguous. Subject to and without waiving these objections, First

Hartford will produce non-privileged documents in its possession, custody or control that are

responsive to Request No. 4 to the extent they (i) relate to the November 2005 Meeting, and

(ii) were not previously produced.

## DOCUMENT REQUEST NO. 5.

All documents that refer or relate to the statement on page 14 of the Proxy Statement as follows: "Provisions have been included to meet the requirements for deductibility of executive compensation for the purposes of Section 162(m) of the Internal Revenue Code with respect to options and other awards by qualifying grants and payments under the 2003 Plan as performance-based compensation."

## RESPONSE NO. 5.

For the reasons stated in the General Objections, First Hartford objects to this request. In

particular, First Hartford objects to this request on the ground that the term "Proxy Statement" is

undefined. For purposes of responding to this request, First Hartford understands "Proxy

Statement" to mean the proxy statement distributed by First Hartford to its shareholders in

connection with the November 2005 Meeting. Subject to and without waiving these objections,

First Hartford states that it is not aware of any documents in its possession, custody, or control

responsive to this request other than the 2003 Stock Option Plan itself, which was attached to the

proxy statement distributed by First Hartford in connection with the January 22, 2004

shareholders meeting.

## DOCUMENT REQUEST NO. 6.

All documents referring or relating to payments by FHC or any subsidiary of FHC (consolidated or unconsolidated), or any entity controlled by FHC, to Neil Ellis's daughters from May 1, 2000 to the present.

## RESPONSE NO. 6.

For the reasons stated in the General Objections, First Hartford objects to this request. In

particular, First Hartford objects, and will not produce documents in response, to this request on

the ground that it seeks documents that fall outside the scope of discovery permitted by the Court

at the Final Pretrial Conference, i.e., documents that "relate solely" to the November 2005

Meeting. Further, First Hartford objects to the phrase "consolidated or unconsolidated" on the

grounds that it is vague and ambiguous. Subject to and without waiving these objections, First

Hartford states that it is not aware of any documents in its possession, custody, or control

responsive to this request.

## DOCUMENT REQUEST NO. 7.

All documents referring or relating to the October 2004 refinancing of Putnam Parkade
and repayment of the Putnam Parkade loan to Journal Publishing.

## RESPONSE NO. 7.

For the reasons stated in the General Objections, First Hartford objects to this request. In

particular, First Hartford objects, and will not produce documents in response, to this request on

the ground that it seeks documents that fall outside the scope of discovery permitted by the Court

at the Final Pretrial Conference, i.e., documents that "relate solely" to the November 2005

Meeting. Subject to and without waiving these objections, First Hartford will produce non-

privileged documents in its possession, custody or control that are responsive to Request No. 7 to

the extent they (i) relate to the November 2005 Meeting, and (ii) were not previously produced.

## DOCUMENT REQUEST NO. 8.

All documents referring or relating to the grants of the nonqualified options and put
options that are referenced in the Proxy Statement mailed to shareholders with the Notice of the
Annual Meeting for November 30, 2005.

## RESPONSE NO. 8.

For the reasons stated in the General Objections, First Hartford objects to this request. In

particular, First Hartford objects, and will not produce documents in response, to this request on

the ground that it seeks documents that fall outside the scope of discovery permitted by the Court

51339033.1                                    -7-

at the Final Pretrial Conference, i.e., documents that "relate solely" to the November 2005

Meeting. Subject to and without waiving these objections, First Hartford will produce non-

privileged documents in its possession, custody or control that are responsive to Request No. 8 to

the extent they (i) relate to the November 2005 Meeting, and (ii) were not previously produced.

**DOCUMENT REQUEST NO. 9.**

      All documents referring or relating to money owed to FHC or any subsidiary of FHC
(consolidated or unconsolidated) by Richmond Realty LLC or any other entity controlled by
Harding, Ellis or Greenwald (and not controlled by FHC).

