# Exhibit 9

051206KH.txt

1

```
 1                    UNITED STATES DISTRICT COURT
                         DISTRICT OF MASSACHUSETTS
 2

 3

 4    RICHARD E. KAPLAN,                 )
                          Plaintiff,     )
 5                                       )
                                         ) CA No. 04-10402
 6    vs.                                )         05-10320
                                         )         06-10424
 7                                       )
      FIRST HARTFORD CORPORATION,        )
 8                        Defendant.     )

 9

10    BEFORE:  THE HONORABLE NATHANIEL M. GORTON

11

12                     HEARING ON MOTION TO COMPEL

13

14

15            John Joseph Moakley United States Courthouse
                            Courtroom No. 4
16                         One Courthouse Way
                           Boston, MA 02210
17                       Friday, May 12, 2006
                              2:36 P.M.
18

19

20                     Cheryl Dahlstrom, RPR, RMR
                          Official Court Reporter
21            John Joseph Moakley United States Courthouse
                      One Courthouse Way, Room 3209
22                         Boston, MA 02210
                 Mechanical Steno - Transcript by Computer
23

24

25
```

5

2

051206KH.txt

```
 1   APPEARANCES:

 2        CHOATE, HALL & STEWART
          By:  Larry C. Kenna, Esq., and
 3               Robert Rothberg, Esq.
          Two International Place
 4        Boston, Massachusetts 02110
          On behalf of the Plaintiff.
 5
          DAY, BERRY & HOWARD, LLP
 6        By:  Jonathan I. Handler, Esq., and
               Jillian B. Hirsch, Esq.
 7        One International Place
          Boston, Massachusetts 02110
 8        - and -
          (By Telephone)
 9        DAY, BERRY & HOWARD
          By:  John B. Nolan, Esq.
10        City Place I
          Hartford, Connecticut 06103-3499
11        On behalf of the Defendant.

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

5

3

