# Exhibit 10

```
              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS

                                        NO. 04 10402 RCL


*********************************
RICHARD E. KAPLAN,               *
      Plaintiff,                 *
                                 *
v.                               *
                                 *
FIRST HARTFORD CORPORATION,      *
      Defendant.                 *
*********************************
```

DEPOSITION OF RICHARD E. KAPLAN, taken pursuant to the applicable provisions of the Federal Rules of Civil Procedure, before Michelle Kaczynski, a Registered Professional Reporter and Notary Public in and for the Commonwealth of Massachusetts, at the offices of Day, Berry & Howard LLP, 260 Franklin Street, Boston, Massachusetts, on Tuesday, March 15, 2005, at 11:04 a.m.

```
              KACZYNSKI REPORTING
          72 CHANDLER STREET, SUITE 3
           BOSTON, MASSACHUSETTS  02116
                 (617) 426-6060
```

```
 1              MR. KENNA:  Because of Judge Gorton's
 2     order.
 3         Q.   Now, are all of the statements in Exhibit 1
 4     true and accurate?
 5         A.   To the best of my knowledge and belief, yes.
 6         Q.   Do you see the statement on item four just
 7     following the sentence that talks about the transfer
 8     that says none of the shares owned beneficially by
 9     Richard and David Kaplan have been transferred for more
10     than twenty years except among family members and
11     family-owned trusts and entities, do you see that
12     statement?
13         A.   Yes.
14         Q.   Okay.  Were any of the shares ever owned, any
15     of the shares referred to in that sentence ever owned
16     by a hospital?
17              MR. KENNA:  I object to that and
18     instruct the witness that he doesn't have to answer
19     that question based on Judge Gorton's order.
20         Q.   Okay.  Did one or more of the trusts or a
21     family member donate certain shares of First Hartford
22     Corporation to a hospital to your knowledge, sir?
23              MR. KENNA:  I object to that and
24     instruct the witness that he doesn't have to answer
```

```
1    that question based on Judge Gorton's order.
2         Q.   Sir, were you -- withdrawn.
3              Are you a member of the bar?
4         A.   Yes, I am.
5         Q.   In which state?
6         A.   Which bar?
7         Q.   Well, I was just about to ask that.
8         A.   Connecticut and Massachusetts.
9         Q.   Do you practice law?
10        A.   Limited practice of law, yes.
11        Q.   Did you ever practice law full-time?
12        A.   Yes.
13        Q.   When was that?
14        A.   I still practice law full-time, but mostly
15   for my family at this point.
16        Q.   Did you ever practice in a firm?
17        A.   Yes.
18        Q.   What firm?
19        A.   Friedman & Atherton, Burns & Levinson, and of
20   counsel to a firm that was then called Peckham, Lobel,
21   Prince & Tye.
22        Q.   Where did you go to law school?
23        A.   Tulane Law School.
24        Q.   Pardon me?
```

1  you know?
2      A.  As far as I know, yes.
3      Q.  Okay.  Now, the letter says that you were an
4  authorized representative with regard to 445,535 shares
5  in accounts.  Do you know how many accounts there were,
6  sir?
7              MR. KENNA:  I object.
8              MR. NOLAN:  Basis?
9              MR. KENNA:  Judge Gorton's order.
10             MR. NOLAN:  Okay.  I disagree with your
11 interpretation.
12     Q.  Who were the other authorized representatives
13 of those accounts?
14             MR. KENNA:  I object on the basis of
15 Judge Gorton's order.  By the way, this, these, this
16 document along with others as you know, Mr. Nolan, were
17 provided to you to comply with what Judge Gorton
18 ordered.
19             MR. NOLAN:  I understand that, sir,
20 thank you.
21             MR. KENNA:  Okay.
22     Q.  Do you know who the other authorized
23 representatives are, sir?
24     A.  Yes, I do.

