# Exhibit 12

Page 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

COPY

-------------------------------
RICHARD E. KAPLAN,            )
        Plaintiff,            )
                              )
    vs                        )
                              )
FIRST HARTFORD CORPORATION,   )  04-10402-NMG
        Defendant.            )
-------------------------------

---

Deposition of: NEIL H. ELLIS

---

   Taken before Tina M. Davis, Stenographer and
Notary Public in and for the State of Connecticut,
pursuant to notice, at the offices of
DAY, BERRY & HOWARD, CityPlace I, 185 Asylum Street,
Hartford, Connecticut, on Friday, June 3, 2005
scheduled to commence at approximately 10:00 a.m.

Tina M. Davis, LSR
License No. 00221
Brandon Smith Reporting Service
44 Capitol Avenue
Hartford, CT  06106
(860) 549-1850

1  father?

2         MR. NOLAN: Objection to the form of the

3  question.

4  BY MR. KENNA:

5     Q.  Is that correct?

6     A.  Not solely that, no.

7     Q.  Well, what are you referring to when you say the

8  family feud, sir?

9     A.  What am I referring to?

10    Q.  Yes.

11    A.  A feud that has taken place in the family for

12 many, many years.

13    Q.  Okay. Well, I'm just --

14    A.  This case, in my opinion, being one of them.

15    Q.  Well, before you mentioned this case, all I heard

16 you testify about was a case where you sued your father.

17 That's part of --

18         MR. NOLAN: That was --

19    A.  No. I'm talking about this case here, Mr. Kenna.

20 BY MR. KENNA:

21    Q.  Let me ask my questions, and then --

22    A.  Please do.

23    Q.  -- you can answer them.

24         MR. NOLAN: I think you did ask a question

25 and you got an answer, and now you're trying to conflict

Page 18

1   it with something else.
2          MR. KENNA: It's permissible.
3          MR. NOLAN: I understand it --
4          MR. KENNA: It's absolutely permissible.
5          MR. NOLAN: And wasting time is always
6   permissible.
7          MR. KENNA: No. It's not wasting time.
8          MR. NOLAN: I'll just remind you that we
9   have to leave here at 3:00 today.
10         MR. KENNA: Well, it's ten minutes after
11  10:00 in the morning, and we've been at this for about
12  five or ten minutes.
13         MR. NOLAN: No. 15 actually.
14         MR. KENNA: 15 minutes.
15         MR. NOLAN: And you've asked zero questions
16  that have anything to do with this litigation, but it's
17  your deposition.
18         MR. KENNA: Well, it's my deposition.
19         MR. NOLAN: Go ahead.
20         MR. KENNA: And obviously this was something
21  that was significant to Mr. Ellis, having reviewed this
22  before coming in here today.
23         MR. NOLAN: Well, that's your spin,
24  Mr. Kenna, and your conclusion. I didn't hear him say
25  that it was significant to him. You asked him a

1   question, and he answered it.
2          MR. KENNA: I'm asking him now what his
3   purpose was in reviewing that, and that's where we're
4   going.
5          MR. NOLAN: Go ahead.
6          MR. KENNA: He said it had to do with the
7   family feud, and now I want to find out what he means
8   when he says the family feud.
9          MR. NOLAN: You're talking about this family
10  feud.
11         MR. KENNA: I want to know what he -- let me
12  ask the questions.
13         MR. NOLAN: Okay.
14         MR. KENNA: And let him go ahead and answer
15  the questions as best he can. We'll really make
16  progress.
17         MR. NOLAN: Tell him about the family feud,
18  Mr. Ellis.
19  BY MR. KENNA:
20   Q.  What do you mean when you say the family feud?
21   A.  I mean the numerous -- the entity between the
22  Kaplan family and the Sidney Ellis family and myself,
23  probably as best epitomized by the trial, and that's why
24  I was amused today. When Mr. Seymour Kaplan was called
25  in as a witness, the attorney for Mr. Sidney Ellis

1   Certain Business Relationships?

2           MR. NOLAN: Mr. Kenna, there's some
3   highlighting on that. Is that on the original exhibit?

4           MR. KENNA: That is the exhibit.

5           MR. NOLAN: I understand. There's
6   highlighting on it.

7           MR. KENNA: That's the exhibit. Do you
8   remember we discussed this?

9           MR. NOLAN: I can see across --

10          MR. KENNA: That is the exhibit, the
11  original exhibit, Exhibit 13.

12          MR. NOLAN: You have colored highlighting on
13  your copy.

14          MR. KENNA: Probably it's the way it was
15  copied. This is not the exhibit, sir. This is a copy
16  of the exhibit, all right, what I have in my hand.

