UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD E. KAPLAN,<br><br>            Plaintiff,<br><br>v.<br><br>FIRST HARTFORD CORPORATION,<br><br>            Defendant. | C.A. No. 04-10402-NMG<br>C.A. No. 05-10320-NMG<br>C.A. No. 06-10424-NMG<br>CONSOLIDATED |

**SECOND AFFIDAVIT OF COUNSEL IN SUPPORT OF MOTION
FOR AWARD OF ATTORNEYS' FEES AND RELATED EXPENSES**

Larry C. Kenna, being duly sworn, on oath deposes and says:

1.  I have attached to this Second Affidavit of Counsel (i) 13 redacted invoices and related billing materials covering the period January 1, 2004 through May 31, 2006 (marked Exhibits B through N); and (ii) a spreadsheet showing the date of each invoice, the invoice number, the book fee, the applicable discount, all reductions from the book fee, the amount sought by this motion for each invoice, and the amount of expenses sought by this motion for each invoice (marked Exhibit A). The total fees sought by this motion are $320,011.14 and the total expenses sought are $10,755.85.

2.  The attached invoices, if unredacted, would show the total amount of legal services, plus so-called "ancillary services" and disbursements added to the inventory of each of several matters being handled for this client during the relevant billing period. As a preliminary matter, I have redacted each invoice to eliminate all references to matters other than the First Hartford Corporation matter, to which we have assigned the number 0649546-0013. The first page of each of the attached invoices shows the amount actually billed to the client for that matter for the relevant billing period.

3. Using the March 31, 2004 Invoice No. 1210897 as an example to explain how we arrived at the total amount of attorneys' fees and related expenses billed to our client, we refer the Court to page 4 of the "Unbilled Time Detail" of that invoice, at the bottom of the page, where it shows that timekeepers worked 96.60 hours total during the relevant billing period for a total "book fee" of $42,556.50. In this case, however, the total "book fee" for this matter was not actually billed to the client because this client was given a 10% discount from our "book fee." Thus, as shown on the first page of the March 31, 2004 Invoice No. 1210897, the actual amount billed to the client for services was $38,300.85 ($42,556.50 minus the 10% discount). The 10% discount was applied to the "book fee" recorded on each of the 13 invoices included in this fee motion, as reflected in the "Discount" column of the spreadsheet marked Exhibit A hereto.

4. In addition to attorneys' fees, we bill our clients, including this client, for the actual amount of "ancillary services" (postage, telecopier charges, photocopy charges, etc.) and for the actual amount of all "disbursements" made on behalf of the client (court filing fees, court reporter fees, travel expenses, etc.). For purposes of this fee motion, however, the plaintiff is making no claim for reimbursement of any "ancillary services" charges, and, as the Court will see, is seeking reimbursement of only some of the "disbursements" made on the client's behalf. Again, using the March 31, 2004 Invoice No. 1210897 as an example, the invoice shows that the client was charged a total of $473.80 for "Ancillary services and disbursements," but this fee motion seeks reimbursement for only the $198.80 of disbursements reflected on the "Unbilled Disbursements Detail" page attached to the invoice (and as reflected in the "Expenses" column of the spreadsheet marked Exhibit A hereto).

5. In addition to the application of the 10% discount to each invoice, I have eliminated (and redacted) from each detail sheet of the services rendered as recorded on each

2

invoice certain time entries which were appropriately billed to the client in connection with this matter but which were not entirely related to work on the proxy fraud cases. For example, some services rendered related in whole or in part to our work on the litigations in Maine, and all of those time entries have been eliminated from the invoices for purposes of this fee motion. Thus, again by way of example, the March 31, 2004 Invoice No. 1210897 shows that the client was billed $38,300.85 for services, but taking into account the elimination of time entries for work not entirely related to work on the proxy fraud cases (reflected in the "Reduction" column of the spreadsheet marked Exhibit A hereto), for purposes of this fee motion the reimbursement amount sought for this invoice is $26,980.85 (as reflected in the "Fee Motion Amt" column of the spreadsheet marked Exhibit A hereto).

6. During the two and one-half years that I worked on these cases, my hourly billing rate increased from $440.00 per hour to $485.00 per hour. Robert Rothberg's hourly billing rate increased from $470.00 per hour to $555.00 per hour. Based on our knowledge of the ranges of hourly billing rates charged during 2004-2006 by Boston counsel in firms the size of Choate, Hall & Stewart LLP, we submit that our hourly billing rates (and the hourly billing rates of each of the other attorneys and persons who worked on these cases) fall within the range of the customary hourly rates charged in Boston for similar work. We further submit that the fees charged for our services in these cases were reasonable, and fall within the range of the customary fees charged in Boston for similar work.

7. We further submit that the expenses charged to our client for disbursements were reasonable and necessary expenses incurred in connection with the legal services rendered to our client in these cases.

8. The Court might take note that FHC's 10-K for 1995, at page 9, states that "The ongoing suit from a dissident shareholder has cost the Company $250,000 in the current year and

3

$24,000 in the prior year." Thus, FHC's legal fees and expenses in these cases <u>through April 30, 2005</u>, were reported as <u>$274,000</u>. The most recent 10-Q (for the quarter ended January 31, 2006), at page 14, states that "The litigation against the Company by a dissident shareholder has cost the Company $110,000 and $205,000 in legal fees during the three and nine months periods ended January 31, 2006, respectively." While some of the total amount reported may have been attributable to the litigation in Maine, the reported amounts do not include any legal fees incurred after January 31, 2006, and therefore, do not include any fees incurred for the preparation and trial of these cases during the months of February through May, 2006.

Signed under the pains and penalties of perjury this 24th day of July, 2006.

/s/ Larry C. Kenna

4104970v2