**United States District Court**
**District of Massachusetts**

```
_____
                                )
RICHARD KAPLAN,                 )
                                )
                                )
        Plaintiff,              )    Civil Action Nos.
                                )    04-10402-NMG
        v.                      )    05-10320-NMG
                                )    06-10424-NMG
FIRST HARTFORD CORPORATION,     )    CONSOLIDATED
                                )
        Defendant.              )
                                )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

The underlying dispute involved three consolidated cases
filed by Richard E. Kaplan ("Kaplan"), a shareholder of the
defendant, First Hartford Corporation ("First Hartford"),
adjudicated by this Court during a two-day bench trial (May 15
and 16, 2006). Currently pending before the Court is a post-
trial motion of Kaplan for attorneys' fees and costs.
Accompanying the motion are affidavits in support of requested
attorneys' fees and costs in the amount of $320,011 and $10,756,
respectively. First Hartford opposes the motion.

-1-

## I.    Background

Kaplan is the beneficial owner of 19.1% of First Hartford's outstanding common stock.  Pursuant to the Securities Exchange Act, § 14(a), 15 U.S.C. § 78(a), he alleged that First Hartford violated federal securities laws by making material misstatements and omissions in proxy statements for meetings held in January, 2004, February, 2005 and March, 2006.  In his complaint, Kaplan requested that 1) the shareholder votes (and consequent results) from those three annual meetings be voided, 2) new meetings be called pursuant to the distribution of revised proxy materials, 3) he be awarded the costs and expenses of each lawsuit, including attorney's fees and 4) the Court award further appropriate relief.

Although the Court found that the proxy statements "omitted, or misstated, certain disclosures that were required by federal regulations", the Court concluded that most of the alleged misrepresentations were "either fully and fairly disclosed or, if not, were immaterial".  Nevertheless, the Court found that "the non-disclosures taken as a whole cause concern" and that the insufficient disclosures regarding the personal interests of one particular director were problematic.  The Court held that First Hartford should have disclosed information relating to that personal interest and that the misleading statements and omissions exceeded the threshold of materiality "by a narrow

margin".

Despite that conclusion, the Court declined to award Kaplan any of his requested relief but, instead, awarded him prospective relief in the form of an order that all future proxy statements must comply with the decision.

## II.  Motion for Attorneys' Fees and Costs

Pursuant to Fed.R.Civ.P. 54(d)(2)(A), plaintiff Kaplan moves the Court to award him attorneys' fees and expenses incurred in his litigation against First Hartford.  Although the traditional American Rule requires that parties bear their own costs of litigation, courts have created exceptions in which the prevailing party can shift litigation costs to the losing party. In Mills v. Electric Auto-Lite Company, 396 U.S. 375 (1970), the United States Supreme Court created such an exception for cases brought pursuant to § 14(a) of the Securities Exchange Act.  In Mills, the Supreme Court held that an exception to the American Rule exists where a "plaintiff has successfully maintained a suit, usually on behalf of a class, that benefits a group of others in the same manner as himself."  Id. at 392 (citing Fleischman Corp. v. Maier Brewing Co., 386 U.S. 714, 718-19 (1967)).  Plaintiff contends that this case falls within that exception and that he should, therefore, be awarded fees and costs accordingly.

Not surprisingly, the defendant disputes Kaplan's claim on two grounds: 1) the Court has already denied Kaplan's request for attorneys' fees and 2) Kaplan has not conferred a substantial benefit on First Hartford's shareholders and thus is not entitled to reimbursement of his fees.  In the alternative, First Hartford requests that if the Court is inclined to grant any award of fees, it be significantly less than the sum sought by Kaplan and that First Hartford be afforded the opportunity to submit a detailed opposition.

With respect to the first argument, First Hartford asserts that Kaplan, in his complaint, sought an award for attorneys' fees and costs which was, in effect, denied when this Court awarded him only prospective relief.  The Court disagrees and concludes that it will entertain the motion for attorneys' fees as a timely motion pursuant to Fed.R.Civ.P. 54(d)(2)(A).

### A.    Substantial Benefit

The central issue is whether Kaplan's actions conferred a "substantial benefit" on First Hartford's shareholders.  Kaplan contends that the Court's finding that First Hartford made misleading statements and omissions in the proxy statements and its order that future statements comply with the decision benefit not only him but also all First Hartford shareholders who will benefit from the ability to cast better informed votes.  The defendant responds that although partial judgment was entered in

-4-

favor of Kaplan, the Court denied all of his requested relief and
awarded him only unrequested prospective relief.  Moreover, the
defendant argues that Kaplan exaggerates his victory, ignoring
the Court's findings that several of the alleged
misrepresentations or omissions in the proxy statements were
"either fully and fairly disclosed or, if not, were immaterial."
Thus, First Hartford contends that Kaplan failed to obtain a
benefit substantial enough to qualify for an award of attorneys'
fees.

First Hartford interprets the phrase "substantial benefit"
too narrowly.  In Mills, the Supreme Court clearly found that
such a benefit need not be pecuniary and can be prospective in
its impact.  The Court quoted the Minnesota Supreme Court:

> Where an action by a stockholder results in a substantial
> benefit to a corporation he should recover his costs and
> expenses ... [A] substantial benefit must be something more
> than technical in its consequence and be one that
> accomplishes a result which corrects or prevents an abuse
> which would be prejudicial to the rights and interests of
> the corporation or affect the enjoyment or protection of an
> essential right to the stockholder's interest.