**RESPONSE NO. 9.**

      For the reasons stated in the General Objections, First Hartford objects to this request. In

particular, First Hartford objects, and will not produce documents in response, to this request on

the ground that it seeks documents that fall outside the scope of discovery permitted by the Court

at the Final Pretrial Conference, i.e., documents that "relate solely" to the November 2005

Meeting. Further, First Hartford objects to the phrase "consolidated or unconsolidated" on the

grounds that it is vague and ambiguous. Subject to and without waiving these objections, First

Hartford will produce non-privileged documents in its possession, custody or control that are

responsive to Request No. 9 to the extent they (i) relate to the November 2005 Meeting, and (ii)

were not previously produced.

**DOCUMENT REQUEST NO. 10.**

      All document referring or relating to the indebtedness of FHC or any subsidiary of FHC
(consolidated or unconsolidated) to Ellis and/or entities owned or controlled by Mr. Ellis and his
wife as of (i) April 30, 2002; (ii) April 30, 2003; (iii) April 30, 2004; and (iv) April 30, 2005.

**RESPONSE NO. 10.**

      For the reasons stated in the General Objections, First Hartford objects to this request. In

particular, First Hartford objects, and will not produce documents in response, to this request on

the ground that it seeks documents that fall outside the scope of discovery permitted by the Court

at the Final Pretrial Conference, i.e., documents that "relate solely" to the November 2005

Meeting. Further, First Hartford objects to the phrase "consolidated or unconsolidated" on the

grounds that it is vague and ambiguous. Subject to and without waiving these objections, First

Hartford will produce non-privileged documents in its possession, custody or control that are

responsive to Request No. 10 to the extent they (i) relate to the November 2005 Meeting, and (ii)

were not previously produced.

**DOCUMENT REQUEST NO. 11.**

All documents referring or relating to the indebtedness of Ellis and/or entities owned or
controlled by Ellis and his wife to FHC or any subsidiary of FHC (consolidated or
unconsolidated) as of (i) April 30, 2002; (ii) April 30, 2003; (iii) April 30, 2004; and (iv) April
30, 2005.

**RESPONSE NO. 11.**

For the reasons stated in the General Objections, First Hartford objects to this request. In

particular, First Hartford objects, and will not produce documents in response, to this request on

the ground that it seeks documents that fall outside the scope of discovery permitted by the Court

at the Final Pretrial Conference, i.e., documents that "relate solely" to the November 2005

Meeting. Further, First Hartford objects to the phrase "consolidated or unconsolidated" on the

grounds that it is vague and ambiguous. Subject to and without waiving these objections, First

Hartford states that it is not aware of any documents in its possession, custody, or control

responsive to this request.

**DOCUMENT REQUEST NO. 12.**

All documents referring or relating to the write-off, write-down or similar reduction (i.e.,
other than by reason of cash payment) by FHC or any subsidiary of FHC (consolidated of
unconsolidated) at any time since May 1, 1997, of any indebtedness of Ellis, Harding or
Greenwald, or any of their spouses, or any entities owned or controlled by them or by any of
their spouses (other than FHC or its subsidiaries).

**RESPONSE NO. 12.**

For the reasons stated in the General Objections, First Hartford objects to this request. In particular, First Hartford objects, and will not produce documents in response, to this request on the ground that it seeks documents that fall outside the scope of discovery permitted by the Court at the Final Pretrial Conference, i.e., documents that "relate solely" to the November 2005 Meeting. Further, First Hartford objects to the phrases "similar reduction" and "consolidated or unconsolidated" on the grounds that they are vague and ambiguous. Subject to and without waiving these objections, First Hartford states that it is not aware of any documents in its possession, custody, or control responsive to this request.

Respectfully submitted,

FIRST HARTFORD CORPORATION

By its attorneys,

*Jillian B. Hirsch*

Jonathan I. Handler, BBO #561475
Jillian B. Hirsch, BBO #659531
DAY, BERRY & HOWARD LLP
One International Place
Boston, MA 02110
(617) 345-4600

-and-

John B. Nolan (admitted *pro hac vice*)
DAY, BERRY & HOWARD LLP
CityPlace I
Hartford, CT 06103
(860) 275-0100

Dated:  April 20, 2006

## <u>CERTIFICATE OF SERVICE</u>

I, Jillian B. Hirsch, do hereby certify that I have served the within **Defendant's Response to Plaintiff's Request for Production of Documents** by causing a copy thereof to be hand delivered to Larry C. Kenna, Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, this 20th day of April, 2006.