```
 1              P R O C E E D I N G S

 2         THE CLERK:  Civil Action 04-10402, Richard Kaplan vs.

 3   First Hartford.  Will counsel please identify themselves for

 4   the record.
```

Page 2

051206KH.txt

5          MR. KENNA:  Your Honor, my name is Larry Kenna,

6   K-E-N-N-A.  I represent the plaintiff, Mr. Kaplan, in these

7   consolidated cases.

8          THE COURT:  Good afternoon, Mr. Kenna.

9          MR. KENNA:  My partner, Mr. Rothberg, Robert Rothberg,

10  is here with me.

11         THE COURT:  And Mr. Rothberg, good afternoon to you.

12         MR. HANDLER:  Good afternoon, your Honor.  Jonathan

13  Handler for the defendant, First Hartford Corporation.  My

14  colleague, Jillian Hirsch, is with me.  My partner, John Nolan,

15  is on the phone.

16         THE COURT:  All right.  Good afternoon to you, then,

17  Mr. Handler, Miss Hirsch, and, on the phone, Mr. Nolan.

18         MS. HIRSCH:  Thank you, your Honor.

19         THE COURT:  We are here as a result of a filing

20  earlier this week in my absence.  I've been out of town for a

21  couple of days.  And the plaintiff has filed a motion to compel

22  the production of documents by the defendant, First Hartford

23  Corporation, to which the defendant has filed an opposition.

24  This is all in conjunction and related to this jury-waived

25  matter that is scheduled to go to trial next Monday morning,

5
                                                                4


1   that is, at 9 a.m. on the next business day from now.

2          I think it is unfortunate that I have to deal with

3   this at the last minute and that counsel have not been able to

4   resolve the issue before now.  The fact that this is a

5   jury-waived and not a jury trial makes it less -- I don't

6   know -- perhaps time-sensitive than it would otherwise have

7   been if we were about ready to empanel a jury.

                        Page 3

051206KH.txt

8          But as I understand it, the plaintiff, after we had

9     the final pretrial conference a couple of months ago, at which

10    time I led counsel to understand that I was going to further

11    consolidate the two prior filed cases with the more recently

12    filed case -- we've been calling them Kaplans I, II and III --

13    and to try to expedite the resolution of all three at the same

14    time.  I did give the plaintiff an opportunity to take some

15    limited further discovery in matters related to the third-filed

16    case, which, in turn, related to a shareholders' meeting that

17    occurred in -- I believe it was November of 2005.

18          The issue now comes to my attention that -- and I

19    guess I was aware of this before -- that there is a related

20    case pending in the United States District Court for the

21    District of Maine, I believe, that involved precisely the same

22    parties with the exception that, as I understand it, in the

23    Maine case, the individual president of the defendant

24    corporation is also named as a party.  And there has been some

25    at least limited discovery in that case.

S

5

1          And now the plaintiff wants to discover information

2     that has been already discovered in that case, and the

3     defendant objects because there is a protective order in the

4     Maine case resulting from a nondisclosure agreement between the

5     parties that prevents the use of any information that is

6     disclosed in connection with that protective order.

7          It's always been my impression -- and I must say I

8     haven't had a lot of experience with protective orders -- that

9     the reason for the protective order in the first place is to

10    prevent the divulgence of information that is confidential to

11    one or both of the parties involved in litigation, the

Page 4

051206KH.txt

12  divulgence of such information to third parties or to the

13  public that has no need to know the information.

14      That does not seem to me to relate to this specific

15  case where we have precisely the same parties involved in this

16  litigation and that information at least the plaintiff alleges

17  to be relevant and thinks would be relevant to its claims here

18  -- or his claims here would not be somehow producible.

19      I just don't understand how the defendant can rely on

20  a protective order to prevent the plaintiff, who is the

21  identical party to the nondisclosure agreement in Maine, from

22  getting and/or at least discovering information in this case

23  that is relevant to his claims.

24      As I understand it, he's claiming he believes that

25  there were certain financial transfers between the corporate

5                                                              6

1   defendant and either subsidiaries of that defendant or somehow

2   related corporations or limited partnerships to relatives of

3   the president of the defendant corporation that would affect

4   the financial standing of the company and the proxy statements

5   that were entered by that company in connection with the annual

6   meetings that are the subject matter of this litigation.

7       So I start off with a puzzlement as to why there

8   should be this dispute of disclosing information that's already