KACZYNSKI REPORTING

```
 1        Q.    Is there any authorized representative other
 2   than you and your brother?
 3              MR. KENNA:  I object.  You don't have to
 4   answer that based on Judge Gorton's --
 5        A.    On advice of counsel I will not answer that
 6   question.
 7        Q.    Okay, but you do know the answer to the
 8   question?
 9        A.    Yes, I do.
10        Q.    Okay.  Now, I think I asked you about
11   disputes between members of your family and Mr. Ellis,
12   do you recall that?
13        A.    Yes.
14        Q.    And you told me there had not been any
15   disputes for the last twenty years or so, is that true?
16        A.    No, that's not what I said.
17        Q.    Pardon me?
18        A.    That's not my recollection of what I said.
19        Q.    What is your recollection of what you said?
20        A.    I said there were various -- I'll clarify
21   what I recommend, what I recollect saying.  There were
22   various disputes between my grandfather, my
23   grandmother, my father and Neil Ellis, between those
24   older members of the family, I believe in the seventies
```

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NO. 04 10402 RCL

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
RICHARD E. KAPLAN,                 \*
    Plaintiff,                     \*
                                   \*
v.                                 \*
                                   \*
FIRST HARTFORD CORPORATION,        \*
    Defendant.                     \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

DEPOSITION OF DAVID E. KAPLAN, taken pursuant to the applicable provisions of the Federal Rules of Civil Procedure, before Michelle Kaczynski, a Registered Professional Reporter and Notary Public in and for the Commonwealth of Massachusetts, at the offices of Day, Berry & Howard LLP, 260 Franklin Street, Boston, Massachusetts, on Tuesday, March 15, 2005, at 10:19 a.m.

KACZYNSKI REPORTING
72 CHANDLER STREET, SUITE 3
BOSTON, MASSACHUSETTS  02116
(617) 426-6060

```
1      Q.    What other siblings do you have?
2      A.    A sister.
3      Q.    What's your sister's name?
4      A.    Ashara, A S H A R A, Stansfield,
5  S T A N S F I E L D.
6      Q.    Where does Ms. Stansfield live?
7      A.    In Topsfield, T O P S F I E L D,
8  Massachusetts.
9      Q.    Sir, do you own any shares of First Hartford
10 Corporation?
11     A.    Yes, I do.
12     Q.    How many shares do you own?
13     A.    56,151 in my own name.
14     Q.    Do you have an interest in any other shares?
15     A.    Yes, I do.
16     Q.    What interest is that?
17     A.    I'm the beneficial owner of other shares.
18     Q.    How many shares?
19     A.    Just over 445,000.
20     Q.    When you say beneficial, what do you mean?
21     A.    I am a trust, a trustee of certain trusts
22 that have ownership of shares of First Hartford.
23     Q.    How many trusts?
24     A.    My understanding was that -- can I talk to my
```

```
 1    attorney on that question?
 2              MR. KENNA:  Well, I think where, I think
 3    where Mr. Kaplan is going is, you know, I don't have a
 4    problem with a few questions along these lines, but,
 5    you know, the judge has ruled quite clearly with
 6    respect to the plaintiff in the case, Richard Kaplan,
 7    that we don't have to get into this stuff, we're not
 8    going to get into this stuff, it's irrelevant --
 9              MR. NOLAN:  I don't think it's, I
10    disagree with you.
11              MR. KENNA:  Well, I can read it to you
12    if you want, we have, I have his order right here, and
13    I think you're aware --
14              MR. NOLAN:  I understand what his order
15    was, and I understand --
16              MR. KENNA:  And you've got a non-party
17    witness in this case --
18              MR. NOLAN:  I understand.
19              MR. KENNA:  -- who is a shareholder,
20    who's not a plaintiff to the case.
21              MR. NOLAN:  I understand.
22              MR. KENNA:  So we're not going to go
23    into it --
24              MR. NOLAN:  Well --
```

```
 1                  MR. KENNA:  -- in detail.  I'll let him
 2     answer how many trusts, and then I think we should move
 3     on to something else.
 4          Q.   How many trusts are there, sir?
 5          A.   I don't know the exact number.
 6          Q.   And you are a trustee?
 7          A.   Yes.
 8          Q.   Are there any other trustees?
 9          A.   Yes, there are.
10          Q.   How many other trustees?
11          A.   It varies depending on which trusts we're
12     talking about.
13          Q.   Okay.  Is there -- you are a trustee of all
14     of the trusts?
15          A.   That have the beneficial ownership as I said.
16          Q.   Okay, and who else are the trustees?
17          A.   Again, I thought this was off limits, this --
18               MR. KENNA:  All right.  You don't have
19     to answer that.
20          Q.   You're not going answer my question?
21               MR. KENNA:  He doesn't have to answer
22     that question.
23               MR. NOLAN:  And the authority for that
24     is?
```

```
1                    MR. KENNA:  Judge Gorton's order.
2                    MR. NOLAN:  Do you have a copy of the
3    order there?
4                    MR. KENNA:  I do.
5                    MR. NOLAN:  Let's mark it.
6                    MR. KENNA:  You don't have a copy?
7                    MR. NOLAN:  I don't have one in the
8    room, we'll go get one, we'll make a copy --
9                    MR. KENNA:  You want my copy, make a
10   copy.
11                   MR. NOLAN:  We'll make copies, sure,
12   thanks, take a recess.
13                   (Marked Exhibit 1; Memorandum and Order
14                    of Judge Gorton).
15                   (Short break taken).
16       Q.   Sir, do you know what a Schedule 13D is?
17       A.   Yes, I do.
18       Q.   What is it?
19       A.   It's a schedule that shareholders who own
20   more than five percent of a public corporation are
21   required to file with the SEC.
22       Q.   Did you file such a Schedule 13D?
23       A.   Yes, I did.
24       Q.   When did you do that?
```