17          MR. NOLAN: Yes. But what you have in your
18  hand has pink ink on it; correct?

19          MR. KENNA: Is that a problem?

20          MR. NOLAN: I'm trying to determine where
21  the highlighting came from?

22          MR. KENNA: My guess is that this might have
23  been copied and the pink didn't come out as pink, it
24  came out the way it came out on that exhibit.

25          MR. NOLAN: How did the pink get on it?

Kaplan v. First Hartford

6/3/2005

Neil Ellis

Page 26

1   That's my question. You have in your hand something
2   that's pink, that pink copying. Did you put that on?
3         MR. KENNA: I may have.
4         MR. NOLAN: Oh, okay. I'm only trying to
5   find out just so that the record is clear.
6         MR. KENNA: Oh, okay. I think we went over
7   this at the 30(b)(6).
8         MR. NOLAN: I don't recall that you did.
9   Maybe you did. I wasn't there.
10        MR. KENNA: Yes, you were.
11        MR. NOLAN: Was I?
12        MR. KENNA: Sure. You represented the
13   deponent.
14        MR. NOLAN: It must have been so fascinating
15   that I forgot about it.
16        Okay. Let's go on.
17        MR. KENNA: What Mr. Ellis has in front of
18   him is the exhibit that was marked at the 30(b)(6)
19   deposition. The sticker is right on it.
20        MR. NOLAN: The sticker is on the first
21   page.
22        MR. KENNA: Yes.
23        MR. NOLAN: I'm not going to make a big deal
24   out of this. It's unclipped or unstapled I should say.
25        MR. KENNA: Let me get back to the

Page 54

1  A. There's a shopping center in Lubbock, yes.
2  That's referred to by --
3  Q. Is there a shopping center down there that at one
4  time First Hartford Corporation had a significant
5  interest in, ownership interest in, and that ownership
6  interest went to the Journal Publishing Company?
7         MR. NOLAN: Objection to the form of the
8  question.
9  BY MR. KENNA:
10  Q. Is there? Yes or no.
11  A. Would you repeat the question?
12  Q. I want to know if there is a shopping center down
13  in Lubbock, Texas that at one time
14  First Hartford Corporation had a significant ownership
15  interest in that at some point in time that ownership
16  interest went to the Journal Publishing Company?
17         MR. NOLAN: Objection to the form of the
18  question. What do you mean by significant? Do you mean
19  in terms of value?
20  BY MR. KENNA:
21  Q. Can you answer the question?
22         MR. NOLAN: No. You define what you mean
23  by --
24         MR. KENNA: No, no, no.
25         MR. NOLAN: I'm instructing him not to

Page 55

1   answer it.
2           MR. KENNA:  You're instructing him not to
3   answer that question?
4           MR. NOLAN:  Yes.  Unless you're willing to
5   clarify your question so it makes some sense.
6           MR. KENNA:  You're obstructing the
7   deposition.
8           MR. NOLAN:  Don't point your finger at me.
9           MR. KENNA:  I will point my finger.
10          MR. NOLAN:  Don't --
11          MR. KENNA:  If you obstruct, I will point my
12  finger at you.
13          MR. NOLAN:  I am not.  I asked you to
14  clarify your question.  You used the word significant,
15  and that has any number of meanings.  Unless you're
16  willing to state --
17          MR. KENNA:  If the witness doesn't
18  understand it -- and you know what the rules are,
19  Mr. Nolan.
20          MR. NOLAN:  I understand what the rules are
21  perfectly.  I've been doing this for a long time.
22          MR. KENNA:  You're violating them right now.
23          MR. NOLAN:  No.  That's your opinion.  You
24  know what your remedies are.
25          I'm not going to let him answer a question

Page 56

1   like that.

2           MR. KENNA:  You're violating the rules.

3           MR. NOLAN:  Thank you.

4           MR. KENNA:  Make your objections.

5           MR. NOLAN:  Move on.

6           MR. KENNA:  I'm not going to move on.

7           MR. NOLAN:  I'm objecting to the form of the

8   question.

9           MR. KENNA:  All right.  I understand.

10  That's good.  Let's leave it at that from now on.

11  That's what you're entitled to do.

12          MR. NOLAN:  I'm entitled to do what I choose

13  to do within the rules.

14          MR. KENNA:  Within the rules.

15          MR. NOLAN:  You bet.

16          MR. KENNA:  All right.  Your rules, I take

17  it, not the rules of the Court.