Mills, 396 U.S. at 396 (quoting Bosch v. Meeker Cooperative Light
& Power Assn., 257 Minn. 362, 366-67 (1960)).  Furthermore, the
Mills Court recognized that Congress clearly stressed "the
importance of fair and informed corporate suffrage ... [and,
therefore] in vindicating that statutory policy, petitioners have
rendered a substantial service to the corporation and its
shareholders."  Id. at 396.

-5-

It is that kind of "fair and informed corporate suffrage" that is at issue here.  See also Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, 54 F.3d 69, 71 (2d Cir. 1995) ("the right to cast an informed vote [pursuant to SEC Rule 14a-8], in and of itself, is a substantial interest worthy of vindication").  The rationale underlying the doctrine which allows for the recovery of attorneys' fees is not limited to cases in which a plaintiff wins a pecuniary award or a landslide victory.  Rather, the Supreme Court's language makes clear that it is to be applied where litigation corrects or prevents an abuse which would be prejudicial to the rights and interests of others.  Mills, 396 U.S. at 396.  A judgment, such as the one entered in this case, requiring the defendant to produce more accurate proxy materials in the future provides the kind of benefit anticipated by the Supreme Court.

Although the defendant attempts to distinguish this case from Mills on the grounds that Kaplan proceeded individually and not through a derivative suit or class action, the distinction is without merit.  The Supreme Court made it clear that the "substantial benefit" test is not focused on the procedural vehicle by which the benefit was conferred but rather by the consequence of the action itself.  Although Kaplan did not sue First Hartford derivatively or on behalf of the shareholders, the remedy he achieved benefits others.  See, e.g., Crane Co. v.

American Standard Inc., 603 F.2d 244, 255 (2d Cir. 1979)(denying
attorneys' fees in a case where the alleged violation caused
injury only to the plaintiff and the shareholders gained nothing
more than the general benefit which accompanies the uncovering of
any securities law violation).  The Court's order that future
proxy statements comply with the decision benefits all First
Hartford shareholders.

    **B.   Calculating the Award**

    Having concluded that the plaintiff is entitled to an award
of at least some attorneys' fees and costs, the Court turns to
the calculation of the appropriate sum.  Plaintiff Kaplan submits
two affidavits of counsel in support of his motion to award fees
of $320,011 and expenses of $10,756.  First Hartford responds
that full compensation is not appropriate in this case and asks
for a much more limited award.  The Court agrees with First
Hartford.

    In support of his claim, Kaplan submits invoices itemizing
his attorneys' fees.  The time sheets indicate charges for
approximately 550 hours, most of which were incurred by Attorney
Larry C. Kenna, a retired partner, and Attorney Robert Rothberg,
of counsel.  Those attorneys charge hourly rates of between $450-
550 per hour.

    Although the Court concedes that Kaplan is entitled to an
award of some attorneys' fees and costs, it is convinced that he

-7-

is not entitled to anything near the full requested sum.  The defendant has correctly noted that several of the plaintiff's allegations were found to be immaterial and that the remainder passed the threshold of materiality "by a narrow margin" only. Moreover, the Court denied all of the plaintiff's requested relief and entered judgment in his favor only with respect to an unrequested prospective order for future compliance.

In determining the appropriate award, the Court seeks to balance rewarding a plaintiff who confers a substantial benefit on the corporation with the particular facts of this case in which Kaplan's "victory" was marginal at best.  Given that the great majority of the legal fees were incurred in connection with claims which were ultimately rejected, it is inappropriate to require the defendant to reimbursement him for those efforts.

Specifically, in its Memorandum of Decision entered in July, 2006, this Court addressed 12 of the plaintiff's allegations and concluded that nine of the alleged misstatements or omissions "were fully and fairly disclosed or, if not, were immaterial". With respect to the other three undisclosed items, the Court held that First Hartford should have disclosed: 1) material terms of transactions in which a particular director (or his family) was personally interested, 2) details regarding the potential benefits and detriments to that director and 3) the relationship between First Hartford and various directors and affiliated

entities.

Thus, only one quarter of plaintiff's allegations were deemed to be sufficiently material. Furthermore, of that fraction, the Court expressed additional reservations and ultimately decided against awarding Kaplan his requested relief because of 1) the particular context of those non-disclosures, 2) the lack of evidence that they would have produced a different result and 3) the mootness of Kaplan's claims resulting from the passage of time and First Hartford's more recent financial recovery. After taking into account the same factors which led this Court to award only prospective relief, it will discount the "one quarter success" calculation by an additional 50% and award legal fees of one-eighth of the requested amount, plus full reimbursement of costs. The Court deems such an award to be fair and equitable under all of the circumstances.

**ORDER**

For the foregoing reasons, the plaintiff's motion for attorneys' fees and costs (Docket No. 56) is ALLOWED, in part, and DENIED, in part.  Plaintiffs are awarded attorneys' fees of $40,000 and costs of $10,756.

**So ordered.**

 /s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated: March 27, 2007

-10-