Jillian B. Hirsch

Jillian B. Hirsch

# Exhibit C

## Kenna, Larry

| | |
|---|---|
| **From:** | Nolan, John B. [jbnolan@dbh.com] |
| **Sent:** | Tuesday, May 09, 2006 10:55 AM |
| **To:** | Kenna, Larry |
| **Cc:** | Handler, Jonathan I.; Hirsch, Jillian B. |
| **Subject:** | RE: Production of documents by FHC |

Larry
Our position remains unchanged.
Please advise on your expected order of witnesses and the time you anticipate for each.
Best
Jay

> -----Original Message-----
> **From:** Kenna, Larry [mailto:LKenna@choate.com]
> **Sent:** Tuesday, May 09, 2006 6:38 AM
> **To:** Nolan, John B.; Handler, Jonathan I.; Hirsch, Jillian B.
> **Cc:** Rothberg, Robert
> **Subject:** Production of documents by FHC
>
> Jay and Jonathan, please produce the documents we requested in our most recent document request and
> in the colloquy at pages 53-54 of the Ellis deposition on May 2 by no later than noon today, or tell us by
> that time what your position now is with respect to those documents. If the documents are not going to be
> produced voluntarily in response to our document request and our request of May 2, we will file a motion to
> compel. Thanks, LCK

> Confidentiality Statement:
>
> This Message is transmitted to you by the law firm of Choate, Hall & Stewart LLP. The substance of this
> message, along with any attachments, may be confidential and legally privileged. If you are not the
> designated recipient of this message, please destroy it and notify the sender of the error by return e-mail
> or by calling 1-800-520-2427.
>
> Under regulations of the Treasury Department, we are required to include the following statement in this
> message: Any advice contained herein (or in any attachment hereto) regarding federal tax matters was
> not intended or written by the sender to be used, and it cannot be used by any taxpayer, for the purpose
> of avoiding penalties that may be imposed on the taxpayer.
>
> For more information about Choate, Hall & Stewart LLP, please visit us at choate.com

# Exhibit D

## Kenna, Larry

| | |
|---|---|
| **From:** | Rothberg, Robert |
| **Sent:** | Friday, April 28, 2006 4:48 PM |
| **To:** | Handler, Jonathan I. |
| **Cc:** | Nolan, John B.; Kenna, Larry |
| **Subject:** | RE: Document Production in Proxy Cases |

Jonathan -

Please check again, as it appears you are not aware of the facts relatiing to Hartford Lubbock..

According to the documents you have provided us, FHC's Parkade Center, Inc.subsidiary is the sole general partner of both Hartford-Lubbock Limited Partnership II and Hartford-Lubbock Limited Partnership. This is consistent with the descriptions in the most recent 10-K. Surely you will agree that FHC does control a partnership of which its subsidiary is the sole general partner.

As I indicated, we do not want to make a dispute where none exists; and trust that now that you are aware of FHC's connection to the Hartford-Lubbock partnerships you will concur that the documents are covered by the document request.

It will be acceptable to us if you bring them with you to Mr. Harding's deposition on Monday.

Thanks.