9   previously disclosed and that doesn't seem to me to offend the

10  purpose of the protective order in the Maine case in the first

11  place.

12      Let me hear from Mr. Nolan in that regard.

13      MR. NOLAN:  Your Honor, I believe there are two

14  aspects to the dispute.  First of all, the protective order is

Page 5

051206KH.txt

15  very specific in the Maine case and limits confidential
16  materials to be used only for the purpose of the Maine
17  litigation.  And that was negotiated --
18          THE COURT:  Mr. Nolan, does that prevent me from
19  allowing the plaintiff to have access to information that he
20  already has access to in the Maine case?  Are you suggesting
21  that I don't have the authority to ignore or at least not abide
22  by the protective order that's entered in another case between
23  the same parties?
24          MR. NOLAN:  No.  I think I am suggesting, your Honor,
25  first of all, the cases are not congruent 100 percent.

5

7

1          THE COURT:  Are the parties congruent?
2          MR. NOLAN:  The parties are congruent, your Honor.
3   And I think that what should have happened, if the plaintiffs
4   wished to have relief from the order in the Maine case, that
5   they would have gone to the Maine court to do that.  This
6   all --
7          THE COURT:  They tell me that they asked you for leave
8   to do that and you denied it.  Is that true?
9          MR. NOLAN:  No, I don't believe that is true, your
10  Honor.
11          THE COURT:  Well, didn't you say that, Mr. Kenna, that
12  you asked opposing counsel for leave to have that information
13  disclosed?
14          MR. KENNA:  We did, your Honor.  We asked if they
15  would -- first of all, we requested the documents in these
16  cases, all right, the documents that we're talking about here.
17          THE COURT:  They told you they would not do it because
18  it was subject to a protective order.  Did you ask them for
Page 6

051206KH.txt

19   relief from the protective order?

20        MR. KENNA:  We asked them to agree with us that we

21   could use these documents in the -- in these Massachusetts

22   proxy fraud cases, which is the same thing to me, your Honor.

23   We asked them -- we didn't say, Let's go to the judge up in

24   Maine and amend it.  We said, We don't need to do that.  Will

25   you agree with us that we can use these documents in this

5

8

1    litigation?

2         THE COURT:  Mr. Nolan, go ahead.

3         MR. NOLAN:  Okay.  I would agree with that statement,

4    and that was not as I heard your question to me.

5         In any event, we were in the period of time on Kaplan

6    III, and you, at our April 6th pretrial, were very explicit

7    about what could and could not be discovered during the short

8    period of time that we had between April 6th and starting this

9    trial.  And the -- we do not believe that the materials that

10   are in dispute fell within the area that you permitted

11   discovery.

12        THE COURT:  Well, let me ask you this, Mr. Nolan.  If

13   -- I'm using this only as a hypothetical because I don't know

14   what any of this documentation is going to show.  But if the

15   documentation that is sought by the plaintiff relates to the

16   completeness of the proxy statement that was issued before the

17   November, 2005, meeting, relates to some financial standing of

18   the defendant -- and that's what the case is all about -- why

19   isn't -- why isn't that information in the Maine case relevant

20   to Kaplan III?

21        MR. NOLAN:  It was not requested in Kaplan III.

Page 7

051206KH.txt

22      THE COURT:  It wasn't requested in Kaplan III?

23      MR. NOLAN:  I don't believe so.  I think we provided

24 information and -- I don't want to pass this off on Mr. Handler

25 but he's there and I'm not.  My recollection is that we fully

I

9

1  complied with Kaplan -- with the request he made in Kaplan III.

2       THE COURT:  Kaplan III is now Kaplan I, II and III.

3  They are consolidated cases.  If it is at all relevant -- and I

4  am not in a position to make a determination at this stage

5  certainly that it is not.  But if it is relevant, then even my

6  limited order, which did, in fact, limit Mr. Kenna and the

7  plaintiff to making discovery with respect to Kaplan III -- if

8  it has anything to do with the financial standing of the

9  corporation, the proxy statement of which was issued before the

10 November, 2005, meeting, then that material -- then that

11 documentation is relevant and discoverable under my prior

12 order.

13      And the long and the short of this is, unless I am

14 missing something, that documentation is to be produced between

15 now and Monday morning at 10 a.m., which is when we're going to

16 start this trial.  I need to conduct some other business before

17 we start on Monday, so we're going to delay it by one hour.

18 10:00 we'll start.  Between now and then, that documentation

19 will be produced for the plaintiff in a form that would lend

20 itself to confidentiality.  If one or both of the parties want

21 to file a motion for a protective order in this --

22      MR. KENNA:  We have one in this case.  We have one in

23 this case.

24      THE COURT:  Well, if you have one in this case, then