1  Q. Was that person a lawyer?
2  A. Yes.
3  Q. What was that person's name?
4  A. There were more than one, there's more than
5  one person who was involved, and one person was Rob
6  Rothberg.
7  Q. And who were the other people involved?
8  A. Richard Kaplan.
9  Q. That's your brother?
10 A. Yes. I believe Larry Kenna also who's here
11 was somewhat involved, although not as much as Rob.
12 Q. When was the last time you looked at the 13D?
13 A. Last night.
14 Q. Were the statements in the 13D true when the
15 document was filed with the Securities and Exchange
16 Commission?
17 A. I believe so, yes.
18 Q. Are the statements true today?
19 A. I believe so.
20 Q. Now, is it true that the shares beneficially
21 owned by you and your brother were acquired from gifts,
22 bequests and other transfers without consideration?
23      MR. KENNA: Well, you just asked him
24 that question a minute --

KACZYNSKI REPORTING

```
 1              MR. NOLAN:  Now I'm asking another
 2   question.  Do you have an objection to it?
 3              MR. KENNA:  Well, you -- it's asked and
 4   answered.  You asked him whether the statements were
 5   true, and that's a statement you're reading right from
 6   the 13D.
 7              MR. NOLAN:  And that's a preliminary
 8   statement.
 9        Q.    Is that statement true?
10              MR. KENNA:  Objection.
11        Q.    You can answer.
12        A.    Can you break down the question, please?
13        Q.    Okay.  Did you receive some of the shares
14   that you claim an interest in by a gift?
15              MR. KENNA:  Just yes or no.
16        A.    Yes.
17        Q.    From whom?
18              MR. KENNA:  I object.  We're not going
19   to answer that question.
20              MR. NOLAN:  And the basis is?
21              MR. KENNA:  Judge Gorton's order,
22   Exhibit 1.
23              MR. NOLAN:  And would you point out
24   which part of Exhibit 1 that is?
```

```
 1              MR. KENNA:  Well, we're relying on the
 2   fact that as you know, we had a lengthy battle over
 3   production of documents.  First Hartford Corporation
 4   sought from the plaintiff in the case, Mr. Kaplan, all
 5   sorts of information about his ownership of shares and
 6   how he acquired those shares and from whom he acquired
 7   those shares and you name it, with whom he shared
 8   voting power and all kinds of things about the
 9   plaintiff in this case, his interest in the shares of
10   First Hartford Corporation, and Judge Gorton very
11   clearly ruled in his memorandum and order that we've
12   marked as Exhibit 1 that with respect to the plaintiff
13   in this case, First Hartford Corporation is not
14   entitled to that information.  He said plaintiff need
15   not produce the remainder of documents requested by
16   First Hartford Corporation pertaining to his stock
17   holdings because much of it is irrelevant to this
18   action, unnecessarily intrusive and burdensome, and
19   there is no apparent reason why defendant needs that
20   information for any relevant purpose.  Now, if you're
21   not entitled to that information from the plaintiff in
22   this case, you are certainly not entitled to that
23   information from Mr. David Kaplan, who's a, who's not a
24   party to this case.  We've given you information about
```