18  BY MR. KENNA:

19      Q.  I'm asking about a shopping center in Lubbock,

20  Texas.  I think we've talked about it for the last half

21  an hour or more, but I'll ask again.  Is there a

22  shopping center currently in Lubbock, Texas that at one

23  time either First Hartford Corporation or one of its

24  subsidiaries had as much as a 75 percent or 95 percent

25  interest, ownership interest in the project, that that

Page 110

1    Q.  You don't think that they do?

2    A.  I said I would doubt it.

3    Q.  What makes you say you doubt it?

4    A.  Because the numbers are a little bit different.

5        MR. NOLAN: You've already pointed that out,

6  Mr. Kenna, in your questions that they're different.

7        MR. KENNA: Well, of course the numbers are

8  different. I'm asking about a balance that was owed

9  according to the proxy statement in December of 2003 of

10  1.9 million --

11    A.  Uh-huh.

12    Q.  -- to you or entities owned by you.

13    A.  Uh-huh.

14    Q.  And here a reference of a balance owed one year

15  later of a million --

16    A.  Owned or owed?

17    Q.  Owed.

18        -- of $1,156,177.

19    A.  Yes.

20    Q.  Let me ask my question. During the course of the

21  year from December of 2003 to the December of 2004, did

22  First Hartford Corporation pay you or companies owned or

23  controlled by you approximately $800,000?

24    A.  I don't know. You'd have to ask Mr. Greenwald.

25    Q.  Between December of 2003 and December of 2004, do

1  you know?

2          MR. NOLAN:  Just a minute.  I'm going to --

3          MR. KENNA:  No, no, no.  Stop right no.

4          MR. NOLAN:  Don't you tell me to stop.

5  Don't you tell me to stop.

6          MR. KENNA:  This is really getting a little

7  bit out of control, Mr. Nolan.

8          MR. NOLAN:  I don't think so.

9          MR. KENNA:  Yes.  Because you're coaching

10  the witness.

11         MR. NOLAN:  I'm not coaching.  You're the

12  one trying to mislead him.

13         MR. KENNA:  I am not trying to mislead him.

14         MR. NOLAN:  This talks about loans which

15  were obtained by Mr. and Mrs. Ellis for the benefit of

16  First Hartford.

17         MR. KENNA:  You're saying they're not the

18  same loans?

19         MR. NOLAN:  I'm not saying one way or the

20  other.  I'm saying you're trying to conflate several

21  different concepts and several different transactions.

22  He's already told you he doesn't know whether --

23         MR. KENNA:  You heard my question.  All

24  right.

25         MR. NOLAN:  You don't have a question.

Kaplan v. First Hartford

6/3/2005                                                          Neil Ellis

Page 112

```
 1              MR. KENNA:  I asked a question that had
 2   nothing to do with whether they're the same loans or
 3   they're not the same loans.  All right?
 4              MR. NOLAN:  You're talking about a balance.
 5              MR. KENNA:  I'm trying to move this
 6   deposition along.  All right?
 7              MR. NOLAN:  No, you're not, because you're
 8   talking about a balance --
 9              MR. KENNA:  You're coaching the witness.
10              MR. NOLAN:  -- that has several variables in
11   it.
12              MR. KENNA:  You are obstructing this
13   deposition.  It's plain and simple as the nose on my
14   face.
15              MR. NOLAN:  Well, I'll leave that alone.
16              I am objecting to you conflating several
17   different transactions that have several different
18   variables and taking documents from one year to the next
19   and asking questions as if they're the same thing.  I
20   think that's misleading and unfair.
21              MR. KENNA:  Okay.  You made your statement.
22              MR. NOLAN:  And improper.
23   BY MR. KENNA:
24      Q.  The prior question was whether you have any
25   recollection, Mr. Ellis, as we sit here today, whether
```

Kaplan v. First Hartford

6/3/2005                                                          Neil Ellis

Page 113

1  between December of 2003 and December of 2004

2  First Hartford Corporation paid you or any entity or

3  entities owned or controlled by you the sum of

4  approximately $800,000?

5     A.   What do you mean by the word paid?

6     Q.   Did they give you cash, $800,000 in cash?

7     A.   No.

8     Q.   Did they give you a check for $800,000?

9     A.   No.

10    Q.   Did they credit some amount of money that you say

11 was owed to you by First Hartford Corporation or owed to

12 one of your entities by the sum of approximately

13 $800,000 during that period of time?

14    A.   I don't know.

15    Q.   Is it correct as we look at the proxy statement

16 of Exhibit 13, the proxy statement for the most recent

17 meeting that was held in February of 2005, that you

18 have -- that you are owed $1,156,177 by

19 First Hartford Corporation as of December 31, 2004?

20    A.   Who is "you"?

21    Q.   Pardon?

22    A.   Who is "you"?

23         MR. NOLAN:   In your question, who is "you"?

24         MR. KENNA:   All right.

25