Bob

Tha

> -----Original Message-----
> **From:** Handler, Jonathan I. [mailto:jihandler@dbh.com]
> **Sent:** Fri 4/28/2006 4:15 PM
> **To:** Rothberg, Robert
> **Cc:** Nolan, John B.
> **Subject:** RE: Document Production in Proxy Cases
>
> Bob:
>
> Hartford Lubbock is not controlled by FHC.
>
> Jonathan I. Handler, Esq.
> Day, Berry & Howard LLP
> One International Place | Boston MA 02110 | t (617) 345-4734 | f (617)
> 345-4745
> jihandler@dbh.com    www.dbh.com
>
> -----Original Message-----
> From: Rothberg, Robert [mailto:RRothberg@choate.com]

5/9/06

Sent: Friday, April 28, 2006 1:02 PM
To: Handler, Jonathan I.
Cc: Nolan, John B.; Kenna, Larry
Subject: RE: Document Production in Proxy Cases


Jonathan -

I don't want to make a dispute where none exists. Just so that I
understand, is it your position that Hartford Lubbock is not controlled
by First Harford, that Abigail Bellock and Deborah Ellis are not
daughters of Neil Ellis, or that the entries do not relate to payments?

Bob

-----Original Message-----
From:  Handler, Jonathan I. [mailto:jihandler@dbh.com]
Sent:  Fri 4/28/2006 12:36 PM
To:    Rothberg, Robert
Cc:    Nolan, John B.
Subject:    RE: Document Production in Proxy Cases
Bob:

Thanks for your message. The Hartford Lubbock documents you reference
do not fall within the ambit of Request No. 6. Accordingly, we do not
believe that any supplementation to our response to that request is
necessary. I believe FHC's Maine counsel responded yesterday to the
question posed in the second sentence of your email.



Jonathan I. Handler, Esq.
Day, Berry & Howard LLP
One International Place | Boston MA 02110| t (617) 345-4734 | f (617)
345-4745 .

 <mailto:jihandler@dbh.com> jihandler@dbh.com
<http://www.dbh.com/> www.dbh.com
*******************************
This message contains PRIVILEGED AND CONFIDENTIAL INFORMATION intended
solely for the use of the addressee(s) named above. Any disclosure,
distribution, copying or use of the information by others is strictly
prohibited. If you have received this message in error, please advise
the sender by immediate reply and delete the original message. Thank
you


-----Original Message-----
From: Rothberg, Robert [mailto:RRothberg@choate.com]
Sent: Thursday, April 27, 2006 6:04 PM

To: Nolan, John B.; Handler, Jonathan I.
Cc: Kenna, Larry; TCN@mpmlaw.com
Subject: Document Production in Proxy Cases


Jay and Jonathan -

Please supplement your response to Request No. 6 of our most recent
document request, by providing records of payments by Hartford Lubbock
(which is controlled by First Hartford) to Neil Ellis's daughters
Abigail Bellock and Deborah Ellis. Alternatively, please consent to our
use in this litigation of the copies of the ledger pages reflecting
those payments which were produced in the Maine litigation.


Thanks.

Bob

*****************************************************************
****
This Message is transmitted to you by the law firm of Choate, Hall &
Stewart LLP. The substance of this message, along with any attachments,
may be confidential and legally privileged. If you are not the
designated recipient of this message, please destroy it and notify the
sender of the error by return e-mail or by calling 1-800-520-2427.

Under regulations of the Treasury Department, we are required to include
the following statement in this message: Any advice contained herein (or
in any attachment hereto) regarding federal tax matters was not intended
or written by the sender to be used, and it cannot be used by any
taxpayer, for the purpose of avoiding penalties that may be imposed on
the taxpayer.

For more information about Choate, Hall & Stewart LLP, please visit us
at choate.com
*****************************************************************
****




*****************************************************************
****
This Message is transmitted to you by the law firm of Choate, Hall &
Stewart LLP. The substance of this message, along with any attachments,

may be confidential and legally privileged. If you are not the
designated recipient of this message, please destroy it and notify the
sender of the error by return e-mail or by calling 1-800-520-2427.

Under regulations of the Treasury Department, we are required to include
the following statement in this message: Any advice contained herein (or
in any attachment hereto) regarding federal tax matters was not intended
or written by the sender to be used, and it cannot be used by any
taxpayer, for the purpose of avoiding penalties that may be imposed on
the taxpayer.

For more information about Choate, Hall & Stewart LLP, please visit us
at choate.com
****************************************************************************
****