25 you don't need anything else.  But it will be subject to the

Page 8

051206KH.txt

1    protective order in this case as well as the case in Maine, but

2    it will be produced for the plaintiff in appropriate form and

3    in appropriate time for him to prepare his case.  That means

4    you have 24 hours.  It will be produced by --

5          MR. NOLAN:  Your Honor, as a practical matter, they

6    already have the pieces of paper.

7          THE COURT:  Okay.  Then we don't have to worry about

8    it.

9          MR. KENNA:  I'm sorry.  We don't, your Honor.  We do

10   have the documents that have been referenced as having been

11   produced in the Maine litigation.  But there was another aspect

12   -- there were just the two things.  The Richmond Realty

13   documents, what we received -- what was produced in response to

14   our request for production was a -- I forget the dates on it,

15   but we wanted the prior -- the ledgers from the prior year,

16   which would actually be the year covered by the meeting and the

17   proxy statement for the -- for Kaplan III.

18          So we asked for the prior ledgers.  That's what we're

19   looking for and that's what we want produced.  What we have is

20   later -- is a later period of time.  Maybe Mr. Rothberg can --

21          THE COURT:  We're going to have one attorney speak for

22   each side.

23          MR. KENNA:  That's the explanation for it.  They know

24   exactly what we're looking for.  They do exist.  We went

25   through the depositions.  We asked their corporate officers.

11

Page 9

051206KH.txt
1    Yes, we have ledgers for the prior year.  They would be
2    relevant, your Honor.  We specifically asked for them.  Counsel
3    knows specifically --
4           THE COURT:  Those additional ledgers will also be
5    produced by sometime midday tomorrow.
6           There is this other issue -- I don't know if it
7    remains an issue now -- and that is, with respect to the
8    corporate control dispute.  It does seem to me that there is a
9    genuine issue as to whether First Hartford "controls" this
10   Lubbock organization -- I can't remember whether it's a
11   partnership or whatever it is -- either through the president's
12   -- the president of Hartford's personal ownership of a limited
13   partnership interest or First Hartford's subsidiary's general
14   partnership interest.
15          As I read the papers, it sounds to me like a wholly
16   owned subsidiary of First Hartford is the general partner of
17   the Lubbock outfit, which would make -- make it seem to me that
18   any financial transactions of Lubbock involving transfers of
19   money to the president of Hartford's daughters would be
20   relevant if it has a bearing on the financial status of First
21   Hartford, which it may well.  I can't tell now, but it's
22   certainly discoverable.  And that issue doesn't seem to me to
23   warrant reason for the defendant to decline to produce
24   something on the grounds that they don't control the corporate
25   entity or the partnership entity that is at stake.

12

1           So unless I've missed something, defendants -- if you
2    want to make a further statement in this regard, Mr. Nolan,
3    I'll hear you, but I don't think we need to extend this hearing
4    much longer.  Mr. Nolan.
                        Page 10

051206KH.txt

5          MR. NOLAN:  No.  I would say, your Honor, that you put
6     your finger on one of the issues in the case, and that is, I
7     suppose, a mixed question of fact and law, and that is, what
8     "control" means.  And our position on that issue was stated in
9     the papers, and I heard what you just said.  So we will produce
10     the documents.
11          THE COURT:  All right.  As I understand it, then, on
12     Monday morning the plaintiff will commence its case.  You did
13     submit to me -- I'm not sure if I have it here on the bench.
14     Yes, I do.  You did inform me as to who is going to be called,
15     but I've lost track of it.  Mr. Kenna, who are you going to be
16     calling first?
17          MR. KENNA:  We'll call the plaintiff, Mr. Kaplan.
18          THE COURT:  How long will his direct examination be?
19          MR. KENNA:  Less than 30 minutes.
20          THE COURT:  Cross-examination, approximately, Mr.
21     Nolan?
22          MR. NOLAN:  Roughly the same, your Honor.
23          THE COURT:  After that?
24          MR. KENNA:  We're going to call Stuart Greenwald,
25     who's one of the officers and directors of the company.  In

13

1     fact, all of our witnesses are officers and directors of the
2     company, and there are only three in addition to Mr. Kaplan.
3          THE COURT:  And their direct examinations will take
4     approximately how long?
5          MR. KENNA:  I thought about -- I thought about Mr.
6     Greenwald and Harding sort of together and thought my
7     questioning couldn't take much more than two hours of those two
                              Page 11

051206KH.txt

8   witnesses.  And then we have Mr. Ellis, which might be, you

9   know, another hour or a little bit more of an hour of my

10   questioning of those witnesses.

11              THE COURT:  So it is -- I take it the

12   cross-examination will be roughly the same, Mr. Nolan?