KACZYNSKI REPORTING

```
 1    his shares, you have the 13D, and that's as far as it's
 2    going to go.
 3                   MR. NOLAN:  Okay.  Naturally we
 4    disagree, and we, not to belabor the record here and
 5    ask a bunch of questions that you're going to object
 6    to, just disagree, and we'll take it up with the judge
 7    and --
 8                   MR. KENNA:  We can do it now if you
 9    want.
10                   MR. NOLAN:  No, we'll do it later --
11                   MR. KENNA:  All right.
12                   MR. NOLAN:  -- because we're not going
13    to waste time bothering the judge on that this morning,
14    we'll do that at a later time since we're here to take
15    two depositions today to try to accommodate you and
16    your clients.
17       Q.   Mr. Kaplan, do you know what an extraordinary
18    corporate transaction is?
19       A.   As used in the 13D, I have -- yes, I think I
20    do, but I'm sure there are differences of opinion.
21       Q.   Well, tell me what the phrase means to you,
22    please, sir?
23       A.   Leveraged buyout perhaps.
24       Q.   So I take it you and your brother have
```

```
 1   Manchester.
 2        Q.   Did you leave a business card with anyone?
 3        A.   No.
 4        Q.   Did you have any conversation about your
 5   business activities at either of those meetings?
 6        A.   To the extent that I tried to obtain a copy
 7   of a shareholders list in 2004, and to the extent that
 8   that relates to my business functions, I suppose I did
 9   discuss my business functions with members of First
10   Hartford Corporation.
11        Q.   And of course in your 13D, you've stated that
12   you had an office at 257 East Center Street in
13   Manchester, Connecticut?
14        A.   I don't have it in front of me.
15             (Pause).
16        A.   I don't see where the address appears.
17             MR. KENNA:  Page six.
18             THE WITNESS:  Yes.
19             MR. KENNA:  You've got page nine there.
20             THE WITNESS:  Okay.  I'm looking at
21   page six on the front.
22             MR. KENNA:  Oh, I'm sorry.
23             THE WITNESS:  Okay, yes, right.
24             MR. NOLAN:  Okay.  Well, subject to our
```

KACZYNSKI REPORTING

```
1    colloquy, Mr. Kenna, we will not adjourn the deposition
2    but suspend it at this point.
3              MR. KENNA:  And what, just so I
4    understand, I mean, I always like to conclude things if
5    possible, I mean, what's your position --
6              MR. NOLAN:  My position is that I --
7              MR. KENNA:  -- with respect to those
8    questions?
9              MR. NOLAN:  My position is that I'm
10   certainly entitled to go into that, find out the nature
11   of his shareholdings and the various trusts that he
12   claims that he is the trustee of and the other
13   questions which you've blocked, so let's not burden the
14   record.
15             MR. KENNA:  Well, no, no, this isn't
16   burdening the record, this is very important, because
17   the judge said that there was no apparent reason why
18   the defendant needs that information for any relevant
19   purpose, and I'm giving you every opportunity now to --
20             MR. NOLAN:  I don't have to explain
21   myself --
22             MR. KENNA:  -- to state on the record --
23             MR. NOLAN:  I don't have to explain
24   myself, this is a deposition.
```

```
 1              MR. KENNA:  I may let you answer those
 2      questions, sir.
 3              MR. NOLAN:  I'm not, I've already made
 4      my position --
 5              MR. KENNA:  Get answers to those
 6      questions --
 7              MR. NOLAN:  -- I've made my position
 8      clear, we're suspending right now.
 9              MR. KENNA:  If you can state a reason
10      why you need that information for something relevant to
11      this litigation, I advise you to do so now, Mr. Nolan.
12              MR. NOLAN:  Let's continue.  Don't
13      threaten me.
14              MR. KENNA:  You're not going to do that?
15              MR. NOLAN:  Don't threaten me.
16              MR. KENNA:  What I'm trying to say is --
17              MR. NOLAN:  I understand --
18              MR. KENNA:  -- we can possibly conclude
19      this deposition.
20              MR. NOLAN:  I don't think so, so --
21              MR. KENNA:  Because you have no reason.
22              MR. NOLAN:  We're suspended, and let's
23      do the next one, please.
24              MR. KENNA:  I object to the suspension.
```

```
1                    MR. NOLAN:  I understand.
2                    MR. KENNA:  There is no reason for it,
3     and this deposition from our standpoint is concluded.
4                    MR. NOLAN:  I understand what your
5     position is, that's why I said it the way I did, I
6     didn't want to get into a long discussion with you --
7                    MR. KENNA:  Are you done with Mr.
8     Kaplan?
9                    MR. NOLAN:  For today I'm done with him,
10    yes.
11                   MR. KENNA:  Thank you.
12                   (Deposition suspended at 11:00 a.m.).
13
14
15
16
17
18
19
20
21
22
23
24
```