13              MR. NOLAN:  At the most, your Honor.

14              THE COURT:  Then how is this case a three-day trial?

15              MR. KENNA:  This case is shaping up to conclude on

16   Monday if we can move it along.

17              THE COURT:  All right.  That's fine with the Court.

18   You have submitted, in accordance with my requests, proposed

19   findings of fact and conclusions of law.  I will allow you to

20   supplement those at the end of the trial, but I will review

21   them between -- hopefully, between now and the end of the

22   trial.

23              Is there anything else that needs to come to my

24   attention before we adjourn?

25              MR. NOLAN:  Yes, your Honor.  Mr. Kenna's comment

                                                                 14

S


1   about the case being completed on Monday, do I understand that

2   you stop around 3:30 in the afternoon?

3              THE COURT:  Yes.  I'm not going to -- let me ask my

4   deputy.

5   (Discussion held off the record.)

6              THE COURT:  We'll go till between 3 and 3:30.  I'm not

7   sure exactly when, but we will have an afternoon session.

8   We'll start at 10, go for an hour or so, take a break, go till

9   1:00 for the lunch break, come back at 2 and go till 3 or 3:30.

10              MR. NOLAN:  In that regard, I don't think we will

11   finish on Monday.

                        Page 12

051206KH.txt

12          THE COURT:  Well, okay.  If we don't, we'll go into
13    Tuesday and we'll finish on Tuesday.
14          MR. KENNA:  Yes.
15          THE COURT:  Anything further?
16          MR. HANDLER:  Your Honor, we had two very brief items.
17          THE COURT:  It's Mr. Handler?
18          MR. HANDLER:  I'm sorry.  Mr. Handler, your Honor.
19    The first one is, your Honor, we received from Mr. Kenna by
20    hand just a little bit before we came over a list of what looks
21    to me like sort of an exhibit list.  I have not had the
22    opportunity to compare this to the exhibit list that both
23    parties submitted as part of their joint pretrial or, I should
24    say, their separate pretrial since we didn't do it together.
25          It's my understanding that, absent good cause,

2

                                                                  15


1     documents that are added now, a day before trial, ought not to
2     be admitted on Monday.  I'm merely flagging the issue.  I don't
3     know for a fact --
4          THE COURT:  What have you done, Mr. Kenna?  What are
5     the additional exhibits?
6          MR. KENNA:  There aren't any.  Every piece of paper
7     that we have obtained in this litigation, your Honor, came from
8     the defendants, all right.  And I went back to the pretrial
9     memoranda that we both submitted and pointed out to Mr.
10    Handler, by a letter hand-delivered today, which one of those
11    items that we would be -- may introduce at the trial.  It's not
12    going to be a big document case, your Honor.  I don't think
13    it's going to be a huge document case.
14          I put a few other things on there that relate to the
                              Page 13

051206KH.txt
15   documents or that are either documents that we received after

16   the April 6th pretrial, only, you know, relating to the third

17   meeting.  We hadn't, you know, put anything --

18          THE COURT:  These are documents relating to the --

19   your discovery since April 6th?

20          MR. KENNA:  Since April 6th.

21          THE COURT:  They've been produced to the defendant, I

22   take it?

23          MR. KENNA:  They're all their documents.

24          THE COURT:  Okay.

25          MR. KENNA:  They're their documents, your Honor.  No

                                                              16

5

1    surprises there.

2           THE COURT:  I will allow you to supplement the exhibit

3    list to that extent.

4           Anything further, Mr. Handler?

5           MR. HANDLER:  That's it, your Honor.  Thank you.

6           THE COURT:  All right.  We're adjourned.

7    (Whereupon, at 2:57 p.m. the hearing concluded.)

8

9

10

11

12

13

14

15

16

17

18

051206KH.txt

```
           19
           20
           21
           22
           23
           24
           25
  5
                                                                         17
```

```
            1                 C E R T I F I C A T E
            2
            3
            4          I, Cheryl Dahlstrom, RPR, RMR, and Official Reporter
            5    of the United States District Court, do hereby certify that the
            6    foregoing transcript, from Page 1 to Page 16, constitutes, to
            7    the best of my skill and ability, a true and accurate
            8    transcription of my stenotype notes taken in the matter of
            9    Civil Action Nos. 04-10402, 05-10320, 06-10424, Richard E.
           10    Kaplan vs. First Hartford Corporation.
           11
           12
           13
           14
           15
           16
           17                           Cheryl Dahlstrom, RPR, RMR
           18                           Official Court Reporter
           19
           20
           21
```

Page 15

051206KH.txt

22

23

24

25